C.D. Michel-SBN 144258
Anna M. Barvir-SBN 268728
Tiffany D. Cheuvront-SBN 317144
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Fax: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs Junior Sports Magazines Inc., Raymond Brown, California Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA Foundation, and Gun Owners of California, Inc.

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorney for Plaintiff Second Amendment Foundation

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNIOR SPORTS MAGAZINES INC., RAYMOND BROWN, CALIFORNIA YOUTH SHOOTING SPORTS ASSOCIATION, INC., REDLANDS CALIFORNIA YOUTH CLAY SHOOTING SPORTS, INC., CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, THE CRPA FOUNDATION, AND GUN OWNERS OF CALIFORNIA, INC.; and SECOND AMENDMENT FOUNDATION,<br><br>    Plaintiffs,<br><br>    v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-10,<br><br>    Defendant. | **CASE NO:**<br><br>**COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF**<br><br>**(1) VIOLATION OF 42 U.S.C. § 1983 [FREE SPEECH];**<br><br>**(2) VIOLATION OF 42 U.S.C. § 1983 [COMMERCIAL SPEECH];**<br><br>**(3) VIOLATION OF 42 U.S.C. § 1983 [RIGHT TO ASSOCIATION];**<br><br>**(4)  VIOLATION OF 42 U.S.C. § 1983 [EQUAL PROTECTION]**<br><br>**FRCP 5.1(a) NOTICE OF UNCONSTITUTIONALITY OF STATE STATUTE** |

1

COMPLAINT FOR DECLARATORY RELIEF & INJUNCTIVE RELIEF

Plaintiffs Junior Sports Magazines Inc., Raymond Brown, California Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA Foundation, and Gun Owners of California, Inc., and the Second Amendment Foundation (collectively, "Plaintiffs"), by and through their respective attorneys, bring this Complaint for Declaratory and Injunctive Relief against the above-named Defendants, their employees, agents, and successors in office, and in support thereof allege the following:

## JURISDICTION AND VENUE

1.     The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331 because the action arises under the Constitution and laws of the United States, thus raising federal questions. The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 since this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of California and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress

2.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, respectively, and their claim for attorneys' fees is authorized by 42 U.S.C. § 1988.

3.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## INTRODUCTION

4.     Plaintiffs bring this suit to challenge the constitutionality of California Business & Professions Code section 22949.80, which makes it unlawful for any "firearm industry member" to "advertise, market, or arrange for placement of an advertising or marketing communication concerning any firearm-related product in

COMPLAINT FOR DECLARATORY RELIEF & INJUNCTIVE RELIEF

a manner that is designed, intended, or reasonably appears to be attractive to minors." Cal. Bus. & Prof. Code § 22949.80(a)(1).

5.     The First Amendment fully protects pure political, ideological, and educational speech. Content- and viewpoint-based restrictions on such speech are especially repugnant to the People's right to free speech. Indeed, "above all else, the First Amendment means that the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't v. Mosley*, 408 U.S. 92, 95 (1972); *see also* The Constitution thus "demands that content-based restrictions on speech be presumed invalid . . . and that the Government bear the burden of showing their constitutionality." *Ashcroft v. Am. Civil Libs. Union*, 535 U.S. 564, 573 (2002).

6.     The First Amendment also protects non-misleading commercial speech promoting lawful products or services. That protection is at its highest when the products or services are themselves independently protected by other fundamental rights. And the sale of firearms, ammunition, and firearm parts and accessories is not only legal, but also constitutionally protected by the Second Amendment.

7.     Section 22949.80 imposes a content- and speaker-based restriction on protected speech that is viewpoint discriminatory, that serves no legitimate government interest (directly or indirectly), and that is both facially overbroad and far more extensive than necessary to achieve any purported interest. It thus violates Plaintiffs' free speech and commercial speech rights.

8.     The First Amendment also protects the right to peaceably assemble and associate. The right to assemble often merges with the right to free expression. For "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1959). "Governmental action which may have the effect of curtailing the freedom to associate is subject to the *closest* scrutiny." *Id.* at 461-62 (emphasis added).

9. Section 22949.80 effectively curtails the rights to assemble and associate because it directly prohibits advertising, marketing, or arranging for the placement of advertising or marketing promoting various firearm-related events and programs, where Plaintiffs peaceably and lawfully assemble and associate with each other and members of the public. It also impermissibly restricts pro-gun (but not anti-gun) organizations from promoting membership in or financial support of their organizations in ways that might be deemed "attractive to minors."

10. Finally, for many of the reasons section 22949.80 violates Plaintiffs' right to engage in free speech, it also violates their right to equal protection under the law.

11. What's more, AB 2571 (codified as § 22949.80), clearly violates well-established free speech precedents of the U.S. Supreme Court, making the law frivolous on its face. This may very well have the effect of forcing the California Attorney General's office to defend this statute by making legal contentions that are not warranted by existing law, or even abandoning the defense and enforcement of this statute altogether. *See generally*, *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947 (9th Cir. 2009).

12. Because section 22949.80 violates rights protected by the First and Fourteenth Amendments, Plaintiffs seek equitable relief declaring the law invalid and enjoining its enforcement by Defendants, their employees, agents, successors in office, and all District Attorneys, County Counsel, and City Attorneys holding office in the state of California, as well as their successors in office.

**PARTIES**

**[Plaintiffs]**

13. Plaintiff JUNIOR SPORTS MAGAZINES, INC. ("Junior Sports Magazines") is a for-profit company incorporated under the laws of the state of Idaho. Plaintiff Junior Sports Magazines is the publisher of the online and print magazine *Junior Shooters*, a publication dedicated to promoting youth of all

involved in all shooting disciplines with readership throughout California. *Junior Shooters* answers questions young and beginner shooters have about firearm safety, guns and gear, protective gear, and more. The magazine also provides information on how to get started in the shooting sports, shooting events, youth shooting organizations and clubs, as well as scholarships available to youth shooters.

14.     Plaintiff RAYMOND BROWN is a resident of Yucaipa, California. Plaintiff Brown is a Level 3 Sporting Clays Instructor—one of only three such instructors in California and the only one located in Southern California. He regularly trains youth in the shooting sports and those participating in high school shooting trap teams. His work includes promoting his courses to youth in the shooting sports and speaking to the youth he trains about firearms and safety.

15.     Plaintiff CALIFORNIA YOUTH SHOOTING SPORTS ASSOCIATION, INC. ("CYSSA") is a non-profit organization incorporated under the laws of the state of California, with headquarters in Valley Springs, California. Plaintiffs CYSSA is committed to promoting and preserving the clay shooting sports among youth in California. To that end, Plaintiff CYSSA offers participation in its youth clay shooting program, the CYSSA Clay Target Program, a team-based youth development program for boys and girls, grades 12 and under, that provides its participants with a positive, life-enhancing experience. It is an opportunity for young people to participate in a supervised, shotgun-shooting sports program taught by certified coaches that emphasizes firearm safety and skill development in clay target shooting. Good sportsmanship, individual responsibility, self-discipline, positive academic progress, and personal commitment are emphasized in the CYSSA program. Plaintiff CYSSA, in partnership with other local clubs, sponsor youth competitive events, like its "Series Shoots" and the State Trap Championships.

16.     Plaintiff REDLANDS CALIFORNIA YOUTH CLAY SHOOTING SPORTS, INC. ("RCYCSS") is a 501(c)(3) non-profit organization incorporated

under the laws of the state of California, with headquarters in Redlands, California. Plaintiff RCYCSS is committed to growing clay shooting sports among the youth within the Southern California region. To that end, Plaintiff RCYCSS offers participation in its youth clay shooting program, the Redlands Clay Crushers Junior Trap Team, which consists of youth shooters ranging from age 10-18. The group's mission is to allow youth shooters the opportunity to safely and responsibly participate in clay shooting sports, including American Trap, Skeet, International Skeet, Olympic Bunker, and Sporting Clays. Plaintiff RCYCSS and the Redlands Clay Crushers Junior Trap Team consistently focus on firearm safety in a fun, yet skill-based environment. One of its principal goals is to strengthen connections within families and communities through lifelong recreational shooting sports activities.

