# EXHIBIT B

**SENATE JUDICIARY COMMITTEE**
**Senator Thomas Umberg, Chair**
**2021-2022  Regular  Session**

AB 2571 (Bauer-Kahan)
Version: April 27, 2022
Hearing Date: June 14, 2022
Fiscal: Yes
Urgency: No
CK

## SUBJECT

Firearms:  advertising to minors

## DIGEST

This bill prohibits firearm industry members from advertising or marketing, as defined, firearm-related products to minors. The bill restricts the use of minors' personal information in connection with marketing or advertising firearm-related products to those minors.

## EXECUTIVE SUMMARY

In the United States, children are more likely to die from gun violence than in any other high-income country. In 2020, gun violence overtook car accidents to become the number one cause of death for U.S. children and adolescents.[1] In California, children are generally restricted from purchasing and possessing firearms and ammunition, except under specified circumstances. However, concerns have arisen that children are still being marketed to by the gun industry.

This bill prohibits firearm industry members from advertising or marketing, as defined, firearm-related products in a manner that is designed, intended, or reasonably appears to be attractive to minors. The determination of whether it is "attractive to minors" is based on a consideration of the totality of the circumstances, including whether the marketing or advertising used cartoon characters or offered brand name stuffed animals promoting the entity or firearm-related product. The bill also prohibits knowingly leveraging the personal information of a minor for the purpose of marketing or advertising to that minor any firearm-related product, as specified.

---

[1] Laurel Wamsley, *The U.S. is uniquely terrible at protecting children from gun violence* (May 28, 2022) NPR, https://www.npr.org/2022/05/28/1101307932/texas-shooting-uvalde-gun-violence-children-teenagers. All internet citations are current as of June 2, 2022.

AB 2571 (Bauer-Kahan)
Page 2 of 16

This bill is sponsored by Governor Gavin Newsom. It is supported by a variety of groups, including Everytown for Gun Safety and the County of San Diego. The bill is opposed by the National Rifle Association.

## PROPOSED CHANGES TO THE LAW

Existing federal law:

1) Provides, pursuant to the Second Amendment to the United States Constitution, that a well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed. (U.S. Const. Amend. 2.)

2) Prohibits a qualified civil liability action from being brought in any Federal or State court. (15 U.S.C. § 7902.) A "qualified civil liability action" means a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines or penalties, or other relief resulting from the criminal or unlawful misuse of a qualified product by the person or a third party. (15 U.S.C. § 7903.)

3) Establishes the federal Children's Online Privacy Protection Act (COPPA) to provide protections and regulations regarding the collection of personal information from children under the age of 13. (15 U.S.C. § 6501 et seq.)

Existing state law:

1) Requires a person be at least 18 years of age to be sold most firearms and at least 21 years of age to be sold a handgun, except as specified. (Pen. Code §§ 27505, 27510.)

2) Establishes the Privacy Rights for California Minors in the Digital World (PRCMDW), which prohibits an operator of an internet website, online service, online application, or mobile application ("operator") from the following:
   a) marketing or advertising specified products or services, such as firearms, cigarettes, and alcoholic beverages, on its internet website, online service, online application, or mobile application that is directed to minors;
   b) marketing or advertising such products or services to minors who the operator has actual knowledge are using its site, service, or application online and is a minor, if the marketing or advertising is specifically directed to that minor based upon the personal information of the minor; and

      c)   knowingly using, disclosing, compiling, or allowing a third party to use, disclose, or compile, the personal information of a minor with actual knowledge that the use, disclosure, or compilation is for the purpose of marketing or advertising such products or services to that minor, where the website, service, or application is directed to minors or there is actual knowledge that a minor is using the website, service, or application. (Bus. & Prof. Code § 22580.)

3)   Requires, pursuant to the PRCMDW, certain operators to permit a minor user to remove the minor's content or information and to further inform the minor of this right and the process for exercising it. (Bus. & Prof. Code § 22581.)

