C.D. Michel-SBN 144258
Anna M. Barvir-SBN 268728
Tiffany D. Cheuvront-SBN 317144
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Fax: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs Junior Sports Magazines Inc., Raymond Brown, California Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA Foundation, and Gun Owners of California, Inc.

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorney for Plaintiff Second Amendment Foundation

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNIOR SPORTS MAGAZINES INC., RAYMOND BROWN, CALIFORNIA YOUTH SHOOTING SPORTS ASSOCIATION, INC., REDLANDS CALIFORNIA YOUTH CLAY SHOOTING SPORTS, INC., CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, THE CRPA FOUNDATION, AND GUN OWNERS OF CALIFORNIA, INC.; and SECOND AMENDMENT FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> ROB BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-10, <br><br> Defendant. | CASE NO: 2:22-cv-04663-CAS (JCx) <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> Hearing Date: August 22, 2022 <br> Hearing Time: 10:00 a.m. <br> Courtroom: 8D <br> Judge: Christina A. Snyder |

# TABLE OF CONTENTS

**Page**

Table of Contents ................................................................................................. ii

Table of Authorities ........................................................................................... iii

Introduction .......................................................................................................... 1

Factual Background ............................................................................................. 1

I.      California's Assembly Bill 2571 (Bauer-Kahan) .......................................... 1

II.     The Impact of AB 2571 on Plaintiffs' Protected Conduct ............................ 5

Argument ............................................................................................................... 8

I.      Plaintiffs Are Likely to Succeed on the Merits of Their Claims ................... 8

      A.      AB 2571 Impermissibly Infringes on Plaintiffs' Right to Free Speech 8

           1.      The First Amendment Protects Plaintiffs' Speech ..................... 9

           2.      AB 2571 Is an Impermissible Content- and Viewpoint-based Restriction on Speech ................................................................. 11

           3.      AB 2571 Cannot Survive Heightened Scrutiny ....................... 13

           4.      Even If AB 2571 Restricted Only Commercial Speech, It Fails the Test Set Forth in *Central Hudson* ...................................... 15

                  a.      AB 2571 restricts non-misleading speech that concerns lawful activity. ............................................................ 16

                  b.      The State has no substantial interest in banning Plaintiffs' protected commercial speech. ........................................ 17

                  c.      AB 2571 does not directly and materially advance the State's purported interests. ........................................... 18

                  d.      AB 2571 is far more extensive than necessary to achieve the State's purported interests. ...................................... 19

      B.      AB 2571 Impermissibly Infringes on Plaintiffs' Right to Associate ... 21

      C.      AB 2571 Denies Plaintiffs Equal Protection Under the Law ............. 22

II.     Plaintiffs Are Suffering Irreparable Harm and Will Continue to Suffer Such Harm if the Court Denies Preliminary Relief .............................................. 23

III.    The Balance of Equities and Public Interest Warrant Relief ........................ 24

Conclusion ........................................................................................................... 25

PLAINTIFFS' MEMORANDUM OF POINTS & AUTHORITIES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Civ. Liberties Union v. Alvarez*,
679 F.3d 583 (7th Cir. 2012)..............................................................24

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
559 F.3d 1046 (9th Cir. 2009)..............................................................8

*Ark. Writers' Project v. Ragland*,
481 U.S. 221 (1987)..............................................................11

*Brown v. Entm't Merchs. Ass'n*,
564 U.S. 786 (2011)..............................................................14, 20

*Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*,
447 U.S. 557 (1980)..............................................................9, 16, 17, 19

*Chalk v. U.S. Dist. Ct. (Orange Cty. Superin. of Schs.)*,
840 F.2d 701 (9th Cir. 1998)..............................................................8

*Doe v. Harris*,
772 F.3d 563 (9th Cir. 2014)..............................................................8

*Edenfield v. Fane*,
507 U.S. 761 (1993)..............................................................18

*Edge v. City of Everett*,
929 F.3d 657 (9th Cir. 2019)..............................................................15

*Elrod v. Burns*,
427 U.S. 347 (1976)..............................................................23

*Erznoznik v. Jacksonville*,
422 U.S. 205 (1975)..............................................................19, 20

*Ezell v. City of Chicago*,
846 F.3d 888 (7th Cir. 2017)..............................................................13

*Frisby v. Schultz*,
487 U.S. 474 (1988)..............................................................15

*Gordon v. Holder*,
721 F.3d 638 (D.C. Cir. 2013) ..............................................................24

*Greater New Orleans Broad. Ass'n v. United States*,
528 U.S. 173 (1999)..............................................................18

*Hunt v. City of Los Angeles*,
601 F. Supp. 2d 1158 (C.D. Cal. 2009) ..............................................................10

iii

*Index Newsps. LLC v. U.S. Marshalls Serv.*,
  977 F.3d 817 (9th Cir. 2020)...................................................24

*Klein v. City of San Clemente*,
  584 F.3d 1196 (9th Cir. 2009)...............................................24

*Lorillard Tobacco Co. v. Reilly*,
  533 U.S. 525 (2001).............................................17, 20, 21

*Loving v. Virginia*,
  388 U.S. 1 (1967)...................................................................22

*Madsen v. Women's Health Ctr. Inc.*,
  512 U.S. 753 (1994).............................................................13

*McCutcheon v. FEC*,
  572 U.S. 185 (2014).............................................................13

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012)................................................23

*NAACP v. Patterson*,
  357 U.S. 449 (1958).......................................................21, 22

*Nken v. Holder*,
  556 U.S. 418 (2009).............................................................24

*Nordyke v. Santa Clara*,
  110 F.3d 707 (9th Cir. 2009)..................................................9

*Police Dep't v. Mosley*,
  408 U.S. 92 (1972).........................................................11, 22

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015).......................................................11, 13

*Rodriguez v. Robbins*,
  715 F.3d 1127 (9th Cir. 2013)..............................................25

*Rubin v. Coors Brewing Co.*,
  514 U.S. 476 (1995).............................................................18

*Sorrell v. IMS Health, Inc.*,
  564 U.S. 552 (2011).......................................................16, 19

*Thompson v. W. States Med. Ctr.*,
  535 U.S. 357 (2002).......................................................19, 20

*Tracy Rifle & Pistol LLC v. Harris*,
  339 F. Supp. 3d 1007 (E.D. Cal. 2018) ...........................18, 21

*United States v. Alvarez*,
  567 U.S. 709 (2012)...............................................................9

*United States v. Playboy Entm't Grp., Inc.*,
  529 U.S. 803 (2000)...............................................................9

PLAINTIFFS' MEMORANDUM OF POINTS & AUTHORITIES

*Va. Bd. of Pharm. v. Va. Citzs. Consumer Council,*
  425 U.S. 748 (1976)................................................................19

*Valle Del Sol v. Whiting,*
  709 F.3d 808 (9th Cir. 2013)..............................................20, 21

*W. Va. State Bd. of Educ. v. Barnette,*
  319 U.S. 624 (1943)..................................................................9

**Statutes**

10 U.S.C. § 246 ..........................................................................17

Cal. Bus. & Prof. Code § 22949.80............................................*passim*

Cal. Pen. Code § 29615.................................................. 12, 13, 16, 17

Cal. Pen. Code § 29655.................................................................12, 16

**Other Authorities**

11A Charles Alan Wright et al., Federal Practice and Procedure §
  2948.1 (2d ed. 1995)................................................................23

Josh Sugarman, *"Start Them Young" How the Firearms Industry and
  Gun Lobby Are Targeting Your Children* (Feb. 2016)....................14

Rosalio Ahumada, *Gavin Newsom Signs New Gun Safety Laws
  Targeting Illegal Weapons, Marketing to Kids*, Sac. Bee (July 1,
  2022) ......................................................................................12

U.S. Const., amend. I ....................................................................*passim*

U.S. Const., amend. II...................................................................*passim*

U.S. Const. amend. XIV ...............................................................22

PLAINTIFFS' MEMORANDUM OF POINTS & AUTHORITIES

**INTRODUCTION**

"Have you no common decency?" This is the question Governor Gavin Newsom posed to members of our Supreme Court and those who do not share his world view when he announced that he had just signed Assembly Bill 2571, a state law flatly banning a broad swath of speech by "firearms industry members" who seek to impart their viewpoints "concerning firearm-related products" to youth. Not content to merely restrict unlawful access to and use of firearms, Governor Newsom and the state of California now seek to prevent the Second Amendment community from passing down their traditions and ideals to the next generation.

