C.D. Michel-SBN 144258
Anna M. Barvir-SBN 268728
Tiffany D. Cheuvront-SBN 317144
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Fax: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs Junior Sports Magazines Inc., Raymond Brown, California
Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting
Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA
Foundation, and Gun Owners of California, Inc.

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorney for Plaintiff Second Amendment Foundation

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNIOR SPORTS MAGAZINES INC., RAYMOND BROWN, CALIFORNIA YOUTH SHOOTING SPORTS ASSOCIATION, INC., REDLANDS CALIFORNIA YOUTH CLAY SHOOTING SPORTS, INC., CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, THE CRPA FOUNDATION, AND GUN OWNERS OF CALIFORNIA, INC.; and SECOND AMENDMENT FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> ROB BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-10, <br><br> Defendant. | CASE NO: 2:22-cv-04663-CAS (JCx) <br><br> **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> Hearing Date:   August 22, 2022 <br> Hearing Time:  10:00 a.m. <br> Courtroom:     8D <br> Judge:         Christina A. Snyder |

TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

Under Federal Rule of Evidence 201, Plaintiffs Junior Sports Magazines Inc., Raymond Brown, California Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA Foundation, Gun Owners of California, Inc., and Second Amendment Foundation (collectively, "Plaintiffs") respectfully request that the Court take judicial notice of the following documents in support of Plaintiffs' motion for preliminary injunction:

1. **Assembly Bill 2571, 2021-2022 Reg. Sess. (Cal. 2022)**. A true and correct copy of this document is attached as **Exhibit 1**. Exhibit 1 is a public record of the California State Legislature that I accessed on or about July 6, 2022, from https://leginfo.legislature.ca.gov/faces/billSearchClient.xhtml., the official California Legislative Information website, which publishes official legal history and government documents saved in a fully searchable, image-based format.

2. **Assembly Privacy & Consumer Prot. Comm., Bill Analysis Re: AB 2571 (Bauer-Kahan) – As Amended April 7, 2022, 2021-2022 Reg. Sess. (Cal. 2022).** A true and correct copy of this document is attached as **Exhibit 2**. Exhibit 2 is a public record of the California State Legislature that I accessed on or about July 6, 2022, from https://leginfo.legislature.ca.gov/faces/billSearchClient.xhtml., the official California Legislative Information website, which publishes official legal history and government documents saved in a fully searchable, image-based format.

3. **Assembly Judiciary Comm., Bill Analysis Re: AB 2571 (Bauer-Kahan) – As Amended April 7, 2022, 2021-2022 Reg. Sess. (Cal. 2022).** A true and correct copy of this document is attached as **Exhibit 3**. Exhibit 3 is a public record of the California State Legislature that I accessed on or about July 6, 2022, from https://leginfo.legislature.ca.gov/faces/billSearchClient. xhtml., the official California Legislative Information website, which publishes official legal history and government documents saved in a fully searchable, image-based format.

1          4.     **Assembly Appropriations Comm., Bill Analysis Re: AB 2571**

2    **(Bauer-Kahan) – As Amended April 27, 2022, 2021-2022 Reg. Sess. (Cal.**

3    **2022).** A true and correct copy of this document is attached as **Exhibit 4**. Exhibit 4

4    is a public record of the California State Legislature that I accessed on or about July

5    6, 2022, from https://leginfo.legislature.ca.gov/faces/billSearchClient. xhtml., the

6    official California Legislative Information website, which publishes official legal

7    history and government documents saved in a fully searchable, image-based format.

8          5.     **Assembly, Assembly Floor Analysis Re: AB 2571 (Bauer-Kahan**

9    **and Gipson) – As Amended April 27, 2022, 2021-2022 Reg. Sess. (Cal. 2022).** A

10   true and correct copy of this document is attached as **Exhibit 5**. Exhibit 5 is a

11   public record of the California State Legislature that I accessed on or about July 6,

12   2022, from https://leginfo.legislature.ca.gov/faces/billSearchClient. xhtml., the

13   official California Legislative Information website, which publishes official legal

14   history and government documents saved in a fully searchable, image-based format.

15         6.     **Senate Judiciary Comm., Bill Analysis Re: AB 2571 (Bauer-**

16   **Kahan), 2021-2022 Reg. Sess. (Cal. 2022).** A true and correct copy of this

17   document is attached as **Exhibit 6**. Exhibit 6 is a public record of the California

18   State Legislature that I accessed on or about July 6, 2022, from

19   https://leginfo.legislature.ca.gov/faces/billSearchClient. xhtml., the official

20   California Legislative Information website, which publishes official legal history

21   and government documents saved in a fully searchable, image-based format.

22         7.     **Senate Appropriations Comm. Bill Analysis Re: AB 2571 (Bauer-**

23   **Kahan), 2021-2022 Reg. Sess. (Cal. 2022).** A true and correct copy of this

24   document is attached as **Exhibit 7**. Exhibit 7 is a public record of the California

25   State Legislature that I accessed on or about July 6, 2022, from

26   https://leginfo.legislature.ca.gov/faces/billSearchClient. xhtml., the official

27   California Legislative Information website, which publishes official legal history

28   and government documents saved in a fully searchable, image-based format.

REQUEST FOR JUDICIAL NOTICE

1         8.    **Senate Rules Comm., Senate Floor Analysis Re: AB 2571 (Bauer-**

2    **Kahan and Gipson), 2021-2022 Reg. Sess. (Cal. 2022).** A true and correct copy of

3    this document is attached as **Exhibit 8**. Exhibit 8 is a public record of the California

4    State Legislature that I accessed on or about July 6, 2022, from

5    https://leginfo.legislature.ca.gov/faces/billSearchClient. xhtml., the official

6    California Legislative Information website, which publishes official legal history

7    and government documents saved in a fully searchable, image-based format.

8         9.    **Assembly, Concurrence in Senate Amendments Re: AB 2571**

9    **(Bauer-Kahan and Gipson) – As Amended June 15, 2022.** A true and correct

10   copy of this document is attached as **Exhibit 9**. Exhibit 9 is a public record of the

11   California State Legislature that I accessed on or about July 6, 2022, from

12   https://leginfo.legislature.ca.gov/faces/billSearchClient. xhtml., the official

13   California Legislative Information website, which publishes official legal history

14   and government documents saved in a fully searchable, image-based format.

15        A court shall take judicial notice of such a fact if requested by a party and

16   supplied with the necessary information. Fed. R. Evid. 201(d). Judicial notice of

17   Exhibits 1 through 9 is proper because the documents for which this request is

18   made are "capable of accurate and ready determination by resort to sources who

19   accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Indeed, "[a]

20   trial court may presume that public records are authentic and trustworthy."

21   *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir. 1999) (taking judicial

22   notice of agency report).

23        What's more, "[l]egislative history is properly a subject of judicial notice."

24   *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012); *Chaker v. Crogan*,

25   428 F.3d 1215, 1223 n.8 (9th Cir. 2005) (discussing legislative history of California

26   statute). Further, "a federal court must take judicial notice of state statutes 'without

27   plea or proof.'" *Getty Petroleum Mktg., Inc. v. Capital Terminal Co.*, 391 F.3d 312,

28   323 (1st Cir. 2004) (citing *Lamar v. Micou*, 114 U.S. 218, 223 (1885)).

REQUEST FOR JUDICIAL NOTICE

1         Here, the accuracy of all the public records subject to Plaintiffs' Request for

2   Judicial Notice, consisting of enacted legislation and legislative history, cannot

3   reasonably be questioned. Judicial notice of these records is therefore appropriate.

4

5    Dated:  July 19, 2022              **MICHEL & ASSOCIATES, P.C.**

6                                       *s/ Anna M. Barvir*
                                        Anna M. Barvir
7                                       Counsel for Plaintiffs Junior Sports
                                        Magazines, Inc., Raymond Brown, California
8                                       Youth Shooting Sports Association, Inc.,
                                        Redlands California Youth Clay Shooting
9                                       Sports, Inc., California Rifle & Pistol
                                        Association, Incorporated, The CRPA
10                                      Foundation, and Gun Owners of California,
                                        Inc.
11
     Dated:  July 19, 2022              **LAW OFFICES OF DONALD KILMER, APC**
12
                                        *s/ Donald Kilmer*
13                                      Donald Kilmer
                                        Counsel for Plaintiff Second Amendment
14                                      Foundation

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1



# Assembly Bill No. 2571

## CHAPTER 77

An act to add Chapter 39 (commencing with Section 22949.80) to Division 8 of the Business and Professions Code, relating to firearms, and declaring the urgency thereof, to take effect immediately.

[Approved by Governor June 30, 2022. Filed with Secretary of State June 30, 2022.]

### LEGISLATIVE COUNSEL'S DIGEST

AB 2571, Bauer-Kahan. Firearms: advertising to minors.

Existing law generally regulates manufacturers and dealers of firearms. Under existing law, commercial speech or advertising is generally protected under the First Amendment to the Constitution of the United States. Existing laws and regulations, however, restrict the content and placement of advertising and promotional marketing of alcohol, cannabis, and tobacco to protect minors.

This bill would prohibit a firearm industry member, as defined, from advertising or marketing any firearm-related product, as defined, in a manner that is designed, intended, or reasonably appears to be attractive to minors. The bill would also prohibit a firearm industry member from using, disclosing, or compiling a minor's personal information if it is intended to market or advertise a firearm to that minor, as specified. The bill would impose a civil penalty of up to $25,000 for each violation of these provisions, and would authorize a person harmed by a violation to bring suit to recover any damages suffered, as specified. The bill would make each copy or republication of marketing or advertising prohibited by these provisions a separate violation. The bill would declare that its provisions are severable, as specified.

This bill would declare that it is to take effect immediately as an urgency statute.

*The people of the State of California do enact as follows:*

SECTION 1.  (a) The Legislature hereby finds and declares that the proliferation of firearms to and among minors poses a threat to the health, safety, and security of all residents of, and visitors to, this state. These weapons are especially dangerous in the hands of minors because current research and scientific evidence shows that minors are more impulsive, more likely to engage in risky and reckless behavior, unduly influenced by peer pressure, motivated more by rewards than costs or negative consequences, less likely to consider the future consequences of their actions

and decisions, and less able to control themselves in emotionally arousing situations. In recognition of these facts, the Legislature has already prohibited minors from possessing firearms, except in certain limited circumstances. Nonetheless, firearms manufacturers and retailers continue to market firearms to minors, often identifying particular weapons as starter guns, especially good for children. As reflected in numerous laws regulating marketing of dangerous products to minors, children are especially susceptible to marketing appeals, as well as more prone to impulsive, risky, thrill-seeking, and violent behavior than other age groups. Firearms marketing contributes to the unlawful sale of firearms to minors, as well as the unlawful transfer of firearms to minors by adults who may possess those weapons lawfully. This state has a compelling interest in ensuring that minors do not possess these dangerous weapons and in protecting its citizens, especially minors, from gun violence and from intimidation by persons brandishing these weapons.

(b)  It is the intent of the Legislature in enacting this act to further restrict the marketing and advertising of firearms to minors. Nothing in this chapter shall be construed to limit in any way the enforceability of existing law concerning firearms and marketing thereof.

SEC. 2.   Chapter 39 (commencing with Section 22949.80) is added to Division 8 of the Business and Professions Code, to read:

## Chapter 39. Marketing Firearms to Minors

22949.80.  (a)  (1)  A firearm industry member shall not advertise, market, or arrange for placement of an advertising or marketing communication concerning any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors.

(2)  In determining whether marketing or advertising of a firearm-related product is attractive to minors, as described in paragraph (1), a court shall consider the totality of the circumstances, including, but not limited to, whether the marketing or advertising:

(A)  Uses caricatures that reasonably appear to be minors or cartoon characters to promote firearm-related products.

(B)  Offers brand name merchandise for minors, including, but not limited to, hats, t-shirts, or other clothing, or toys, games, or stuffed animals, that promotes a firearm industry member or firearm-related product.

(C)  Offers firearm-related products in sizes, colors, or designs that are specifically designed to be used by, or appeal to, minors.

(D)  Is part of a marketing or advertising campaign designed with the intent to appeal to minors.

(E)  Uses images or depictions of minors in advertising and marketing materials to depict the use of firearm-related products.

(F)  Is placed in a publication created for the purpose of reaching an audience that is predominately composed of minors and not intended for a more general audience composed of adults.

(b)  A firearm industry member publishing material directed to minors in this state or who has actual knowledge that a minor in this state is using or receiving its material, shall not knowingly use, disclose, compile, or allow a third party to use, disclose, or compile, the personal information of that minor with actual knowledge that the use, disclosure, or compilation is for the purpose of marketing or advertising to that minor any firearm-related product.

(c)  As used in this chapter:

(1)  "Ammunition" has the same meaning as provided in subdivision (b) of Section 16150 of the Penal Code.

(2)  "Firearm" has the same meaning as provided in subdivisions (a) and (b) of Section 16520 of the Penal Code.

(3)  "Firearm accessory" means an attachment or device designed or adapted to be inserted into, affixed onto, or used in conjunction with, a firearm which is designed, intended, or functions to alter or enhance the firing capabilities of a firearm, the lethality of the firearm, or a shooter's ability to hold, carry, or use a firearm.

(4)  "Firearm industry member" means any of the following:

(A)  A person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association engaged in the manufacture, distribution, importation, marketing, wholesale, or retail sale of firearm-related products.

(B)  A person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association formed for the express purpose of promoting, encouraging, or advocating for the purchase, use, or ownership of firearm-related products that does one of the following:

(i)  Advertises firearm-related products.

(ii)  Advertises events where firearm-related products are sold or used.

(iii)  Endorses specific firearm-related products.

(iv)  Sponsors or otherwise promotes events at which firearm-related products are sold or used.

(5)  "Firearm-related product" means a firearm, ammunition, reloaded ammunition, a firearm precursor part, a firearm component, or a firearm accessory that meets any of the following conditions:

(A)  The item is sold, made, or distributed in California.

(B)  The item is intended to be sold or distributed in California.

(C)  It is reasonably foreseeable that the item would be sold or possessed in California.

(D)  Marketing or advertising for the item is directed to residents of California.

(6)  "Marketing or advertising" means, in exchange for monetary compensation, to make a communication to one or more individuals, or to arrange for the dissemination to the public of a communication, about a product or service the primary purpose of which is to encourage recipients of the communication to purchase or use the product or service.

(7)  "Minor" means a natural person under 18 years of age who resides in this state.

(d)  This section shall not be construed to require or authorize a firearm industry member to collect or retain age information about users or subscribers of products or services offered.

(e)  (1)  Any person who violates any provision of this chapter shall be liable for a civil penalty not to exceed twenty-five thousand dollars ($25,000) for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General or by any district attorney, county counsel, or city attorney in any court of competent jurisdiction.

(2)  The court shall impose a civil penalty under paragraph (1) for each violation of this chapter. In assessing the amount of the civil penalty, the court shall consider any one or more of the relevant circumstances presented by any of the parties to the case, including, but not limited to, the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth.

(3)  A person harmed by a violation of this section may commence a civil action to recover their actual damages.

(4)  The court shall also order injunctive relief, including a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for the conduct, as the court deems necessary to prevent the harm described in this section.

(5)  Upon a motion, a court shall award reasonable attorney's fees and costs, including expert witness fees and other litigation expenses, to a plaintiff who is a prevailing party in an action brought pursuant to this section.

(6)  Each copy or republication of marketing or advertising prohibited by this section shall be deemed a separate violation.

(f)  The provisions of this section are severable. If any portion, subdivision, paragraph, clause, sentence, phrase, word, or application of this section is for any reason held to be invalid by any court of competent jurisdiction, that decision shall not affect the validity of the remaining portions of this chapter. The Legislature hereby declares that it would have adopted this section and each and every portion, subdivision, paragraph, clause, sentence, phrase, word, and application not declared invalid or unconstitutional without regard to whether any other portion of this section or application thereof would be subsequently declared invalid.

SEC. 3.  This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the California Constitution and shall go into immediate effect. The facts constituting the necessity are:

In order to protect public safety by prohibiting firearm advertising to minors as soon as possible, it is necessary that this act take effect immediately.

O

# EXHIBIT 2

Date of Hearing:  April 19, 2022

ASSEMBLY COMMITTEE ON PRIVACY AND CONSUMER PROTECTION
Jesse Gabriel, Chair
AB 2571 (Bauer-Kahan) – As Amended April 7, 2022

**SUBJECT**:  Firearms:  advertising to minors

**SUMMARY**:  This bill would prohibit the marketing or advertising of firearms to minors, as specified, would prohibit the use, disclosure, or compilation of a minor's personal information (PI) if there is actual knowledge that the PI is for the marketing or advertising a firearm, ammunition, or reloaded ammunition.  Specifically, **this bill would**:

1) Prohibit a person, firm, corporation, partnership, or other organization publishing material directed to minors in any medium, including, but not limited to, print or broadcast media, internet-based media, or video games, from marketing or advertising in that material any firearm, ammunition, or reloaded ammunition, as specified.

2) Prohibit a person, firm, corporation, partnership, or other organization publishing a marketing or advertising communication, or arranging for placement of an advertising or marketing communication, from publishing or disseminating marketing or advertising for any firearm, ammunition, or reloaded ammunition that is attractive to minors.

3) Require a court to consider the following in determining whether marketing or advertising is attractive to minors:

   - Uses cartoon characters to promote firearms or firearms products.

   - Offers firearm brand name merchandise, such as hats, t-shirts, or stuffed animals, for minors.

   - Offers firearms or firearms accessories with colors or designs that are specifically designed to appeal to minors.

   - Is part of a marketing or advertising campaign designed with the intent to appeal to minors.

4) Prohibit a person, firm, corporation, partnership, or other organization publishing material directed to minors in this state or who has actual knowledge that a minor in this state is using or receiving its material, from knowingly using, disclosing, compiling, or allowing a third party to use, disclose, or compile, the personal information of that minor with actual knowledge that the use, disclosure, or compilation is for the purpose of marketing or advertising to that minor any firearm, ammunition, or reloaded ammunition, as specified.

5) Provide that the bill shall not be construed to require a person, firm, corporation, partnership, or other organization to collect or retain age information about users or subscribers of products or services offered.

6) Create a civil penalty not to exceed $25,000 for each violation of the provisions above, brought by the Attorney General, by any district attorney, county counsel, or city attorney in any court of competent jurisdiction.

7) Define "internet-based media" to mean directed to minors means an internet website, online service, online application, or mobile application, or a portion thereof, that is created for the purpose of reaching an audience that is predominately comprised of minors, and is not intended for a more general audience comprised of adults. An internet website, online service, online application, or mobile application, or a portion thereof, shall not be deemed to be directed to minors solely because it refers to or links to an internet website, online service, online application, or mobile application directed to minors, as specified.