17.   Plaintiff CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED ("CRPA") is a non-profit membership organization incorporated under the laws of the state of California, with headquarters in Fullerton, California. Among its other activities, Plaintiff CRPA works to preserve and protect the constitutional and statutory rights of gun ownership, including the right to self-defense and the right to keep and bear arms. Plaintiff CRPA accomplishes this through its educational offerings, publications (including magazines, like "The Firing Line"), member-engagement events, and legislative advocacy and initiatives. Through this lawsuit, Plaintiff CRPA represents not only its own interests as a "firearm industry member" to disseminate information to like-minded individuals, but also the interests of its members, including youth under the age of 18 and their parents and firearms trainers, who support and promote the right to keep and bear arms for lawful purposes.

18.   Plaintiff THE CRPA FOUNDATION ("CRPAF") is a 501(c)(3) non-profit organization incorporated under the laws of the state of California, with headquarters in Fullerton, California. Since 2004, Plaintiff CRPAF has raised funds

to benefit eligible programs supportive of advancing its mission and ensuring the continued fight to protect the Second Amendment rights of all law-abiding citizens in California who to choose to own a gun for sport, hunting, and personal protection. Grants from CRPAF benefit a variety of constituencies throughout California, including youth, women, gun collectors, hunters, target shooters, law enforcement, adaptive shooters, and those who choose to own a gun to defend themselves and their families. Plaintiff CRPAF is dedicated to fostering youth leadership skills through bolstering programs that engage kids, teenagers, and young adults in wildlife conservation, hunting heritage and traditions, and competitive and recreational shooting sports. Through its Youth Scholarship Program, Plaintiff CRPAF supports collegiate bound students that believe in the preservation of the Second Amendment and conservation of wildlife in California.

19.     Plaintiff GUN OWNERS OF CALIFORNIA, INC. ("GOC") is a non-profit organization incorporated under the laws of the state of California, with headquarters in El Dorado Hills, California. GOC is dedicated to the restoration of the Second Amendment in California. To that end, GOC annually supports youth shooting teams by raising contributing financial resources to their programs and has sponsored individual talented young shooters through their careers as juniors looking to earn scholarships at major universities.

20.     Plaintiff SECOND AMENDMENT FOUNDATION ("SAF") is a 501(c)(3) non-profit membership organization incorporated under the laws of the state of Washington. Plaintiff SAF has over 650,000 members and supporters nationwide, include thousands of members in California. Founded in 1974, Plaintiff SAF is dedicated to promoting a better understanding of the country's constitutional heritage to privately own and possess firearms. To that end, Plaintiff SAF carries on many educational and legal action programs designed to better inform the public about the gun control debate. It has been a pioneer in innovative defense of the right to keep and bear arms through its publications, public education

COMPLAINT FOR DECLARATORY RELIEF & INJUNCTIVE RELIEF

programs, legal action, and events like the annual Gun Rights Policy Conference. It is critical to the success of SAF that its promotional material, publications, and messages about the "right to keep and bear arms" be permitted to reach a broad public audience, including minors and young adults. Restrictions on speech "concerning firearm-related products" interfere with that effort. Through this lawsuit, Plaintiff SAF represents not only its own interests as a "firearm industry member" to disseminate information to like-minded individuals, but also the interests of its members, including youth under the age of 18 and their parents and firearms trainers, who support and promote the right to keep and bear arms for lawful purposes.

**[Defendants]**

21.     Defendant ROB BONTA is the Attorney General of the State of California. He is the "chief law officer" of the state, and it his duty to "see that the laws of the State are uniformly and adequately enforced." Cal. Const. art. 5, § 1. Defendant Bonta has "direct supervision over every district attorney" within the State. *Id.* If, at any point a district attorney of the State fails to enforce adequately "any law of the State," he must "prosecute any violations of the law." *Id.* Defendant Bonta is also expressly responsible for enforcing section 22949. Cal. Bus. & Prof. Code § 22949.80(e)(1) (any person who violates this section "is liable for a civil penalty … which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General or by any district attorney, county counsel, or city attorney in any court of competent jurisdiction.") Defendant Bonta maintains an office for service in Los Angeles, California, and is sued in his official capacity.

22.     The true names and capacities of Defendants named as DOEs 1 through 10, inclusive, are individual, corporate, associate or otherwise, and are unknown to Plaintiffs. They are, however, believed to be responsible in some way for Plaintiffs' injuries as alleged herein. Each Doe Defendant is, and at all times

mentioned here was, a partner, agent, principal, co-conspirator, or are otherwise vicariously or directly responsible for the acts or omissions of the other defendants or themselves. They are each sued individually and/or in their official capacity and are joined as party defendants. Plaintiffs thus sue each Doe Defendant under rules 15 and 21 of the Federal Rules of Civil Procedure. Plaintiffs are informed and believed that the Doe Defendants are all California residents. Plaintiffs will amend this complaint to show such true names and capacities of Doe Defendants when they have been ascertained.[1]

**FACTUAL ALLEGATIONS**

**[The First Amendment Rights to Free Speech, Association, & Assembly]**

23.    The First Amendment provides, in part, that "Congress shall make no law . . . abridging the freedom of speech," U.S. Const. amend. I. It is incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution and by 42 U.S.C. § 1983.

24.    Political and ideological speech—including speech concerning "politics, nationalism, religion, or other matters of opinion"—has long been considered the core of the First Amendment. *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

25.    The First Amendment does not tolerate the suppression of speech based on what some may label an unpopular viewpoint of the speaker. *John J. Hurley and S. Boston Allied War Vets. Council v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995). Indeed, "*above all else*, the First Amendment means that the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Mosley*, 408 U.S. at 95

---

[1] Section 22949.80(e)(1) authorizes, not only the Attorney General, but also all District Attorneys, County Counsel, and City Attorneys to initiate a civil action alleging a violation of the challenged law. To Plaintiffs' knowledge no such actor has yet filed such an action, but Plaintiffs will immediately amend or move to amend this complaint to show the true names and capacities of such actors should they do so.

COMPLAINT FOR DECLARATORY RELIEF & INJUNCTIVE RELIEF

1   (emphasis added); *see also Ashcroft*, 535 U.S. at 573.

2         26.    A content-based restriction that implicates political or ideological

3   speech must generally survive "strict scrutiny," where the government must show

4   that the law is narrowly tailored to achieve a compelling government interest. *See*

5   *Reed v. Town of Gilbert*, 576 U.S. 155 (2015); *see also Lorillard Tobacco Co. v.*

6   *Reilly*, 533 U.S. 525 (2001) (holding that tobacco marketing restrictions – even

7   those purposed to protecting minors -- must be the narrowest means of achieving an

8   asserted state interest); *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786 (2011)

9   (overturing California law banning sale or rental of "violent video games" to

10   minors); *see also Tracy Rifle & Pistol LLC v. Harris*, 339 F. Supp. 3d 1007, 1018

11   (E.D. Cal. 2018) (holding that a California law prohibiting the display of a

12   handgun, an imitation handgun, or a placard advertising the sale of a handgun in a

13   manner that is visible from the outside of a gun dealer's premises is

14   unconstitutional).

15         27.    Even purely commercial speech—speech that "does no more than

16   propose a commercial transaction" or relates solely to the economic interests of the

17   speaker and audience—receives First Amendment protection if it is not misleading

18   and concerns a lawful activity. *Cent. Hudson Gas & Elec. Corp. v. Public Serv.*

19   *Comm'n*, 447 U.S. 557 (1980).

20         28.    "An offer to sell firearms or ammunition" is constitutionally protected

21   commercial speech. *Nordyke v. Santa Clara*, 110 F.3d 707, 710 (9th Cir. 2009).