4)   Requires, pursuant to the Parent's Accountability and Child Protection Act, a person or business that conducts business in California, and that seeks to sell any product or service in or into California that is illegal under state law to sell to a minor, notwithstanding any general term or condition, take reasonable steps, as specified, to ensure that the purchaser is of legal age at the time of purchase or delivery, including, but not limited to, verifying the age of the purchaser. (Civ. Code § 1798.99.1(a)(1).)

5)   Prohibits a business from selling or sharing the personal information of a consumer if the business has actual knowledge that the consumer is less than 16 years of age unless the consumer, in the case of consumers between 13 and 16 years of age, or the consumer's parent or guardian, in the case of consumers who are less than 13 years of age, has affirmatively authorized such sale or sharing. A business that willfully disregards the consumer's age shall be deemed to have had actual knowledge of the consumer's age. (Civ. Code § 1798.120.)

6)   Defines "firearm" as a device designed to be used as a weapon from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion. (Pen. Code § 16520.) It defines "firearm precursor part" to mean a component of a firearm that is necessary to build or assemble a firearm and is either an unfinished receiver or an unfinished handgun frame. (Pen. Code § 16531.)

7)   Defines "ammunition" to include any bullet, cartridge, magazine, clip, speed loader, autoloader, ammunition feeding device, or projectile capable of being fired from a firearm with a deadly consequence. (Pen. Code § 16150(b).)

8)   Requires firearms dealers to obtain certain identifying information from firearms purchasers and forward that information, via electronic transfer, to the DOJ to perform a background check on the purchaser to determine whether they are prohibited from possessing a firearm. (Pen. Code §§ 28160-28220.)

AB 2571 (Bauer-Kahan)
Page 4 of 16

This bill:

1) Prohibits a firearm industry member from advertising, marketing, or arranging for placement of an advertising or marketing communication concerning any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors.

2) Defines "firearm industry member" to include any of the following:
   a) any person or entity engaged in the manufacture, distribution, importation, marketing, wholesale, or retail sale of firearm-related products; or
   b) any person or entity formed for the express purpose of promoting, encouraging, or advocating for the purchase, use, or ownership of firearm-related products that endorses or advertises such products, or advertises, sponsors, or promotes events where they are sold or used.

3) Requires a court when determining whether marketing or advertising of a firearm-related product is attractive to minors to consider the totality of the circumstances, including, but not limited to, whether the marketing or advertising:
   a) uses caricatures that reasonably appear to be minors or cartoon characters to promote firearm-related products;
   b) offers brand name merchandise for minors, including, but not limited to, hats, t-shirts, or other clothing, or toys, games, or stuffed animals that promotes a firearm industry member or firearm-related product;
   c) offers firearm-related products in sizes, colors, or designs that are specifically designed to be used by, or appeal to, minors;
   d) is part of a marketing or advertising campaign designed with the intent to appeal to minors;
   e) uses images or depictions of minors in advertising and marketing materials to depict the use of firearm-related products; or
   f) is placed in a publication created for the purpose of reaching an audience that is predominately composed of minors and not intended for a more general audience composed of adults.

4) Prohibits a firearm industry member publishing material directed to minors in this state or who has actual knowledge that a minor in this state is using or receiving its material, from knowingly using, disclosing, compiling, or allowing a third party to use, disclose, or compile the personal information of that minor with actual knowledge that the use, disclosure, or compilation is for the purpose of marketing or advertising to that minor any firearm-related product.

5) Provides that any person in violation is liable for a civil penalty not to exceed $25,000 for each violation, which shall be assessed and recovered in a civil action

AB 2571 (Bauer-Kahan)
Page 5 of 16

     brought in the name of the people of the State of California by the Attorney
     General or by any district attorney, county counsel, or city attorney in any court
     of competent jurisdiction. In assessing the amount of the civil penalty, the court
     shall consider any one or more of the relevant circumstances presented by any of
     the parties to the case, including, but not limited to, the nature and seriousness of
     the misconduct, the number of violations, the persistence of the misconduct, the
     length of time over which the misconduct occurred, the willfulness of the
     defendant's misconduct, and the defendant's assets, liabilities, and net worth.