In service of that end, AB 2571 bans communications by "firearm industry members" seeking to promote the use of firearms and related products if those communications reasonably appear to be attractive to minors. The broad-sweeping law applies not only to "commercial speech" targeting children or encouraging them to engage in unlawful behavior, but to a great deal of political and educational speech, truthful commercial speech aimed at adults, and speech promoting activities that are perfectly lawful to engage in—even by minors in California. Because the law is not tailored to serving a compelling governmental interest, it violates the First Amendment rights to free speech, assembly, and association. Because it strikes at speech about a fundamental right and is rooted in animus for the speaker and the message, it also violates the right to equal protection under the law.

Plaintiffs thus seek to preliminarily enjoin AB 2571 while this case proceeds. Such relief is necessary because Plaintiffs are likely to succeed on the merits, because they suffer irreparable harm every second the law is in force, and because the balance of equities and public interest tip sharply in favor of enjoining the law.

**FACTUAL BACKGROUND**

**I.     CALIFORNIA'S ASSEMBLY BILL 2571 (BAUER-KAHAN)**

AB 2571, which added section 22949.80 to the California Business &

Professions Code,[1] makes it unlawful for "<u>firearm industry members</u>" to "<u>advertise, market</u>, or arrange for placement of an advertising or marketing communication concerning any <u>firearm-related product</u> in a manner that is designed, intended, or <u>reasonably appears to be attractive to minors</u>." Cal. Bus. & Prof. Code § 22949.80(a)(1). Because the law creates a number of statutory definitions for otherwise common words and phrases, it is important to discuss each definition in order to better understand the full breadth of California's ban on speech.

First, AB 2571 targets speech not only "designed or intended" for minors, but that which might "reasonably appear[] to be attractive to minors." *Id.* Though the phrase is open to broad subjective interpretation, AB 2571 provides some guidance for courts tasked with determining whether a communication is "attractive to minors." *Id.* § 22949.80(a)(2). "[A] court shall consider the totality of the circumstances," including *but not limited to*, whether the communication:

> (A) Uses caricatures that reasonably appear to be minors or cartoon characters to promote firearm-related products.
>
> (B) Offers brand name merchandise for minors, including, but not limited to, hats, t-shirts, or other clothing, or toys, games, or stuffed animals, that promotes a firearm industry member or firearm-related product.
>
> (C) Offers firearm-related products in sizes, colors, or designs that are specifically designed to be used by, or appeal to, minors.
>
> (D) Is part of a marketing or advertising campaign designed with the intent to appeal to minors.
>
> (E) Uses images or depictions of minors in advertising and marketing materials to depict the use of firearm-related products.
>
> (F) Is placed in a publication created for the purpose of reaching an audience that is predominately composed of minors and not intended for a more general audience composed of adults.

*Id.* § 22949.80(a)(2).

Second, AB 2571 does not bar all speakers from "advertising and marketing"

---

[1] Throughout this motion, Plaintiffs refer to section 22949.80 as AB 2571.

"firearm-related products." Rather, section 22949.80(c)(4) targets only "firearm industry members," which the law defines in two ways:

> (A)  A person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association engaged in the manufacture, distribution, importation, marketing, wholesale, or retail sale of firearm-related products.

> (B)  A person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association formed for the express purpose of promoting, encouraging, or advocating for the purchase, use, or ownership of firearm-related products that does one of the following:

>> (i)   Advertises firearm-related products.

>> (ii)  Advertises events where firearm-related products are sold or used.

>> (iii) Endorses specific firearm-related products.

>> (iv)  Sponsors or otherwise promotes events at which firearm-related products are sold or used.

AB 2571 thus does not apply to members of the book, movie, television, and video game industries, even though the author of AB 2571 expressly identified the "slick advertising" of "firearm-related products" in children's books, cartoons, and video games as sources of "shameless" advertising of "weapons" to children. Req. Jud. Ntc., Ex. 6 at 9. The law does, however, apply to organizations formed to promote and preserve the rights to keep and bear arms, organizations that offer competitive and recreational shooting programs, businesses that offer shooting skills courses or firearm-safety training, and gun show promoters—not just firearms manufacturers and retailers. Cal. Bus. & Prof. Code § 22949.80(c)(4).

Finally, AB 2571 broadly defines "advertising or marketing" as any "communication" made or placed by a "firearm industry member" in exchange for compensation, if the "primary purpose" is to promote not just the purchase but even the "*use* [of] the product or service." *Id.* § 2949.80(c)(6) (emphasis added). And because the restriction extends to any such communication that even *concerns* a "firearm-related product," *id.* § 22949.80(a)(1), it sweeps within its sizable grasp not

1    just traditional "advertising or marketing" as laypeople might conceive of it, but all

2    manner of speech that promotes the use of "firearm-related products."

3          AB 2571 thus restricts honest commercial speech promoting lawful activities

4    and services, including, but not limited to, traditional advertisements for youth

5    shooting competitions and recreational events, firearm-safety classes, shooting skills

6    courses, and youth shooting programs and organizations. Compl. ¶ 57. But it also

7    bans a broad category of pure speech, including, *but not limited to:*

8          a.    All (or nearly all) aspects of youth hunting and shooting
                 magazines by organizations and businesses whose
9                purpose is to promote the shooting sports and the
                 websites, social media, and other communications
10               promoting those magazines;

11         b.    Videos, cartoons, coloring books, posters, social media
                 posts, and education campaigns by gun rights
12               organizations and/or firearms trainers encouraging youth
                 to take up lawful recreational or competitive shooting
13               activities or teaching about firearm safety;

14         c.    Branded merchandise, giveaways, or "swag" by a
                 "firearm industry member" that promotes a "firearm
15               industry member," *including nonprofit Second
                 Amendment organizations*, or contains pro-gun slogans;

16         d.    Youth firearm- and hunter-safety courses and youth
                 shooting skills courses, as well as recommendations by
17               trainers about the most appropriate firearms, ammunition,
                 and accessories for young and beginner shooters; and
18

19         e.    Signage, flyers, posters, discussions, merchandise, and
                 other communications generally depicting minors
20               enjoying or encouraging minors to enjoy their right to
                 possess and use firearms at recreational or competitive
21               shooting events—conduct that is legal under California
                 law—as well as communications promoting such events.