8) Define "marketing or advertising" to mean, in exchange for monetary compensation, to make a communication to one or more individuals, or to arrange for the dissemination to the public of a communication, about a product or service the primary purpose of which is to encourage recipients of the communication to purchase or use the product or service.

9) Provide various findings and declarations related to how the proliferation of firearms to and among minors poses a threat to the health, safety, and security of all residents of, and visitors to, the state.

**EXISTING LAW**:

1) Requires, pursuant to the federal Children's Online Privacy Protection Act (COPPA), that an operator of an internet website or online service directed to a child, as defined, or an operator of an internet website or online service that has actual knowledge that it is collecting personal information (PI) from a child to provide notice of what information is being collected and how that information is being used, and to give the parents of the child the opportunity to refuse to permit the operator's further collection of information from the child. (15 U.S.C. Sec. 6502.)

2) Prohibits, pursuant to the Privacy Rights for Minors in the Digital World, the operator of an internet website, online service, online application, or mobile application from:

   • marketing or advertising a product or service to a minor, if the minor cannot legally purchase the product or participate in the service in the State of California; or,

   • using, disclosing, or compiling, or knowingly allowing a third party to use, disclose, or compile, the PI of a minor for the purpose of marketing goods or services that minors cannot legally purchase or engage in in the State of California. (Bus. & Prof. Code Sec. 22580.)

3) Requires an operator of an internet website, online service, online application, or mobile application to do all of the following:

   • permit a minor who is a user of the operator's internet website, service, or application to remove content or information submitted to or posted on the operator's website, service or application by the user;

- provide notice to a minor who is the user of the operator's internet website, service, or application that the minor may remove content or information submitted to or posted on the operator's website, service, or application by the user; and,

- provide notice to a minor who is the user of the operator's internet website, service, or application that the removal described above does not ensure complete or comprehensive removal of the content or information. (Bus. & Prof. Code Sec. 22581.)

4) Establishes the California Consumer Privacy Act of 2018 (CCPA) and provides various rights to consumers pursuant to the act. Subject to various general exemptions, a consumer has, among other things:

- the right to know what PI a business collects about consumers, as specified, including the categories of third parties with whom the business shares PI;

- the right to know what PI a business sells about consumers, as specified, including the categories of PI that the business sold about the consumer and the categories of third parties to whom the PI was sold, by category or categories of PI for each third party to whom the PI was sold;

- the right to access the specific pieces of information a business has collected about the consumer;

- the right to delete information that a business has collected from the consumer; and,

- the right to opt-out of the sale of the consumer's PI if over 16 years of age, and the right to opt-in if the consumer is a minor (as exercised by the parent if the minor is under 13, or as exercised by the minor if the minor is between ages 13 and 16); and,

- the right to equal service and price, despite exercising any of these rights. (Civ. Code Sec. 1798.100 et seq.)

5) Among other things, the California Privacy Rights Act (CPRA), enacted by Proposition 24 in 2020, creates a Privacy Protection Agency (PPA) in California, vested with full administrative power, authority, and jurisdiction to implement and enforce the CCPA.  The agency shall be governed by a five-member board, with the chairperson and one member appointed by the Governor, and the three remaining members appointed by the Attorney General, the Senate Rules Committee, and the Speaker of the Assembly. (Civ. Code Sec. 1798.199.10.)

**FISCAL EFFECT**:  Unknown

**COMMENTS**:

1) **Purpose of this bill**: This bill seeks to prohibit the marketing or advertising of firearms to minors.  This bill is sponsored by Governor Gavin Newsom.

2)  **Author's statement**: According to the Author:

> Existing law does not limit marketing of firearms to children outside of the internet. Some firearms manufacturers irresponsibly market weapons to children.  For example, Wee 1 Tactical has begun marketing an AR-15 made specifically for children. They currently market the weapon, called a JR-15, with a cartoon skull-and-crossbones with a pacifier.  See https://wee1tactical.com/.  Under current law, the company would be able to market this weapon in California, as long as it does so off-line, e.g., in a magazine advertisement.

> This legislation would restrict the marketing and advertising of firearms to minors in all media. Specifically, this bill would prohibit a person or entity that publishes materials directed to minors in this state in any medium, or publishes advertising or marketing communications, from marketing or advertising firearms, ammunition, or reloaded ammunition to minors. Additionally, the bill would prohibit firearms marketing or advertising that is attractive to minors, regardless of whether the publication is directed to minors.

3)  **Marketing and advertising of firearms to minors**: In 2016, the New York Times reported that the gun industry markets a variety of products specifically to minors and views children as a critically important group of future consumers:

> The report, called "Start Them Young" and issued [...] by the Violence Policy Center, lists a variety of firearms meant at least partly for children. It mentions the Crickett rifle, a gun made for children by the company Keystone Sporting Arms. Keystone's website and some of its merchandise bear the image of "Davey Crickett," a gun-wielding cartoon insect. The company sells Davey Crickett hats, dog tags and pins, as well as a Davey Crickett Beanie Baby, listed as "not for children under three years of age."

> Keystone's website also sells books featuring "Little Jake," a boy who uses his gun to bring down a bear and save an African village from a marauding elephant. The publisher of the books says Little Jake is actually older than he looks: "Little Jake is a fictional character in his late teens. While small in stature so that young children may relate to him, Little Jake is old enough to hunt and fish safely on his own without adult supervision."

> "Start Them Young" also cites the rise of .22-caliber versions of higher-caliber rifles, often produced with lightweight materials. According to an article in the trade magazine Shooting Sports Retailer, "these guns bring the coolness and fun of the tactical rifle to kids and less serious shooters." The website of the retailer Gander Mountain describes one such weapon thus: "Designed for the indoor range and the youth shooter, this Carbon15 .22 LR Rimfire lightweight is sure to add new dimensions to your Bushmaster shooting pleasure. Operational controls are functionally and ergonomically identical to AR-15 type rifles. (North, *Marketing Guns to Children,* The N.Y. Times (Feb. 19, 2016) found at < https://takingnote.blogs.nytimes.com/2016/02/19/marketing-guns-to-children/> as of Apr. 12, 2022.)

Modeled largely off the Privacy Rights for California Minors in a Digital World (hereinafter, "Minors in a Digital World"), which prohibits online marketing or advertising a product or

service to a minor if the minor cannot legally purchase the product or participate in the
service in California, this bill seeks to prohibit the advertising of firearms, ammunition, or
reloaded ammunition to minors in *all* mediums in this state.  The bill would restrict
advertising and marketing in a number of ways, including prohibiting the advertising of
firearms in any medium directed to children, prohibiting the marketing or advertising of
firearms that is attractive to minors, and by limiting the collection, use, or disclosure of a
minor's PI for the purpose of marketing or advertising firearms.

In support, March for Our Lives writes:

> According to Everytown for Gun Safety, "Compared to other high-income countries,
> American children aged 5 to 14 are 21 times more likely to be killed with guns, and
> American adolescents and young adults aged 15 to 24 are 23 times more likely to be
> killed with guns." In a county where young people already face a high likelihood of
> facing harm or death due to firearms it is imperative that we do not allow gun
> manufacturers to continue the glorification of firearms.

4) **Minors in the Digital World creates limited restrictions with regard to minors' personal
   information and marketing**:  In an effort to further protect minors online, the Legislature
   subsequently passed SB 568 (Steinberg, Ch. 336, Stats. 2013), known as Privacy Rights for
   California Minors in the Digital World, which prohibits the operator of an internet website or
   other online service or mobile application from marketing or advertising a product or service
   to a minor if the minor cannot legally purchase the product or participate in the service in
   California (including firearms), or, compiling PI to market those products or services.  This
   prohibition only applies to operators that have *actual* knowledge that a minor is using its
   online service or whose site service is directed to minor, rather than a general audience.

   SB 568 was opposed by the Center for Democracy and Technology who took issue with the
   bill's limitation that a website must be directed to minors for the provisions of the bill to
   apply. SB 568, now codified beginning at Business and Professions Code Sec. 22580,
   provides that a site or service is "directed to minors" if it is "created for the purpose of
   reaching an audience that is *predominantly* composed of minors, and is not intended for a
   more general audience comprised of adults."  (Emphasis added.)  The definition adds that a
   site or service would not be deemed to be "directed at minors" merely because it contained
   links to sites or services that were directed to minors.

   Despite the protections put into place in Minors in a Digital World, we have since seen how
   websites and social media companies collect and use the PI of residents in ways that most
   people never anticipated, and have also seen how these businesses have been able to skirt the
   intent of legislation designed to protect children through vague terms of service and
   intentional disregard of the age of their audience.(*See* this Committee's Background Paper
   from a March 29, 2022 entitled, *Protecting Kids Online: Challenges & Opportunities in a
   Digital World* at p. 10.)

   To this day, many social media companies and online marketplaces that are widely known to
   be used broadly by children, have been able to avoid compliance with state and federal laws
   designed to protect children by claiming that they have no actual knowledge of child users
   under the age of 13. The Legislature recently sought to address this problem with the passage
   of the CCPA, which, in part, provides that "a business that willfully disregards the

consumer's age shall be deemed to have had actual knowledge of the consumer's age." (Civ. Code Sec. 1798.120(c).)

By copying the language related to PI collection and disclosure from Minors in the Digital World and incorporating the "directed to minors" concept, this bill would seemingly allow businesses, manufacturers, and other organizations, so long as they could reasonably claim their medium was directed to a general audience, to: 1) advertise firearms to minors; and 2) collect and sell the information of minors for the purposes of advertising firearms to them. This does not appear to reflect the intent of the author or sponsor.

Accordingly, as this bill moves through the legislative process, the author may wish to consider amending the bill to better ensure that businesses, online and otherwise, are not required to have actual knowledge of an individual's age before these provisions of the bill apply, or otherwise market to general audiences to avoid this bill's restrictions against marketing firearms to children. Staff additionally notes that this bill does not define "directed to minors" but instead defines "internet-based media".  Given that the "direct to minors" concept is used in relation to all material and not just material online, the author may wish to define the phrase so that it applies uniformly across all mediums the bill seeks to regulate.

5)  **AB 2571 prohibits advertising of firearms that is attractive to minors**: In addition to prohibiting advertising of firearms in material "directed to children," as discussed above, this bill would additionally prohibit any "person, firm, corporation, partnership, or other organization publishing a marketing or advertising communication, or arranging for placement of an advertising or marketing communication, from publishing or disseminating marketing or advertising for any firearm, ammunition, or reloaded ammunition."  Unlike the prohibition discussed in Comment 4, above, the prohibition on marketing of firearms that are "attractive to children" applies whether the media is directed to children or a general audience.  In other words, it applies to all marketing, regardless of the target audience. Further, the prohibition applies to "marketing communications" and "arranging for advertising or marketing communications" which is appears to be broader than traditional media.

The bill requires that what will be deemed to be "attractive to minors" should be decided after a court considers the totality of the circumstances, including but not limited to whether the marketing or advertising:

- Uses cartoon characters to promote firearms or firearms products.

- Offers firearm brand name merchandise, such as hats, t-shirts, or stuffed animals, for minors.

- Offers firearms or firearms accessories with colors or designs that are specifically designed to appeal to minors.

- Is part of a marketing or advertising campaign designed with the intent to appeal to minors.

Advertising, while often regulated to protect consumers, is a form of commercial speech protected by the First Amendment.  Staff notes that this bill has been referred to the Assembly Judiciary Committee, where it will be analyzed if passed by this Committee.

First Amendment issues, including issues of commercial speech, typically fall within the jurisdiction of that committee. Similarly, this bill creates a civil penalty to be enforced by public prosecutors for violations of its provisions.  Issues of liability and enforcement typically fall within the jurisdiction of that committee.

6) **Prior legislation**: AB 1545 (Wicks, 2021) would have enacted the Kids Internet Design and Safety (KIDS) Act and prohibited an operator of an online platform from incorporating certain features with respect to children's content without first obtaining parental consent.

AB 1138 (Gallagher, 2019) sought to prohibit a person or business that conducts business in California, and that operates a social media website or application, from allowing a person under 16 years of age to create an account with the website or application unless the website or application obtains the consent of the person's parent or guardian before creating the account.

AB 1665 (Chau, 2019) as introduced, would have prohibited a person or business that conducts business in California, that operates an internet website or application that seeks to use a minor's name, picture, or any information about the minor in connection with third party advertising, as specified, from doing so without obtaining prior parental consent.

AB 375 (Chau, Ch. 55, Stats. 2018) enacted the California Consumer Privacy Protection Act (CCPA), which gives consumers certain rights regarding their PI, including: (1) the right to know what PI that is collected and sold about them; (2) the right to request the categories and specific pieces of PI the business collects about them; and (3) the right to opt-out of the sale of their PI, or opt-in in the case of minors under16 years of age.

SB 568 (Steinberg, Ch. 336, Stats. 2013) *See* Comment 3.

7) **Double referral**: This bill was double referred to the Assembly Judiciary Committee.

**REGISTERED SUPPORT / OPPOSITION**:

**Support**

City of Mountain View
Everytown for Gun Safety Action Fund
March for Our Lives Action Fund
Moms Demand Action for Gun Sense in America
Students Demand Action for Gun Sense in America

**Opposition**

None on file

**Analysis Prepared by**:  Nichole Rocha / P. & C.P. / (916) 319-2200

# EXHIBIT 3

Date of Hearing:  April 26, 2022

ASSEMBLY COMMITTEE ON JUDICIARY
Mark Stone, Chair
AB 2571 (Bauer-Kahan) – As Amended April 7, 2022

As Proposed to be Amended

**SUBJECT**:  FIREARMS: ADVERTISING TO MINORS

**KEY ISSUES**:

1) SHOULD STATE LAW PROHIBIT FIREARM INDUSTRY MEMBERS FROM
   MARKETING AND ADVERTISING FIREARMS AND FIREARM-RELATED
   PRODUCTS IN A MANNER THAT IS ATTRACTIVE TO MINORS?

2) SHOULD THE AG, CITY ATTORNEYS AND COUNTY COUNSELS, AND PERSONS
   HARMED BY THE ADVERTISING AND MARKETING OF FIREARMS AND
   FIREARM-RELATED PRODUCTS TO MINORS, BE ABLE TO BRING A CIVIL
   ACTION TO ENFORCE THIS PROHIBITION AND COLLECT CIVIL PENALTIES AND
   DAMAGES?

## SYNOPSIS

*The firearm industry has developed a number of advertising and marketing schemes to "start
'em young": entice children to be interested in possessing and using firearms that they cannot
lawfully purchase and generally cannot possess through the use of gun-toting cartoon
characters, children's books about boys and girls who commit heroic acts with guns, and gun-
themed children's clothing, toys, and pins. Most concerning, gun makers are marketing child-
sized guns, including assault-style rifles, and guns in colors or with designs specifically for
children.*

*The bill in print restricts two different types of publications of advertising material promoting the
sale of firearms, depending on the intended consumer of the publication. First, if the published
material is "directed to minors," the publisher would be prohibited from marketing or
advertising for sale any firearm, ammunition, or reloaded ammunition in that publication.
Secondly, and far more broadly, any person who publishes a "marketing or advertising
communication" or who "arranges for placement" of such a communication, would be
prohibited from publishing or disseminating any material marketing or advertising for sale any
firearm, ammunition, or reloaded ammunition that is attractive to minors. Given efficacy,
vagueness, First Amendment, and federal preemption concerns related to these provisions, the
author proposes to revise the bill to achieve its goals in a more effective and focused, but less
problematic way.*

*As proposed to be amended, the bill would focus on the advertising, marketing, and placing of
advertising and marketing by only firearm industry members (as defined by the bill), rather than
on publishers, and would prohibit those industry members from engaging in specific acts.
Specifically, a firearm industry member would be prohibited from advertising, marketing, or
arranging for placement any advertising or marketing communication concerning a firearm-
related product when the communication is designed, intended, or reasonably appears to make*

*the firearm-related product attractive to minors. As proposed to be amended, the bill also would allow a person harmed by a violation to commence a civil action to recover their actual damages for harms caused for the violation. This would appropriately provide compensation to a plaintiff in a case where they could demonstrate a causal link between the marketing or advertising of a particular firearm-related product by a particular firearm industry member and the resulting harm, such as a child misusing the firearm-related product and injuring themselves or others. Just as in a case brought by a public attorney, in a case brought by an injured party, the court would be required to order injunctive relief, including a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for the misconduct. Likewise, in both types of causes of action, upon a motion, a court would be required to award reasonable attorney's fees and costs, including expert witness fees and other litigation expenses, to a prevailing plaintiff.*

*The analysis discusses (1) why the bill raises potential First Amendment concerns in that it regulates commercial speech, but how it likely would be found constitutional; (2) how similar advertising restrictions are in place for products that minors cannot purchase; (3) why an exception to the federal law shielding gun dealers and manufacturers from civil liability actions brought in state or federal court for harm incurred due to the illegal use of non-defective products, the Protection of Lawful Commerce in Arms Act (PLCAA), would allow civil liability to be imposed under the bill; (4) why the bill does not infringe on the Second Amendment right to keep and bear arms; and (5) why the author may wish to consider the alternative or additional steps of making firearms designed for children illegal to sell in California.*

*The bill was previously approved by the Assembly Committee on Privacy and Consumer Protection (by a vote of 7-1). It is supported by a number of gun safety advocacy organizations and opposed by the National Rifle Association. The author's amendments are incorporated into the SUMMARY, below, and explained in the analysis.*

**SUMMARY**:  Prohibits firearm industry members from marketing or advertising firearm-related products to minors and authorizes public attorneys and injured plaintiffs to bring a civil action to enforce the prohibition, obtain injunctive relief, and seek either civil penalties, or, in some cases, damages for harms caused by a violation. Specifically, **this bill**:

1) On behalf of the Legislature, finds and declares that the proliferation of firearms to and among minors poses a threat to the health, safety, and security of all residents of, and visitors to, this state.

   a) These weapons are especially dangerous in the hands of minors because current research and scientific evidence shows that minors are more impulsive, more likely to engage in risky and reckless behavior, unduly influenced by peer pressure, motivated more by rewards than costs or negative consequences, less likely to consider the future consequences of their actions and decisions, and less able to control themselves in emotionally arousing situations.

   b) In recognition of these facts, the Legislature has already prohibited minors from possessing firearms, except in certain limited circumstances.

   c) Nonetheless, firearms manufacturers and retailers continue to market firearms to minors, often identifying particular weapons as starter guns, especially good for children. As reflected in numerous laws regulating marketing of dangerous products to minors,

children are especially susceptible to marketing appeals, as well as more prone to impulsive, risky, thrill-seeking, and violent behavior than other age groups.

d)   Firearms marketing contributes to the unlawful sale of firearms to minors, as well as the unlawful transfer of firearms to minors by adults who may possess those weapons lawfully.

e)   This state has a compelling interest in ensuring that minors do not possess these dangerous weapons and in protecting its citizens, especially minors, from gun violence and from intimidation by persons brandishing these weapons.