22         29.    Government restrictions on protected commercial speech are

23   constitutional *only* if they directly advance a substantial government interest and are

24   not broader than necessary to serve that interest. *Cent. Hudson*, 447 U.S. 557.[2]

25               _____

26   [2] Though this is currently the controlling test for so-called "commercial speech," modern case law is trending toward extending ***full*** First Amendment protection to all speech, including "commercial speech." *See Sorrell v. IMS Health,*

27   *Inc.*, 564 U.S. 552 (moving toward providing commercial speech the same level of heightened protection long accorded to political speech); *see also 44 Liquormart,*

28   *Inc. v. Rhode Island*, 517 U.S. 484, 523 (1996) (Thomas, J., concurring in part and concurring in judgment) ("I do not see a philosophical or historical basis for

30.     The First Amendment protects not only the right of free speech, but also "the right of the people peaceably to assemble." U.S. Const., amend. I. The right to assemble often merges with the right to free expression. For "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association." *NAACP v. Patterson*, 357 U.S. 449, 462 (1958). "Governmental action which may have the effect of curtailing the freedom to associate is subject to the *closest* scrutiny." *Id.* at 461-62.

**[The Fourteenth Amendment Right to Equal Protection Under the Law]**

31.     The Fourteenth Amendment to the United States Constitution, enforceable under 42 U.S.C. § 1983, provides that no state shall deny to any person within its jurisdiction the equal protection of the laws.

32.     Singling out speakers because of the content of their speech also violates their fundamental rights under the Equal Protection Clause. U.S. Const. amend. XIV.

33.     If unequal treatment occurs in the context of exercising a fundamental right, or the government is motivated by animus toward a disfavored group, courts apply heighted scrutiny. *See Loving v. Virginia*, 388 U.S. 1, 11 (1967); *see also Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985); *Romer v. Evans*, 517 U.S. 620 (1996). Indeed, "[b]ecause the right to engage in political expression is fundamental to our constitutional system, statutory classifications impinging upon that right must be narrowly tailored to serve a compelling governmental interest." *Austin v. Mich. Chamber of Commerce*, 494 U.S. 652, 666 (1990), *rev'd on other grounds*, *Citzs. United v. Fed. Elec. Comm'n*, 558 U.S. 310, 130 S. Ct. 876 (2010).

---

asserting that 'commercial' speech is of 'lower value' than 'noncommercial' speech. Indeed, some historical materials suggest to the contrary.").

**[California Laws Regarding Minors and Firearms]**

34.     California law restricts the possession, use, and acquisition of firearms by minors. *See* Cal. Penal Code §§ 29610-29750.

35.     While California's restrictions on firearm possession by minors may appear broad, they are greatly tempered by a non-exhaustive list of statutory exceptions authorizing a variety of lawful uses, as well as the constitutional right to keep and bear arms for lawful purposes, including the core lawful purpose of self-defense.

36.     Indeed, California Penal Code section 29750 makes clear that it was *not* the Legislature's intent "to expand or narrow the application of the then-existing statutory and judicial authority as to the rights of minors to be loaned or to possess live ammunition or a firearm for the purpose of self-defense or the defense of others." The law is quite clear that minors do indeed possess a right to possess and use firearms for self-defense and defense of others and that the laws are not meant to restrict or prohibit that right.

37.     That said, current California law purports to otherwise prohibit minors from possessing handguns and semiautomatic centerfire rifles (and beginning July 1, 2023, any type of firearm). Cal. Penal Code § 29610. Minors also cannot possess live ammunition. *Id.* § 29650.

38.     But the exceptions to these restrictions are numerous and non-exhaustive. Common to all of the exceptions is that the minor be engaged in, or be in direct transit to or from, "a lawful, recreational sport" which includes, "*but is not limited to*, competitive shooting, or agricultural, ranching, or hunting activity or hunting education, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves the use of a firearm." Cal. Penal Code § 29615 (exceptions for possession of firearms); *id.* § 29655 (exceptions for possession of live ammo).

39.     Some of the exceptions to California's restrictions on firearm possession by minors do not even require the presence of a parent or legal guardian. This can include situations where the minor only has the express written permission of their parent or legal guardian to possess a firearm. *See, e.g.*, Cal. Penal Code § 29615(c)-(e).

40.     California also prohibits any "person, corporation, or firm" from selling, loaning, or transferring a firearm to a minor, or selling a handgun to an individual under 21 years of age, *except in certain circumstances*. Cal. Penal Code § 27505.

41.     As applied to laws restricting the "loan" of a firearm to a minor, the applicable exceptions first look to the relationship of the person to the minor (i.e., whether they are the parent/legal guardian or someone else) and the type of firearm being loaned (e.g., whether it is a semiautomatic centerfire rifle, handgun, some other type of firearm). *See* Cal. Penal Code § 27505(b)(2)-(5). Notably, here again, the law makes clear the minor need not always be accompanied by a parent, legal guardian, or responsible adult. And all of the exceptions use the same "lawful, recreational sport" language as above.

**[California's Assembly Bill 2571 (Bauer-Kahan)]**

42.     Assembly member Rebecca Bauer-Kahan introduced AB 2571 on or about February 18, 2022. Assem. Bill 2571, 2021-2022 Reg. Sess. (Cal. 2022) (attached hereto as **Exhibit A**). The source of the bill was Governor Gavin Newsom. Sen. Rules Comm., Bill Analysis Re: AB 2571 (Bauer-Kahan), 2021-2022 Reg. Sess., at 1 (Cal. 2022).

43.     AB 2571 passed both houses of the California Legislature and was presented to Governor Gavin Newsom at or around 2:30 p.m. on June 30, 2022.

44.     Governor Newsom approved AB 2571 the very same day.

45.     Because AB 2571 was passed as an "urgency statute necessary for the immediate preservation of the public peace, health, or safety," AB 2571 took effect

1  immediately upon Governor Newsom's approval on June 30, 2022. Ex. A.

2      46.   AB 2571, which added section 22949.80 to the California Business &

3  Professions Code,[3] makes it unlawful for any "firearm industry member" to

4  "advertise, market, or arrange for placement of an advertising or marketing

5  communication concerning any firearm-related product in a manner that is

6  designed, intended, or reasonably appears to be attractive to minors." Cal. Bus. &

7  Prof. Code § 22949.80(a)(1).

8      47.   AB 2571 defines "minor" as a "natural person under 18 years of age

9  who resides in" California. *Id.* § 22949.80(c)(7).

10     48.   Though the phrase "reasonably appears to be attractive to minors" is

11 extraordinarily vague and open to broad interpretation based on one's subjective

12 opinion, AB 2571 provides some guidance for the courts "[i]n determining whether

13 marketing or advertising concerning a "firearm-related product" is attractive to

14 minors. *Id.* § 22949.80(a)(2).

15     49.   Specifically, under AB 2571, "a court shall consider the totality of the

16 circumstances." This includes, *but is not limited to*, considering whether the

17 marketing or advertising:

18
19      (A)   Uses caricatures that reasonably appear to be minors or
           cartoon characters to promote firearm-related products.

20      (B)   Offers brand name merchandise for minors, including, but
           not limited to, hats, t-shirts, or other clothing, or toys,
21          games, or stuffed animals, that promotes a firearm
           industry member or firearm-related product.

22      (C)   Offers firearm-related products in sizes, colors, or designs
           that are specifically designed to be used by, or appeal to,
23          minors.

24      (D)   Is part of a marketing or advertising campaign designed
           with the intent to appeal to minors.
25
26      (E)   Uses images or depictions of minors in advertising and
           marketing materials to depict the use of firearm-related
           products.

27
———————————————————
28      [3] Throughout this complaint, Plaintiffs refer to the challenged law, California
Business & Professions Code section 22949.80, as "AB 2571."

(F)  Is placed in a publication created for the purpose of reaching an audience that is predominately composed of minors and not intended for a more general audience composed of adults.

*Id.* § 22949.80(a)(2).

50.  AB 2571 defines "firearm industry members" in two ways:

(A)  A person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association engaged in the manufacture, distribution, importation, marketing, wholesale, or retail sale of firearm-related products.

(B)  A person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association formed for the express purpose of promoting, encouraging, or advocating for the purchase, use, or ownership of firearm-related products that does one of the following:

(i)  Advertises firearm-related products.