6)  Authorizes a person harmed by a violation to commence a civil action to recover
    their actual damages.

7)  Authorizes the court to order injunctive relief, including a permanent or
    temporary injunction, restraining order, or other order against the person or
    persons responsible for the conduct.

8)  Entitles a prevailing plaintiff to reasonable attorney's fees and costs, including
    expert witness fees and other litigation expenses.

9)  Deems each copy or republication of prohibited marketing or advertising a
    separate violation.

10) Defines "firearm-related product" as a firearm, ammunition, reloaded
    ammunition, a firearm precursor part, a firearm component, or a firearm
    accessory that has a specified connection to California.

## **COMMENTS**

1.  <u>Children and the epidemic of gun violence in the United States</u>

Gun violence in the United States has surged in recent years. While most shooting
deaths involve handguns, there has been a dramatic rise in the use of assault weapons
in gun massacres with six or more deaths, owing to their ability to inflict greater
damage at a quicker rate.[2] Research shows that laws restricting assault weapons reduce
deaths; estimates find mass-shooting fatalities were 70 percent less likely during the
period when the federal ban was in effect.[3] Another rising scourge is the prevalence of
"ghost guns." In 2020, California accounted for 65 percent of all ghost guns seized by

---

[2] Emily Shapiro, *The type of gun used in most US homicides is not an AR-15* (October 26, 2021) ABC News,
https://abcnews.go.com/US/type-gun-us-homicides-ar-15/story?id=78689504. All internet citations are
current as of March 22, 2022.
[3] Charles DiMaggio, et al., *Changes in US mass shooting deaths associated with the 1994-2004 federal assault
weapons ban: Analysis of open-source data* (January 2019) The Journal of Trauma and Acute Care Surgery,
https://doi.org/10.1097/TA.0000000000002060.

AB 2571 (Bauer-Kahan)
Page 6 of 16

the Bureau of Alcohol, Tobacco, Firearms and Explosives.[4] The weapons have been linked to 24 killings and dozens of other crimes in 2020 in Los Angeles alone. The problem of gun violence in our society is not going away. In 2020, over 45,000 Americans died from gun-related injuries in the United States. This is the most on record by far, a 43 percent increase from a decade prior.

As stated, gun violence has now become a leading cause of death of children in this country. This is a problem that is increasingly involving children from an early age:

> On May 24th an 18-year-old gunman, Salvador Ramos, walked into an elementary school in Uvalde, a town in south-west Texas, and shot dead at least 21 people, including 19 children. Mr Ramos was himself killed, reportedly by police. His motive remains unclear. It is the latest in a spate of mass shootings in America, and the toll is the biggest at a school since a gunman killed 26 people at Sandy Hook Elementary in Newtown, Connecticut, in 2012.

> In the decade since Sandy Hook there have been over 900 shootings on school grounds in America. After more than 60 years in which motor-vehicle crashes were the leading cause of death for young people, since 2017 guns have killed more Americans between the ages of one and 24. In 2020 more than 10,000 young Americans were killed by firearms, up from just under 7,000 two decades earlier. Pupils at almost all schools take part in active-shooter drills, learning to hide beneath their desks. Some drills use pellet guns and fake blood to simulate an attack.[5]

Not only are children increasingly the victims, but also the perpetrators of school shootings:

> In cases where the source of the gun could be determined, more than 85 percent of shooters brought them from their own homes or obtained them from friends or relatives, according to The Post's analysis.

> The ranks of school shooters include a 6-year-old boy, who killed a classmate after saying he didn't like her, and a 15-year-old girl, who did the same to a friend for rejecting her romantic overtures.