22         Any person who violates AB 2571 "shall be liable for a civil penalty not to

23   exceed twenty-five thousand dollars ($25,000) for each violation, which shall be

24   assessed and recovered in a civil action brought in the name of the people of the

25   State of California by Defendant Attorney General Rob Bonta ("the State") or by

26   any district attorney, county counsel, or city attorney in any court of competent

27   jurisdiction." *Id.* § 22949.80(e)(1). AB 2571 also authorizes any "person harmed by

28   a violation of this section" to "commence a civil action to recover their actual

1    damages," as well as attorney's fees and costs. *Id.* § 22949.80(e)(3)-(5).

2    **II.    THE IMPACT OF AB 2571 ON PLAINTIFFS' PROTECTED CONDUCT**

3         AB 2571 was adopted by the Legislature and signed by the governor on June

4    30, 2022, and immediately went into effect, Compl. ¶ 42, sending industry members

5    scrambling to comply with the law's nearly indecipherable restrictions on their

6    speech. Indeed, Plaintiffs and other "firearm industry members" throughout the

7    country immediately postponed or canceled youth shooting events and hunter's

8    safety courses, scrubbed advertising for such events from their websites, and

9    terminated magazine subscriptions for minors living in California. *See, e.g.*, Fink

10   Decl. ¶¶ 16-17, Exs. 19-20; Minnich Decl. ¶¶ 8, 15.

11        Plaintiffs are a group of "firearm industry members," as defined by AB 2571,

12   that regularly "advertise, market, or arrange for placement of an advertising or

13   marketing communication concerning … firearm-related product[s] in a manner that

14   is designed, intended, or [might] reasonably appear[] to be attractive to minors."

15   Compl. ¶¶ 65-96; Coleman Decl. ¶¶ 2-8; Fink Decl. ¶¶ 2-3, 9-15, Ex. 13; Gomez

16   Decl. ¶¶ 2-9; Gottlieb Decl. ¶¶ 6-15; Minnich Decl. ¶¶ 2-15; Paredes Decl. ¶¶ 2-6;

17   Rangel Decl. ¶¶ 2-8.

18        Plaintiff Junior Sports Magazines publishes and distributes the online and

19   print magazine *Junior Shooters*, a shooting sports magazine that promotes,

20   encourages, and advocates for the lawful use of firearms—especially by young

21   people. Fink Decl. ¶ 3. The magazine is specifically for young people, and it is

22   dedicated to promoting the participation and achievements of youth in the shooting

23   sports. *Id. Junior Shooters* regularly includes articles, images, and other depictions

24   of minors using "firearm-related products," as well as endorsements of specific

25   products appropriate for young and beginner shooters. *Id.* ¶¶ 10-13, Exs. 14-15.

26   *Junior Shooters* also includes articles and advertisements promoting youth shooting

27   competitions and recreational events, youth shooting organizations, firearm-safety

28   courses, and shooting skills courses, as well as traditional advertisements for

"firearm-related products." *Id.* ¶¶ 11, 14-15. Because AB 2571 bans all of this otherwise protected speech, the website for *Junior Shooters* now warns visitors that youth in California may not access the site and future editions will not be available for distribution in California. *Id.* ¶¶ 16-17, Exs. 19-20.

Plaintiff Raymond Brown is a firearms trainer who regularly engages in the planning, advertising, and facilitation of firearm education courses specifically for youth or where youth are extremely likely to be in attendance and where youth lawfully use, handle, observe, or otherwise possess firearms, ammunition, and firearm parts. Compl. ¶¶ 14, 74-76.[2] His firearm training and coaching sessions focus on various aspects of competitive and recreational shooting, including discussion and recommendations concerning "firearm-related products" that are most suitable for young and/or beginner shooters. *Id.*

Plaintiffs California Youth Shooting Sports Association and Redlands California Youth Clay Shooting Sports are non-profit shooting sports organizations that offer participation in their youth shooting programs. Coleman Decl. ¶¶ 2-3, Exs. 10-11; Rangel Decl. ¶¶ 2-4. Through these programs, Plaintiffs CYSSA and RCYCSS regularly engage with minors through advertising, marketing, and other communications promoting youth competitive shooting events where "firearm-related products" are used and providing recommendations on which "firearm-related products" are most suitable its young shooters' competitive and recreational shooting needs. Coleman Decl. ¶¶ 4-7, Ex. 10; Rangel Decl. ¶¶ 5-8.

Plaintiff California Rifle & Pistol Association, a non-profit member organization, not only promotes, sponsors, and hosts youth programs like those described above, Minnich Decl. ¶¶ 2, 5, 8, 12-13, Ex. 23, it is also rolling out paid

---

[2] Due to the unusually rapid turnaround necessary to prepare Plaintiffs' motion for preliminary injunction in light of AB 2571 being declared "urgency" legislation, and Mr. Brown's summer travel and training schedule, Mr. Brown was unavailable to provide a fully executed declaration supporting this motion. Plaintiffs will submit Mr. Brown's declaration as soon as he is available.

memberships for youth and uses CRPA-branded merchandise and giveaways to promote the organization and solicit memberships and financial support, as well as to spread pro-gun messages. *Id.* ¶¶ 14-15, Exs. 23-26. CRPA also publishes a bi-monthly magazine that has included and, but for the enforcement of AB 2571, would continue to include cartoons (including political cartoons), as well as articles and depictions of the use of "firearm-related products" by minors. ¶¶ 9-11, Ex. 22. These publications also include advertisements promoting youth shooting competitions, youth recreational shooting and outdoors events, and firearm safety courses , as well as traditional advertisements for "firearm-related products." *Id.*

Plaintiff CRPA Foundation is a 501(c)(3) non-profit organization that not only supports, promotes, sponsors, and participates in programs for youth like those described above, it also solicits funds for and provides scholarships to individual youth shooters and youth shooting teams, publishes a variety of informational bulletins, brochures, and articles promoting the possession and use of firearms, and (in response to countless requests from CRPA and CRPAF supporters) is launching an activity book about the shooting sports for children. Gomez Decl. ¶¶ 1-9, Ex. 21.

Plaintiff Gun Owners of California is a non-profit organization that regularly supports youth shooting teams and individual talented young shooters through sponsorships and other support. Through this work, GOC engages with minors through advertisements, sponsorships, and other communications promoting events where "firearm-related products" are used. Paredes Decl. ¶ 4.

Plaintiff Second Amendment Foundation, a non-profit member organization, sponsors and supports an initiative called 2AGaming, an outreach program with the goal of growing the Second Amendment community. Gottlieb Decl. ¶¶ 2, 10-14. 2AGaming functions by reaching out to people who play video games, especially people who play games that focus on guns. *Id.* ¶ 11. This outreach necessarily includes minors and young adults who play such games. *Id.* SAF also produces and distributes branded merchandise to promote itself, increase paid memberships,

7

1   encourage participation in shooting sports, and spread its Second Amendment
2   message. *Id.* ¶ 15.

3       As a result of the adoption and immediate enforcement of AB 2571, Plaintiffs
4   (and businesses across the country) have begun to curtail these activities, as well as
5   all manner of speech that could arguably fall under AB 2571's broad ban—fearing
6   the draconian penalties that attach. Compl. ¶ 97; Coleman Decl. ¶¶ 8-10; Fink Decl.
7   ¶¶16-19, Exs. 19-20; Gomez Decl. ¶ 10; Minnich Decl. ¶¶ 7-8, 11, 15; Paredes Decl.
8   ¶ 6; Rangel Decl. ¶¶ 9-11; *see also* Canon Decl. ¶¶ 8-12; Fitzgerald Decl. ¶¶ 4-10.