2)   States that it is the intent of the Legislature in enacting this bill to further restrict the marketing and advertising of firearms to minors. Nothing in this bill will be construed to limit in any way the enforceability of existing law concerning firearms and marketing thereof.

3)   Provides that a firearm industry member shall not advertise, market, or arrange for placement of an advertising or marketing communication concerning any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors.

4)   Requires a court, in determining whether marketing or advertising of a firearm-related product is attractive to minors, to consider the totality of the circumstances, including, but not limited to, whether the marketing or advertising:

a)   Uses caricatures that reasonably appear to be minors or cartoon characters to promote firearm-related products.

b)   Offers brand name merchandise for minors, including but not limited to, hats, t-shirts or other clothing, toys, games, stuffed animals, that promotes a firearm industry member or firearm-related product.

c)   Offers firearm-related products in sizes, colors or designs that are specifically designed to be used by, or appeal to, minors.

d)   Is part of a marketing or advertising campaign designed with the intent to appeal to minors.

e)   Uses images or depictions of minors in advertising and marketing materials to depict the use of firearm-related products.

f)   Is placed in a publication created for the purpose of reaching an audience that is predominately comprised of minors and not intended for a more general audience comprised of adults.

5)   Prohibits a firearm industry member from publishing material directed to minors in this state or who has actual knowledge that a minor in this state is using or receiving its material, and from knowingly using, disclosing, compiling, or allowing a third party to use, disclose, or compile, the personal information of that minor with actual knowledge that the use, disclosure, or compilation is for the purpose of marketing or advertising to that minor any firearm-related product.

6)  Defines the following for purposes of the bill:

a)  "Ammunition" has the same meaning as provided in subdivision (b) of Section 16150 of the Penal Code.

b)  "Firearm" has the same meaning as provided in subdivisions (a) and (b) of Section 16520 of the Penal Code.

c)  "Firearm accessory" means an attachment or device designed or adapted to be inserted into, affixed onto, or used in conjunction with a firearm which is designed, intended, or functions to alter or enhance the firing capabilities of a firearm, the lethality of the firearm, or a shooter's ability to hold, carry or use a firearm.

d)  "Firearm industry member" shall mean one of the following:

i)  A person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association engaged in the manufacture, distribution, importation, marketing, wholesale, or retail sale of firearm-related products.

ii)  A person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association formed for the express purpose of promoting, encouraging, or advocating for the purchase, use, or ownership of firearm-related products that does one of the following:

A)  Advertises firearm-related products.

B)  Advertises events where firearm-related products are sold or used.

C)  Endorses specific firearm-related products.

D)  Sponsors or otherwise promotes events at which firearm-related products are sold or used.

e)  "Firearm-related product" means a firearm, ammunition, reloaded ammunition, a firearm precursor part, a firearm component, or a firearm accessory that meets any of the following conditions:

i)  The item is sold, made, or distributed in California.

ii)  The item is intended to be sold or distributed in California.

iii)  It is reasonably foreseeable that the item would be sold or possessed in California.

iv)  Marketing or advertising for the item is directed to residents of California.

f)  "Marketing or advertising" means, in exchange for monetary compensation, to make a communication to one or more individuals, or to arrange for the dissemination to the public of a communication, about a product or service the primary purpose of which is to encourage recipients of the communication to purchase or use the product or service.

g)  "Minor" means a natural person under 18 years of age who resides in this state.

   h)  "Person" means a natural person, firm, corporation, partnership, or other organization.

7)  Provides that the bill shall not be construed to require or authorize a firearm industry member to collect or retain age information about users or subscribers of products or services offered.

8)  Provides that any person who violates any provision of this chapter shall be liable for a civil penalty not to exceed $25,000 for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General or by any district attorney, county counsel, or city attorney in any court of competent jurisdiction.

9)  Requires the court to impose a civil penalty for each violation of this bill. In assessing the amount of the civil penalty, the court shall consider any one or more of the relevant circumstances presented by any of the parties to the case, including, but not limited to:

   a) The nature and seriousness of the misconduct,

   b) The number of violations,

   c) The persistence of the misconduct,

   d) The length of time over which the misconduct occurred,

   e) The willfulness of the defendant's misconduct, and

   f) The defendant's assets, liabilities, and net worth.

10) Allows a person harmed by a violation of the bill to commence a civil action to recover their actual damages.

11) Provides that the court shall also order injunctive relief, including a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for the conduct, as the court deems necessary to prevent the harm described in this bill.

12) Provides that upon a motion, a court shall award reasonable attorney's fees and costs, including expert witness fees and other litigation expenses, to a plaintiff who is a prevailing party in the action.

13) Deems each copy or republication of marketing or advertising prohibited by the bill to be a separate violation.

14) Makes the provisions of the bill severable.

   a) If any portion, subdivision, paragraph, clause, sentence, phrase, word, or application of this section is for any reason held to be invalid by any court of competent jurisdiction, that decision shall not affect the validity of the remaining portions of this chapter.

   b) The Legislature hereby declares that it would have adopted this provision and each and every portion, subdivision, paragraph, clause, sentence, phrase, word, and application not declared invalid or unconstitutional without regard to whether any other portion of this provision or application thereof would be subsequently declared invalid.

**EXISTING LAW**:

1) Makes everyone responsible, not only for the result of their willful acts, but also for an injury occasioned to another by their want of ordinary care of skill in the management of their property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury on themselves. (Civil Code Section 1714 (a).)

2) Prohibits, pursuant to the Privacy Rights for Minors in the Digital World, the operator of an internet website, online service, online application, or mobile application from:

   a) Marketing or advertising a product or service to a minor, if the minor cannot legally purchase the product or participate in the service in the State of California; or,

   b) Using, disclosing, or compiling, or knowingly allowing a third party to use, disclose, or compile, the personal information of a minor for the purpose of marketing goods or services that minors cannot legally purchase or engage in in the State of California. (Business & Professions Code Section 22580.)

3) Defines "ammunition" to include any bullet, cartridge, magazine, clip, speed loader, autoloader, ammunition feeding device, or projectile capable of being fired from a firearm with a deadly consequence. Specifies that "ammunition" does not include blanks. (Penal Code Section 16150 (b).)

4) Defines "firearm" as a device designed to be used as a weapon and from which is expelled, through a barrel, a projectile by the force of an explosion or other form of combustion. Specifies that "firearm" includes the frame or receiver of the weapon. (Penal Code Section 16520 (a)-(b).)

5) Defines "firearm precursor part" to mean a component of a firearm that is necessary to build or assemble a firearm and is either an unfinished handgun frame or an unfinished receiver, including both a single part receiver and a multiple part receiver. Requires the Department of Justice to provide written guidance and pictorial diagrams of each category of precursor parts. Exempts from this definition firearms parts that can only be used on antique firearms. Specifies that a firearm precursor part is not a firearm or the frame or receiver thereof. (Penal Code Section 16531.)

6) Prohibits, under the federal Protection of Lawful Commerce in Arms Act, a civil liability action from being brought in state or federal court by a person against a manufacturer or seller of a specified firearm or component part, or trade association, for relief resulting from the criminal or unlawful misuse of a firearm or component part by the person or a third party. Provides that specified actions are exempt from this prohibition, including an action in which the seller or manufacturer knowing violated a state or federal statute applicable to the sale or marketing of the product, and in which the violation was a proximate cause of the harm for which relief is sought. (15 U.S.C. Sec 7902.)

7) Requires, pursuant to the federal Children's Online Privacy Protection Act (COPPA), that an operator of an internet website or online service directed to a child, as defined, or an operator of an internet website or online service that has actual knowledge that it is collecting personal information (PI) from a child to provide notice of what information is being collected and how that information is being used, and to give the parents of the child the opportunity to

refuse to permit the operator's further collection of information from the child. (15 U.S.C. Sec. 6502.)

**FISCAL EFFECT**:  As currently in print this bill is keyed fiscal.

**COMMENTS**:  This bill seeks to prohibit firearm industry members from marketing or advertising firearm-related products to minors. It would also authorize public attorneys and injured plaintiffs to bring a civil action to enforce this prohibition, seek imposition of civil penalties, and, in some cases, obtain damages for harms caused by a violation. According to the author:

> Some firearms manufacturers irresponsibly market weapons to children. For example, Wee 1 Tactical has begun marketing an AR-15 made specifically for children. They currently market the weapon, called a JR-15, with a cartoon skull-and-crossbones with a pacifier. . . . Under current law, the company would be able to market this weapon in California, as long as it does so off-line, e.g., in a magazine advertisement.

> This legislation would restrict the marketing and advertising of firearms to minors in all media. Specifically, this bill would prohibit [a firearm industry member] . . . from marketing or advertising firearms, ammunition, or reloaded ammunition to minors.

The bill in print restricts two different types of publications from advertising material promoting the sale of firearms, depending on the intended consumer of the publication. First, if the published material is "***directed to minors,***" the publisher would be prohibited from marketing or advertising for sale any firearm, ammunition, or reloaded ammunition in that publication. Secondly and far more broadly, any person who publishes a "marketing or advertising communication" or who "arranges for placement" of such a communication, would be prohibited from publishing or disseminating any material marketing or advertising for sale any firearm, ammunition, or reloaded ammunition that is ***attractive to minors***.

The California Broadcasters Association, the California News Publishers, and First Amendment Coalition raised concerns about the bill in print and its impacts beyond advertisers:

> While it might be constitutional to prohibit advertising the illegal sale of firearms to minors, the definition of "marketing or advertising" goes far beyond that. It covers any "communication" about a "product or service" made for "monetary compensation," the "primary purpose of which is to encourage recipients of the communication to purchase or use the product or service," even lawfully. The mere fact of "monetary compensation" for producing speech does not make the speech purely commercial. *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1117 (9th Cir. 2021) (citing *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 (1983)).

> The bill would also prohibit any speech deemed to have the "primary purpose" of encouraging even lawful use of firearms. For example, the bill would likely prohibit a video promoting lawful use of firearms by minors for target shooting under parental supervision after gun safety training.

> In addition, the bill's broad sweep and draconian penalties would exert a chilling effect on protected speech such as movies, music, or video games, for fear that the government might deem that such speech has the "primary purpose" of "encouraging" firearm use. Even if such

speech were deemed to encourage unlawful firearm use, "[t]he mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253 (2002).

Given efficacy, vagueness, First Amendment, and federal preemption concerns related to these provisions, the author proposes to revise the bill to achieve its goals in a more effective and focused, but less problematic way. As proposed to be amended, the bill would focus on the advertising, marketing, and placing of advertising and marketing by only firearm industry members (as defined by the bill), rather than on publishers, and would prohibit those industry members from engaging in specific acts. It is unclear the extent to which the author's proposed amendment address the concerns raised by the Broadcasters, News Publishers, and First Amendment Coalition.

Under the bill, as it is proposed to be amended, a firearm industry member would be prohibited from advertising, marketing, or arranging for placement any advertising or marketing communication concerning a firearm-related product when the communication is designed, intended, or reasonably appears to make the firearm-related product attractive to minors. The bill then requires a court, in determining whether the marketing or advertising communication makes the firearm-related product attractive to minors, to consider "the totality of the circumstances," including but not limited to whether the marketing or advertising does any of the following:

(A) Uses caricatures that reasonably appear to be minors or cartoon characters to promote firearm-related products.

(B) Offers brand name merchandise for minors, including but not limited to, hats, t-shirts or other clothing, toys, games, stuffed animals, that promotes a firearm industry member or firearm-related product.

(C) Offers firearm-related products in sizes, colors or designs that are specifically designed to be used by, or appeal to, minors.

(D) Is part of a marketing or advertising campaign designed with the intent to appeal to minors.

(E) Uses images or depictions of minors in advertising and marketing materials to depict the use of firearm-related products.

(F) Is placed in a publication created for the purpose of reaching an audience that is predominately comprised of minors and not intended for a more general audience comprised of adults.

***Remedies for Violations.*** The bill authorizes two types of civil actions to enforce compliance with its provisions. First the Attorney General or any district attorney, county counsel, or city attorney would be authorized to bring a civil action in any court of competent jurisdiction in the name of the people of the State, county, or city, as appropriate, to seek a civil penalty. Any person found in such an action to have violated any provision of the bill would be liable for a civil penalty not to exceed $25,000 for each violation. The bill specifies a number of factors that courts should rely upon in evaluating whether or not to impose the maximum $25,000 civil penalty: the nature and seriousness of the misconduct, the number of violations, the persistence

of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth.

As proposed to be amended, the bill also would allow a person harmed by a violation to commence a civil action to recover their actual damages for harms caused for the violation. This would appropriately provide compensation to a plaintiff in a case where they could demonstrate a causal link between the marketing or advertising of a particular firearm-related product by a particular firearm industry member and the resulting harm, such as a child misusing the firearm-related product and injuring themselves or others. Just as in a case brought by a public attorney, in a case brought by an injured party, the court would be required to order injunctive relief, including a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for the misconduct. Likewise, in both types of causes of action, upon a motion, a court would be required to award reasonable attorney's fees and costs, including expert witness fees and other litigation expenses, to a prevailing plaintiff. The bill also clarifies that each copy or republication of marketing or advertising prohibited by the bill would be deemed to be a separate violation.

In order to clarify that the bill is intended to be a state-specific measure, the bill defines a "firearm-related product" as a product (specifically a firearm, ammunition, reloaded ammunition, a firearm precursor part, a firearm component, or a firearm accessory) that meets any of the following conditions:

- The item is sold, made, or distributed in California.
- The item is intended to be sold or distributed in California.
- It is reasonably foreseeable that the item would be sold or possessed in California.
- Marketing or advertising for the item is directed to residents of California.

Finally, the bill includes two important privacy protections for personal information of minors. First, the bill prohibits a firearm industry member from publishing material directed to minors in this state or who has actual knowledge that a minor in this state is using or receiving its material, and from knowingly using, disclosing, compiling, or allowing a third party to use, disclose, or compile, the personal information of that minor with actual knowledge that the use, disclosure, or compilation is for the purpose of marketing or advertising to that minor any firearm-related product. Second, it clarifies that the bill shall not be construed to require or authorize a firearm industry member to collect or retain age information about users or subscribers of products or services offered. These provisions are within the jurisdiction and expertise of the Committee on Privacy & Consumer Protection which previously heard and approved the bill.

***Background – Firearm Industry Efforts to Market Firearms and Firearm Products to Minors.***
In 2016, the New York Times reported that the gun industry markets a variety of products specifically to minors and views children as a critically important group of future consumers:

> The report, called "Start Them Young" and issued […] by the Violence Policy Center, lists a variety of firearms meant at least partly for children. It mentions the Crickett rifle, a gun made for children by the company Keystone Sporting Arms. Keystone's website and some of its merchandise bear the image of "Davey Crickett," a gun-wielding cartoon insect. The company sells Davey Crickett hats, dog tags and pins, as well as a Davey Crickett Beanie Baby, listed as "not for children under three years of age."

Keystone's website also sells books featuring "Little Jake," a boy who uses his gun to bring down a bear and save an African village from a marauding elephant. The publisher of the books says Little Jake is actually older than he looks: "Little Jake is a fictional character in his late teens. While small in stature so that young children may relate to him, Little Jake is old enough to hunt and fish safely on his own without adult supervision."

"Start Them Young" also cites the rise of .22-caliber versions of higher-caliber rifles, often produced with lightweight materials. According to an article in the trade magazine Shooting Sports Retailer, "these guns bring the coolness and fun of the tactical rifle to kids and less serious shooters." The website of the retailer Gander Mountain describes one such weapon thus: "Designed for the indoor range and the youth shooter, this Carbon15 .22 LR Rimfire lightweight is sure to add new dimensions to your Bushmaster shooting pleasure. Operational controls are functionally and ergonomically identical to AR-15 type rifles. (North, *Marketing Guns to Children,* The N.Y. Times (Feb. 19, 2016) found at < https://takingnote.blogs.nytimes.com/2016/02/19/marketing-guns-to-children/> as of Apr. 12, 2022.)

***The bill restricts some marketing and advertising of firearms, raising potential First Amendment Concerns.*** The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." (U.S. Const., amend. I.) While commercial speech is a type of content-based restriction, and content-based restrictions ordinarily receive strict scrutiny analysis under the First Amendment, the U.S. Supreme Court has held that the First Amendment accords commercial speech lesser protection than other constitutionally guaranteed expression. This is in part because, unlike other varieties of speech, speech proposing a commercial transaction occurs in an area traditionally subject to governmental regulation. (*Central Hudson Gas & Elec. Corp. v. Public Service Commission* (1980) 447 U.S. 557, 562-63.) Furthermore, a blanket prohibition against truthful, nonmisleading speech about a lawful product, which serves an end unrelated to consumer protection, must be reviewed with skepticism. A "state legislature does not have the broad discretion to suppress truthful, nonmisleading information for paternalistic purposes[.]" (*44 Liquormart, Inc. v. Rhode Island* (1996) 517 U.S. 484, 510.) Ultimately, the First Amendment prohibits commercial speech against "unwarranted" governmental regulation. However, only truthful, non-misleading commercial speech is protected by the First Amendment.

The U.S. Supreme Court has articulated a four-prong test by which commercial speech regulations are evaluated for constitutionality. This test asks: (1) whether the expression concerns lawful activity and is not misleading; (2) whether the asserted governmental interest is substantial; (3) whether the regulation directly advances the governmental interest asserted; and (4) whether it is not more extensive than is necessary to achieve that interest. (*Central Hudson Gas & Elec. Corp., supra,* 447 U.S. at pp. 561-66.)