(ii)  Advertises events where firearm-related products are sold or used.

(iii)  Endorses specific firearm-related products.

(iv)  Sponsors or otherwise promotes events at which firearm-related products are sold or used.

*Id.* § 22949.80(c)(4).

51.  AB 2571 thus does not bar members of the (politically popular) book, movie, television, and video game industries from "advertising, marketing, or arranging for the placement of an advertising or marketing communication concerning any firearm-related product" even though the author of AB 2571 expressly identifies the "slick advertising" of such products in children's books, cartoons, and video games as sources of "shameless" advertising of "weapons" to children. Sen. Judiciary Comm., Bill Analysis Re: AB 2571 (Bauer-Kahan), 2021-2022 Reg. Sess., at 9 (Cal. 2022) (attached hereto as **Exhibit B**).

52.  AB 2571 does, however, apply to (politically unpopular) organizations formed to promote and preserve the Second Amendment rights to keep and bear arms, organizations that offer competitive and recreational shooting programs, businesses that offer shooting skills courses and/or firearm-safety training, and gun

15

COMPLAINT FOR DECLARATORY RELIEF & INJUNCTIVE RELIEF

show promoters, as well as firearms manufacturers and retailers. Cal. Bus. & Prof. Code § 22949.80(c)(4).

53.    AB 2571 defines "firearm-related product" as any "firearm, ammunition, reloaded ammunition, a firearm precursor part, a firearm component, or a firearm accessory that meets any of the following conditions":

(A)  The item is sold, made, or distributed in California.

(B)  The item is intended to be sold or distributed in California.

(C)  It is reasonably foreseeable that the item would be sold or possessed in California.

(D)  Marketing or advertising for the item is directed to residents of California.

*Id.* § 22949.80(c)(5).

54.    Under AB 2571, "marketing or advertising" means "in exchange for monetary compensation, to make a communication to one or more individuals, or to arrange for the dissemination to the public of a communication, about a *product or service the primary purpose of which is to encourage recipients of the communication to purchase or use the product or service*." *Id.* § 22949.80(c)(6) (emphasis added).

55.    AB 2571 is thus not limited to advertising or marketing communications that propose an economic transaction like the purchase or sale of "firearm-related products," including firearms, ammunition, reloaded ammunition, firearm precursor parts, firearm components, or firearm accessories.

56.    Rather, it applies to *any communication*, made in exchange for monetary compensation, "*concerning* a firearm-related product" that is "designed, intended or reasonably [appears] to be attractive to youth" if the communication is made by a "firearm industry member" for the purpose of encouraging "recipients of the communication to purchase or *use* the product or *service*." *Id.* § 22949.80(a)(1), (c)(6) (emphases added).

57.    AB 2571 thus restricts honest and lawful commercial speech

1    promoting lawful activities and services, including, but not limited to, traditional

2    advertisements for youth shooting competitions, youth recreational shooting and

3    outdoors events, firearm- and hunter-safety courses, shooting skills courses, and

4    youth organization shooting programs.

5         58.    AB 2571 also bans a broad category of pure speech, including, *but not*

6    *limited to:*

7              a.   All (or nearly all) aspects of youth hunting and
                    shooting magazines and the websites, social media,
8                   and other communications promoting those
                    magazines;
9

10             b.   Articles, cartoons (including political cartoons), and
                    photographs promoting or depicting the use of
11                  "firearm-related products" by minors in magazines
                    intended for a broader audience including adults;

12             c.   Videos, cartoons, coloring books, posters, social
                    media posts, and youth education campaigns by gun
13                  rights organizations and/or firearms trainers
                    encouraging youth to take up lawful recreational or
14                  competitive shooting activities or teaching about
                    firearm safety;
15
               d.   Branded merchandise, giveaways, or "swag"—
16                  including, but not limited to, t-shirts, hats, other
                    clothing, stickers, pins, buttons, toys, games, and
17                  stuffed animals—by a "firearm industry member"
                    that promotes a "firearm industry member,"
18                  *including nonprofit Second Amendment*
                    *organizations*, or contains pro-gun slogans and
19                  political messages;

20             e.   Any communication made by a "firearm industry
                    member" "in exchange for monetary compensation"
21                  that encourages the recipient of the communication
                    to exercise their Second Amendment rights to
22                  purchase or use firearms or other firearms-related
                    products generally, like coaching or speaking with
23                  youth about taking firearms training or getting
                    involved with a youth shooting team;

24             f.   Youth firearm- and hunter-safety courses and youth
                    shooting skills courses, as well as recommendations
25                  or endorsements by firearms trainers concerning the
                    most appropriate firearms, ammunition, and
26                  accessories for young and beginner shooters; and

27             g.   Signage, flyers, posters, discussions, branded
                    merchandise and giveaways, and/or other
28                  communications generally depicting minors enjoying

17

COMPLAINT FOR DECLARATORY RELIEF & INJUNCTIVE RELIEF

or otherwise encouraging minors to enjoy their Second Amendment right to possess and use lawful firearms for lawful purposes at youth recreational and competitive shooting events, as well as communications promoting such events;

h.   Use of Daisy® BB guns, like the famous Daisy® Red Ryder, and the Daisy® inflatable BB Gun Range and similar products by gun-rights organizations at events to introduce youth to firearms—usually for the very first time—in a safe and controlled environment in order to encourage youth to take up the shooting sports and/or become youth members of the sponsoring organization; and

i.   Communications soliciting funds for scholarships and grants for youth shooters and youth shooting teams.

59.    Any person who violates AB 2571 "shall be liable for a civil penalty not to exceed twenty-five thousand dollars ($25,000) for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General or by any district attorney, county counsel, or city attorney in any court of competent jurisdiction." *Id.* § 22949.80(e)(1).

60.    AB 2571 mandates that courts "shall impose a civil penalty … for each violation" of the law, instructing courts to consider any number of relevant circumstances when assessing the appropriate fine, including, but not limited to:

the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth.

*Id.* § 22949.80(e)(2).

61.    AB 2571 also mandates that courts "shall also order injunctive relief, including a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for the conduct, as the court deems necessary to prevent the harm described in this section. *Id.* § 22949.80(e)(4).

62.    AB 2571 also authorizes any "person harmed by a violation of this section" to "commence a civil action to recover their actual damages." *Id.* §

1  22949.80(e)(3).

2       63.    AB 2571 also includes a fee-shifting provision, mandating that, upon a

3  motion, courts "shall award reasonable attorney's fees and costs, including expert

4  witness fees and other litigation expenses, to a plaintiff who is a prevailing party in

5  an action brought pursuant to" AB 2571. *Id.* § 22949.80(e)(5).

6       64.    AB 2571 does not, however, authorize an award of attorney's fees and

7  costs, including expert witness fees and other litigation expenses, to a defendant

8  who is a prevailing party in an action brought pursuant to AB 2571—even if such

9  an action is frivolous or without merit. *Id.*

10              **[The Impact of AB 2571 on Plaintiffs' Protected Conduct]**

11       65.    Plaintiffs regularly "advertise, market, or arrange for placement of an

12  advertising or marketing communication concerning … firearm-related product[s]

13  in a manner that is designed, intended, or [might] reasonably appear[] to be

14  attractive to minors."

15       66.    Specifically, all Plaintiffs engage in the planning, advertising,

16  marketing, promoting, sponsoring, hosting, and/or facilitating of lawful events,

17  competitions, trainings, educational programs, safety courses, and/or gun shows,

18  specifically for youth or where youth are extremely likely to be in attendance and

19  where youth lawfully use, handle, observe, and/or otherwise possess firearms,

20  ammunition, and/or firearm parts.

21       67.    These programs regularly involve signage, flyers, discussions, branded

22  merchandise and giveaways, and/or other communications depicting minors

23  enjoying or otherwise encouraging minors to enjoy their Second Amendment right

24  to possess and use lawful firearms for lawful purposes, including hunting,

25  recreational and competitive shooting, and firearm safety programs.