---

[4] Justin Ray, *'An instrument of death': The problem of ghost guns in California* (November 15, 2021) Los Angeles Times, https://www.latimes.com/california/newsletter/2021-11-15/ghost-guns-california-essential-california.
[5] *Guns are the things most likely to kill young people in America* (May 25, 2022) The Economist, https://www.economist.com/graphic-detail/2022/05/25/guns-are-the-things-most-likely-to-kill-young-people-in-america.

AB 2571 (Bauer-Kahan)
Page 7 of 16

> Seven in 10 of them, however, were under the age of 18, which means that — often because of an adult's negligence — dozens of children had access to deadly weapons.

**The median age of school shooters is 16.[6]**

This is borne out in other studies as well. According to an analysis of FBI data, in 29 of 62 active shooting incidents at educational facilities in the United States between 2000 and 2019, the offender was younger than 18, with an additional 10 shooters between 18 and 21 years old.[7] Another federally-run center database shows "at least 59 percent of the 2,275 school shootings researchers recorded since 1970 were committed by someone under 21 years old. The offender's age is unknown in another 18 percent of incidents."[8]

2. <u>Targeting children with firearm-related products</u>

This bill is prompted by the incidence of marketing and advertising of firearm-related products to children, arguably seeking to attract future legal gun owners. A report from the Violence Policy Center (VPC) outlines the problem:

> The gun industry has long understood that it faces a slow-motion demographic collapse. With the industry's customer base growing older, household gun ownership in America has steadily declined. As its primary market of white males ages and dies off, the firearms industry has set its sights on America's children. Much like the tobacco industry's search for replacement smokers, the gun industry is seeking replacement shooters to purchase its deadly products. Firearms companies have teamed up with "corporate partners" like the National Rifle Association of America, the gun industry's trade association the National Shooting Sports Foundation (NSSF), and online publications such as Junior Shooters in an industry-wide effort to market firearms to kids. They do this by promoting websites and magazines targeted at children, designing "kid-friendly" guns to appeal to the youth market, and even working to create the equivalent of "'reality' video" games to encourage gun use from an early age.

---

[6] John Woodrow Cox, et al., *More than 311,000 students have experienced gun violence at school since Columbine* (May 27, 2022) Washington Post, https://www.washingtonpost.com/graphics/2018/local/school-shootings-database/.
[7] Mary Katherine Wildeman, *Data show most school shootings carried out by young adults, teens* (May 26, 2022) CT Insider, https://www.ctinsider.com/news/article/Data-show-most-school-shootings-carried-out-by-17199231.php.
[8] *Ibid.*

AB 2571 (Bauer-Kahan)
Page 8 of 16

The industry's focus on recruiting children into the gun culture has been acknowledged since at least the 1990s.[9]

One particularly acute example is a product marketed by WEE1 Tactical:

A US gun manufacturer has unveiled a semi-automatic rifle for kids modeled on the AR-15, which has been used in a number of deadly mass shootings, sparking condemnation from gun safety groups.

The gun dubbed the JR-15 is being marketed by maker WEE1 Tactical as "the first in a line of shooting platforms that will safely help adults introduce children to the shooting sports."

The company's website says the rifle "also looks, feels, and operates just like Mom and Dad's gun."

The JR-15 is only 31 inches (80 centimeters) long, weighs less than 2.5 pounds (one kilogram) and comes with magazines of five or 10 rounds of 22 caliber bullets. It was released in mid-January with a price tag of $389.

The adult model, the AR-15, is the civilian version of a military-style weapon and has been used in multiple mass killings in the United States, including in schools.[10]

The marketing generally includes more compact models that are lighter to handle or firearms in various colors. A New York Times blog synthesizes the VPC report:

The gun industry markets a variety of products explicitly to children, a new report shows, from armed stuffed animals to lighter versions of rifles. And some see kids as a vital group of future gun buyers who need to be brought into the fold at a young age.