9                                    **ARGUMENT**

10      "The purpose of a preliminary injunction is to preserve the status quo pending
11  a determination of the action on the merits." *Chalk v. U.S. Dist. Ct. (Orange Cty.*
12  *Superin. of Schs.)*, 840 F.2d 701, 704 (9th Cir. 1998). To obtain relief, Plaintiffs
13  must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable
14  harm absent preliminary relief; (3) that the balance of equities tips in his favor; and
15  (4) that an injunction is in the public interest. *Am. Trucking Ass'ns, Inc. v. City of*
16  *Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). Because the burdens at this stage
17  track those at trial, Plaintiffs bear only "the initial burden of making a colorable
18  claim that [their] First Amendment rights have been infringed, or are threatened with
19  infringement," then "the burden shifts to the government to justify the restriction."
20  *Doe v. Harris*, 772 F.3d 563, 570 (9th Cir. 2014) (citation omitted).

21  **I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS**

22      **A.    AB 2571 Impermissibly Infringes on Plaintiffs' Right to Free**
23          **Speech**

24      Plaintiffs seek to engage in all manner of protected expression—including
25  political, ideological, and educational speech, as well as commercial speech—
26  concerning the lawful sale, possession, and use of "firearm-related products." But
27  the State has flatly banned Plaintiffs' intended speech on the basis of the content and
28  viewpoint of Plaintiffs' message—a message that California lawmakers hardly try to

8

conceal their contempt for. This Court should thus apply strict scrutiny and hold that Plaintiffs are likely to succeed on their claim that AB 2571 violates their free speech rights. But no matter what level of scrutiny applies, the result is the same—the State cannot "prov[e] the constitutionality of its actions." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000).

### 1.    The First Amendment Protects Plaintiffs' Speech

The First Amendment no doubt protects Plaintiffs' intended expression. It is not obscene, defamatory, or fraudulent. It does not advocate for imminent lawless action or solicit others to commit crimes. No, Plaintiffs' intended expression is not among those unprotected classes of speech. *See United States v. Alvarez*, 567 U.S. 709, 717 (2012). To the contrary, it involves speech that ranges from purely political to commercial—and it all pertains to the exercise of the right to keep and bear arms. *See, e.g.*, *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (holding that speech about "politics, nationalism, religion, or other matters of opinion" has long been considered the core of the First Amendment); *Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 563-64 (1980) (holding that commercial speech receives First Amendment protection if it is not misleading and concerns a lawful activity); *Nordyke v. Santa Clara*, 110 F.3d 707, 710 (9th Cir. 2009) (holding that an offer to sell legal firearms is protected speech).

For example, Plaintiff Junior Sports publishes *Junior Shooters*, a magazine *specifically* for youth shooters. Fink Decl. ¶ 3, Exs. 13-15. The magazine and website includes images and written depictions of minors lawfully enjoying the shooting sports. *Id.* ¶¶ 9-13, Exs. 13-16. It also features articles by and for youth endorsing "firearm-related products," *id.* ¶ 10, Ex. 16, as well as marketing for youth shooting organizations, competitions, and recreational events, *id.* ¶¶ 11, 13, Ex. 17. Finally, Junior Sports sells space for traditional advertising concerning "firearm-related products" that minors may lawfully possess in California. *Id.* ¶ 14, Ex. 18. To be clear, however, the advertising is not intended to encourage minors to

PLAINTIFFS' MEMORANDUM OF POINTS & AUTHORITIES

1    unlawfully buy firearms. *Id.* ¶ 15. Rather, it is intended for an audience of firearms-

2    savvy youths who might ask their parents to purchase "firearm-related products" for

3    their lawful use under California's exceptions for possession of firearms by minors.

4    *Id.* In short, the speech found within *Junior Shooters* runs the gamut of protected

5    speech. And there is hardly a page that could survive the State's draconian ban.

6          Plaintiffs CRPA and SAF sell and give away branded merchandise, like t-

7    shirts, hats, stickers, patches, and buttons, to promote the organization and solicit

8    memberships (including youth memberships) and other financial support, as well as

9    to spread pro-gun messages and slogans. Gottlieb Decl. ¶ 15; Minnich Decl. ¶ 14,

10   Exs. 24-27. Because CRPA and SAF are "firearm industry members," AB 2571

11   prohibits this otherwise protected speech. *See Hunt v. City of Los Angeles*, 601 F.

12   Supp. 2d 1158 (C.D. Cal. 2009), *aff'd* 638 F.3d 703 (9th Cir. 2011) ("The sale of

13   merchandise inextricably intertwined with a religious, political, ideological, or

14   philosophical message is fully protected by the First Amendment.").

15         Finally, all Plaintiffs engage, to some degree, in the advertising, marketing,

16   promoting, sponsoring, hosting, or facilitating of and participation in lawful

17   recreational and competitive shooting events, educational programs and firearm-

18   safety courses, or gun shows, specifically for youth or where youth are extremely

19   likely to be in attendance and where youth lawfully use or handle "firearm-related

20   products." Compl. ¶ 66; Coleman Decl. ¶¶ 4-7, Ex. 10; Fink Decl. ¶¶ 11, 13. Ex. 17;

21   Gomez Decl. ¶¶ 7-8; Gottlieb Decl. ¶¶ 6-9; Minnich Decl. ¶¶ 5-10, 12-13; Paredes

22   Decl. ¶ 4; Rangel Decl. ¶¶ 4-7, 10. These programs regularly involve a variety of

23   communications depicting minors enjoying or otherwise encouraging minors to

24   possess and use lawful firearms for lawful purposes. Compl. ¶¶ 67-68; Coleman

25   Decl. ¶ 6; Minnich Decl. ¶ 12, Ex. 23; Rangel Decl. ¶ 6. These programs often

26   include exhibitors that (1) promote membership in their organizations; (2) distribute

27   branded merchandise or merchandise with pro-gun slogans; or (3) engage in speech

28   promoting the use of firearms, the importance of firearm safety, and participation in

1   youth shooting programs.

2       So, while AB 2571 might technically ban misleading speech promoting the

3   unlawful sale of firearms to minors, it is in no way limited to such speech. In fact, it

4   ensnares a substantial amount of protected political, educational, and commercial

5   speech—likely far more of such speech than the arguably unprotected speech the bill

6   purports to target.

7       **2.      AB 2571 Is an Impermissible Content- and Viewpoint-based**
            **Restriction on Speech**
8

9       "[A]bove all else, the First Amendment means that the government has no

10  power to restrict expression because of its message, its ideas, its subject matter, or

11  its content." *Police Dep't v. Mosley*, 408 U.S. 92, 95 (1972). Government

12  restrictions that selectively ban speech based on its "particular subject matter" or "its

13  function or purpose" are "content-based regulations." *Reed v. Town of Gilbert*, 576

14  U.S. 155, 163 (2015). Relatedly, "the regulation of speech based on 'the specific

15  motivating ideology or the opinion or perspective of the speaker'—is a 'more

16  blatant' and 'egregious form of content discrimination'" known as viewpoint

17  discrimination. *Id.* at 2230. Content- and viewpoint-based speech restrictions are

18  *presumed invalid. Id.* Indeed, holding that a government restriction on speech is

19  content- or viewpoint-based is often determinative. *See, e.g.*, *Ark. Writers' Project v.*

20  *Ragland*, 481 U.S. 221, 231-32 (1987).