Here, on the **first prong**, the truthfulness and misleading nature of information in marketing materials in which firearm-related products are attractive to minors (thereby encouraging children to use firearms), is debatable. California law generally prohibits minors from possessing a handgun and most semi-automatic rifles (Penal Code Section 29610), as well as ammunition (Penal Code 30300 (a)). Exceptions to this prohibition include situations where a parent or legal guardian is present or has consented to the possession, or when minors are engaged in certain

recreational sports. (Penal Code Section 29615.) While it *may* technically be legal for a child to possess a firearm, lawful possession of a firearm by a minor is clearly the exception, rather than the rule under California law. Therefore, advertising and marketing materials that encourage minors to possess and use firearms may or may not concern a lawful activity and certainly could be misleading if it fails to make those points clear. Therefore, it is possible that a court could find that a particular marketing or advertising campaign was *not protected commercial speech* under First Amendment jurisprudence. (See *Central Hudson Gas & Elec. Corp., supra,* 447 U.S. at p. 566 [neither deceptive speech nor speech that proposes an illegal transaction is protected by the First Amendment].) The possibility and even likelihood that marketing or advertising of firearm-related products that makes those products attractive to children who, in most cases, cannot lawfully possess them, greatly strengthens the argument that the bill's restrictions on the marketing and advertising of firearm-related products would withstand constitutional scrutiny.

On the **second prong**, the important government interests of this bill are reflected in the bill's findings and declarations. California not only has a compelling interest in ensuring that minors do not possess these dangerous weapons, but also in protecting its citizens, including and especially minors, from gun violence. On the **third prong**, by restricting the marketing and advertising by the firearms industry of firearm-related products that are attractive to children, this bill would directly advance its stated governmental interests to limit the exposure of, and consumption by, minors to such advertising and marketing material, given the lethality (and general illegality for minors) of the products being advertised.

As with most commercial speech regulations, the ultimate determination of constitutionality may hinge upon the **fourth prong**. Recent Supreme Court jurisprudence suggests that while the regulation chosen does not have to be the least restrictive alterative, it must use a means that is substantially related to the desired objective. (*See e.g. Greater New Orleans Broadcasting Assn. v. U.S.* (1999) 527 U.S. 173 and *Thompson v. Western States Med. Center* (2002) 535 U.S. 357.)

In this case, the bill as proposed to be amended focuses on advertising and marketing materials that are promulgated by a narrowly defined group of commercial speakers—the firearm industry—rather than on publishers, or even advertisers, in general. Given that these are the only groups that generally engage in this type of commercial speech, the means used by the bill seem narrowly tailored to address the source of the harmful marketing and advertising content, rather than focused on its dissemination. Furthermore, the type of advertising and marketing at issue in this bill is not generally directed towards lawful purchasers of firearms (i.e. adults); rather, they are specifically designed to appeal to, and be directed at, children. Therefore, denying this form of advertising and marketing does not significantly impact a protected interest that firearm industry members have to furnish truthful information to would-be lawful purchasers who have a corresponding interest in receiving such information. (See *Discount Tobacco City & Lottery, Inc. v. United States* (6th Cir. 2012) 674 F.3d 509, 520.) Finally, with the findings incorporated into the bill—that firearms marketing and advertising contributes to the unlawful sale of firearms to minors, as well as the unlawful transfer of firearms to minors by adults who may possess those weapons lawfully—-the bill seems substantially related to the achievement of its objective.

***Similar Restrictions on Advertising and Marketing of Contraband to Minors.*** Existing state law places limits on the advertising of other products that adults may lawfully purchase and use, but which minors may not, such as alcohol, marijuana, electronic cigarettes and vapes, and tobacco. Each year in the United States, companies spend billions of dollars advertising alcohol and tobacco products, while popular television shows and movies often depict smoking and

drinking in a positive light. Studies show that young people are often inclined to use drugs or alcohol themselves due to these influential depictions of substance use. Research on the effects of advertising has shown that they may be responsible for up to 30% of underage tobacco and alcohol use. (John P. Pierce, Won S. Choi, Elizabeth Gilpin (1998), Journal of the American Medical Association; 279 (7): pp. 511-515, available at: https://jamanetwork.com/journals/jama/fullarticle/187258.) On the other hand, restrictions on alcohol advertising are associated with both (1) lower prevalence and frequency of adolescent alcohol consumption; and (2) older age of first alcohol use. (Paschall, M. J., Grube, J. W., & Kypri, K. (2009). Alcohol control policies and alcohol consumption by youth: A multi-national study. *Addiction, 104*(11), 1849–1855, available at https://pubmed.ncbi.nlm.nih.gov/19832785/.)

*Alcohol.* California law imposes numerous restrictions on advertising of alcohol in a manner that appeals to persons who are underage. For example, coin banks, toys, balloons, magic tricks, miniature bottles or cans, confections, dolls, or other items that appeal to minors or underage drinkers may not be used in connection with the merchandising of beer. (Business & Professions Code Section 25600 (b)(2)(D).) The size of alcohol advertisements (relative to window size) and location is also restricted. For example, no more than 33 percent of the square footage of the windows and clear doors of an off-sale premises can bear advertising or signs of any sort. (Business & Professions Code Section 25612.5.)

*Tobacco.* In order to settle civil lawsuits filed by Attorneys General of more than 40 states and territories against several tobacco product manufacturers, America's largest tobacco manufacturers, including Philip Morris, R.J. Reynolds, Brown & Williamson, and Lorillard, agreed to settle the litigation with the states on November 23, 1998 in the Master Settlement Agreement (MSA). (*The Master Settlement Agreement: An Overview* (2019) Public Law Center-Tobacco Control Legal Consortium.) In addition to imposing significant restrictions on tobacco advertising, as part of the settlement, the participating states released the participating manufacturers from liability for healthcare costs incurred by the states for smoking related illnesses. (*Ibid.*) Among other things, the MSA prohibited R.J. Reynolds from posting billboards or other signs advertising its Winston sponsorships at auto race tracks more than 90 days before and 10 days after a sponsored event at the site. The restriction, which the R.J. Reynolds argued amounted to a nearly year-long ban, was upheld. (*People of the State of California v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516.) The Attorney General also successfully enforced the MSA ban on cartoon characters in the case of R.J. Reynolds' Farm Rocks images. (*In re Tobacco Cases I* (2010) 186 Cal.App.4th 42; *In re Tobacco Cases I* (2011) 193 Cal.App.4th 1591.)

*Cannabis.* State law provides that any advertising or marketing placed in broadcast, cable, radio, print, and digital communications shall only be displayed where at least 71.6 percent of the audience is reasonably expected to be 21 years of age or older, as determined by reliable, up-to-date audience composition data. (Business & Professions Code Section 26131 (b).) Furthermore, any advertising or marketing involving direct, individualized communication or dialogue controlled by the licensee must utilize a method of age affirmation to verify that the recipient is 21 years of age or older before engaging in that communication or dialogue controlled by the licensee. (*Id.* at (c).)

***Immunity for gun manufacturers and dealers under PLCAA; and exceptions.*** As a general rule, "[e]veryone is responsible, not only for the result of [their] willful acts, but also for an injury occasioned to another by [their] want of ordinary care of skill in the management of [their]

property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury [on themselves]." (Civil Code Section 1714 (a).) According to the California Supreme Court, Section 1714 embodies a fundamental principle of liability for failure to exercise such care, and that "it is clear that in the absence of statutory provision declaring an exception to the fundamental principle enunciated by Civil Code Section 1714, no such exception should be made unless clearly supported by public policy." (*Rowland v. Christian* (1968) 69 Cal. 2d 108, 112.)

Despite this principle of personal accountability for wrongdoing, as well as the state's numerous gun restrictions, the right to file a civil action against a gun manufacturer or dealer is hamstrung by a federal immunity statute titled the Protection of Lawful Commerce in Arms Act. (15 U.S.C. Sec 7902.) Signed by President George W. Bush in 2005, the Protection of Lawful Commerce in Arms Act (PLCAA) prohibits civil liability actions from being brought in state or federal court against gun dealers and manufacturers for harm incurred due to the illegal use of non-defective products. Importantly, the PLCAA specifies six exceptions to this prohibition:

1) An action brought against someone convicted of "knowingly transfer[ing] a firearm, knowing that such firearm will be used to commit a crime of violence" by someone harmed by such unlawful conduct;

2) An action brought against a seller for negligent entrustment or negligence;

3) An action in which a manufacturer or seller of a firearm, ammunition, or components parts *knowingly violated a state or federal statute applicable to the sale or marketing of the product,* and the violation was a proximate cause of the harm for which relief is sought;

4) An action for breach of contract or warranty in connection with the purchase of the product;

5) "An action for death, physical injuries or property damage resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, except that where the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage;"

6) An action commenced by the Attorney General to enforce the Gun Control Act or the National Firearms Act.

The third exception, also known as the "predicate exception," has been the subject of considerable judicial scrutiny. Under this exception, a plaintiff may bring a suit if they successfully prove that a manufacturer or dealer knowingly violated an underlying statute "applicable to the sale or marketing" of a firearm or ammunition and this violation was the proximate cause of the harm. Two federal appellate rulings have adopted a narrow interpretation of the word "applicable," ruling that "applicable" statutes are those that specifically regulate the firearm industry. (See *City of New York v. Beretta USA Corp.* (2nd Cir. 2008) 524 F.3d 384 and *Ileto v. Glock, Inc.* (9th Cir. 2009) 565 F.3d 1126.) This interpretation has resulted in dismissal of a number of suits that argue "applicable" should be broadly defined to include state laws such as public nuisance statutes that address endangerment of health and safety.

However, some state courts have adopted a broader interpretation of the predicate exception. For example, in a suit filed by the parents of the Sandy Hook victims against Remington Arms, the manufacturer of the rifle used to kill 26 people (20 of whom were children between six and seven years old) at Sandy Hook Elementary School, the Connecticut Supreme Court ruled that the defendants, by marketing the illegal use of their products, violated the Connecticut Unfair Trade Practices Art (CUTPA). (*Soto v. Bushmaster Firearms Int'l, LLC.* (Conn. 2019) 202 A.3d 262.) The court noted that, because deceptive marketing is regulated by unfair trade practice laws, rather than firearms-specific statutes, CUTPA is an applicable statute as specified in the predicate exception. In February of 2022, the plaintiffs announced that they reached a settlement with the company for $73 million. The settlement allowed the plaintiffs to share internal company documents obtained during discovery that provide evidence of the company's unfair marketing practices promoting the illegal use of firearms.

***The bill appears to fall within an exception to PLCAA.*** As described above, the immunity provision of PLCAA generally shields gun manufacturers and dealers from liability in state or federal court for harm incurred due to the illegal use of non-defective products, except in limited cases. One exception reads as follows:

> An action in which a manufacturer or seller of a firearm, ammunition, or components parts "***knowingly violated a State or Federal statute applicable to the sale or marketing of the product***, and the violation was a proximate cause of the harm for which relief is sought;"

The new liability provisions created by the bill govern the sale or marketing of firearm-related products. Therefore, to the extent that those laws would apply to a manufacturer or seller of a firearm, ammunition, or components parts, it appears that any violations, at least to the extent that they were "knowing" and the proximate cause of the harm for which relief is sought by a plaintiff, would appear to fall within the exception above. Therefore, it appears that PLCAA would not preempt an action under the bill to hold a manufacturer or dealer civilly liable for a violation of the bill's provisions.

***The bill does not appear to raise Second Amendment concerns.*** The Second Amendment to the U.S. Constitution provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Prior to 2008, the right generally was understood by federal courts to be intertwined with military or militia use. (*See, e.g., Parker v. District of Columbia* (D. D.C. 2004) 311 F. Supp. 2d 103, pp. 104-05 [noting that the "vast majority of circuit courts . . . reject[ed] an individual right to bear arms separate and apart from Militia use"].) In *District of Columbia v. Heller*, the U.S. Supreme Court held that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, especially in one's home; and therefore the District of Columbia's functional ban on handgun possession in the home and its requirement that lawful firearms in the home be rendered inoperable were unconstitutional. (*District of Columbia v. Heller* (2008) 554 U.S. 570, 630-31.) Since *Heller,* the circuit courts largely have been applying a two-step inquiry to determine whether a particular law is constitutional. First, courts ask whether the challenged law burdens conduct protected by the Second Amendment. If it does not, the inquiry ends, as the law does not implicate the Second Amendment. But if the challenged law does burden conduct protected by the Second Amendment, courts next ask whether, under the applicable type of means-end scrutiny, the law is constitutional under that standard of review. (See Congressional Research Service, "*Post-Heller Second Amendment Jurisprudence,*" pp. 12-13 (March 25, 2019), available at https://sgp.fas.org/crs/misc/R44618.pdf.)

The Court in *Heller* observed that certain regulations restricting access to firearms were "longstanding" and "presumptively lawful," including restrictions on possessing and selling certain types of weapons, and conditions on the commercial sale of firearms. (*Heller, supra,* 554 U.S. 570, 626-27 and fn.26.) Given that the civil liability provisions of this bill apply only to firearm *industry* members (defined under the bill to mean "a person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association engaged in the manufacture, distribution, importation, marketing, wholesale, or retail sale of firearm-related products") and are based upon longstanding and presumptively valid age restrictions in relation to the purchase and possession of firearms by children, the marketing and advertising restrictions in the bill likely do not implicate the Second Amendment. (*See United States v. Rene E.* (1st Cir. 2009) 583 F.3d 8, 15-16 [federal ban on juvenile possession of handguns fell within *Heller's* safe harbor for longstanding restrictions on firearm possession].) Rather, the bill imposes liability only on these persons and entities who fail to abide by marketing and advertising restrictions that are consistent with those longstanding and presumptively valid age-based restrictions in the course of doing business.

***Are there other ways to achieve the bill's goals that do not implicate the First Amendment?***
The author raises serious concerns about disturbing products – specifically child-sized firearms and other firearm-related products—that are designed, marketed, and advertised in a manner that is intended or reasonably does appeal to minors. What societal value is served by a child-sized assault-style rifle being available for purchase in the state, especially in comparison to the harm that potentially is caused by a child accessing that firearm? Shouldn't the state reduce the likelihood of serious harm that could be caused to a child or others caused by a child accessing the firearm, given a child may be particularly motivated to obtain it (without supervision) because of its size color, or marketing directed to children in an unsafe and unsupervised manner? Would California ever allow a child-sized car, powerful enough to be driven at freeway speeds, to be sold in the state? Given that minors have neither a legal right under state law to possess or purchase such firearms, nor a Second Amendment right protected by the U.S. Constitution to do so, should California simply prohibit the sale of such firearms?

The state could advance its interest to keep these attractive [to children] yet deadly products out of the stream of commerce without suppressing otherwise lawful speech by prohibiting the sale for all firearms, regardless of their characteristics, if they are designed, intended for use, or marketed to appeal to children as their primary users. (See *Pitt News v. Pappert* (3d Cir. 2004) 379 F.3d 96, 108 ["[T]he Commonwealth can seek to combat underage and abusive drinking by other means that are far more direct and that do not affect the First Amendment. The most direct way to combat underage and abusive drinking by college students is the enforcement of the alcoholic beverage control laws on college campuses."]; *Tracy Rifle & Pistol LLC v. Harris* (E.D. Cal. 2018) 339 F. Supp. 3d 1007, 1018 [finding a state law prohibiting the display of a handgun, an imitation handgun, or a placard advertising the sale of a handgun in a manner that is visible from the outside of a gun dealer's premises unconstitutional].) "California has several laws that, if enforced, further its substantial interest in reducing handgun suicide and crime without restricting speech.... [and] directly to deter the potential harmful consequences of handgun purchases without restricting speech." (*Pitt News, supra,* at p. 108.) *As the bill moves forward, the author may wish to consider whether it would be appropriate to also, or alternatively, prohibit the sale of such firearms in California.*

***ARGUMENTS IN SUPPORT***:  Everytown for Gun Safety, Moms Demand Action for Gun Sense in America, and Students Demand Action for Gun Sense in America write the following in a joint letter of support:

> Current laws restrict the content and placement of advertising and promotional marketing of alcohol, cannabis, and tobacco to protect minors. This is done to prevent potentially harmful substances from getting in the hands of young people as well as preventing the glorification around them.

> Our research shows that, "compared to other high-income countries, American children aged 5 to 14 are 21 times more likely to be killed with guns, and American adolescents and young adults aged 15 to 24 are 23 times more likely to be killed with guns." In a county where young people already face a high likelihood of facing harm or death due to firearms it is imperative that we do not allow gun manufacturers to continue the glorification of firearms.

Regarding the comparison with restriction on advertising and promotional marketing of alcohol, cannabis, and tobacco to protect minors, the Brady Campaign and Brady California write, "While we certainly see the point of restricting ads around the previous products listed, unlike firearms none of these are a leading cause of death for children and teens."

***ARGUMENTS IN OPPOSITION***:  National Rifle Association of America Institute for Legislative Action writes:

> [T]he restriction in AB 2571 fails to appreciate that minors can and do possess and use firearms for a variety of lawful purposes. The state interest asserted in AB 2571 is to combat the "proliferation of firearms to and among minors." The bill also notes, "[t]his state has a compelling interest in ensuring that minors do not possess these dangerous weapons." . . .

> The legislation's drafters justify their proposed regulation by citing restrictions on "advertising and promotional marketing of alcohol, cannabis, and tobacco to protect minors." As noted in the discussion of *Lorillard Tobacco Co. v. Reilly*, such measures must be the narrowest means of achieving an asserted state interest – which was not the case in *Lorillard* and is not the case with AB 2571.

> However, lawmakers should also understand that the restrictions cited as analogous to that in AB 2571 are of a fundamentally different character. Unlike restrictions on advertising for alcohol, cannabis, and tobacco, the underlying products and conduct that AB 2571 seeks to curb the advertisement of are protected under the U.S. Constitution. As such, lawmakers should be prepared for the courts to level more scrutiny upon restrictions on advertisements concerning Second Amendment protected products and conduct than those leveled at products that don't enjoy such protection.

**REGISTERED SUPPORT / OPPOSITION**:

**Support**

Brady Campaign
Brady Campaign California
City of Mountain View
Everytown for Gun Safety Action Fund

March for Our Lives Action Fund
Moms Demand Action for Gun Sense in America
Students Demand Action for Gun Sense in America

**Opposition**

National Rifle Association - Institute for Legislative Action

**Concerns (with bill in print)**

California Broadcasters Association
California News Publishers Association
First Amendment Coalition

**Analysis Prepared by**:   Alison Merrilees / JUD. / (916) 319-2334

# EXHIBIT 4

AB 2571
Page 1

Date of Hearing:  May 11, 2022

ASSEMBLY COMMITTEE ON APPROPRIATIONS
Chris Holden, Chair
AB 2571 (Bauer-Kahan) – As Amended April 27, 2022

| | | | |
|---|---|---|---|
| Policy Committee: | Privacy and Consumer Protection | Vote: | 7 - 1 |
| | Judiciary | | 7 - 2 |

| | | |
|---|---|---|
| Urgency:  No | State Mandated Local Program:  No | Reimbursable:  No |

**SUMMARY**:

This bill prohibits firearm industry members from marketing or advertising firearm-related products to minors and authorizes the Department of Justice (DOJ) or any city or county attorney and injured plaintiffs to bring a civil action to enforce the prohibition, obtain injunctive relief, and seek either civil penalties, or, in some cases, damages for harms caused by a violation.