26       68.    Plaintiffs also widely distribute printed and electronic communications

27  promoting these events and programs. These communications regularly include

28  images and/or depictions of minors handling or "using firearm-related products."

69.     These programs also sometimes include vendors or exhibitors, like Plaintiffs CRPA and SAF, who set up a booth or table to, among other things, promote membership or financial support of their organization; sell or distribute branded merchandise or merchandise with pro-gun slogans and other political messages; disseminate books, pamphlets, coloring books, flyers, and other communications promoting the use of firearms and related products generally, the Second Amendment, firearm safety, and participating in recreational or competitive shooting programs; or sell or advertise for sale firearms and related products and services.

70.     Plaintiff Junior Sports Magazines, the publisher of the online and print magazine *Junior Shooters*, publishes and distributes "a publication created for the purpose of reaching an audience that is predominately composed of minors and not intended for a more general audience composed of adults." *Junior Shooters* regularly includes and, but for the enforcement of AB 2571, would continue to include articles and images or depictions of the use of "firearm-related products" by minors, as well as recommendations and endorsements of specific "firearm-related products" appropriate for young and beginner recreational and competitive shooters. AB 2571 prohibits this otherwise protected speech.

71.     Plaintiff Junior Sports Magazine's publications also include communications and articles promoting its partners' and advertisers' youth shooting competitions, youth recreational shooting and outdoors events, youth shooting organizations and clubs, firearm-safety courses, and shooting skills courses. AB 2571 prohibits this otherwise protected speech.

72.     Plaintiff Junior Sports Magazine's publications also include traditional advertisements for "firearm-related products." AB 2571 prohibits this otherwise protected commercial speech.

73.     To be clear, Plaintiff Junior Sports Magazine's traditional advertising of "firearm-related products" is not designed or intended to encourage minors to

unlawfully buy firearms themselves. Rather, Plaintiffs' communications might "reasonably appear[] to be attractive to minors" because they are attractive to everyone—including adults—and/or they are intended for an audience of minors who may want to ask their parents to lawfully purchase "firearm-related products" for the minor's lawful use.

74. Plaintiff Brown, as a firearms trainer, regularly engage in the planning, advertising, marketing, and facilitation of shooting-skills courses and firearm-safety courses specifically for youth or where youth are extremely likely to be in attendance and where youth lawfully use, handle, observe, and/or otherwise possess firearms, ammunition, and/or firearm parts.

75. Plaintiff Brown's training programs regularly involve communications depicting minors enjoying or otherwise encouraging minors to enjoy their Second Amendment right to possess and use lawful firearms for lawful purposes, including hunting, recreational and competitive shooting, and firearm safety programs. AB 2571 prohibits this otherwise protected speech.

76. Plaintiff Brown's firearm training programs might also include recommendations on which "firearm-related products" are most suitable for young and/or beginner shooters in terms of ease of use, safety features, size, and/or type of use. AB 2571 prohibits this otherwise protected speech.

77. Plaintiffs CYSSA, RCYCCS, CRPA, and CRPA Foundation regularly engage in the planning, advertising, marketing, promoting, sponsoring, hosting, and/or facilitating of youth recreational events and shooting competitions specifically for youth or where youth are extremely likely to be in attendance and where youth lawfully use, handle, observe, and/or otherwise possess firearms, ammunition, and/or firearm parts.

78. Plaintiffs CYSSA, RCYCCS, CRPA, and CRPAF's youth programs regularly involve signage, flyers, discussions, branded merchandise and giveaways, and/or other communications depicting minors enjoying or otherwise encouraging

minors to enjoy their Second Amendment right to possess and use lawful firearms for lawful purposes, including hunting, recreational and competitive shooting, and firearm safety programs. AB 2571 prohibits this otherwise protected speech.

79.     These Plaintiffs also widely distribute printed and electronic communications promoting these events and programs. These communications regularly include images and/or depictions of minors handling or "using firearm-related products." AB 2571 prohibits this otherwise protected speech.

80.     These programs also sometimes include vendors or exhibitors, like Plaintiffs CRPA, who set up a booth or table to, among other things, promote membership or financial support of their organization; sell or distribute branded merchandise or merchandise with pro-gun slogans and other political messages; disseminate books, pamphlets, coloring and activity books, flyers, and other communications promoting the use of firearms and related products generally, the Second Amendment, firearm safety, and participating in recreational or competitive shooting programs; sell or advertise for sale firearms and related products and services. AB 2571 prohibits this otherwise protected speech.

81.     Plaintiff CYSSA, a non-profit organization "formed for the express purpose of promoting, encouraging, or advocating for the purchase, use, or ownership of firearm-related products," offers participation in its youth clay shooting program, the CYSSA Clay Target Program, a team-based youth development program for boys and girls, grades 12 and under.

82.     Through this program, Plaintiff CYSSA regularly engages with minors through advertising, marketing, and other communications promoting youth competitive shooting events and practices where "firearm-related products" are used and providing recommendations on which "firearm-related products" are most suitable its young shooters' competitive and recreational shooting needs. AB 2571 prohibits this otherwise protected speech.

83.     Plaintiff CYSSA also widely distributes printed and electronic

communications promoting its youth competitive events and practices. These communications regularly include images and/or depictions of minors handling or "using firearm-related products." AB 2571 prohibits this otherwise protected speech.

84. Plaintiff RCYCSS, a non-profit organization "formed for the express purpose of promoting, encouraging, or advocating for the purchase, use, or ownership of firearm-related products," fields its own youth shooting team, the Redlands Clay Crushers Junior Trap Team, which consists of youth shooters ranging from age 10-18.

85. Through this program, Plaintiff RCYCSS regularly engages with minors through advertising, marketing, and other communications promoting youth competitive shooting events and practices events where "firearm-related products" are used and providing recommendations on which "firearm-related products" are most suitable its young shooters' competitive and recreational shooting needs. AB 2571 prohibits this otherwise protected speech.

86. Plaintiff RCYCSS also widely distributes printed and electronic communications promoting its youth competitive events and practices. These communications regularly include images and/or depictions of minors handling or "using firearm-related products." AB 2571 prohibits this otherwise protected speech.

87. Plaintiff CRPA, a non-profit member organization "formed for the express purpose of promoting, encouraging, or advocating for the purchase, use, or ownership of firearm-related products," not only promotes, sponsors, and hosts firearms programs for youth like those described above, it is also rolling out paid memberships for youth and uses CRPA-branded merchandise and giveaways (or "swag"), including but not limited to hats, t-shirts, stuffed animals, coloring and activity books, stickers, pins, and buttons, to promote the organization and solicit memberships and/or financial support, as well as to spread pro-gun messages and

1    slogans. AB 2571 prohibits this otherwise protected speech.

2         88.    AB 2571 *does not*, however, prohibit anti-gun organizations not

3    "formed for the express purpose of promoting, encouraging, or advocating for the

4    purchase, use, or ownership of firearm-related products," like Moms Demand

5    Action for Gun Sense in America, Gun Free Kids, and Everytown for Gun Safety,

6    from offering and soliciting youth memberships or using branded merchandise, like

7    hats, t-shirts, stuffed animals, coloring and activity books, stickers, pins, and

8    buttons, bearing anti-gun messages and slogans—or even images of *unlawful*

9    firearms—to spread their political messages, promote their organizations, or solicit

10   memberships and/or financial support.

11        89.    Plaintiff CRPA also publishes and distributes various publications,

12   including magazines, that have included and, but for the enforcement of AB 2571,

13   would continue to include cartoons (including political cartoons), as well as articles

14   and images or depictions of the use of "firearm-related products" by minors. AB

15   2571 prohibits this otherwise protected speech.

16        90.    Plaintiff CRPA's publications also include advertisements promoting

17   CRPA's and CRPA partners' youth shooting competitions, youth recreational

18   shooting and outdoors events, firearm- and hunter-safety courses, and shooting

19   skills courses. AB 2571 prohibits this otherwise protected speech.

20        91.    Plaintiff CRPA's publications also include traditional advertisements

21   for "firearm-related products." AB 2571 prohibits this otherwise protected

22   commercial speech.