The report, called "Start Them Young" and issued on Thursday by the Violence Policy Center, lists a variety of firearms meant at least partly for children. It mentions the Crickett rifle, a gun made for children by the company Keystone Sporting Arms. Keystone's website and some of its merchandise bear the image of "Davey Crickett," a gun-wielding cartoon insect. The company sells Davey Crickett hats, dog tags and pins, as well as a Davey Crickett Beanie Baby, listed as "not for children under three years of age."

---

[9] Josh Sugarmann, "*Start Them Young" How the Firearms Industry and Gun Lobby Are Targeting Your Children* (February 2016) VPC, https://www.vpc.org/studies/startthemyoung.pdf.
[10] Agence France Presse, *US Gunmaker Unveils Semi-automatic Rifle Marketed To Kids* (February 18, 2022) Barron's, https://www.barrons.com/articles/top-gun-movie-business-51654023576.

AB 2571 (Bauer-Kahan)
Page 9 of 16

Keystone's website also sells books featuring "Little Jake," a boy who uses his gun to bring down a bear and save an African village from a marauding elephant. The publisher of the books says Little Jake is actually older than he looks: "Little Jake is a fictional character in his late teens. While small in stature so that young children may relate to him, Little Jake is old enough to hunt and fish safely on his own without adult supervision."

"Start Them Young" also cites the rise of .22-caliber versions of higher-caliber rifles, often produced with lightweight materials. According to an article in the trade magazine Shooting Sports Retailer, "these guns bring the coolness and fun of the tactical rifle to kids and less serious shooters."[11]

According to the author:

In 2021 there were approximately 259 unintentional shootings by children, resulting in 104 deaths and 168 injuries. Weapons used by children have put other children at risk. 91% of the victims in these shootings by children were also under 18, often siblings of the children shooting. In California, gun violence is the third-leading cause of death for children and teens. This epidemic of deadly violence is fueled by an industry that encourages children to hold a gun as soon as they can walk.

Gun manufacturers view children as their next generation of advocates and customers, and target them with slick advertising – even children's books.   The advertising for these weapons is shameless.  Children in California are not allowed to buy or own a gun, yet they are advertised to across all forms of media with cartoons, video games, and social media.

AB 2571 will prohibit a person or entity from publishing materials that advertise or market firearms or weapons to anyone under the age of 18. This bill would allow the Attorney General, a District or County Attorney, or a County Counsel to bring a civil action against each violation up to $25,000.

Guns are not a toy. Guns are a tool of death. Taking away this tool of violent indoctrination from the gun industry is a vital step forward to protect California's children.

---

[11] Anna North, *Marketing Guns to Children* (February 19, 2022) The New York Times, https://takingnote.blogs.nytimes.com/2016/02/19/marketing-guns-to-children.

AB 2571 (Bauer-Kahan)
Page 10 of 16

### 3. Prohibiting the marketing or advertising of such products to children

This bill prohibits a firearm industry member from advertising or marketing any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors. Furthermore, the bill places limitations on how these entities can utilize the personal information of minors in this context. If they are publishing material directed to minors in California or have actual knowledge that a minor is using or receiving its material, they are prohibited from knowingly using, disclosing, compiling, or allowing a third party to use, disclose, or compile, the personal information of that minor with actual knowledge that the use, disclosure, or compilation is for the purpose of marketing or advertising to that minor any firearm-related product.

Violations of these provisions are subject to civil penalties of up to $25,000 for each violation in civil actions brought by the Attorney General or by any district attorney, county counsel, or city attorney. Each copy or republication of prohibited marketing or advertising is deemed a separate violation. Courts are provided specific factors to consider in setting the amount of the penalty including the nature, seriousness, and willfulness of the defendant's misconduct and the defendant's assets, liabilities, and net worth.

An individual harmed by a violation is also authorized to bring suit to recover their actual damages. This would require the individual to establish the causal connection between the violation and their damages.

In addition to the remedies above, the court can order injunctive relief, including a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for the conduct. A prevailing plaintiff is entitled to reasonable attorney's fees and costs, including expert witness fees and other litigation expenses.