21      There can be little doubt that AB 2571 is the uniquely offensive law that *both*

22  content-based and viewpoint-discriminatory. Indeed, the law singles out speech

23  based on both its "particular subject matter"—certain speech "concerning firearm-

24  related products"—and its "function or purpose"—speech "the primary *purpose* of

25  which is to encourage recipients … to purchase or use the product or service." Cal.

26  Bus. & Prof. Code § 22949.80(c)(6) (emphasis added). Plaintiffs know of no other

27  state law that flatly bans speech "concerning" a product that both minors and adults

28  have a statutory and constitutional right to use for lawful purposes. Even restrictions

on advertising of alcohol, tobacco, or cannabis to children are irrelevant because—unlike possession and use of firearms, Cal. Penal Code §§ 29615, 29655—it is not legal for minors to possess or use those substances in California. And none of those products are constitutionally protected.

Worse yet, by targeting only the speech of organizations formed to promote the possession and use of "firearm-related products," Cal. Bus. & Prof. Code § 22949.80(c)(4), which necessarily includes nonprofits like Plaintiffs CYSSA, RCYCSS, CRPA, CRPA Foundation, GOC, and SAF, the challenged law blatantly discriminates against the viewpoint of the speaker. For instance, the law prohibits Plaintiffs CRPA and SAF from engaging in noncommercial speech soliciting memberships for youth and using branded merchandise, like hats, t-shirts, stickers, and buttons, to promote their organizations, solicit memberships, and spread their pro-gun messages. *Id.* § 22949.80(a), (c)(4). It does not, however, prohibit *anti-gun* organizations, like Moms Demand Action for Gun Sense in America and Gun Free Kids, from soliciting youth memberships or using branded merchandise bearing anti-gun messages and slogans—*or even images of unlawful firearms*—to promote their organizations, solicit financial support, and spread their political messages.

This discriminatory impact is not hypothetical. It is already happening. In a recorded statement posted to his official Twitter account upon the signing of AB 2571, Governor Newsom displayed advertising from WEE1 Tactical of their JR-15, a semiautomatic firearm that was designed for smaller, younger shooters. But because he is not a "firearm industry member" seeking to urge his audience to "purchase or use the product"—but rather an anti-gun politician seeking to disparage those whose viewpoints do not align with his—Governor Newsom is free to display the very same images WEE1 is now barred from distributing.[3]

---

[3] Rosalio Ahumada, *Gavin Newsom Signs New Gun Safety Laws Targeting Illegal Weapons, Marketing to Kids*, Sac. Bee (July 1, 2022), *available at* https://www.sacbee.com/news/local/crime/article263108183.html (the full video of Newsom's remarks is available on the Sacramento Bee website).

PLAINTIFFS' MEMORANDUM OF POINTS & AUTHORITIES

### 3.     AB 2571 Cannot Survive Heightened Scrutiny

Because AB 2571 is a content-based speech restriction on noncommercial speech, it is presumed invalid and may be upheld only if the government proves it is "narrowly tailored to serve [a] compelling state interest" under strict scrutiny. *Reed*, 576 U.S. at 163. But even under the somewhat less-demanding intermediate scrutiny, the government must still prove AB 2571 is "narrowly tailored to serve a significant government interest." *Madsen v. Women's Health Ctr. Inc.*, 512 U.S. 753, 764 (1994). The means employed must be "closely drawn" to avoid "unnecessary abridgment" of protected conduct. *McCutcheon v. FEC*, 572 U.S. 185, 199 (2014). AB 2571 is not "closely drawn" to any legitimate government interest, and it cannot pass constitutional muster under any test the Court might apply.

First, the State has no actual compelling or substantial interest in banning Plaintiffs' political and educational speech concerning "firearm-related products." Indeed, the State's purported interests in "ensuring that minors do not possess [firearms]" and "protecting its citizens … from gun violence," Req. Jud. Ntc. Ex. 1 at 3, Ex. 3 at 11, are inconsistent with the fact that, under California law, minors can and do literally possess firearms and related products for a myriad of legal reasons. Cal. Penal Code § 29615 (firearms); *id.* § 29655 (ammunition).

What's more, the State has no legitimate interest in simply curbing the mere "proliferation of firearms to and among minors." *Id.* Ex. 1 at 1. Even minors have at least some right to possess firearms for lawful purposes. *See Ezell v. City of Chicago*, 846 F.3d 888, 896 (7th Cir. 2017) (holding that "there's zero historical evidence that firearm training for [minors] is categorically unprotected"). The State, however, apparently believes that the exercise of that right by youths—even with their parents' consent and supervision—is unwise. So it seeks to shield them from (some) speech that might encourage them to engage in the shooting sports and, ultimately, become the "next generation of [Second Amendment] advocates and customers" of firearms. Req. Jud. Ntc., Ex. 6 at 9. But the State may not ban

13

1    constitutionally protected speech to indirectly advance an illegitimate interest in

2    reducing the demand for engaging in constitutionally protected conduct. And while

3    the State has a "legitimate power to protect children from harm," that authority

4    "does not include a free-floating power to restrict the ideas to which children may be

5    exposed." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 798 (2011).

6        Really, the State's interest was an animus-driven desire to eradicate a vital

7    outlet for the exchange of ideas related to the lawful use of firearms and for the

8    preservation of the "gun culture" by engaging youth in the shooting sports. Both on

9    its face and as evidenced by its legislative history, this appears to be the very intent

10   of AB 2571. Indeed, the Senate Judiciary Committee's Bill Analysis quotes heavily

11   from a 2016 report that disparagingly "outlines the [so-called] problem" of the "gun

12   industry's" attempts "to attract future legal gun owners" and "recruit[] children into

13   the gun culture." Req. Jud. Ntc., Ex. 6 at 7-8 (quoting Josh Sugarman, *"Start Them*

14   *Young" How the Firearms Industry and Gun Lobby Are Targeting Your Children*

15   (Feb. 2016)). As the bill's author put it, the firearm industry:

16       [E]ncourages children to hold a gun as soon as they can walk.
         Gun manufacturers view children as *their next generation of*
17       ***advocates** and customers* and target them with slick
         advertising—even children's books. The advertising for these
18       weapons is shameless. Children in California are not allowed
         to buy or own a gun, yet they are advertised to across all
19       forms of media with cartoons, video games, and social
         media.
20
                                    ….
21       Guns are not a toy. Guns are a tool of death. Taking away
         this *tool of violent indoctrination* from the gun industry is a
22       vital step forward to protect California's children.

23   *Id.* at Ex. 6 at 9, Ex. 8 at 5 (emphases added). Setting aside the author's readily

24   apparent animus, it is clear that the intent of AB 2571 was not simply to prevent

25   unlawful purchase or use of firearms by minors or to curb gun violence, but to

26   prevent "firearm industry members" from "indoctrinating" youth to become

27   "advocates" for the Second Amendment and "gun culture" in America.

28       But even if the State could point to some sufficient interest in public safety, it

cannot prove that AB 2571 is appropriately tailored to that end. The requirement of narrow tailoring requires the government to target the exact wrong it seeks to remedy—and no more. *Frisby v. Schultz*, 487 U.S. 474, 485 (1988) ("A statute is narrowly tailored if it targets and eliminates no more than the exact source of the evil it seeks to remedy."). AB 2571 comes nowhere near meeting this exacting requirement. To the contrary, it sweeps up all communications "*concerning* firearm-related products" made by "firearm industry members" "in exchange for monetary compensation" that are "designed, intended, or reasonably appear[] to be attractive minors." Cal. Bus. & Prof. Code § 22949.80(a)(1), (c)(6) (emphasis added). This includes communications promoting lawful activities, including recreational events, competitions, shooting skills courses, and safety programs specifically for youth or where youth are likely to be in attendance and where youth lawfully use and handle "firearm-related products." It also prohibits pro-gun organizations from soliciting members through marketing to and providing memberships for minors.