**FISCAL EFFECT**:

1) Cost pressures (Trial Court Trust Fund) in the mid-hundreds of thousands of dollars for trial courts to hear and adjudicate civil actions against a firearms industry member that markets or advertises to minors. If five cases are filed in civil court annually requiring seven to ten days or 56 to 80 hours of court time, at an average cost per hour of $1,000 in workload costs, the cost to the trial courts would be between $280,000 and $400,000 annually.  Although courts are not funded on the basis of workload, increased pressure on the Trial Court Trust Fund and staff workload may create a need for increased funding for courts from the General Fund (GF) to perform existing duties.

2) Costs (GF) of $442,000 in fiscal year (FY) 2022-23, $776,000 in FYs 2023-24 and 2024-25 and $388,000 annually thereafter in additional legal staff for the DOJ to prosecute firearm industry members for unlawful advertisements to minors.

**COMMENTS**:

COMMENTS

1) **Purpose.** According to the author:

> This legislation would restrict the marketing and advertising of firearms to minors in all media. Specifically, this bill would prohibit [a firearm industry member] . . . from marketing or advertising firearms, ammunition, or reloaded ammunition to minors.

2) **Protection of Lawful Commerce in Arms Act (PLCAA).**  15 U.S.C. section 7902 generally prohibits filing any civil action, in either state or federal court, against a firearms manufacturer, distributor, dealer or importer of a firearm or ammunition. Section 7901 states its intent is to protect firearms manufacturers from liability caused by criminal misuse of

firearms. Additionally, section 7901 expresses the intent of Congress to preempt state laws to the contrary. (15 U.S.C. § 7901 (b)(6) and (7); Ileto v. Glock, Inc. (9th Cir. 2009) 565 F.3d 1126, 1129 ("Congress clearly intended the PLCAA to preempt common-law claims such as general tort theories of liability.").) The PLCAA contains several exceptions including an action against a seller for negligent entrustment or negligence in general or an action where a manufacturer knowingly violates a state or federal law *applicable to the sale or marketing of a firearm*, and the violation was a proximate cause of the harm. Several federal courts have narrowly construed the phrase "state or federal law applicable to the sale or marketing of a firearm." City of New York v. Beretta U.S.A. Corp. (2d Cir. 2008) 524 F.3d 384, 399-400 held the meaning of the term "applicable" must be determined in the context of the statute and the PLCAA provides several examples of where in existing law an applicable statute might apply: (a) any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record related to the lawfulness of the sale required to be kept under federal or state law; and (b) any case in which the manufacturer or seller transferred or sold a firearm or ammunition knowing, or having reasonable cause to believe, that the actual buyer of was prohibited from possessing or receiving a firearm or ammunition.

Plaintiffs in the Sandy Hook Elementary School shooting case recently settled a multi-million dollar lawsuit against Bushmaster Firearms wherein the Connecticut Supreme Court ruled Bushmaster Firearms International violated Connecticut's Unfair Trade Practices Act by engaging in deceptive advertising practices. The Connecticut Supreme Court found that state's Unfair Trade Practices Act fell within the definition of a state law "applicable to the sale or marketing of a firearm" and, for this reason, denied Bushmaster's attempt to dismiss the case. This case settled and will not be appealed.

The liability provisions in this bill govern the sale or marketing of firearm-related products. To the extent those laws apply to a manufacturer or seller of  firearm, ammunition, or components parts, it appears that any violations, at least to the extent that they were "knowing" and the proximate cause of the harm for which relief is sought by a plaintiff, would appear to fall within the PLCAA exception. Therefore, it appears that PLCAA would not preempt an action under the bill to hold a manufacturer or dealer civilly liable for a violation of the bill's provisions.

3) **Argument in Support.** According to the Brady United Against Gun Violence:

> Current laws restrict the content and placement of advertising and promotional marketing of alcohol, cannabis, and tobacco to protect minors. This is done to prevent potentially harmful substances from getting in the hands of young people as well as preventing the glorification around them. While we certainly see the point of restricting ads around the previous products listed, unlike firearms none of these are a leading cause of death for children and teens.

4) **Argument in Opposition.** The National Rifle Association, Institute for Legislative Action:

> [The] restriction in AB 2571 fails to appreciate that minors can and do possess and use firearms for a variety of lawful purposes. The

state interest asserted in AB 2571 is to combat the "proliferation of firearms to and among minors." The bill also notes, "[t]his state has a compelling interest in ensuring that minors do not possess these dangerous weapons." The asserted interest is not necessarily to discourage illegal use of firearms by minors, but rather all use.

5) **Related Legislation.** AB 1594 (Ting) authorizes the DOJ, local governments and survivors of gun violence to file a civil action in a California court for damages against a gun manufacturer, importer or dealer that violates firearm industry standards of conduct, as specified.

**Analysis Prepared by**:   Kimberly Horiuchi / APPR. / (916) 319-2081

# EXHIBIT 5

AB 2571
Page  1

ASSEMBLY THIRD READING
AB 2571 (Bauer-Kahan and Gipson)
As Amended  April 27, 2022
Majority vote

## SUMMARY

Prohibits firearm industry members from marketing or advertising firearm-related products to minors and authorizes public attorneys and injured plaintiffs to bring a civil action to enforce the prohibition, obtain injunctive relief, and seek either civil penalties, or, in some cases, damages for harms caused by a violation.

**Major Provisions**

1) Provides that a firearm industry member shall not advertise, market, or arrange for placement of an advertising or marketing communication concerning any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors.

2) Requires a court, in determining whether marketing or advertising of a firearm-related product is attractive to minors, to consider the totality of the circumstances, including, but not limited to, whether the marketing or advertising:

   a) Uses caricatures that reasonably appear to be minors or cartoon characters to promote firearm-related products.

   b) Offers brand name merchandise for minors, including but not limited to, hats, t-shirts or other clothing, toys, games, stuffed animals, that promotes a firearm industry member or firearm-related product.

   c) Offers firearm-related products in sizes, colors or designs that are specifically designed to be used by, or appeal to, minors.

   d) Is part of a marketing or advertising campaign designed with the intent to appeal to minors.

   e) Uses images or depictions of minors in advertising and marketing materials to depict the use of firearm-related products.

   f) Is placed in a publication created for the purpose of reaching an audience that is predominately comprised of minors and not intended for a more general audience comprised of adults.

3) Prohibits a firearm industry member from publishing material directed to minors in this state or who has actual knowledge that a minor in this state is using or receiving its material, and from knowingly using, disclosing, compiling, or allowing a third party to use, disclose, or compile, the personal information of that minor with actual knowledge that the use, disclosure, or compilation is for the purpose of marketing or advertising to that minor any firearm-related product.

4) Provides that any person who violates any provision of this chapter shall be liable for a civil penalty not to exceed $25,000 for each violation, which shall be assessed and recovered in a

civil action brought in the name of the people of the State of California by the Attorney General or by any district attorney, county counsel, or city attorney in any court of competent jurisdiction.

5)  Allows a person harmed by a violation of the bill to commence a civil action to recover their

6)  Provides that upon a motion, a court shall award reasonable attorney's fees and costs, including expert witness fees and other litigation expenses, to a plaintiff who is a prevailing

## COMMENTS

This bill prohibits a firearm industry member from advertising, marketing, or arranging for placement any advertising or marketing communication concerning a firearm-related product when the communication is designed, intended, or reasonably appears to make the firearm-related product attractive to minors. The bill then requires a court, in determining whether the marketing or advertising communication makes the firearm-related product attractive to minors, to consider "the totality of the circumstances," including but not limited to whether the marketing or advertising does any of the following:

1)  Uses caricatures that reasonably appear to be minors or cartoon characters to promote firearm-related products.

2)  Offers brand name merchandise for minors, including but not limited to, hats, t-shirts or other clothing, toys, games, stuffed animals, that promotes a firearm industry member or firearm-related product.

3)  Offers firearm-related products in sizes, colors or designs that are specifically designed to be used by, or appeal to, minors.

4)  Is part of a marketing or advertising campaign designed with the intent to appeal to minors.

5)  Uses images or depictions of minors in advertising and marketing materials to depict the use of firearm-related products.

6)  Is placed in a publication created for the purpose of reaching an audience that is predominately comprised of minors and not intended for a more general audience comprised of adults.

*Remedies for violations.* This bill authorizes two types of civil actions to enforce compliance with its provisions. First the Attorney General or any district attorney, county counsel, or city attorney would be authorized to bring a civil action in any court of competent jurisdiction in the name of the people of the State, county, or city, as appropriate, to seek a civil penalty. Any person found in such an action to have violated any provision of the bill would be liable for a civil penalty not to exceed $25,000 for each violation. This bill specifies a number of factors that courts should rely upon in evaluating whether or not to impose the maximum $25,000 civil penalty: the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth.

AB 2571
Page 3

*The bill restricts some marketing and advertising of firearms, raising potential First Amendment concerns.* This bill focuses on advertising and marketing materials that are promulgated by a narrowly defined group of commercial speakers – the firearm industry – rather than on publishers, or even advertisers, in general. Given that these are the only groups that generally engage in this type of commercial speech, the means used by the bill seem narrowly tailored to address the source of the harmful marketing and advertising content, rather than focused on its dissemination. Furthermore, the type of advertising and marketing at issue in this bill is not generally directed towards lawful purchasers of firearms (i.e. adults); rather, they are specifically designed to appeal to, and be directed at, children. Therefore, denying this form of advertising and marketing does not significantly impact a protected interest that firearm industry members have to furnish truthful information to would-be lawful purchasers who have a corresponding interest in receiving such information. (See *Discount Tobacco City & Lottery, Inc. v. United States* (6th Cir. 2012) 674 F.3d 509, 520.) With the findings incorporated into this bill – that firearms marketing and advertising contributes to the unlawful sale of firearms to minors, as well as the unlawful transfer of firearms to minors by adults who may possess those weapons lawfully – the bill seems substantially related to the achievement of its objective.

**According to the Author**

Some firearms manufacturers irresponsibly market weapons to children. For example, Wee 1 Tactical has begun marketing an AR-15 made specifically for children. They currently market the weapon, called a JR-15, with a cartoon skull-and-crossbones with a pacifier. . . . Under current law, the company would be able to market this weapon in California, as long as it does so off-line, e.g., in a magazine advertisement.

This legislation would restrict the marketing and advertising of firearms to minors in all media. Specifically, this bill would prohibit [a firearm industry member] . . . from marketing or advertising firearms, ammunition, or reloaded ammunition to minors.

**Arguments in Support**

According to the Brady United Against Gun Violence:

Current laws restrict the content and placement of advertising and promotional marketing of alcohol, cannabis, and tobacco to protect minors. This is done to prevent potentially harmful substances from getting in the hands of young people as well as preventing the glorification around them. While we certainly see the point of restricting ads around the previous products listed, unlike firearms none of these are a leading cause of death for children and teens.

**Arguments in Opposition**

The National Rifle Association, Institute for Legislative Action:

[The] restriction in AB 2571 fails to appreciate that minors can and do possess and use firearms for a variety of lawful purposes. The state interest asserted in AB 2571 is to combat the "proliferation of firearms to and among minors." The bill also notes, "[t]his state has a compelling interest in ensuring that minors do not possess these dangerous weapons." The asserted interest is not necessarily to discourage illegal use of firearms by minors, but rather all use.

**AB 2571**
Page 4

## FISCAL COMMENTS

According to the Assembly Appropriations Committee:

1) Cost pressures (Trial Court Trust Fund) in the mid-hundreds of thousands of dollars for trial courts to hear and adjudicate civil actions against a firearms industry member that markets and advertises to minors. If five cases are filed in civil court annually requiring seven to ten days or 56 to 80 hours of court time, at an average cost per hour of $1,000 in workload costs, the cost to the trial courts would be between $280,000 and $400,000 annually.  Although courts are not funded on the basis of workload, increased pressure on the Trial Court Trust Fund and staff workload may create a need for increased funding for courts from the General Fund (GF) to perform existing duties.

2) Costs (GF) of $442,000 in fiscal year (FY) 2022-23, $776,000 in FYs 2023-24 and 2024-25 and $388,000 annually thereafter in additional legal staff for the DOJ to prosecute firearm industry members for unlawful advertisements to minors.

## VOTES

**ASM PRIVACY AND CONSUMER PROTECTION:  7-1-3**
**YES:**  Gabriel, Bauer-Kahan, Bennett, Berman, Mike Fong, Irwin, Wilson
**NO:**  Kiley
**ABS, ABST OR NV:**  Cunningham, Valladares, Wicks

**ASM JUDICIARY:  7-2-1**
**YES:**  Stone, Kalra, Maienschein, Reyes, Robert Rivas, Friedman, Bloom
**NO:**  Davies, Kiley
**ABS, ABST OR NV:**  Cunningham

**ASM APPROPRIATIONS:  12-4-0**
**YES:**  Holden, Bryan, Calderon, Carrillo, Mike Fong, Gabriel, Eduardo Garcia, Levine, Quirk, Robert Rivas, Akilah Weber, Wilson
**NO:**  Bigelow, Megan Dahle, Davies, Fong

## UPDATED

VERSION: April 27, 2022

CONSULTANT:  Nichole Rocha / P. & C.P. / (916) 319-2200          FN: 0002582

# EXHIBIT 6

**SENATE JUDICIARY COMMITTEE**
**Senator Thomas Umberg, Chair**
**2021-2022  Regular  Session**

AB 2571 (Bauer-Kahan)
Version: April 27, 2022
Hearing Date: June 14, 2022
Fiscal: Yes
Urgency: No
CK

## SUBJECT

Firearms:  advertising to minors

## DIGEST

This bill prohibits firearm industry members from advertising or marketing, as defined, firearm-related products to minors. The bill restricts the use of minors' personal information in connection with marketing or advertising firearm-related products to those minors.

## EXECUTIVE SUMMARY

In the United States, children are more likely to die from gun violence than in any other high-income country. In 2020, gun violence overtook car accidents to become the number one cause of death for U.S. children and adolescents.[1] In California, children are generally restricted from purchasing and possessing firearms and ammunition, except under specified circumstances. However, concerns have arisen that children are still being marketed to by the gun industry.

This bill prohibits firearm industry members from advertising or marketing, as defined, firearm-related products in a manner that is designed, intended, or reasonably appears to be attractive to minors. The determination of whether it is "attractive to minors" is based on a consideration of the totality of the circumstances, including whether the marketing or advertising used cartoon characters or offered brand name stuffed animals promoting the entity or firearm-related product. The bill also prohibits knowingly leveraging the personal information of a minor for the purpose of marketing or advertising to that minor any firearm-related product, as specified.

---

[1] Laurel Wamsley, *The U.S. is uniquely terrible at protecting children from gun violence* (May 28, 2022) NPR, https://www.npr.org/2022/05/28/1101307932/texas-shooting-uvalde-gun-violence-children-teenagers. All internet citations are current as of June 2, 2022.

AB 2571 (Bauer-Kahan)
Page 2 of 16

This bill is sponsored by Governor Gavin Newsom. It is supported by a variety of groups, including Everytown for Gun Safety and the County of San Diego. The bill is opposed by the National Rifle Association.

## PROPOSED CHANGES TO THE LAW

Existing federal law:

1) Provides, pursuant to the Second Amendment to the United States Constitution, that a well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed. (U.S. Const. Amend. 2.)

2) Prohibits a qualified civil liability action from being brought in any Federal or State court. (15 U.S.C. § 7902.) A "qualified civil liability action" means a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines or penalties, or other relief resulting from the criminal or unlawful misuse of a qualified product by the person or a third party. (15 U.S.C. § 7903.)

3) Establishes the federal Children's Online Privacy Protection Act (COPPA) to provide protections and regulations regarding the collection of personal information from children under the age of 13.  (15 U.S.C. § 6501 et seq.)

Existing state law:

1) Requires a person be at least 18 years of age to be sold most firearms and at least 21 years of age to be sold a handgun, except as specified. (Pen. Code §§ 27505, 27510.)

2) Establishes the Privacy Rights for California Minors in the Digital World (PRCMDW), which prohibits an operator of an internet website, online service, online application, or mobile application ("operator") from the following:
   a) marketing or advertising specified products or services, such as firearms, cigarettes, and alcoholic beverages, on its internet website, online service, online application, or mobile application that is directed to minors;
   b) marketing or advertising such products or services to minors who the operator has actual knowledge are using its site, service, or application online and is a minor, if the marketing or advertising is specifically directed to that minor based upon the personal information of the minor; and

    c) knowingly using, disclosing, compiling, or allowing a third party to use, disclose, or compile, the personal information of a minor with actual knowledge that the use, disclosure, or compilation is for the purpose of marketing or advertising such products or services to that minor, where the website, service, or application is directed to minors or there is actual knowledge that a minor is using the website, service, or application. (Bus. & Prof. Code § 22580.)

3) Requires, pursuant to the PRCMDW, certain operators to permit a minor user to remove the minor's content or information and to further inform the minor of this right and the process for exercising it. (Bus. & Prof. Code § 22581.)

4) Requires, pursuant to the Parent's Accountability and Child Protection Act, a person or business that conducts business in California, and that seeks to sell any product or service in or into California that is illegal under state law to sell to a minor, notwithstanding any general term or condition, take reasonable steps, as specified, to ensure that the purchaser is of legal age at the time of purchase or delivery, including, but not limited to, verifying the age of the purchaser. (Civ. Code § 1798.99.1(a)(1).)

5) Prohibits a business from selling or sharing the personal information of a consumer if the business has actual knowledge that the consumer is less than 16 years of age unless the consumer, in the case of consumers between 13 and 16 years of age, or the consumer's parent or guardian, in the case of consumers who are less than 13 years of age, has affirmatively authorized such sale or sharing. A business that willfully disregards the consumer's age shall be deemed to have had actual knowledge of the consumer's age. (Civ. Code § 1798.120.)

6) Defines "firearm" as a device designed to be used as a weapon from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion. (Pen. Code § 16520.) It defines "firearm precursor part" to mean a component of a firearm that is necessary to build or assemble a firearm and is either an unfinished receiver or an unfinished handgun frame. (Pen. Code § 16531.)

7) Defines "ammunition" to include any bullet, cartridge, magazine, clip, speed loader, autoloader, ammunition feeding device, or projectile capable of being fired from a firearm with a deadly consequence. (Pen. Code § 16150(b).)