23        92.    To be clear, Plaintiff CRPA's traditional advertising of "firearm-

24   related products" is not designed or intended to encourage minors to unlawfully *buy*

25   firearms themselves. Rather, Plaintiffs' communications might "reasonably

26   appear[] to be attractive to minors" because they are attractive to *everyone*—

27   including adults—and/or they are intended for an audience of minors who may

28   want to ask their parents to lawfully purchase "firearm-related products" for the

COMPLAINT FOR DECLARATORY RELIEF & INJUNCTIVE RELIEF

1    minor's lawful use.

2        93.    Plaintiff CRPAF, a 501(c)(3) non-profit organization "formed for the

3    express purpose of promoting, encouraging, or advocating for the purchase, use, or

4    ownership of firearm-related products," not only promotes, sponsors, and hosts

5    firearms programs for youth like those described above, it also solicits funds for

6    and provides scholarships and grants for individual youth shooters and youth

7    shooting teams, publishes brochures and articles about youth shooting teams, and

8    (in response to countless requests from CRPA and CRPAF supporters for such

9    content) is launching an activity book about the shooting sports for children. AB

10   2571 prohibits this otherwise protected speech.

11       94.    Plaintiff GOC, a non-profit member organization "formed for the

12   express purpose of promoting, encouraging, or advocating for the purchase, use, or

13   ownership of firearm-related products," regularly supports youth shooting teams

14   and individual talented young shooters through sponsorships and other support.

15   Through this work, Plaintiff GOC regularly engages with minors through

16   advertisements, sponsorships, and other communications promoting events where

17   "firearm-related products" are used. AB 2571 prohibits this otherwise protected

18   speech.

19       95.    Plaintiff SAF, a non-profit member organization "formed for the

20   express purpose of promoting, encouraging, or advocating for the purchase, use, or

21   ownership of firearm-related products," sponsors and supports an initiative called

22   2AGaming, an outreach program with the goal of growing the Second Amendment

23   Community. 2AGaming functions by reaching out to people who play video games,

24   especially people who play games that focus on guns. This outreach necessarily

25   includes minors and young adults who play such games. Part of the purpose of

26   2AGaming is to persuade gamers, whose experience with firearms may—at first—

27   be limited to a digital experience, to seek out friends and shooting clubs to obtain

28   the necessary training and make that first trip to a range for a live fire experience.

Plaintiff SAF hopes to educate the younger generation on safety and where their gun rights come from; and also seek to shift the political culture in the United States from one that demonizes and fears guns, to an attitude of respect and protection for our nation's Second Amendment heritage.[4]

96.    Plaintiff SAF also produces SAF-branded merchandise or "swag" that it distributes to promote itself, to increase paid memberships, encourage participation in shooting sports, and spread its Second Amendment message. The ban on merchandizing codified in AB 2571 would include a ban on SAF branded t-shirts, hats, other clothing, toys, games, pins, stickers, buttons, etc. that "promote" a "firearm industry member."

97.    As a result of the adoption and immediate enforcement of AB 2571, Plaintiffs have already begun to curtail these activities, as well as all manner of speech that could arguably fall under AB 2571's ban on speech—fearing the draconian penalties that attach to each incident of marketing barred by AB 2571, including fines up to $25,000 *per copy or reproduction of the communication* and an award of actual damages and attorney's fees and costs to any prevailing plaintiff who brings an action alleging a violation of AB 2571.

98.    AB 2571 thus has the practical effect of wiping out a vital outlet for the free exchange of ideas related to the lawful possession and use of lawful "firearm-related products" and for the promotion and preservation of the "gun culture" in California through the passing down of pro-gun attitudes and traditions to future generations.

99.    Both on its face and as evidenced by the legislative history of AB 2571, this appears be the very purpose and intent of the law.

100.   Indeed, the Senate Judiciary Committee's June 10, 2022, Bill Analysis

---

[4] Information about 2AGaming can be found at https://www.saf.org/gaming/. The program has received favorable press coverage at https://www.breitbart.com/politics/2020/01/30/2nd-amendment-gaming-spreading-gun-rights-message-via-video-games/.

of AB 2571, quotes heavily from the Violence Policy Center's ("VPC") 2016

report, *Start Them Young*, which disparagingly "outlines the *problem*" of the "gun

industry's" attempts to "attract future legal gun owners" thusly:

> The gun industry has long understood that it faces a slow-motion demographic collapse. With the industry's customer base growing older, household gun ownership in America has steadily declined. As its primary market of white males ages and dies off, the firearms industry has set its sights on America's children. Much like the tobacco industry's search for replacement smokers, the gun industry is seeking replacement shooters to purchase its deadly products. Firearms companies have teamed up with "corporate partners" like the National Rifle Association of America, the gun industry's trade association the National Shooting Sports Foundation (NSSF), and online publications such as Junior Shooters in an industry-wide effort to market firearms to kids. They do this by promoting websites and magazines targeted at children, designing "kid-friendly" guns to appeal to the youth market, and even working to create the equivalent of "'reality' video" games to encourage gun use from an early age.
>
> **The industry's focus on recruiting children into the gun culture has been acknowledged since at least the 1990s.**

Ex. B at 7-8 (quoting Josh Sugarman, Violence Policy Center, *"Start Them Young"*

*How the Firearms Industry and Gun Lobby Are Targeting Your Children* (Feb.

2016), *available at* https://www.vpc.org/studies/startthemyoung.pdf (attached

hereto as **Exhibit C**)) (emphasis added).

      101.   The Senate Judiciary Committee's analysis continues, quoting a New

York Times article lauding the VPC report:

> The gun industry markets a variety of products explicitly to children, a new report shows, from armed stuffed animals to lighter versions of rifles. *And some see kids as a vital group of future gun buyers who need to be brought into the fold at a young age.*
>
> The report, called "Start Them Young" and issued on Thursday by the Violence Policy Center, lists a variety of firearms meant at least partly for children. It mentions the Crickett rifle, a gun made for children by the company Keystone Sporting Arms. Keystone's website and some of its merchandise bear the image of "Davey Crickett," a gun-wielding cartoon insect. The company sells Davey

Crickett hats, dog tags and pins, as well as a Davey Crickett Beanie Baby, listed as "not for children under three years of age."

Keystone's website also sells books featuring "Little Jake," a boy who uses his gun to bring down a bear and save an African village from a marauding elephant. The publisher of the books says Little Jake is actually older than he looks: "Little Jake is a fictional character in his late teens. While small in stature so that young children may relate to him, Little Jake is old enough to hunt and fish safely on his own without adult supervision."

Ex. B at 8-9 (quoting Anna North, *Marketing Guns to Children*, N.Y. Times (Feb. 19, 2022), *available at* https://archive.nytimes.com/takingnote.blogs.nytimes.com/2016/02/19/marketing-guns-to-children/ (attached hereto as **Exhibit D**)) (emphasis added).

102.    The New York Times article explains that "the [VPC] report makes the case that the gun industry and some gun-rights advocates see putting guns in the hands of children as a crucial recruitment move." It goes on to quote the editor-in-chief of Plaintiff Junior Sports Magazines' *Junior Shooters*, who wrote in 2012, that:

Each person who is introduced to the shooting sports and has a positive experience *is another vote in favor of keeping our American heritage and freedom alive*. They may not be old enough to vote now, but they will be in the future. And think about how many lives they will come in contact with that they can impact!

Ex. D (emphasis added). It is thus clear that the Legislature understood the importance of engaging youth in the shooting sports for the preservation of the "gun culture" and, in fact, intended AB 2571 to serve as a barrier to that constitutionally protected conduct.

103.    Further evidencing the intent of AB 2571 are the bill's author's own words:

This epidemic of deadly violence is fueled by an industry that *encourages children to hold a gun as soon as they can walk*.