The bill also provides some direction to courts in determining whether marketing or advertising of a firearm-related product is attractive to minors. They are to consider the totality of the circumstances, including whether the marketing or advertising:

- uses caricatures that reasonably appear to be minors or cartoon characters to promote firearm-related products;
- offers brand name merchandise for minors, including, but not limited to, hats, t-shirts, or other clothing, or toys, games, or stuffed animals that promotes a firearm industry member or firearm-related product;
- offers firearm-related products in sizes, colors, or designs that are specifically designed to be used by, or appeal to, minors;
- is part of a marketing or advertising campaign designed with the intent to appeal to minors;

AB 2571 (Bauer-Kahan)
Page 11 of 16

- uses images or depictions of minors in advertising and marketing
  materials to depict the use of firearm-related products; or
- is placed in a publication created for the purpose of reaching an audience
  that is predominately composed of minors and not intended for a more
  general audience composed of adults.

4. <u>Concerns raised with the bill</u>

Some concerns have been raised about the bill's constitutionality, namely whether it
violates the First Amendment. The prohibitions in this bill restrict the commercial
speech of the firearm industry members, but the mere fact that it restricts speech does
not mean that such a restriction would violate the First Amendment of the United States
Constitution or Article I of the California Constitution.

Generally speaking, the First Amendment and Article I of the California Constitution,
act to protect the freedom of expression of the citizens of California. Commercial
speech, which is done on behalf of a company or individual for purpose of making a
profit, is protected under the state and federal guarantees of free speech, but to a lesser
degree than noncommercial speech.[12] A blanket prohibition against truthful,
nonmisleading speech about a lawful product, which serves an end unrelated to
consumer protection, must be reviewed with skepticism. A "state legislature does not
have the broad discretion to suppress truthful, nonmisleading information for
paternalistic purposes[.]" (*44 Liquormart, Inc. v. Rhode Island* (1996) 517 U.S. 484, 510.)
Ultimately, the First Amendment protects commercial speech against "unwarranted"
governmental regulation.

In order to be upheld as a valid restriction on commercial speech, the proposed law
must meet the following four-part test: (1) the speech must be about a lawful activity
and cannot be false or misleading; (2) the government must have a substantial interest;
(3) the law must directly advance the governmental interest asserted; and (4) the law
must be no more extensive than necessary. (*Central Hudson Gas v. Public Service
Commission* (1980) 447 U.S. 559.)

In this case, the proposed restriction is arguably about restricting the marketing of
products to children that are not generally legally able to buy them. California law
generally prohibits minors from possessing a handgun and most semi-automatic rifles,
as well as ammunition. The possibility and even likelihood that marketing or
advertising of firearm-related products that makes those products attractive to children
who, in most cases, cannot lawfully possess them, greatly strengthens the argument
that the bill's restrictions on the marketing and advertising of firearm-related products
could withstand constitutional scrutiny. Even if the speech is lawful, the State of
California arguably has a strong interest in taking steps to prevent firearms from being

---

[12] *See Gerawan Farming, Inc. v. Lyons* (2004) 33 Cal.4th 1, 22.

AB 2571 (Bauer-Kahan)
Page 12 of 16

sold to minors, and the proposed law advances that interest in a manner that does not cover products or advertisements directed to lawful purchasers. Based on the findings incorporated into the bill that firearms marketing and advertising contributes to the unlawful sale of firearms to minors, as well as the unlawful transfer of firearms to minors by adults who may possess those weapons lawfully, the bill is arguably substantially related to the achievement of its objective. Although a determination regarding the First Amendment is ultimately for the courts, arguably the proposed restriction on marketing and advertising could survive such a challenge.

Similar laws already exist that restrict the advertising of other products to children. For instance, coin banks, toys, balloons, magic tricks, miniature bottles or cans, confections, dolls, or other items that appeal to minors or underage drinkers may not be used in connection with the merchandising of beer. (Bus. & Prof. Code § 25600.) Similarly, edible cannabis products cannot be designed to be appealing to children or easily confused with commercially sold candy or foods that do not contain cannabis. (Bus. & Prof. Code § 26130.)