Even assuming AB 2571 were not written with the intention of barring these programs (and the advertising necessarily attendant to them), that is its effect. Indeed, AB 2571 is so vague that Plaintiffs (and others similarly situated) have begun to curtail all manner of speech that could arguably fall under its overly broad ban. Compl. ¶115.[4] Thus, AB 2571 is likely to chill (and has already chilled) a wide range of protected activities. This "chilling" also offends the First Amendment. *Edge v. City of Everett*, 929 F.3d 657, 664-65 (9th Cir. 2019) (requiring "specificity of laws" when "First Amendment freedoms are" implicated because unclear laws might "chill[] protected speech or expression by discouraging participation").

### 4.    Even If AB 2571 Restricted Only Commercial Speech, It Fails the Test Set Forth in *Central Hudson*

The fact that AB 2571 also restricts purely commercial speech—speech that does no more than propose a commercial transaction—does not change the result.

---

[4] *See, e.g.*, Coleman Dec. ¶¶ 8-10; Fink Decl. ¶¶ 16-19, Exs. 19-20; Minnich Decl. ¶¶ 7-8, 11, 15; *see also* Canon Decl. ¶¶ 8-12; Fitzgerald Decl. ¶¶ 4-10.

Such speech receives First Amendment protection if it is not misleading and concerns a lawful activity. *Cent. Hudson Comm'n*, 447 U.S. at 563-64. Government restrictions on such speech are constitutional *only* if they directly advance a substantial government interest and are not broader than necessary to serve that interest. *Id.* at 564.[5] AB 2571 fails the *Central Hudson* test at every step.

### a. AB 2571 restricts non-misleading speech that concerns lawful activity.

Again, AB 2571 does not merely restrict misleading speech promoting the unlawful sale of firearms to minors. Argument, Part I.A.1, *supra*. Even still, the State has suggested that Plaintiffs' intended speech is unprotected (and may thus be banned) because, in its view, the "truthfulness" of "marketing materials in which firearm-related products are attractive to minors" is "debatable." Req. Jud. Ntc., Ex. 3 at 10-11. For support, the State made the exaggerated claim that, "in most cases," minors "cannot lawfully possess" firearms in California. *Id.* While it may be *technically* true that "lawful possession of a firearm by a minor is … the [statutory] exception rather than the rule," *id.* at 11, the exception is so broad that it nearly swallows the rule. To be clear, minors may legally possess firearms and ammunition when they are engaged in or traveling to or from recreational sports if a parent or guardian is present or if the minor is accompanied by another responsible adult and their parent has given written consent. Cal. Penal Code §§ 29615(a)-(b), 29655; Barvir Decl., Ex. 32 (Department of Fish & Wildlife form seeking parental consent for minor to "handle, manipulate, and/or use firearms" during the state hunter's safety course). If the minor's parent consents, and the minor is at least 16 or is

---

[5] Though this is currently the test for so-called "commercial speech" that this Court is likely bound to apply, modern case law is trending toward extending *full* First Amendment protection to all speech. *See Sorrell v. IMS Health, Inc.*, 564 U.S. 552 (2011). Plaintiffs thus reserve their right to advocate for the application of strict scrutiny to AB 2571's restrictions on "commercial speech" on appeal. In fact, this case illustrates well why commercial speech should be afforded full protection. For the language of AB 2571 makes it nearly impossible to tease out a clear distinction between commercial and noncommercial speech. The two types of speech are so inextricably intertwined that nothing less than full protection is appropriate.

1    engaging in recreational sports on "lands lawfully possessed by their parent or

2    guardian," no adult even need be present. Cal. Penal Code § 29615(c)-(d). And not

3    for nothing, but federal law includes "all able-bodied male [citizens] at least 17

4    years of age" as part of the "militia." 10 U.S.C. § 246. So not firearm possession by

5    minors is not only legal under state law, but federal law also anticipates that some

6    will be equipped with firearms and trained in their use if called upon to serve.

7        This fact was not lost on the Legislature. To the contrary, the Assembly

8    Judiciary Committee's analysis recognizes that "advertising and marketing materials

9    that encourage minors to possess and use firearms *may or may not* concern a lawful

10   activity." Req. Jud. Ntc., Ex. 3 at 11 (emphasis added). But instead of targeting only

11   speech promoting unlawful activity, the State chose to ban even speech concerning

12   legal (and constitutionally protected) conduct. "Even if [California] could prohibit

13   advertisements reading, 'Hey kids, buy [guns] here,' [AB 2571] sweep[s] much

14   more broadly than that." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 579 (2001)

15   (Thomas, J., concurring). Indeed, it targets any communication "designed, intended,

16   or [that] reasonably appears to be attractive to minors" and "concern[s] any firearm-

17   related product," if the purpose of the speech is to encourage the "purchase or use

18   [of] the product or service." Cal. Bus. & Prof. Code § 22949.80(a)(1), (c)(6). That

19   includes speech that encourages the *lawful* use of firearm-related products by not

20   only minors, but adults as well. Req. Jud. Ntc., Ex. 2 at 6.

              **b.    The State has no substantial interest in banning
21                    Plaintiffs' protected commercial speech.**

22

23       The second prong of *Central Hudson* requires the State to demonstrate that it

24   has a substantial governmental interest in the restriction of commercial speech. 447

25   U.S. at 566. The findings of AB 2571 advance two interests it declares are

26   "compelling"—"ensuring that minors do not possess [firearms]" and protecting

27   Californians from gun violence. Req. Jud. Ntc., Ex. 1 at 3. As discussed above,

28   neither interest appears genuine, and both are undercut by the State's laws expressly

1   allowing minors to possess firearms for lawful purposes. Plaintiffs nevertheless

2   assume, without conceding that it is the State's actual interest, that the State

3   generally has a substantial interest in preventing violence against its citizens.

### c.   AB 2571 does not directly and materially advance the State's purported interests.

6   The third prong of *Central Hudson* requires the government to show "that the

7   speech restriction directly and materially advances the asserted governmental

8   interest[s]." *Greater New Orleans Broad. Ass'n v. United States*, 528 U.S. 173, 188

9   (1999). "This burden requires more than 'mere speculation or conjecture; rather, a

10   governmental body seeking to restrain a restriction on commercial speech must

11   demonstrate that the harms it recites are real and that its restriction will in fact

12   alleviate them to a material degree.'" *Tracy Rifle & Pistol LLC v. Harris*, 339 F.

13   Supp. 3d 1007, 1013 (E.D. Cal. 2018) (quoting *Edenfield v. Fane*, 507 U.S. 761,

14   770-71 (1993)). This prong is "critical; otherwise, 'a State could with ease restrict

15   commercial speech in the service of other objectives that could not themselves

16   justify a burden on commercial expression.'" *Rubin v. Coors Brewing Co.*, 514 U.S.

17   476, 487 (1995) (quoting *Edenfield*, 507 U.S. at 771)).