8) Requires firearms dealers to obtain certain identifying information from firearms purchasers and forward that information, via electronic transfer, to the DOJ to perform a background check on the purchaser to determine whether they are prohibited from possessing a firearm. (Pen. Code §§ 28160-28220.)

AB 2571 (Bauer-Kahan)
Page 4 of 16

This bill:

1) Prohibits a firearm industry member from advertising, marketing, or arranging for placement of an advertising or marketing communication concerning any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors.

2) Defines "firearm industry member" to include any of the following:
   a) any person or entity engaged in the manufacture, distribution, importation, marketing, wholesale, or retail sale of firearm-related products; or
   b) any person or entity formed for the express purpose of promoting, encouraging, or advocating for the purchase, use, or ownership of firearm-related products that endorses or advertises such products, or advertises, sponsors, or promotes events where they are sold or used.

3) Requires a court when determining whether marketing or advertising of a firearm-related product is attractive to minors to consider the totality of the circumstances, including, but not limited to, whether the marketing or advertising:
   a) uses caricatures that reasonably appear to be minors or cartoon characters to promote firearm-related products;
   b) offers brand name merchandise for minors, including, but not limited to, hats, t-shirts, or other clothing, or toys, games, or stuffed animals that promotes a firearm industry member or firearm-related product;
   c) offers firearm-related products in sizes, colors, or designs that are specifically designed to be used by, or appeal to, minors;
   d) is part of a marketing or advertising campaign designed with the intent to appeal to minors;
   e) uses images or depictions of minors in advertising and marketing materials to depict the use of firearm-related products; or
   f) is placed in a publication created for the purpose of reaching an audience that is predominately composed of minors and not intended for a more general audience composed of adults.

4) Prohibits a firearm industry member publishing material directed to minors in this state or who has actual knowledge that a minor in this state is using or receiving its material, from knowingly using, disclosing, compiling, or allowing a third party to use, disclose, or compile the personal information of that minor with actual knowledge that the use, disclosure, or compilation is for the purpose of marketing or advertising to that minor any firearm-related product.

5) Provides that any person in violation is liable for a civil penalty not to exceed $25,000 for each violation, which shall be assessed and recovered in a civil action

AB 2571 (Bauer-Kahan)
Page 5 of 16

brought in the name of the people of the State of California by the Attorney General or by any district attorney, county counsel, or city attorney in any court of competent jurisdiction. In assessing the amount of the civil penalty, the court shall consider any one or more of the relevant circumstances presented by any of the parties to the case, including, but not limited to, the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth.

6) Authorizes a person harmed by a violation to commence a civil action to recover their actual damages.

7) Authorizes the court to order injunctive relief, including a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for the conduct.

8) Entitles a prevailing plaintiff to reasonable attorney's fees and costs, including expert witness fees and other litigation expenses.

9) Deems each copy or republication of prohibited marketing or advertising a separate violation.

10) Defines "firearm-related product" as a firearm, ammunition, reloaded ammunition, a firearm precursor part, a firearm component, or a firearm accessory that has a specified connection to California.

## **COMMENTS**

1. <u>Children and the epidemic of gun violence in the United States</u>

Gun violence in the United States has surged in recent years. While most shooting deaths involve handguns, there has been a dramatic rise in the use of assault weapons in gun massacres with six or more deaths, owing to their ability to inflict greater damage at a quicker rate.[2] Research shows that laws restricting assault weapons reduce deaths; estimates find mass-shooting fatalities were 70 percent less likely during the period when the federal ban was in effect.[3] Another rising scourge is the prevalence of "ghost guns." In 2020, California accounted for 65 percent of all ghost guns seized by

---

[2] Emily Shapiro, *The type of gun used in most US homicides is not an AR-15* (October 26, 2021) ABC News, https://abcnews.go.com/US/type-gun-us-homicides-ar-15/story?id=78689504. All internet citations are current as of March 22, 2022.

[3] Charles DiMaggio, et al., *Changes in US mass shooting deaths associated with the 1994-2004 federal assault weapons ban: Analysis of open-source data* (January 2019) The Journal of Trauma and Acute Care Surgery, https://doi.org/10.1097/TA.0000000000002060.

AB 2571 (Bauer-Kahan)
Page 6 of 16

the Bureau of Alcohol, Tobacco, Firearms and Explosives.[4] The weapons have been linked to 24 killings and dozens of other crimes in 2020 in Los Angeles alone. The problem of gun violence in our society is not going away. In 2020, over 45,000 Americans died from gun-related injuries in the United States. This is the most on record by far, a 43 percent increase from a decade prior.

As stated, gun violence has now become a leading cause of death of children in this country. This is a problem that is increasingly involving children from an early age:

> On May 24th an 18-year-old gunman, Salvador Ramos, walked into an elementary school in Uvalde, a town in south-west Texas, and shot dead at least 21 people, including 19 children. Mr Ramos was himself killed, reportedly by police. His motive remains unclear. It is the latest in a spate of mass shootings in America, and the toll is the biggest at a school since a gunman killed 26 people at Sandy Hook Elementary in Newtown, Connecticut, in 2012.

> In the decade since Sandy Hook there have been over 900 shootings on school grounds in America. After more than 60 years in which motor-vehicle crashes were the leading cause of death for young people, since 2017 guns have killed more Americans between the ages of one and 24. In 2020 more than 10,000 young Americans were killed by firearms, up from just under 7,000 two decades earlier. Pupils at almost all schools take part in active-shooter drills, learning to hide beneath their desks. Some drills use pellet guns and fake blood to simulate an attack.[5]

Not only are children increasingly the victims, but also the perpetrators of school shootings:

> In cases where the source of the gun could be determined, more than 85 percent of shooters brought them from their own homes or obtained them from friends or relatives, according to The Post's analysis.

> The ranks of school shooters include a 6-year-old boy, who killed a classmate after saying he didn't like her, and a 15-year-old girl, who did the same to a friend for rejecting her romantic overtures.

---

[4] Justin Ray, *'An instrument of death': The problem of ghost guns in California* (November 15, 2021) Los Angeles Times, https://www.latimes.com/california/newsletter/2021-11-15/ghost-guns-california-essential-california.

[5] *Guns are the things most likely to kill young people in America* (May 25, 2022) The Economist, https://www.economist.com/graphic-detail/2022/05/25/guns-are-the-things-most-likely-to-kill-young-people-in-america.

AB 2571 (Bauer-Kahan)
Page 7 of 16

> Seven in 10 of them, however, were under the age of 18, which means that — often because of an adult's negligence — dozens of children had access to deadly weapons.

**The median age of school shooters is 16.**[6]

This is borne out in other studies as well. According to an analysis of FBI data, in 29 of 62 active shooting incidents at educational facilities in the United States between 2000 and 2019, the offender was younger than 18, with an additional 10 shooters between 18 and 21 years old.[7] Another federally-run center database shows "at least 59 percent of the 2,275 school shootings researchers recorded since 1970 were committed by someone under 21 years old. The offender's age is unknown in another 18 percent of incidents."[8]

2. Targeting children with firearm-related products

This bill is prompted by the incidence of marketing and advertising of firearm-related products to children, arguably seeking to attract future legal gun owners. A report from the Violence Policy Center (VPC) outlines the problem:

> The gun industry has long understood that it faces a slow-motion demographic collapse. With the industry's customer base growing older, household gun ownership in America has steadily declined. As its primary market of white males ages and dies off, the firearms industry has set its sights on America's children. Much like the tobacco industry's search for replacement smokers, the gun industry is seeking replacement shooters to purchase its deadly products. Firearms companies have teamed up with "corporate partners" like the National Rifle Association of America, the gun industry's trade association the National Shooting Sports Foundation (NSSF), and online publications such as Junior Shooters in an industry-wide effort to market firearms to kids. They do this by promoting websites and magazines targeted at children, designing "kid-friendly" guns to appeal to the youth market, and even working to create the equivalent of "'reality' video" games to encourage gun use from an early age.

---

[6] John Woodrow Cox, et al., *More than 311,000 students have experienced gun violence at school since Columbine* (May 27, 2022) Washington Post, https://www.washingtonpost.com/graphics/2018/local/school-shootings-database/.
[7] Mary Katherine Wildeman, *Data show most school shootings carried out by young adults, teens* (May 26, 2022) CT Insider, https://www.ctinsider.com/news/article/Data-show-most-school-shootings-carried-out-by-17199231.php.
[8] *Ibid.*

AB 2571 (Bauer-Kahan)
Page 8 of 16

The industry's focus on recruiting children into the gun culture has been acknowledged since at least the 1990s.[9]

One particularly acute example is a product marketed by WEE1 Tactical:

A US gun manufacturer has unveiled a semi-automatic rifle for kids modeled on the AR-15, which has been used in a number of deadly mass shootings, sparking condemnation from gun safety groups.

The gun dubbed the JR-15 is being marketed by maker WEE1 Tactical as "the first in a line of shooting platforms that will safely help adults introduce children to the shooting sports."

The company's website says the rifle "also looks, feels, and operates just like Mom and Dad's gun."

The JR-15 is only 31 inches (80 centimeters) long, weighs less than 2.5 pounds (one kilogram) and comes with magazines of five or 10 rounds of 22 caliber bullets. It was released in mid-January with a price tag of $389.

The adult model, the AR-15, is the civilian version of a military-style weapon and has been used in multiple mass killings in the United States, including in schools.[10]

The marketing generally includes more compact models that are lighter to handle or firearms in various colors. A New York Times blog synthesizes the VPC report:

The gun industry markets a variety of products explicitly to children, a new report shows, from armed stuffed animals to lighter versions of rifles. And some see kids as a vital group of future gun buyers who need to be brought into the fold at a young age.

The report, called "Start Them Young" and issued on Thursday by the Violence Policy Center, lists a variety of firearms meant at least partly for children. It mentions the Crickett rifle, a gun made for children by the company Keystone Sporting Arms. Keystone's website and some of its merchandise bear the image of "Davey Crickett," a gun-wielding cartoon insect. The company sells Davey Crickett hats, dog tags and pins, as well as a Davey Crickett Beanie Baby, listed as "not for children under three years of age."

[9] Josh Sugarmann, *"Start Them Young" How the Firearms Industry and Gun Lobby Are Targeting Your Children* (February 2016) VPC, https://www.vpc.org/studies/startthemyoung.pdf.
[10] Agence France Presse, *US Gunmaker Unveils Semi-automatic Rifle Marketed To Kids* (February 18, 2022) Barron's, https://www.barrons.com/articles/top-gun-movie-business-51654023576.

Keystone's website also sells books featuring "Little Jake," a boy who uses his gun to bring down a bear and save an African village from a marauding elephant. The publisher of the books says Little Jake is actually older than he looks: "Little Jake is a fictional character in his late teens. While small in stature so that young children may relate to him, Little Jake is old enough to hunt and fish safely on his own without adult supervision."

"Start Them Young" also cites the rise of .22-caliber versions of higher-caliber rifles, often produced with lightweight materials. According to an article in the trade magazine Shooting Sports Retailer, "these guns bring the coolness and fun of the tactical rifle to kids and less serious shooters."[11]

According to the author:

In 2021 there were approximately 259 unintentional shootings by children, resulting in 104 deaths and 168 injuries. Weapons used by children have put other children at risk. 91% of the victims in these shootings by children were also under 18, often siblings of the children shooting. In California, gun violence is the third-leading cause of death for children and teens. This epidemic of deadly violence is fueled by an industry that encourages children to hold a gun as soon as they can walk.

Gun manufacturers view children as their next generation of advocates and customers, and target them with slick advertising – even children's books.  The advertising for these weapons is shameless. Children in California are not allowed to buy or own a gun, yet they are advertised to across all forms of media with cartoons, video games, and social media.

AB 2571 will prohibit a person or entity from publishing materials that advertise or market firearms or weapons to anyone under the age of 18. This bill would allow the Attorney General, a District or County Attorney, or a County Counsel to bring a civil action against each violation up to $25,000.

Guns are not a toy. Guns are a tool of death. Taking away this tool of violent indoctrination from the gun industry is a vital step forward to protect California's children.

---

[11] Anna North, *Marketing Guns to Children* (February 19, 2022) The New York Times, https://takingnote.blogs.nytimes.com/2016/02/19/marketing-guns-to-children.

AB 2571 (Bauer-Kahan)
Page 10 of 16

3. Prohibiting the marketing or advertising of such products to children

This bill prohibits a firearm industry member from advertising or marketing any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors. Furthermore, the bill places limitations on how these entities can utilize the personal information of minors in this context. If they are publishing material directed to minors in California or have actual knowledge that a minor is using or receiving its material, they are prohibited from knowingly using, disclosing, compiling, or allowing a third party to use, disclose, or compile, the personal information of that minor with actual knowledge that the use, disclosure, or compilation is for the purpose of marketing or advertising to that minor any firearm-related product.

Violations of these provisions are subject to civil penalties of up to $25,000 for each violation in civil actions brought by the Attorney General or by any district attorney, county counsel, or city attorney. Each copy or republication of prohibited marketing or advertising is deemed a separate violation. Courts are provided specific factors to consider in setting the amount of the penalty including the nature, seriousness, and willfulness of the defendant's misconduct and the defendant's assets, liabilities, and net worth.

An individual harmed by a violation is also authorized to bring suit to recover their actual damages. This would require the individual to establish the causal connection between the violation and their damages.

In addition to the remedies above, the court can order injunctive relief, including a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for the conduct. A prevailing plaintiff is entitled to reasonable attorney's fees and costs, including expert witness fees and other litigation expenses.

The bill also provides some direction to courts in determining whether marketing or advertising of a firearm-related product is attractive to minors. They are to consider the totality of the circumstances, including whether the marketing or advertising:

- uses caricatures that reasonably appear to be minors or cartoon characters to promote firearm-related products;
- offers brand name merchandise for minors, including, but not limited to, hats, t-shirts, or other clothing, or toys, games, or stuffed animals that promotes a firearm industry member or firearm-related product;
- offers firearm-related products in sizes, colors, or designs that are specifically designed to be used by, or appeal to, minors;
- is part of a marketing or advertising campaign designed with the intent to appeal to minors;

AB 2571 (Bauer-Kahan)
Page 11 of 16

- uses images or depictions of minors in advertising and marketing materials to depict the use of firearm-related products; or
- is placed in a publication created for the purpose of reaching an audience that is predominately composed of minors and not intended for a more general audience composed of adults.

4. <u>Concerns raised with the bill</u>

Some concerns have been raised about the bill's constitutionality, namely whether it violates the First Amendment. The prohibitions in this bill restrict the commercial speech of the firearm industry members, but the mere fact that it restricts speech does not mean that such a restriction would violate the First Amendment of the United States Constitution or Article I of the California Constitution.

Generally speaking, the First Amendment and Article I of the California Constitution, act to protect the freedom of expression of the citizens of California. Commercial speech, which is done on behalf of a company or individual for purpose of making a profit, is protected under the state and federal guarantees of free speech, but to a lesser degree than noncommercial speech.[12] A blanket prohibition against truthful, nonmisleading speech about a lawful product, which serves an end unrelated to consumer protection, must be reviewed with skepticism. A "state legislature does not have the broad discretion to suppress truthful, nonmisleading information for paternalistic purposes[.]" (*44 Liquormart, Inc. v. Rhode Island* (1996) 517 U.S. 484, 510.) Ultimately, the First Amendment protects commercial speech against "unwarranted" governmental regulation.

In order to be upheld as a valid restriction on commercial speech, the proposed law must meet the following four-part test: (1) the speech must be about a lawful activity and cannot be false or misleading; (2) the government must have a substantial interest; (3) the law must directly advance the governmental interest asserted; and (4) the law must be no more extensive than necessary. (*Central Hudson Gas v. Public Service Commission* (1980) 447 U.S. 559.)

In this case, the proposed restriction is arguably about restricting the marketing of products to children that are not generally legally able to buy them. California law generally prohibits minors from possessing a handgun and most semi-automatic rifles, as well as ammunition. The possibility and even likelihood that marketing or advertising of firearm-related products that makes those products attractive to children who, in most cases, cannot lawfully possess them, greatly strengthens the argument that the bill's restrictions on the marketing and advertising of firearm-related products could withstand constitutional scrutiny. Even if the speech is lawful, the State of California arguably has a strong interest in taking steps to prevent firearms from being

_____
[12] *See Gerawan Farming, Inc. v. Lyons* (2004) 33 Cal.4th 1, 22.

AB 2571 (Bauer-Kahan)
Page 12 of 16

sold to minors, and the proposed law advances that interest in a manner that does not
cover products or advertisements directed to lawful purchasers. Based on the findings
incorporated into the bill that firearms marketing and advertising contributes to the
unlawful sale of firearms to minors, as well as the unlawful transfer of firearms to
minors by adults who may possess those weapons lawfully, the bill is arguably
substantially related to the achievement of its objective. Although a determination
regarding the First Amendment is ultimately for the courts, arguably the proposed
restriction on marketing and advertising could survive such a challenge.

Similar laws already exist that restrict the advertising of other products to children. For
instance, coin banks, toys, balloons, magic tricks, miniature bottles or cans, confections,
dolls, or other items that appeal to minors or underage drinkers may not be used in
connection with the merchandising of beer. (Bus. & Prof. Code § 25600.) Similarly,
edible cannabis products cannot be designed to be appealing to children or easily
confused with commercially sold candy or foods that do not contain cannabis. (Bus. &
Prof. Code § 26130.)

Another particularly relevant example is the Privacy Rights for California Minors in the
Digital World, which prohibits an operator of an internet website, online service, online
application, or mobile application ("operator") from the following:

- marketing or advertising specified products or services such as firearms,
cigarettes, and alcoholic beverages on its internet website, online service, online
application, or mobile application that is directed to minors;
- marketing or advertising such products or services to minors who the operator
has actual knowledge are using its site, service, or application online and is a
minor, if the marketing or advertising is specifically directed to that minor based
upon the personal information of the minor; and
- knowingly using, disclosing, compiling, or allowing a third party to use, disclose,
or compile, the personal information of a minor with actual knowledge that the
use, disclosure, or compilation is for the purpose of marketing or advertising
such products or services to that minor, where the website, service, or
application is directed to minors or there is actual knowledge that a minor is
using the website, service, or application. (Bus. & Prof. Code § 22580.)

As can be seen, the language of this bill borrows from these existing statutes.