COMPLAINT FOR DECLARATORY RELIEF & INJUNCTIVE RELIEF

1
2
3
4
5
6
7

> Gun manufacturers view children as their next generation of ***advocates*** and customers, and target them with slick advertising – even children's books. The advertising for these weapons is shameless. Children in California are not allowed to buy or own a gun, yet they are advertised to across all forms of media with cartoons, video games, and social media.
>
> ….
>
> Guns are not a toy. Guns are a tool of death. Taking away this ***tool of violent indoctrination*** from the gun industry is a vital step forward to protect California's children.

8     Ex. B at 9 (emphases added).

9          104.   Setting aside the obvious hyperbole and the animus evident from the

10   author's words, it is clear that the intent of AB 2571 was not simply to keep

11   unlawful firearms out of the hands of minors and to prevent unlawful use of

12   firearms, but to prevent "firearm industry members," which by the very terms of

13   AB 2571 include pro-Second Amendment organizations and youth shooting

14   programs, from "indoctrinating" youth to become "advocates" for the Second

15   Amendment and "gun culture" in America.

16         105.   Then, on July 1, 2022, after signing AB 2571 into law, Governor

17   Newsom recorded and posted to his official Twitter feed a message to "the

18   members of the United States Supreme Court" and to "right-wing Republicans

19   across this country," rhetorically asking them:

20
21
22
23
24
25
26
27
28

> *Do you have no common decency*, respect, or even common understanding that kids should not have one of these [referring to a semi-automatic rifle in his hands]? This is an AR-15. This is a weapon of war. A weapon of mass destruction. But you're out there promoting and allowing marketing of these weapons of war to our kids. Supporting and celebrating gun manufacturers who put up advertisements like the ones you see behind me. These are cartoon skulls will pacifiers in them. His and her pacifiers. Cartoon skulls of children with pacifiers. *That is what the right wing is marketing and promoting* at behest of the gun industry in this country. The good news, if there's any, is that this ends at least today in California. I just signed a bill, so the gun industry *and those that are backing this industry* can no longer market to our children. *The idea that we even have to do this is ridiculous.* This law, by the way, goes into effect

1
2

> immediately. Because *decent human beings, people with common sense, know that we should not be allowing this kind of disgusting marketing to go on another day.*

3   Rosalio Ahumada, *Gavin Newsom Signs New Gun Safety Laws Targeting Illegal*

4   *Weapons, Marketing to Kids*, Sac. Bee (July 1, 2022), *available at*

5   https://www.sacbee.com/news/local/crime/article263108183.html (the entire video

6   of Governor Newsom's remarks is available on the Sacramento Bee website, as

7   well as the official Twitter page of the Office of the Governor of California).

8        106.   In his recorded statement, Governor Newsom reproduced and

9   displayed advertising from WEE1 Tactical of their JR-15, *id.*—the very advertising

10   that seemingly sparked California's concern over firearm marketing that has been

11   prevalent in America for generations, *see* Ex. B at 8. But because Governor

12   Newsom is not a "firearm industry member" whose primary purpose is to

13   encourage his audience to "purchase or use the product," but rather to disparage

14   those whose viewpoints do not align with his and those who *would* use the product,

15   Governor Newsom is free to reproduce and display the very same images WEE1

16   Tactical is now barred from distributing.

17   **FIRST CAUSE OF ACTION**
**Violation of Right to Free Speech Under U.S. Const., amend. I**
18   **Political & Ideological Speech**
**42 U.S.C. § 1983**
19   (By All Plaintiffs Against All Defendants)

20        107.   Plaintiffs incorporate by reference paragraphs 1 through 106 of this

21   complaint as though fully set forth herein in their entirety.

22        108.   Defendants, acting under color of state law, are enforcing AB 2571,

23   which deprives Plaintiffs of free speech rights secured by the First Amendment of

24   the United States Constitution in violation of 42 U.S.C. § 1983.

25        109.   On its face and as applied, AB 2571 is an unconstitutional abridgement

26   of Plaintiffs' right to free speech under the First Amendment because it casts such a

27   wide net that it directly prohibits Plaintiffs' pure speech related to the lawful

28   possession and use of lawful firearms without any compelling governmental

COMPLAINT FOR DECLARATORY RELIEF & INJUNCTIVE RELIEF

1    interest.

2           110.   On its face and as evidenced by the legislative history of AB 2571, it is

3    clear that the law's purpose and intention is to thwart the promotion and

4    preservation of the "gun culture" in California through the passing down of pro-gun

5    attitudes and traditions to future generations. AB 2571 is thus a "presumptively

6    unlawful" content-based and viewpoint-discriminatory restriction of speech.

7           111.   On its face, AB 2571 does not apply to similar or opposing speech

8    made by businesses, organizations, or people who are not considered "firearm

9    industry members." AB 2571 is thus a "presumptively unlawful" content-,

10   viewpoint-, and speaker-based restriction on speech.

11          112.   Defendants have no compelling (or even legitimate) governmental

12   interest in banning Plaintiffs' pure speech concerning "firearm-related products."

13   Indeed, the State's purported interests in "ensuring that minors do not possess these

14   dangerous weapons" and "protecting its citizens … from gun violence" are betrayed

15   by the fact that California does not directly ban the possession of many "firearm-

16   related products" by minors for lawful purposes under a broad range of

17   circumstances.

18          113.   Further, AB 2571 is neither narrowly tailored to nor the least

19   restrictive means of achieving the state's dubious interests. Indeed, it sweeps up *all*

20   communications "*concerning* firearm-related products" made by "firearm industry

21   members" "in exchange for monetary compensation" that are "designed, intended,

22   or reasonably appear[] to be attractive minors"—even communications concerning

23   lawful (and constitutionally protected) products and services and communications

24   that are equally attractive to adults who have a right to obtain information about

25   such products and services.

26          114.   AB 2571 is unconstitutionally overbroad because, in an effort to

27   restrict commercial advertising promoting the sale of "firearm-related products" to

28   minors, the law seriously and deliberately burdens a vast amount of speech that

1   does not constitute such a communication and is fully protected by the First
2   Amendment.

3       115.   Even if AB 2571 was not written with the intention of barring events,
4   competitions, firearm safety programs, or shooting skills courses for youth (and the
5   advertising, marketing, and other communications necessarily attendant to these
6   programs) or to prevent firearms-related organizations from soliciting members
7   through marketing to and providing memberships for minors, that is its effect.
8   Indeed, AB 2571 is so hopelessly vague and confusing that Plaintiffs have already
9   begun to curtail all manner of speech that could arguably fall under AB 2571's
10   overly broad ban. This "chilling" of speech also offends the First Amendment.

11      116.   As a direct and proximate result of Defendants' conduct, Plaintiffs
12   have suffered irreparable harm, including the violation of their constitutional right
13   to free speech, entitling them to declaratory and injunctive relief. Absent
14   intervention by this Court, through declaratory and injunctive relief, Plaintiffs will
15   continue to suffer this irreparable harm.

16

17                     **SECOND CAUSE OF ACTION**
        **Violation of Right to Commercial Speech Under U.S. Const., amend. I**
18                        **42 U.S.C. § 1983**
                    (By All Plaintiffs Against All Defendants)

19      117.   Plaintiffs incorporate by reference paragraphs 1 through 116 of this
20   complaint as though fully set forth herein in their entirety.

21      118.   Defendants, acting under color of state law, are enforcing AB 2571,
22   which deprives Plaintiffs of commercial speech rights secured by the First
23   Amendment of the United States Constitution in violation of 42 U.S.C. § 1983.

24      119.   On its face and as applied, AB 2571 is an unconstitutional abridgement
25   of Plaintiffs' right to free speech under the First Amendment because it casts such a
26   wide net that it directly prohibits Plaintiffs' protected commercial speech without
27   any substantial governmental interest and is far more extensive than necessary to
28   serve any purported governmental interest.

120.   AB 2571 ensnares *all* advertising, marketing, and placement of advertising or marketing concerning "firearm-related products" by "firearm industry members" that might be deemed "attractive" to minors—even those that propose the sale of lawful firearms for lawful purposes. It does not merely target commercial speech regarding unlawful activity or products.