Another particularly relevant example is the Privacy Rights for California Minors in the Digital World, which prohibits an operator of an internet website, online service, online application, or mobile application ("operator") from the following:

- marketing or advertising specified products or services such as firearms, cigarettes, and alcoholic beverages on its internet website, online service, online application, or mobile application that is directed to minors;
- marketing or advertising such products or services to minors who the operator has actual knowledge are using its site, service, or application online and is a minor, if the marketing or advertising is specifically directed to that minor based upon the personal information of the minor; and
- knowingly using, disclosing, compiling, or allowing a third party to use, disclose, or compile, the personal information of a minor with actual knowledge that the use, disclosure, or compilation is for the purpose of marketing or advertising such products or services to that minor, where the website, service, or application is directed to minors or there is actual knowledge that a minor is using the website, service, or application. (Bus. & Prof. Code § 22580.)

As can be seen, the language of this bill borrows from these existing statutes.

Writing in opposition, the National Rifle Association argues the bill will not withstand constitutional challenge:

> Even if one is to assume that AB 2571 meets the first three criteria of the test set forth in *Central Hudson*, the regulation fails the fourth part of the test. A minor may find a piece of advertising attractive for the same reasons as an adult. Adults and minors often use firearms for the same lawful purposes, prize the same characteristics in firearms, and therefore

would be attracted to the same advertising materials. As AB 2571 would target advertising valued by both minors and adults it would necessarily "impinge on the speaker's ability to propose a commercial transaction and the adult listener's opportunity to obtain information about products."

Moreover, the restriction in AB 2571 fails to appreciate that minors can and do possess and use firearms for a variety of lawful purposes. The state interest asserted in AB 2571 is to combat the "proliferation of firearms to and among minors." The bill also notes, "[t]his state has a compelling interest in ensuring that minors do not possess these dangerous weapons." The asserted interest is not necessarily to discourage illegal use of firearms by minors, but rather all use.

First, as minors are permitted by state law to use firearms for a variety of lawful purposes, it is dubious that the state's asserted interest in AB 2571 of preventing firearm use by minors is "substantial," as required by the second part of the *Central Hudson* test.

Second, if it is the drafters of AB 2571's goal to curb the illegal use of firearms by minors, a less suspect state interest, surely banning all advertising that may be attractive to minors, even that contemplating the use of firearms for lawful purposes, would be overbroad under part four of the *Central Hudson* test.

The legislation's drafters justify their proposed regulation by citing restrictions on "advertising and promotional marketing of alcohol, cannabis, and tobacco to protect minors." As noted in the discussion of *Lorillard Tobacco Co. v. Reilly*, such measures must be the narrowest means of achieving an asserted state interest – which was not the case in Lorillard and is not the case with AB 2571.

However, lawmakers should also understand that the restrictions cited as analogous to that in AB 2571 are of a fundamentally different character. Unlike restrictions on advertising for alcohol, cannabis, and tobacco, the underlying products and conduct that AB 2571 seeks to curb the advertisement of are protected under the U.S. Constitution. As such, lawmakers should be prepared for the courts to level more scrutiny upon restrictions on advertisements concerning Second Amendment protected products and conduct than those leveled at products that don't enjoy such protection.

One additional, potential legal barrier to the bill, is the federal Protection of Lawful Commerce in Arms Act (PLCAA). The PLCAA prohibits a qualified civil liability action from being brought in any federal or state court. (15 U.S.C. § 7902.) A "qualified civil

AB 2571 (Bauer-Kahan)
Page 14 of 16

liability action" means a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party. (15 U.S.C. § 7903.) These statutes stand to preempt state laws that impose liability on manufacturers, sellers, and trade associations for the misuse of firearms by third parties.