18   The Assembly Judiciary Committee's analysis claims that AB 2571 "directly

19   advances its stated governmental interests to limit the exposure of, and consumption

20   by, minors to such advertising and marketing material, given the lethality (and

21   general illegality for minors) of the products being advertised." Req. Jud. Ntc., Ex. 3

22   at 11. The argument rests on at least two faulty premises. First, it builds on the

23   deceptive claim that minors may not lawfully possess firearms in California, while

24   ignoring the fact that the law bars even communications about expressly lawful

25   recreational and training purposes—the very purposes that Plaintiffs'

26   communications serve. But more importantly, it subtly morphs the State's likely

27   substantial interest in protecting minors from physical harm to an illegitimate

28   interest in limiting the exposure of minors to certain speech the Legislature finds too

18

1    harmful for them to hear. *See Erznoznik v. Jacksonville*, 422 U.S. 205, 213-14

2    (1975) (holding that protected speech "cannot be suppressed solely to protect the

3    young from ideas or images that a legislative body thinks unsuitable for them").

4          Essentially, the State speculates that by silencing speech that promotes the use

5    of firearms in ways that might appear attractive to minors, the State might reduce the

6    demand for possession of firearms by minors and thereby serve its interest in

7    curbing gun violence. At best, this is an impermissible restriction on speech that

8    only indirectly serves the State's public safety interest—if it serves it at all. *Sorrell*,

9    564 U.S. at 554-55 (holding that the state may not "achieve its policy objectives

10   through the indirect means of restraining certain speech by certain speakers").

11         At worst, it is the sort of "paternalistic approach" the Supreme Court has long

12   condemned. *See Va. Bd. of Pharm. v. Va. Citzs. Consumer Council*, 425 U.S. 748,

13   770 (1976). By denying Californians access to truthful information concerning

14   lawful firearm-related products, the State seeks to deter minors' supposedly harmful,

15   but legal, possession and use of firearms, as well as their parents' exercise of their

16   right to consent to such use by their minor children. "There is, of course, an

17   alternative to this highly paternalistic approach," the Supreme Court once held.

18   "That alternative is to assume that this information is not in itself harmful, that

19   people will perceive their own best interests if only they are well enough informed,

20   and that the best means to that end is to open the channels of communication rather

21   than to close them." *Id.*, *see also Thompson v. W. States Med. Ctr.*, 535 U.S. 357,

22   374 (2002) (holding that the state cannot justify content-based restrictions based on

23   the "fear that people would make bad decisions if given truthful information").

24
25
               **d.**      **AB 2571 is far more extensive than necessary to**
                        **achieve the State's purported interests.**

26         The last prong of *Central Hudson* requires the State to show that the speech

27   restriction "is no more extensive than necessary to further" its purported interests.

28   447 U.S. at 569-70. Even commercial speech restrictions purportedly aimed at

1   protecting minors must be narrowly drawn to achieving an asserted state interest.

2   *See, e.g.*, *Lorillard*, 533 U.S. at 565-66 (striking restrictions on tobacco marketing

3   likely to be observed by children). Indeed, "minors are entitled to a significant

4   measure of First Amendment protection, and only in relatively narrow and well-

5   defined circumstances may the government bar public dissemination of protected

6   materials to them." *Erznoznik*, 422 U.S. at 212-13. So even if the Court assumes AB

7   2571 directly advances some substantial interest, the law must still be struck down

8   because it is far more extensive than necessary to achieve that interest.

9        AB 2571 includes communications that are equally attractive to adults who

10   have a right to obtain information about such products to make informed decisions

11   for both themselves and their children. As the bill's legislative history confirms, "the

12   prohibition on marketing of firearms that are 'attractive to children' applies whether

13   the media is directed to children or a general audience. In other words, it applies to

14   all marketing, regardless of the target audience." Req. Jud. Ntc., Ex. 2 at 6. AB 2571

15   thus impinges on the protected interest of "firearm industry members" "in conveying

16   truthful information about their products to adults," and adults' "corresponding

17   interest in receiving truthful information about [firearm-related] products" to make

18   informed decisions for both themselves and their children. *Lorillard*, 533 U.S. at

19   564. It is also "seriously overinclusive because it abridges the First Amendment

20   rights of young people whose parents … think [the shooting sports] are a harmless

21   [even beneficial] pastime." *See Entm't Merchs. Ass'n*, 564 U.S. at 805.

22        But even if AB 2571 targeted a narrower class of speech, it would remain far

23   too broad for the simple reason that the State "has various other laws at its disposal

24   that would allow it to achieve its stated interests while burdening little or no

25   speech." *Valle Del Sol v. Whiting*, 709 F.3d 808, 826 (9th Cir. 2013). "[I]f the

26   [g]overnment could achieve its interests in a manner that does not restrict speech, or

27   that restricts less speech, the [g]overnment must do so." *Thompson*, 535 U.S. at 371.

28   Among the many options available to the State, the most obvious is to directly

1    regulate the very conduct with which the State purports to be concerned—or to

2    enforce its existing regulations on that conduct. *See, e.g.*, *Valle Del Sol*, 709 F.3d at

3    826-27 (holding that Arizona could further its interest in traffic safety by enforcing

4    existing traffic regulations); *Lorillard*, 533 U.S. at 586 (Thomas, J., concurring)

5    (observing that "Massachusetts already prohibits the sale of tobacco to minors, but it

6    could take steps to enforce that prohibition more vigorously").

7         "If the [State] considers its existing safeguards inadequate to combat [firearm

8    misuse by minors], it may pass additional direct regulations within constitutionally

9    permissible boundaries." *Tracy Rifle*, 339 F. Supp. 3d at 1018-19.[6] Or it may

10   counteract firearm advertising with which it disagrees with "more speech, not

11   enforced silence." *Lorillard*, 533 U.S. at 586 (Thomas, J., concurring). For example,

12   if the State is concerned about the dangers of firearms in kids' hands, it could launch

13   an educational campaign promoting safe firearm handling, storage, and use or

14   reminding retailers of their responsibilities with regard to sales to minors. What it

15   *cannot* do is flatly ban a broad class of truthful advertising concerning lawful

16   products simply because some of its viewers might be inspired to act on it

17   unlawfully. If it could, "then there is no limit to the State's censorial power."

18   *Lorillard*, 533 U.S. at 580 (Thomas, J., concurring).

19        **B.    AB 2571 Impermissibly Infringes on Plaintiffs' Right to Associate**

20        The First Amendment protects not only the right of free speech, but also the

21   right to freely associate. U.S. Const., amend. I. The freedom to associate often

22   merges with the right to free expression because "[e]ffective advocacy of both

23   public and private points of view, particularly controversial ones, is undeniably

24   enhanced by group association." *NAACP v. Patterson*, 357 U.S. 449, 462 (1958).

25   "Governmental action which may have the effect of curtailing" this right "is subject

26

27        [6] The legislative history confirms that the State "could advance its interest to
28   keep these attractive [to children] yet deadly products out of the stream of commerce
     without suppressing otherwise lawful speech" by directly restricting the sale of
     firearms designed or intended for children. Req. Jud. Ntc., Ex. 3 at 15.