Writing in opposition, the National Rifle Association argues the bill will not withstand
constitutional challenge:

> Even if one is to assume that AB 2571 meets the first three criteria of the
> test set forth in *Central Hudson*, the regulation fails the fourth part of the
> test. A minor may find a piece of advertising attractive for the same
> reasons as an adult. Adults and minors often use firearms for the same
> lawful purposes, prize the same characteristics in firearms, and therefore

would be attracted to the same advertising materials. As AB 2571 would target advertising valued by both minors and adults it would necessarily "impinge on the speaker's ability to propose a commercial transaction and the adult listener's opportunity to obtain information about products."

Moreover, the restriction in AB 2571 fails to appreciate that minors can and do possess and use firearms for a variety of lawful purposes. The state interest asserted in AB 2571 is to combat the "proliferation of firearms to and among minors." The bill also notes, "[t]his state has a compelling interest in ensuring that minors do not possess these dangerous weapons." The asserted interest is not necessarily to discourage illegal use of firearms by minors, but rather all use.

First, as minors are permitted by state law to use firearms for a variety of lawful purposes, it is dubious that the state's asserted interest in AB 2571 of preventing firearm use by minors is "substantial," as required by the second part of the *Central Hudson* test.

Second, if it is the drafters of AB 2571's goal to curb the illegal use of firearms by minors, a less suspect state interest, surely banning all advertising that may be attractive to minors, even that contemplating the use of firearms for lawful purposes, would be overbroad under part four of the *Central Hudson* test.

The legislation's drafters justify their proposed regulation by citing restrictions on "advertising and promotional marketing of alcohol, cannabis, and tobacco to protect minors." As noted in the discussion of *Lorillard Tobacco Co. v. Reilly*, such measures must be the narrowest means of achieving an asserted state interest – which was not the case in Lorillard and is not the case with AB 2571.

However, lawmakers should also understand that the restrictions cited as analogous to that in AB 2571 are of a fundamentally different character. Unlike restrictions on advertising for alcohol, cannabis, and tobacco, the underlying products and conduct that AB 2571 seeks to curb the advertisement of are protected under the U.S. Constitution. As such, lawmakers should be prepared for the courts to level more scrutiny upon restrictions on advertisements concerning Second Amendment protected products and conduct than those leveled at products that don't enjoy such protection.

One additional, potential legal barrier to the bill, is the federal Protection of Lawful Commerce in Arms Act (PLCAA). The PLCAA prohibits a qualified civil liability action from being brought in any federal or state court. (15 U.S.C. § 7902.) A "qualified civil

AB 2571 (Bauer-Kahan)
Page 14 of 16

liability action" means a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party. (15 U.S.C. § 7903.) These statutes stand to preempt state laws that impose liability on manufacturers, sellers, and trade associations for the misuse of firearms by third parties.

However, there are exceptions to the PLCAA's preemptive effect. Specifically, the federal law explicitly does not preempt "an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought." (15 U.S.C. § 7903.) Given that liability attaches in this bill for the direct conduct of firearm industry members themselves, namely their advertising, marketing, or use of minors' personal information, and is not triggered solely by the misconduct of another party, the bill should arguably not be found to be preempted.

5. Stakeholder support

Brady California and the Brady Campaign to Prevent Gun Violence write in support of this measure:

> Current laws restrict the content and placement of advertising and promotional marketing of alcohol, cannabis, and tobacco to protect minors. This is done to prevent potentially harmful substances from getting in the hands of young people as well as preventing the glorification around them. While we certainly see the point of restricting ads around the previous products listed, unlike firearms none of these are a leading cause of death for children and teens.

Writing in support, the City of Mountain View argues the bill provides "another tool in the tool belt of municipalities to counter dangerous practices that jeopardize the health and wellness of our communities."

The County of San Diego writes in support of this bill, and gun legislation in general:

> The County of San Diego recognizes action must be taken to prevent unintentional shootings and reduce the risk of homicides and decrease access to guns used in crimes.

> State legislation that addresses gun violence will help hold the gun industry accountable through private lawsuits and by prohibiting the advertisement of certain categories of weapons. The County of San Diego

AB 2571 (Bauer-Kahan)
Page 15 of 16

supports these and other efforts that would allow for new oversight and accountability measures for the gun industry.

## SUPPORT

Governor Gavin Newsom (sponsor)
Brady California
Brady Campaign to Prevent Gun Violence
City of Mountain View
County of San Diego
Everytown for Gun Safety
March for Our Lives
Moms Demand Action for Gun Sense in America
Students Demand Action for Gun Sense in America

## OPPOSITION

National Rifle Association

## RELATED LEGISLATION

Pending Legislation:

SB 1327 (Hertzberg, 2022) establishes privately-enforced civil causes of action against any person who manufactures or causes to be manufactured, distributes, transports, or imports into the state, or causes to be distributed or transported or imported into the state, keeps for sale or offers or exposes for sale, or gives or lends any firearm lacking a required serial number, assault weapon, .50 BMG rifle, or firearm precursor part, as specified. This bill is currently in the Assembly Judiciary Committee.

AB 452 (Friedman, 2022) requires local educational agencies to inform parents, through a notice, of California's child access prevention laws and other firearm laws. This bill is currently in the Senate Appropriations Committee.

AB 1594 (Ting, 2022) establishes a firearm industry standard of conduct, which would require a firearm industry member, as defined, to, among other things, establish, implement, and enforce reasonable controls, as defined, and adhere to specified laws pertaining to unfair methods of competition, unfair or deceptive acts or practices, or false advertising. The bill also prohibits a firearm industry member from manufacturing, marketing, importing, offering for wholesale sale, or offering for retail sale a firearm-related product that is abnormally dangerous and likely to create an unreasonable risk of harm to public health and safety in California, as specified. This bill is currently in this Committee and will be heard on the same day as this bill.

AB 2571 (Bauer-Kahan)
Page 16 of 16

AB 1621 (Gipson, 2022), among other things, prohibits the sale, transfer, or possession of an unserialized firearm precursor part, except as specified, and explicitly prohibits the possession or transfer of a firearm without a serial number or mark of identification. This bill is currently in the Senate Public Safety Committee.

Prior Legislation: SB 568 (Steinberg, Ch. 336, Stats. 2013) established the Privacy Rights for California Minors in the Digital World.

## **PRIOR VOTES:**

Assembly Floor (Ayes 48, Noes 16)
Assembly Appropriations Committee (Ayes 12, Noes 4)
Assembly Judiciary Committee (Ayes 7, Noes 2)
Assembly Privacy and Consumer Protection Committee (Ayes 7, Noes 1)

**************

# EXHIBIT 7

# SENATE COMMITTEE ON APPROPRIATIONS
## Senator Anthony Portantino, Chair
### 2021 - 2022  Regular  Session

**AB 2571 (Bauer-Kahan) - Firearms:  advertising to minors**

| | |
|---|---|
| **Version:** June 15, 2022 | **Policy Vote:** |
| **Urgency:** Yes | **Mandate:** No |
| **Hearing Date:** June 16, 2022 | **Consultant:** Matthew Fleming |

**Bill Summary:**  AB 2571, an urgency measure, would prohibit firearm industry members from advertising or marketing firearm-related products to minors.

**Fiscal Impact:**

- <u>DOJ</u>:  The Department of Justice DOJ reports costs of $442,000 in Fiscal Year (FY) 2022-23, $776,000 in F 2023-24, $776,000 in FY 2024-25, $596,000 in FY 2025-26, and $388,000 annually thereafter (General Fund).

- <u>Courts</u>:  Unknown, potentially-significant workload cost pressures as the courts are required to adjudicate violations of this bill's provisions (Special Fund - Trial Court Trust Fund, General Fund).  See Staff Comments for additional detail.

**Background:**  In the United States, children are more likely to die from gun violence than in any other high-income country. In 2020, gun violence overtook car accidents to become the number one cause of death for U.S. children and adolescents.  In California, children are generally restricted from purchasing and possessing firearms and ammunition, except under specified circumstances.  Nonetheless, according to an analysis of FBI data, in 29 of 62 active shooting incidents at educational facilities in the United States between 2000 and 2019, the offender was younger than 18, with an additional 10 shooters between 18 and 21 years old.  Another federally-run center database shows at least 59 percent of the 2,275 school shootings researchers recorded since 1970 were committed by someone under 21 years old. The offender's age is unknown in another 18 percent of incidents.

There has been a variety of reporting on the subject of marketing firearms to children. Some examples of this practice include 1) the "Crickett rifle," a gun made for children by the company Keystone Sporting Arms. Keystone's website and some of its merchandise bear the image of "Davey Crickett," a gun-wielding cartoon insect;  2) the "JR-15," a child-size version of the AR-15, that is marketed to "look, feel, and operate just like Mom and Dad's gun;" and 3) a book series featuring "Little Jake," a boy who uses his gun to bring down a bear and save an African village from a marauding elephant. The publisher of the books says Little Jake is actually older than he looks: "Little Jake is a fictional character in his late teens. While small in stature so that young children may relate to him, Little Jake is old enough to hunt and fish safely on his own without adult supervision."  This bill seeks to prohibit firearm manufacturer and other industry members from targeting minors with advertisements for firearms and related products.

**AB 2571 (Bauer-Kahan)**                                                          Page **2** of **4**

There has been nearly continuous litigation in the federal courts over California's firearms laws.  Last year, a federal judge ruled that California's ban on the AR-15 assault rifle was unconstitutional.  (*See Miller v. Bonta*, (S.D. Cal., June 4, 2021) 542 F. Supp. 3d 1009.)  *Miller* was the third federal district court decision in recent years to find a California firearms regulation unconstitutional under the Second Amendment to the United States Constitution, joining *Rhode v. Becerra* (S.D. Cal., 2020) 445 F. Supp. 3d 902 (ammunition background checks), and *Duncan v. Becerra* (9th Cir. 2020) 970 F.3d 1133 (high-capacity magazines).  *Duncan* was subsequently overturned by the Ninth Circuit Court of Appeals sitting *en banc*.  (*Duncan v. Bonta* (9th Cir. 2021) 19 F.4th 1087).  Because this firearms bill may be interpreted as a restriction on commercial speech, it is almost certain to face a constitutional challenge. (*See Nordyke v. Santa Clara County* (9th Cir. 2009) 110 F.3d 707, 710 (holding that "an offer to sell firearms or ammunition" is constitutionally protected commercial speech under the First Amendment to the United States Constitution.)

**Proposed Law:**

- Prohibits a firearm industry member from advertising, marketing, or arranging for placement of an advertising or marketing communication concerning any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors.

- Requires a court when determining whether marketing or advertising of a firearm-related product is attractive to minors to consider the totality of the circumstances, including criteria specified in the bill.

- Prohibits a firearm industry member publishing material directed to minors in this state or who has actual knowledge that a minor in this state is using or receiving its material, from knowingly using, disclosing, compiling, or allowing a third party to use, disclose, or compile the personal information of that minor with actual knowledge that the use, disclosure, or compilation is for the purpose of marketing or advertising to that minor any firearm-related product.

- Provides that any person in violation is liable for a civil penalty not to exceed $25,000 for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General or by any district attorney, county counsel, or city attorney in any court of competent jurisdiction.  Specifies criteria the court must consider in setting the amount of the monetary penalty.

- Authorizes a person harmed by a violation to commence a civil action to recover their actual damages.

- Authorizes the court to order injunctive relief, including a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for the conduct.

- Entitles a prevailing plaintiff to reasonable attorney's fees and costs, including expert witness fees and other litigation expenses.

**AB 2571 (Bauer-Kahan)**

- Deems each copy or republication of prohibited marketing or advertising a separate violation.

- Contains an urgency clause.

- Defines terms for purposes of the bill.

**Related Legislation:**

- SB 1327 (Hertzberg, 2022) establishes privately-enforced civil causes of action against any person who manufactures or causes to be manufactured, distributes, transports, or imports into the state, or causes to be distributed or transported or imported into the state, keeps for sale or offers or exposes for sale, or gives or lends any firearm lacking a required serial number, assault weapon, .50 BMG rifle, or firearm precursor part, as specified. SB 1327 is pending in the Assembly Judiciary Committee.

- AB 452 (Friedman, 2022) requires local educational agencies to inform parents, through a notice, of California's child access prevention laws and other firearm laws. AB 452 is pending in this committee.

- AB 1594 (Ting, 2022) establishes a firearm industry standard of conduct, which would require a firearm industry member, as defined, to, among other things, establish, implement, and enforce reasonable controls, as defined, and adhere to specified laws pertaining to unfair methods of competition, unfair or deceptive acts or practices, or false advertising. The bill also prohibits a firearm industry member from manufacturing, marketing, importing, offering for wholesale sale, or offering for retail sale a firearm-related product that is abnormally dangerous and likely to create an unreasonable risk of harm to public health and safety in California, as specified. AB 1594 is pending in this committee.

- AB 1621 (Gipson, 2022), among other things, prohibits the sale, transfer, or possession of an unserialized firearm precursor part, except as specified, and explicitly prohibits the possession or transfer of a firearm without a serial number or mark of identification. AB 1621 is pending in this committee.

**Staff Comments**: Due to the likelihood that this bill could generate a constitutional challenge, the DOJ reported that its Governmental Law Section (GLS) require additional resources beginning in FY 2022-23 and concluding in FY 2025-26. Specifically, GLS woul require 1.0 Deputy Attorney General and the legal complement of 1.0 Legal Secretary. In addition, the Consumer Protection Section (CPS), within the Public Rights Division anticipates an increase in workload investigating potential violations of the law as well as increased litigation of civil enforcement actions in state or federal court upon the enactment of AB 2571. To address the additional workload, CPS will require additional resources consisting of 1.0 Deputy Attorney General and the legal complement of 1.0 Legal Secretary, beginning in FY 2022-23 and ongoing.

While the superior courts are not funded on a workload basis, an increase in workload could result in delayed court services and would put pressure on the General Fund to increase the amount appropriated to backfill for trial court operations. The proposed

**AB 2571 (Bauer-Kahan)**                                    Page **4** of **4**

2022-2023 budget would appropriate $138.5 million from the General Fund to backfill continued reduction in fine and fee revenue for trial court operations.  Increased court workload results in additional pressure to increase the backfill amount appropriated from the General Fund for trial court operations.

**-- END --**

# EXHIBIT 8

**SENATE RULES COMMITTEE**                                      AB 2571
Office of Senate Floor Analyses
(916) 651-1520   Fax: (916) 327-4478

---

THIRD READING

---

Bill No:     AB 2571
Author:      Bauer-Kahan (D) and Gipson (D), et al.
Amended:     6/15/22 in Senate
Vote:        27 - Urgency

---

SENATE JUDICIARY COMMITTEE:  9-1, 6/14/22
AYES:  Umberg, Caballero, Durazo, Gonzalez, Hertzberg, Laird, Stern,
  Wieckowski, Wiener
NOES:  Jones
NO VOTE RECORDED:  Borgeas

SENATE APPROPRIATIONS COMMITTEE:  5-0, 6/16/22
AYES:  Portantino, Bradford, Kamlager, Laird, Wieckowski
NO VOTE RECORDED:  Bates, Jones

ASSEMBLY FLOOR:  48-16, 5/23/22 - See last page for vote

---

**SUBJECT:**  Firearms:  advertising to minors

**SOURCE:**   Governor Gavin Newsom

---

**DIGEST:**  This bill prohibits firearm industry members from advertising or
marketing, as defined, firearm-related products to minors. This bill restricts the use
of minors' personal information in connection with marketing or advertising
firearm-related products to those minors.

**ANALYSIS:**

Existing federal law:

1)  Provides, pursuant to the Second Amendment to the United States Constitution,
    that a well regulated militia, being necessary to the security of a free state, the
    right of the people to keep and bear arms, shall not be infringed. (U.S. Const.
    Amend. 2.)

2) Prohibits a qualified civil liability action from being brought in any federal or state court. (15 U.S.C. § 7902.)

3) Establishes the federal Children's Online Privacy Protection Act (COPPA) to provide protections and regulations regarding the collection of personal information from children under the age of 13.  (15 U.S.C. § 6501 et seq.)

Existing state law:

1) Requires a person be at least 18 years of age to be sold most firearms and at least 21 years of age to be sold a handgun, except as specified. (Pen. Code §§ 27505, 27510.)

2) Establishes the Privacy Rights for California Minors in the Digital World (PRCMDW), which prohibits an operator of an internet website, online service, online application, or mobile application ("operator") from specified acts. (Bus. & Prof. Code § 22580.)

3) Requires, pursuant to PRCMDW, certain operators to permit a minor user to remove the minor's content or information and to further inform the minor of this right and the process for exercising it. (Bus. & Prof. Code § 22581.)

4) Requires, pursuant to the Parent's Accountability and Child Protection Act, a person or business that conducts business in California, and that seeks to sell any product or service in or into California that is illegal under state law to sell to a minor to, notwithstanding any general term or condition, take reasonable steps, as specified, to ensure that the purchaser is of legal age at the time of purchase or delivery, including, but not limited to, verifying the age of the purchaser. (Civ. Code § 1798.99.1(a)(1).)

5) Prohibits a business from selling or sharing the personal information of a consumer if it has actual knowledge the consumer is less than 16 years of age unless the consumer has affirmatively authorized such sale or sharing. A business that willfully disregards the consumer's age shall be deemed to have had actual knowledge of the consumer's age. (Civ. Code § 1798.120.)

6) Defines "firearm" as a device designed to be used as a weapon from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion. It defines "firearm precursor part" to mean a component of a firearm that is necessary to build or assemble a firearm and is either an unfinished receiver or handgun frame. Defines "ammunition" to include any bullet, cartridge, magazine, clip, speed loader, autoloader, ammunition feeding

device, or projectile capable of being fired from a firearm with a deadly consequence. (Pen. Code §§ 16150(b), 16520, 16531.)

7) Requires firearms dealers to obtain certain identifying information from purchasers and forward that information to the Department of Justice (DOJ) to perform a background check on the purchaser to determine whether they are prohibited from possessing a firearm. (Pen. Code §§ 28160-28220.)

This bill:

1) Prohibits a firearm industry member from advertising, marketing, or arranging for placement of advertising or marketing communications concerning any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors.

2) Defines "firearm industry member" to include any of the following:

   a) Any person or entity engaged in the manufacture, distribution, importation, marketing, wholesale, or retail sale of firearm-related products; or

   b) Any person or entity formed for the express purpose of promoting, encouraging, or advocating for the purchase, use, or ownership of firearm-related products that endorses or advertises such products, or advertises, sponsors, or promotes events where they are sold or used.