121.   Defendants have no substantial (or even legitimate) governmental interest in banning non-misleading commercial speech concerning the lawful sale, possession, and use of "firearm-related products." Indeed, the State's purported interests in "ensuring that minors do not possess these dangerous weapons" and "protecting its citizens … from gun violence" are betrayed by the fact that California does not ban the possession of many "firearm-related products" by minors for lawful purposes under a broad range of circumstances.

122.   Even if the state's purported interests were substantial, neither interest is directly served by the ban.

123.   Even if the state's purported interests were substantial, AB 2571 is far more extensive than necessary to achieve the state's interests.  Indeed, it sweeps up *all* communications concerning "firearm-related products" made by "firearm industry members" "in exchange for monetary compensation" that are "designed, intended, or reasonably appear[] to be attractive minors"—even communications concerning lawful (and constitutionally protected) products and services and communications that are equally attractive to adults who have a right to obtain information about such products and services.

124.   As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm, including the violation of their constitutional right to free speech, entitling them to declaratory and injunctive relief. Absent intervention by this Court, through declaratory and injunctive relief, Plaintiffs will continue to suffer this irreparable harm.

### THIRD CAUSE OF ACTION
### Violation of Rights to Association & Assembly Under U.S. Const., amend. I
### 42 U.S.C. § 1983
(By All Plaintiffs Against All Defendants)

125.   Plaintiffs incorporate by reference paragraphs 1 through 124 of this complaint as though fully set forth herein in their entirety.

126.   Defendants, acting under color of state law, are enforcing AB 2571, which deprives Plaintiffs of free association and assembly rights secured by the First Amendment of the United States Constitution in violation of 42 U.S.C. § 1983.

127.   On its face and as applied, AB 2571 is an unconstitutional abridgement of Plaintiffs' rights to free association and assembly under the First Amendment because it casts such a wide net that it directly prohibits all Plaintiffs from advertising, marketing, or arranging for the placement of advertising or marketing concerning their various firearm-related programs, where Plaintiffs peacefully and lawfully assemble and associate with each other and members of the public, including youth.

128.   On its face and as applied, AB 2571 is an unconstitutional abridgement of Plaintiff CRPA's rights to free association and assembly under the First Amendment because it casts such a wide net that it directly prohibits Plaintiff CRPA from advertising, marketing, or arranging for the placement of advertising or marketing concerning its youth memberships. It also bars Plaintiff CRPA from distributing CRPA-branded merchandise and giveaways to promote the membership in and financial support of the organization.

129.   Defendants have no compelling (or even legitimate) interest in prohibiting "firearm industry members," like the Plaintiffs, from advertising, marketing, or arranging for the placement of any advertising or marketing communication concerning their firearm-related youth programming and services and the "firearm-related products" used, sold, endorsed, recommended, or advertised at such events—effectively putting an end to such events and, by

34

extension, the rights of Plaintiffs to associate and assemble at them.

130.   Defendants have no compelling (or even legitimate) governmental interest in prohibiting Plaintiff CRPA, a "firearm industry member," from advertising, marketing, or arranging for the placement of any advertising or marketing communication concerning its youth memberships and from distributing CRPA-branded merchandise to promote the membership in and financial support of the organization.

131.   Even if AB 2571 served some sufficient government purpose, it is neither narrowly tailored nor the least restrictive means to serve that end.

132.   As a direct and proximate result of Defendants' conduct, all Plaintiffs have suffered irreparable harm, including the violation of their constitutional right to free association and assembly, entitling them to declaratory and injunctive relief. Absent intervention by this Court, through declaratory and injunctive relief, Plaintiffs will continue to suffer this irreparable harm.

### FOURTH CAUSE OF ACTION
**Violation of the Right to Equal Protection Under U.S. Const., amend. XIV**
**42 U.S.C. § 1983**

(By All Plaintiffs Against All Defendants)

133.   Plaintiffs incorporate by reference paragraphs 1 through 132 of this complaint as if fully set forth herein in their entirety.

134.   Defendants, acting under color of state law, are enforcing AB 2571, which deprives Plaintiffs of right to equal protection under the law secured by the Fourteenth Amendment of the United States Constitution in violation of 42 U.S.C. § 1983.

135.   On its face and as applied, AB 2571 is an unconstitutional abridgement of Plaintiffs' right to equal protection under the law guaranteed by the Fourteenth Amendment because it is a viewpoint-discriminatory and/or animus-based restriction on Plaintiffs' protected political and ideological speech that serves no compelling governmental interest.

136.   On its face and as evidenced by the legislative history of AB 2571, it is clear that the law's purpose and intention is to thwart the promotion and preservation of the "gun culture" in California through the passing down of pro-gun attitudes and traditions to future generations.

137.   On its face, AB 2571 does not apply to similar or opposing speech made by businesses, organizations, or people who are not considered "firearm industry members."

138.   Defendants have no compelling (or even legitimate) governmental interest in banning Plaintiffs' pure speech concerning "firearm-related products." Indeed, the State's purported interests in "ensuring that minors do not possess these dangerous weapons" and "protecting its citizens … from gun violence" are betrayed by the fact that California does not directly ban the possession of many "firearm-related products" by minors for lawful purposes under a broad range of circumstances.

139.   Nor is there any legitimate interest in singling out politically disfavored "firearm industry members" under AB 2571's ban on protected speech—while leaving members of other industries, like the popular entertainment and video game industries, as well as anti-gun organizations free to engage in similar or identical speech. Rather, AB 2571 is steeped in and motivated by animus for "gun culture" and those who participate in it.

140.   Further, AB 2571 is not narrowly tailored to achieving the state's dubious interests.

141.   As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm, including the violation of their constitutional right to equal protection under the law, entitling them to declaratory and injunctive relief. Absent intervention by this Court, through declaratory and injunctive relief, Plaintiffs will continue to suffer this irreparable harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for:

1.      A declaration that AB 2571, codified at California Business & Professions Code section 22949.80, violates the Plaintiffs' free speech rights under the First Amendment to the United States Constitution, on its face and as applied to the Plaintiffs;

2.      A declaration that AB 2571, codified at California Business & Professions Code section 22949.80, violates the Plaintiffs' commercial speech rights under the First Amendment to the United States Constitution, on its face and as applied the Plaintiffs;

3.      A declaration that AB 2571, codified at California Business & Professions Code section 22949.80, violates the rights of assembly and association of the Plaintiffs under the First Amendment to the United States Constitution, on its face and as applied to the Plaintiffs;

4.      A declaration that AB 893, codified at California Business & Professions Code section 22949.80, violates the rights of the Plaintiffs to equal protection under the law per the Fourteenth Amendment to the United States Constitution, on its face and as applied to the Plaintiffs;

5.      A preliminary and permanent injunction prohibiting all Defendants, their employees, agents, successors in office, and all District Attorneys, County Counsel, and City Attorneys holding office in the state of California, as well as their successors in office, from enforcing AB 2571, codified at Business & Professions Code section 22949.80;

6.      An award of costs and expenses, including attorney's fees, pursuant to 42 U.S.C. § 1988 or other applicable state or federal law; and

/ / /

/ / /

COMPLAINT FOR DECLARATORY RELIEF & INJUNCTIVE RELIEF

7.   Any such other relief the Court deems just and equitable.


Dated:  July 8, 2022                    **MICHEL & ASSOCIATES, P.C.**

                                        *s/ Anna M. Barvir*
                                        Anna M. Barvir
                                        Counsel for Plaintiffs Attorneys for Plaintiffs
                                        Junior Sports Magazines, Inc., Raymond
                                        Brown, California Youth Shooting Sports
                                        Association, Inc., Redlands California Youth
                                        Clay Shooting Sports, Inc., California Rifle &
                                        Pistol Association, Incorporated, The CRPA
                                        Foundation, and Gun Owners of California,
                                        Inc.

Dated:  July 8, 2022                    **LAW OFFICES OF DONALD KILMER, APC**

                                        *s/ Donald Kilmer*
                                        Donald Kilmer
                                        Counsel for Plaintiff Second Amendment
                                        Foundation

COMPLAINT FOR DECLARATORY RELIEF & INJUNCTIVE RELIEF