However, there are exceptions to the PLCAA's preemptive effect. Specifically, the federal law explicitly does not preempt "an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought." (15 U.S.C. § 7903.) Given that liability attaches in this bill for the direct conduct of firearm industry members themselves, namely their advertising, marketing, or use of minors' personal information, and is not triggered solely by the misconduct of another party, the bill should arguably not be found to be preempted.

5.  <u>Stakeholder support</u>

Brady California and the Brady Campaign to Prevent Gun Violence write in support of this measure:

> Current laws restrict the content and placement of advertising and promotional marketing of alcohol, cannabis, and tobacco to protect minors. This is done to prevent potentially harmful substances from getting in the hands of young people as well as preventing the glorification around them. While we certainly see the point of restricting ads around the previous products listed, unlike firearms none of these are a leading cause of death for children and teens.

Writing in support, the City of Mountain View argues the bill provides "another tool in the tool belt of municipalities to counter dangerous practices that jeopardize the health and wellness of our communities."

The County of San Diego writes in support of this bill, and gun legislation in general:

> The County of San Diego recognizes action must be taken to prevent unintentional shootings and reduce the risk of homicides and decrease access to guns used in crimes.

> State legislation that addresses gun violence will help hold the gun industry accountable through private lawsuits and by prohibiting the advertisement of certain categories of weapons. The County of San Diego

AB 2571 (Bauer-Kahan)
Page 15 of 16

supports these and other efforts that would allow for new oversight and
accountability measures for the gun industry.

### SUPPORT

Governor Gavin Newsom (sponsor)
Brady California
Brady Campaign to Prevent Gun Violence
City of Mountain View
County of San Diego
Everytown for Gun Safety
March for Our Lives
Moms Demand Action for Gun Sense in America
Students Demand Action for Gun Sense in America

### OPPOSITION

National Rifle Association

### RELATED LEGISLATION

Pending Legislation:

SB 1327 (Hertzberg, 2022) establishes privately-enforced civil causes of action against
any person who manufactures or causes to be manufactured, distributes, transports, or
imports into the state, or causes to be distributed or transported or imported into the
state, keeps for sale or offers or exposes for sale, or gives or lends any firearm lacking a
required serial number, assault weapon, .50 BMG rifle, or firearm precursor part, as
specified. This bill is currently in the Assembly Judiciary Committee.

AB 452 (Friedman, 2022) requires local educational agencies to inform parents, through
a notice, of California's child access prevention laws and other firearm laws. This bill is
currently in the Senate Appropriations Committee.

AB 1594 (Ting, 2022) establishes a firearm industry standard of conduct, which would
require a firearm industry member, as defined, to, among other things, establish,
implement, and enforce reasonable controls, as defined, and adhere to specified laws
pertaining to unfair methods of competition, unfair or deceptive acts or practices, or
false advertising. The bill also prohibits a firearm industry member from
manufacturing, marketing, importing, offering for wholesale sale, or offering for retail
sale a firearm-related product that is abnormally dangerous and likely to create an
unreasonable risk of harm to public health and safety in California, as specified. This
bill is currently in this Committee and will be heard on the same day as this bill.

AB 2571 (Bauer-Kahan)
Page 16 of 16

AB 1621 (Gipson, 2022), among other things, prohibits the sale, transfer, or possession of an unserialized firearm precursor part, except as specified, and explicitly prohibits the possession or transfer of a firearm without a serial number or mark of identification. This bill is currently in the Senate Public Safety Committee.

Prior Legislation: SB 568 (Steinberg, Ch. 336, Stats. 2013) established the Privacy Rights for California Minors in the Digital World.

## PRIOR VOTES:

Assembly Floor (Ayes 48, Noes 16)
Assembly Appropriations Committee (Ayes 12, Noes 4)
Assembly Judiciary Committee (Ayes 7, Noes 2)
Assembly Privacy and Consumer Protection Committee (Ayes 7, Noes 1)

**************