21

1   to the *closest* scrutiny." *Id.* at 461-62. So for the same reasons AB 2571 offends the

2   First Amendment right to speech, it also offends the right of Plaintiffs to associate.

3       Indeed, AB 2571 casts such a wide net that it prohibits Plaintiffs from

4   advertising, marketing, or arranging for the placement of advertising or marketing

5   concerning their various firearm-related programs and services, where Plaintiffs

6   peacefully and lawfully assemble and associate with each other and members of the

7   public, including youth, to engage in expressive activities related to "gun culture,"

8   the lawful use of firearms, and preservation of the Second Amendment. *See* Factual

9   Background, Part II, *supra*. It also directly prohibits Plaintiffs CRPA and SAF from

10  advertising, marketing, or arranging for the placement of advertising or marketing

11  paid memberships to youth and from distributing branded merchandise to promote

12  membership in their organizations. *Id.* The State's interest in restricting Plaintiffs'

13  right to free association is neither compelling nor significant. *See* Argument, Part

14  I.B. It is not narrowly tailored, and it is not the least restrictive means. *Id.* Thus, AB

15  2517 cannot survive heightened judicial scrutiny.

16      **C.     AB 2571 Denies Plaintiffs Equal Protection Under the Law**

17      Singling out Plaintiffs because of the content of their speech, as AB 2571

18  does, also violates Plaintiffs' fundamental rights under the Equal Protection Clause.

19  U.S. Const. amend. XIV. The Supreme Court, long ago, recognized that *both* the

20  Equal Protection Clause *and* the First Amendment forbid the government from

21  granting "the use of a forum to people whose views it finds acceptable, but

22  deny[ing] use to those wishing to express less favored or more controversial views."

23  *Mosley*, 408 U.S. at 96. If unequal treatment occurs in the context of exercising a

24  fundamental right, or the government is motivated by animus toward a disfavored

25  group, courts apply heighted scrutiny. *See Loving v. Virginia*, 388 U.S. 1, 11 (1967).

26      AB 2571, which targets only "firearm industry members," *including*

27  *organizations whose purpose is to preserve and promote the Second Amendment*

28  *right to keep and bear arms*, is undeniably infused with the State's desire to harm

this politically unpopular group. *See* Argument, Part I.A.3, *supra*. It was introduced at the direction of the popular governor of California, who does not believe that those who engage in or support the now-banned speech are "decent human beings" or have "common sense." Ahumada, *supra* n. 3; Compl. ¶¶ 42, 105; Barvir Decl., Ex. 31; Req. Jud. Ntc., Ex. 2 at 3, Ex. 6 at 2, Ex. 8 at 1; *see also* Barvir Decl., Exs. 29-31. And the bill's legislative history is littered with references to the State's concerns with the "problem" of exposing children to the "gun culture." Compl. ¶¶ 99-104; Req. Jud. Ntc., Ex. 2 at 4-5, Ex. 3 at 1, 9-10, Ex. 6 at 7-8, Ex. 8 at 4-5. They're tomorrow's voters, after all, and the State simply cannot stand for them having a positive experience with firearms. *See* Compl. ¶ 102; Barvir Decl., Ex. 28.

Once again, the State cannot justify AB 2571 under either heightened scrutiny for purposes of the First Amendment, and it cannot justify it for purposes of equal protection either. Because the law is not narrowly tailored to serve some compelling government interest, it unconstitutionally denies Plaintiffs equal protection under the law. It is invalid and should be enjoined.

## II. PLAINTIFFS ARE SUFFERING IRREPARABLE HARM AND WILL CONTINUE TO SUFFER SUCH HARM IF THE COURT DENIES PRELIMINARY RELIEF

If this Court concludes that Plaintiffs are likely to succeed on any one of their alleged constitutional violations, the remaining preliminary injunction factors follow readily. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). In the First Amendment context, such harm is particularly acute. Indeed, the Supreme Court has long held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373.

1    **III.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST WARRANT RELIEF**

2           When the government is a party, the final two factors of the preliminary

3    injunction test—whether the balance of equities and the public interest—merge.

4    *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Court's inquiry thus weighs the

5    interests of the Plaintiffs, the government, and the public, balancing the relative

6    harms to each should preliminary relief be granted or denied. Application of this test

7    to the case at bar plainly favors injunctive relief.

8           The Ninth Circuit has consistently held that when challenging government

9    action that affects the exercise of constitutional rights—especially First Amendment

10   freedoms—"[t]he balance of equities and the public interest … tip *sharply* in favor

11   of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir.

12   2009) (emphasis added). Truly, "[i]t is always in the public interest to prevent the

13   violation of a party's constitutional rights. *Index Newsps. LLC v. U.S. Marshalls*

14   *Serv.*, 977 F.3d 817 (9th Cir. 2020). Certainly, there is a "'significant public interest'

15   in upholding free speech principles, as the 'ongoing enforcement of the potentially

16   unconstitutional [law] … would infringe not only the free expression interests of

17   plaintiffs, but also the interests of other people' subjected to the same restrictions."

18   *Id.* (citation omitted). "[E]nforcement of an unconstitutional law," on the other hand,

19   "is always contrary to the public interest." *Gordon v. Holder*, 721 F.3d 638, 653

20   (D.C. Cir. 2013); *see also Am. Civ. Liberties Union v. Alvarez*, 679 F.3d 583, 590

21   (7th Cir. 2012) ("[T]he public interest is not harmed by preliminarily enjoining the

22   enforcement of a law that is probably unconstitutional.")

23          Enjoining the enforcement of AB 2571 will end the irreparable harm Plaintiffs

24   are currently suffering, including the violation of their rights to free speech, free

25   association and assembly, and equal protection under the law, as well as the state's

26   improper interference with their missions. But not only Plaintiffs' rights are at stake,

27   so too are the rights of all people seeking to engage in protected expression barred

28   by the state's extraordinarily broad ban, as well as those who seek to hear the

**PLAINTIFFS' MEMORANDUM OF POINTS & AUTHORITIES**

messages the state has banished. These interests far outweigh whatever burden the State might trot out. For the state "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). To be sure, the State may have a general public safety interest in preventing "gun violence" or even a specific interest in stopping minors from illegally obtaining firearms. But enforcement of AB 2571 does not serve those interests in any meaningful (or appropriately tailored) way—particularly because the State can readily further such goals by enforcing existing laws directly prohibiting the unlawful possession and sale of firearms to and by minors.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Preliminary Injunction and enjoin the enforcement of section 22949.80.

Dated:  July 19, 2022          **MICHEL & ASSOCIATES, P.C.**

                              *s/ Anna M. Barvir*
                              Anna M. Barvir
                              Counsel for Plaintiffs Junior Sports Magazines
                              Incorporated, Raymond Brown, California
                              Youth Shooting Sports Association, Inc.,
                              Redlands California Youth Clay Shooting
                              Sports Inc., California Rifle & Pistol
                              Association, Inc., The CRPA Foundation, and
                              Gun Owners of California

Dated:  July 19, 2022          **LAW OFFICES OF DONALD KILMER, APC**

                              *s/ Donald Kilmer*
                              Donald Kilmer
                              Counsel for Plaintiff Second Amendment
                              Foundation

## CERTIFICATE OF SERVICE
### IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Junior Sports Magazines, Inc., et al. v. Bonta*
Case No.:     2:22-cv-04663-CAS (JCx)

IT IS HEREBY CERTIFIED THAT:

  I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

  I am not a party to the above-entitled action. I have caused service of:

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Kevin J. Kelly, Deputy Attorney General
kevin.kelly@doj.ca.gov
300 South Spring Street, Suite 9012
Los Angeles, CA 90013
 *Attorney for Defendant*

  I declare under penalty of perjury that the foregoing is true and correct.

Executed July 20, 2022.

Laura Palmerin

CERTIFICATE OF SERVICE