3) Requires a court when determining whether marketing or advertising of a firearm-related product is attractive to minors to consider the totality of the circumstances, including whether the marketing or advertising:

   a) Uses caricatures that reasonably appear to be minors or cartoon characters to promote firearm-related products;

   b) Offers brand name merchandise for minors, including, but not limited to, hats, t-shirts, or other clothing, or toys, games, or stuffed animals that promotes a firearm industry member or firearm-related product;

   c) Offers firearm-related products in sizes, colors, or designs that are specifically designed to be used by, or appeal to, minors;

   d) Is part of a marketing or advertising campaign designed with the intent to appeal to minors;

   e) Uses images or depictions of minors in advertising and marketing materials to depict the use of firearm-related products; or

    f)  Is placed in a publication created for the purpose of reaching an audience that is predominately composed of minors and not intended for a more general audience composed of adults.

4)  Prohibits a member publishing material directed to minors in this state or who has actual knowledge that a minor in this state is using or receiving its material, from knowingly using, disclosing, compiling, or allowing a third party to use, disclose, or compile the personal information of that minor with actual knowledge that the use, disclosure, or compilation is for the purpose of marketing or advertising to that minor any firearm-related product.

5)  Provides that any person in violation is liable for a civil penalty not to exceed $25,000 per violation in an action brought by the Attorney General or by any district attorney, county counsel, or city attorney. In assessing the amount of the civil penalty, the court shall consider relevant circumstances, including the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the misconduct, and the defendant's assets, liabilities, and net worth. Deems each copy or republication of prohibited marketing or advertising a separate violation.

6)  Authorizes a person harmed to seek actual damages in a civil action.

7)  Authorizes the court to order injunctive relief, including a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for the conduct. Entitles a prevailing plaintiff to reasonable attorney's fees and costs, including expert witness fees and other litigation expenses.

8)  Defines "firearm-related product" as a firearm, ammunition, reloaded ammunition, a firearm precursor part, a firearm component, or a firearm accessory that has a specified connection to California.

**Comments**

According to the author:

> In 2021 there were approximately 259 unintentional shootings by children, resulting in 104 deaths and 168 injuries. Weapons used by children have put other children at risk. 91% of the victims in these shootings by children were also under 18, often siblings of the children shooting. In California, gun violence is the third-leading cause of death for children and teens. This

epidemic of deadly violence is fueled by an industry that encourages children to hold a gun as soon as they can walk.

Gun manufacturers view children as their next generation of advocates and customers, and target them with slick advertising – even children's books. The advertising for these weapons is shameless. Children in California are not allowed to buy or own a gun, yet they are advertised to across all forms of media with cartoons, video games, and social media.

AB 2571 will prohibit a person or entity from publishing materials that advertise or market firearms or weapons to anyone under the age of 18. This bill would allow the Attorney General, a District or County Attorney, or a County Counsel to bring a civil action against each violation up to $25,000.

Guns are not a toy. Guns are a tool of death. Taking away this tool of violent indoctrination from the gun industry is a vital step forward to protect California's children.

*Prohibiting the marketing or advertising of such products to children*

This bill prohibits a firearm industry member from advertising or marketing any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors. Furthermore, this bill places limitations on how these entities can utilize the personal information of minors in this context. If they are publishing material directed to minors in California or have actual knowledge that a minor is using or receiving its material, they are prohibited from knowingly using, disclosing, compiling, or allowing a third party to use, disclose, or compile, the personal information of that minor with actual knowledge that the use, disclosure, or compilation is for the purpose of marketing or advertising to that minor any firearm-related product. This bill also provides some direction to courts in determining whether marketing or advertising of a firearm-related product is attractive to minors. They are to consider the totality of the circumstances, including whether the marketing or advertising does certain specified things.

Violations of these provisions are subject to civil penalties in actions brought by public prosecutors, or actual damages in actions brought by injured persons.

*Legal obstacles*

The prohibitions in this bill restrict the commercial speech of the firearm industry members, but the mere fact that it restricts speech does not mean that such a restriction would violate the First Amendment of the United States Constitution or Article I of the California Constitution.

Generally speaking, the First Amendment and Article I, act to protect the freedom of expression of the citizens of California. Commercial speech, which is done on behalf of a company or individual for purpose of making a profit, is protected under the state and federal guarantees of free speech, but to a lesser degree than noncommercial speech.[1] Ultimately, the First Amendment protects commercial speech against "unwarranted" governmental regulation.

In order to be upheld as a valid restriction on commercial speech, the proposed law must meet the following four-part test: (1) the speech must be about a lawful activity and cannot be false or misleading; (2) the government must have a substantial interest; (3) the law must directly advance the governmental interest asserted; and (4) the law must be no more extensive than necessary. (*Central Hudson Gas v. Public Service Commission* (1980) 447 U.S. 559.) Although a determination is ultimately for the courts, arguably the proposed restriction on marketing and advertising could survive such a First Amendment challenge.

Similar laws already exist that restrict the advertising of other products to children. For instance, coin banks, toys, balloons, magic tricks, miniature bottles or cans, confections, dolls, or other items that appeal to minors or underage drinkers may not be used in connection with the merchandising of beer. (Bus. & Prof. Code § 25600.) Similarly, edible cannabis products cannot be designed to be appealing to children or easily confused with commercially sold candy or foods that do not contain cannabis. (Bus. & Prof. Code § 26130.) Another particularly relevant example is PRCMDW, which prohibits an operator from specified conduct, such as marketing or advertising specified products or services such as firearms and alcoholic beverages on its website, online service or application that is directed to minors. It also prohibits operators from knowingly using the personal information of a minor with actual knowledge that the use is for the purpose of marketing or advertising such products or services to that minor, where the website, service, or application is directed to minors or there is actual knowledge that a minor is using the website, service, or application. (Bus. & Prof. Code § 22580.) As can be seen, the language of this bill borrows from these existing statutes.

One additional, potential legal barrier to the bill is the the federal Protection of Lawful Commerce in Arms Act (PLCAA), which prohibits a qualified civil liability action from being brought in any federal or state court. (15 U.S.C. § 7902.) A "qualified civil liability action" means a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other

---

[1] *See Gerawan Farming, Inc. v. Lyons* (2004) 33 Cal.4th 1, 22.

relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party. (15 U.S.C. § 7903.) These statutes stand to preempt state laws that impose liability on manufacturers, sellers, and trade associations for the misuse of firearms by third parties.

However, there are exceptions to the PLCAA's preemptive effect. Specifically, the federal law explicitly does not preempt "an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought." (15 U.S.C. § 7903.)

(NOTE: For a more thorough discussion, see the Senate Judiciary Committee analysis.)

**FISCAL EFFECT:**  Appropriation:  No   Fiscal Com.:  Yes   Local:  No

According to the Senate Appropriations Committee:

- DOJ:  The DOJ reports costs of $442,000 in Fiscal Year (FY) 2022-23, $776,000 in F 2023-24, $776,000 in FY 2024-25, $596,000 in FY 2025-26, and $388,000 annually thereafter (General Fund).

- Courts:  Unknown, potentially-significant workload cost pressures as the courts are required to adjudicate violations of this bill's provisions (Special Fund - Trial Court Trust Fund, General Fund).

**SUPPORT:**  (Verified  6/20/22)

Governor Gavin Newsom (source)
Brady California
Brady Campaign to Prevent Gun Violence
California School Employees Association
City of Mountain View
County of San Diego
Everytown for Gun Safety
Friends Committee on Legislation of California
Giffords
March for Our Lives
Moms Demand Action for Gun Sense in America
National Association of Social Workers, California Chapter
Students Demand Action for Gun Sense in America

**OPPOSITION:**  (Verified  6/20/22)

National Rifle Association

**ARGUMENTS IN SUPPORT:** The Brady Campaign to Prevent Gun Violence writes, "Current laws restrict the content and placement of advertising and promotional marketing of alcohol, cannabis, and tobacco to protect minors. This is done to prevent potentially harmful substances from getting in the hands of young people as well as preventing the glorification around them. While we certainly see the point of restricting ads around the previous products listed, unlike firearms none of these are a leading cause of death for children and teens."

**ARGUMENTS IN OPPOSITION:** The National Rifle Association argues, "Even if one is to assume that AB 2571 meets the first three criteria of the test set forth in *Central Hudson*, the regulation fails the fourth part of the test. A minor may find a piece of advertising attractive for the same reasons as an adult. Adults and minors often use firearms for the same lawful purposes, prize the same characteristics in firearms, and therefore would be attracted to the same advertising materials. As AB 2571 would target advertising valued by both minors and adults it would necessarily 'impinge on the speaker's ability to propose a commercial transaction and the adult listener's opportunity to obtain information about products.'"

ASSEMBLY FLOOR:  48-16, 5/23/22
AYES:  Aguiar-Curry, Arambula, Bauer-Kahan, Bennett, Bloom, Boerner
   Horvath, Bryan, Calderon, Carrillo, Cervantes, Daly, Mike Fong, Friedman,
   Gabriel, Cristina Garcia, Eduardo Garcia, Gipson, Haney, Holden, Irwin, Jones-
   Sawyer, Kalra, Lee, Levine, Low, Maienschein, McCarty, Medina, Mullin,
   Muratsuchi, Nazarian, Petrie-Norris, Quirk, Quirk-Silva, Ramos, Reyes, Luz
   Rivas, Robert Rivas, Rodriguez, Santiago, Stone, Ting, Villapudua, Ward,
   Akilah Weber, Wicks, Wood, Rendon
NOES:  Bigelow, Cooley, Cunningham, Megan Dahle, Davies, Flora, Fong,
   Gallagher, Kiley, Lackey, Mathis, Patterson, Seyarto, Smith, Voepel, Waldron
NO VOTE RECORDED:  Berman, Mia Bonta, Chen, Choi, Cooper, Gray,
   Grayson, Mayes, Nguyen, O'Donnell, Blanca Rubio, Salas, Valladares, Wilson

Prepared by:   Christian Kurpiewski / JUD. / (916) 651-4113
6/22/22 14:49:34

\*\*\*\*  **END**  \*\*\*\*

# EXHIBIT 9

CONCURRENCE IN SENATE AMENDMENTS
AB 2571 (Bauer-Kahan and Gipson)
As Amended  June 15, 2022
2/3 vote.  Urgency

## SUMMARY

Prohibits firearm industry members from marketing or advertising firearm-related products to minors and authorizes public attorneys and injured plaintiffs to bring a civil action to enforce the prohibition, obtain injunctive relief, and seek either civil penalties, or, in some cases, damages for harms caused by a violation.

**Senate Amendments**

Declare that the act is an urgency statute necessary in order to protect public safety by prohibiting firearm advertising to minors as soon as possible, and shall go into immediate effect.

## COMMENTS

This bill prohibits a firearm industry member from advertising, marketing, or arranging for placement any advertising or marketing communication concerning a firearm-related product when the communication is designed, intended, or reasonably appears to make the firearm-related product attractive to minors. The bill then requires a court, in determining whether the marketing or advertising communication makes the firearm-related product attractive to minors, to consider "the totality of the circumstances," including but not limited to whether the marketing or advertising does any of the following:

1) Uses caricatures that reasonably appear to be minors or cartoon characters to promote firearm-related products.

2) Offers brand name merchandise for minors, including but not limited to, hats, t-shirts or other clothing, toys, games, stuffed animals, that promotes a firearm industry member or firearm-related product.

3) Offers firearm-related products in sizes, colors or designs that are specifically designed to be used by, or appeal to, minors.

4) Is part of a marketing or advertising campaign designed with the intent to appeal to minors.

5) Uses images or depictions of minors in advertising and marketing materials to depict the use of firearm-related products.

6) Is placed in a publication created for the purpose of reaching an audience that is predominately comprised of minors and not intended for a more general audience comprised of adults.

*Remedies for violations.* The bill authorizes two types of civil actions to enforce compliance with its provisions. First, the Attorney General or any district attorney, county counsel, or city attorney would be authorized to bring a civil action in any court of competent jurisdiction in the name of the people of the State, county, or city, as appropriate, to seek a civil penalty. Any person found in such an action to have violated any provision of the bill would be liable for a

civil penalty not to exceed $25,000 for each violation. The bill specifies a number of factors that courts should rely upon in evaluating whether or not to impose the maximum $25,000 civil penalty: the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth.  Second, the bill authorizes a person harmed by a violation of any provision of the bill to commence a civil action to recover actual damages.  In either case, the court would be required to order injunctive relief, including a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for the conduct, as the court deems necessary to prevent the harm, and to award reasonable attorney's fees and costs to a prevailing plaintiff.

*The bill restricts some marketing and advertising of firearms, raising potential First Amendment concerns.* This bill focuses on advertising and marketing materials that are promulgated by a narrowly defined group of commercial speakers – the firearm industry – rather than on publishers, or even advertisers, in general. Given that these are the only groups that generally engage in this type of commercial speech, the means used by the bill seem narrowly tailored to address the source of the harmful marketing and advertising content, rather than focused on its dissemination. Furthermore, the type of advertising and marketing at issue in this bill is not generally directed towards lawful purchasers of firearms (i.e. adults); rather, they are specifically designed to appeal to, and be directed at, children. Therefore, denying this form of advertising and marketing does not significantly impact a protected interest that firearm industry members have to furnish truthful information to would-be lawful purchasers who have a corresponding interest in receiving such information. (See *Discount Tobacco City & Lottery, Inc. v. United States* (6th Cir. 2012) 674 F.3d 509, 520.) With the findings incorporated into the bill – that firearms marketing and advertising contributes to the unlawful sale of firearms to minors, as well as the unlawful transfer of firearms to minors by adults who may possess those weapons lawfully – the bill seems substantially related to the achievement of its objective.

**According to the Author**

Some firearms manufacturers irresponsibly market weapons to children. For example, Wee 1 Tactical has begun marketing an AR-15 made specifically for children. They currently market the weapon, called a JR-15, with a cartoon skull-and-crossbones with a pacifier. . . . Under current law, the company would be able to market this weapon in California, as long as it does so off-line, e.g., in a magazine advertisement.

This legislation would restrict the marketing and advertising of firearms to minors in all media. Specifically, this bill would prohibit [a firearm industry member] . . . from marketing or advertising firearms, ammunition, or reloaded ammunition to minors .

**Arguments in Support**

According to the Brady United Against Gun Violence:

Current laws restrict the content and placement of advertising and promotional marketing of alcohol, cannabis, and tobacco to protect minors. This is done to prevent potentially harmful substances from getting in the hands of young people as well as preventing the glorification around them. While we certainly see the point of restricting ads around the previous products listed, unlike firearms none of these are a leading cause of death for children and teens.

**Arguments in Opposition**

The National Rifle Association, Institute for Legislative Action:

> [The] restriction in AB 2571 fails to appreciate that minors can and do possess and use firearms for a variety of lawful purposes. The state interest asserted in AB 2571 is to combat the "proliferation of firearms to and among minors." The bill also notes, "[t]his state has a compelling interest in ensuring that minors do not possess these dangerous weapons." The asserted interest is not necessarily to discourage illegal use of firearms by minors, but rather all use.

## FISCAL COMMENTS

According to the Senate Appropriations Committee:

1) *Department of Justice (DOJ)*: The DOJ reports costs of $442,000 in Fiscal Year (FY) 2022-23, $775,000 in FY 2023-24, $776,000 in FY 2024-25, $596,000 in FY 2025-26, and $388,000 annually thereafter (General Fund).

2) *Courts*: Unknown, potentially-significant workload cost pressures as the courts are required to adjudicate violations of this bill's provisions (Special Fund – Trial Court Trust Fund, General Fund).

## VOTES:

**ASM PRIVACY AND CONSUMER PROTECTION: 7-1-3**
**YES:** Gabriel, Bauer-Kahan, Bennett, Berman, Mike Fong, Irwin, Wilson
**NO:** Kiley
**ABS, ABST OR NV:** Cunningham, Valladares, Wicks

**ASM JUDICIARY: 7-2-1**
**YES:** Stone, Kalra, Maienschein, Reyes, Robert Rivas, Friedman, Bloom
**NO:** Davies, Kiley
**ABS, ABST OR NV:** Cunningham

**ASM APPROPRIATIONS: 12-4-0**
**YES:** Holden, Bryan, Calderon, Carrillo, Mike Fong, Gabriel, Eduardo Garcia, Levine, Quirk, Robert Rivas, Akilah Weber, Wilson
**NO:** Bigelow, Megan Dahle, Davies, Fong

**ASSEMBLY FLOOR: 48-16-14**
**YES:** Aguiar-Curry, Arambula, Bauer-Kahan, Bennett, Bloom, Boerner Horvath, Bryan, Calderon, Carrillo, Cervantes, Daly, Mike Fong, Friedman, Gabriel, Cristina Garcia, Eduardo Garcia, Gipson, Haney, Holden, Irwin, Jones-Sawyer, Kalra, Lee, Levine, Low, Maienschein, McCarty, Medina, Mullin, Muratsuchi, Nazarian, Petrie-Norris, Quirk, Quirk-Silva, Ramos, Reyes, Luz Rivas, Robert Rivas, Rodriguez, Santiago, Stone, Ting, Villapudua, Ward, Akilah Weber, Wicks, Wood, Rendon
**NO:** Bigelow, Cooley, Cunningham, Megan Dahle, Davies, Flora, Fong, Gallagher, Kiley, Lackey, Mathis, Patterson, Seyarto, Smith, Voepel, Waldron
**ABS, ABST OR NV:** Berman, Mia Bonta, Chen, Choi, Cooper, Gray, Grayson, Mayes, Nguyen, O'Donnell, Blanca Rubio, Salas, Valladares, Wilson

**AB 2571**
Page  4

**SENATE FLOOR:  27-7-6**
**YES:**  Allen, Archuleta, Atkins, Becker, Bradford, Caballero, Cortese, Dodd, Durazo, Eggman, Hertzberg, Hueso, Kamlager, Leyva, Limón, McGuire, Min, Newman, Pan, Portantino, Roth, Rubio, Skinner, Stern, Umberg, Wieckowski, Wiener
**NO:**  Dahle, Grove, Jones, Melendez, Nielsen, Ochoa Bogh, Wilk
**ABS, ABST OR NV:**  Bates, Borgeas, Glazer, Gonzalez, Hurtado, Laird

**UPDATED**

VERSION: June 15, 2022

CONSULTANT:  Landon Klein / P. & C.P. / (916) 319-2200                    FN: 0003147

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Junior Sports Magazines, Inc., et al. v. Bonta*
Case No.:     2:22-cv-04663-CAS (JCx)

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Kevin J. Kelly, Deputy Attorney General
kevin.kelly@doj.ca.gov
300 South Spring Street, Suite 9012
Los Angeles, CA 90013
   *Attorney for Defendant*

I declare under penalty of perjury that the foregoing is true and correct.

Executed July 20, 2022.

_____
Laura Palmerin