1   ROB BONTA
    Attorney General of California
2   MARK R. BECKINGTON
    Supervising Deputy Attorney General
3   KEVIN J. KELLY
    Deputy Attorney General
4   State Bar No. 337425
     300 S. Spring St., Ste. 9012
5     Los Angeles, CA 90013
     Telephone: (213) 266-6615
6     Fax: (916) 731-2124
     E-mail: Kevin.Kelly@doj.ca.gov
7   *Attorneys for Defendant Rob Bonta,*
    *In his official capacity as Attorney*
8   *General of the State of California*

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12

13

14  **JUNIOR SPORTS MAGAZINES**
    **INC. ET AL.,**

15                                      **DEFENDANT'S OPPOSITION TO**
                                        **PLAINTIFFS' MOTION FOR**
16         **v.**                       **PRELIMINARY INJUNCTION**

17  **ROB BONTA, IN HIS OFFICIAL**      Date:        August 22, 2022
    **CAPACITY AS ATTORNEY**            Time:        10:00 a.m.
18  **GENERAL OF THE STATE OF**         Courtroom:   8D
    **CALIFORNIA ET AL.,**             Judge:       Christina A. Snyder
19                                      Action Filed: July 8, 2022

20

21

22

23

24

25

26

27

28

---

Defendant's Opposition to Plaintiffs' Motion for Preliminary Injunction (2:22-cv-04663-CAS (JCx))

# <u>TABLE OF CONTENTS</u>

**Page**

Introduction.................................................................................................................1

Background...............................................................................................................2

    A.    The Challenged Statute........................................................................2

    B.    California's Restrictions on the Ownership, Possession, and Use of Firearms by Minors. ..................................................5

    C.    Plaintiffs' Allegations ..........................................................................6

Legal Standard .........................................................................................................7

Argument ...................................................................................................................7

    I.    Plaintiffs Have Not Shown a Likelihood of Success on the Merits. ...........................................................................................7

        A.    Contrary to Plaintiffs' contentions, AB 2571 is a regulation of commercial speech, not core political speech or association. ................................................................7

        B.    AB 2571 permissibly regulates commercial speech concerning unlawful activity. .....................................12

        C.    Even assuming AB 2571 regulates commercial speech that is protected by the First Amendment, it directly advances a substantial government interest and is no more restrictive than necessary to serve that interest. ......................13

    II.    Plaintiffs Cannot Establish Irreparable Harm in the Absence of Injunctive Relief..........................................................20

    III.    The Balance of Equities, Which Includes Analysis of the Public Interest, Tips Against an Injunction.....................................20

Conclusion .............................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alvarez v. Larose,*
    445 F. Supp. 3d 861 (S.D. Cal. 2020) ................................................................. 7

*Ariix, LLC v. NutriSearch Corp.,*
    985 F.3d 1107 (9th Cir. 2021) ............................................................................. 8

*Bd. of Trustees of State Univ. of N.Y. v. Fox,*
    492 U.S. 469 (1989) .......................................................................................... 17

*Bolger v. Youngs Drug Prods. Corp.,*
    463 U.S. 60 (1983) .............................................................................................. 8

*California v. Azar,*
    911 F.3d 558 (9th Cir. 2018) ............................................................................. 7

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,*
    447 U.S. 557 (1980) ............................................................................... 7, 12, 13

*City of Los Angeles v. Alameda Books, Inc.,*
    535 U.S. 425 (2002) .......................................................................................... 13

*City of Renton v. Playtime Theatres, Inc.,*
    475 U.S. 41 (1986) ...................................................................................... 11, 13

*Coyote Publ'g Inc. v. Miller,*
    598 F.3d 592 (9th Cir. 2010) ............................................................................ 13

*Disbar Corp. v. Newsom,*
    508 F. Supp. 3d 747 (E.D. Cal. 2020) ............................................................... 7

*Drakes Bay Oyster Co. v. Jewell,*
    747 F.3d 1073 (9th Cir. 2014) ........................................................................... 7

*Edenfield v. Fane,*
    507 U.S. 761 (1993) .......................................................................................... 15

*Fla. Bar v. Went For It, Inc.,*
    515 U.S. 618 (1995) .................................................................................... 13, 15

**TABLE OF AUTHORITIES**
**(continued)**

Page

*FTC. v. Affordable Media,*
179 F.3d 1228 (9th Cir. 1999) ................................................................. 20

*Fyock v. City of Sunnyvale,*
25 F. Supp. 3d 1267 (N.D. Cal. 2014), *aff'd sub nom. Fyock v.
Sunnyvale,* 779 F.3d 991 (9th Cir. 2015) ............................................... 21

*Greater New Orleans Broadcasting Ass'n, Inc. v. United States,*
527 U.S. 173 (1999) ................................................................................ 17

*Hennessy-Waller v. Snyder,*
529 F. Supp. 3d 1031 (D. Ariz. 2021), *aff'd sub nom. Doe v.
Snyder,* 28 F.4th 103 (9th Cir. 2022) ...................................................... 22

*Hunt v. City of Los Angeles,*
638 F.3d 703 (9th Cir. 2011) ............................................................... 7, 8

*Johnson v. Brown,*
567 F. Supp. 3d 1230 (D. Or. 2021) ................................................. 11, 20

*Nunez by Nunez v. City of San Diego,*
114 F.3d 935 (9th Cir. 1997) .................................................................. 14

*OSU Student All. v. Ray,*
699 F.3d 1053 (9th Cir. 2012) ................................................................ 19

*Plyler v. Doe,*
457 U.S. 202 (1982) ................................................................................ 19

*Progressive Democrats for Soc. Just. v. Bonta,*
No. 21-CV-03875-HSG, 2021 WL 6496784 (N.D. Cal. July 16,
2021) ....................................................................................................... 22

*In re R. M. J.,*
455 U.S. 191 (1982) ................................................................................ 12

*Rupp v. Becerra,*
No. 817CV00746JLSJDE, 2018 WL 2138452 (C.D. Cal. May 9,
2018) ....................................................................................................... 21

**TABLE OF AUTHORITIES**
(continued)

Page

*Sable Commc'ns of California, Inc. v. F.C.C.*,
  492 U.S. 115 (1989) ...................................................................... 14

*Tracy Rifle & Pistol LLC v. Harris*,
  118 F. Supp. 3d 1182 (E.D. Cal. 2015), *aff'd*, 637 F. App'x 401
  (9th Cir. 2016) ............................................................................... 21

*Turner Broad. Sys., Inc. v. FCC*,
  520 U.S. 180 (1997) ...................................................................... 13

*United States v. Edge Broad. Co.*,
  509 U.S. 418 (1993) ................................................................. 13, 15

*Ventura Mobilehome Communities Owners Ass'n v. City of San
  Buenaventura*,
  371 F.3d 1046 (9th Cir. 2004) ...................................................... 19

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) ...................................................................... 10

*Wiese v. Becerra*,
  263 F.Supp.3d 986 ......................................................................... 21

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ............................................................................. 7

*Zaitzeff v. City of Seattle*,
  No. C17-0184JLR, 2017 WL 2169941 (W.D. Wash. May 16, 2017) .............. 21

**Constitutions**

First Amendment ....................................................................... *passim*

Second Amendment ................................................................. 1, 10, 11

Fourteenth Amendment ....................................................................... 6

**Statutes**

Cal. Bus. & Prof. Code § 22949.80 ........................................................ 1

Cal. Bus. & Prof. Code § 22949.80(c)(4)(A) ...................................... 10

iv

# TABLE OF AUTHORITIES
### (continued)

**Page**

Cal. Bus. & Prof. Code § 22949.80(c)(6) ......................................................... 8, 9, 10

Cal. Bus. & Prof. Code § 25664 ................................................................................ 16

Cal. Pen. Code § 16520 .............................................................................................. 5

Cal. Pen. Code § 27505 ........................................................................................ 5, 12

Cal. Pen. Code § 27510 ........................................................................................ 5, 12

Cal. Pen. Code § 29610 ........................................................................................ 5, 12

Cal. Pen. Code § 29615 ........................................................................................ 5, 12

**Other Authorities**

Jason E. Goldstick, Ph.D. et al, *Current Causes of Death in Children and Adolescents in the United States*, 386 New Eng. J. Med. 1955, 1955 (2022) ........................................................................................................ 3

Matthew A. Lapierre, Ph.D. et al., *The Effect of Advertising on Children and Adolescents*, 140 PEDIATRICS S152 (2017) ................................... 3

Everytown Research & Policy, *#NotAnAccident Index*, https://everytownresearch.org/maps/notanaccident (last visited August 8, 2022) ........................................................................................... 14

Violence Policy Center, *Start Them Young* (2016) ..................................................... 2

# INTRODUCTION

Plaintiffs are not entitled to the extraordinary remedy of a preliminary injunction barring enforcement of California Business & Professions Code § 22949.80 ("AB 2571" or "§ 22949.80") in its entirety. Their motion is based on a misreading of the statute: it does not restrict core political speech about guns or conduct protected by the Second Amendment, but rather commercial speech concerning illegal activity – the sale of guns and other firearm-related products to minors. In an attempt to show that the statute sweeps well beyond that, Plaintiffs argue that California law broadly permits minors to use and possess firearms. To the contrary, California law generally prohibits minors from using or possessing guns and ammunition, with specified, narrow exceptions, and the law in all cases requires some form of adult supervision or permission. These restrictions are based on the obvious dangers posed by minors using guns, both to themselves and others.

Because AB 2571 is directed at regulating the advertising and marketing of guns to children, who are legally barred from purchasing them, it is constitutional. To the extent it regulates commercial speech about lawful activity, it satisfies the applicable *Central Hudson* test. AB 2571 directly advances a substantial government interest in protecting the safety and well-being of minors and society at large, and is no more restrictive than necessary to serve that interest.

For related reasons, Plaintiffs fail to demonstrate irreparable harm sufficient to obtain an injunction. The sweeping restrictions on speech they have read into AB 2571 cannot be squared with the operative text or the Legislature's expressly stated purposes. At the same time, enjoining AB 2571, a measure aimed at promoting public safety, would directly harm the public interest. That, coupled with the irreparable harm to the state that flows from any federal court order enjoining a duly enacted state law, precludes the relief Plaintiffs are seeking. Indeed, Plaintiffs seek an order barring *any* enforcement of the statute pending trial, yet they do not contend that it lacks *any* legitimate sweep, nor could they.  By asking the court to

enjoin the statute in its entirety, Plaintiffs bear a particularly heavy burden here, and they fail to meet it.  For these reasons and those discussed more fully below, this Court should deny Plaintiffs' motion for a preliminary injunction.

## BACKGROUND

### A.   The Challenged Statute

AB 2571, which went into effect as an urgency statute on June 30, 2022, is a reasonable legislative approach to an urgent nationwide crisis. Among other things, it restricts the marketing and advertising of firearm products to minors, attaches financial penalties for violations, and authorizes private enforcement.

AB 2571 is a product not only of years of professional research and scholarship on youth gun violence and the influence of advertising and marketing on children and adolescents, but also common sense. The legislative history of AB 2571, including academic literature and other materials considered by the Legislature, bear this out.[1] The author of AB 2571 quoted from and cited to a 2016 report entitled *Start Them Young* by the Violence Policy Center ("VPC"), a "national nonprofit educational organization that conducts research and public education on violence in America and provides information and analysis to policymakers, journalists, advocates, and the general public." *See* Request for Judicial Notice in Support of Plaintiffs' Motion for Preliminary Injunction ("Req. Jud. Nte."), Exhibit ("Exh.") 6, at 7. The VPC report included data from the Centers for Disease Control on firearm-related injuries and deaths among minors. *See* Violence Policy Center, *Start Them Young* (2016), annexed to the Declaration of Kevin J. Kelly ("Kelly Dec.") as Exh. A, at 40. According to the CDC, in 2014, the leading cause of death among minors ages 1 to 17 were unintentional injuries, with

---

[1] To the extent plaintiffs request that the Court take judicial notice of various related legislative materials, including various legislative analyses of AB 2571 and the bill itself (*see* Plaintiffs' Request for Judicial Notice in Support of Plaintiffs' Motion for Preliminary Injunction), Defendant does not oppose that request.

firearms accounting for 2% of all fatal unintentional injuries. *See id.* Guns also accounted for 40% of all suicides, and 59% of all homicides, in this age group. *See id.* The report further noted that toxic lead found in ammunition also poses a major health risk to both minors and adults. *See* id. at 42-43.

The Legislature also took note of the fact that since 2014, gun violence among children has only worsened. Indeed, AB 2571's author observed that gun violence is now the third leading cause of death for children and teens in California. *See* Req. Jud. Nte., Exh. 6, at 4. And the CDC recently reported that in 2020, for the first time, firearm-related injuries surpassed motor vehicle crashes as *the leading cause of death nationwide* among children and adolescents. *See* Req. Jud. Nte., Exh. 7, at 1; Jason E. Goldstick, Ph.D. et al, *Current Causes of Death in Children and Adolescents in the United States*, 386 New Eng. J. Med. 1955, 1955 (2022), annexed to the Kelly Dec. as Exh. B. Further, according to an analysis of FBI data, nearly half of all active shooting incidents at educational facilities in the United States from 2000 to 2019 were perpetrated by someone under the age of 18. *See* Req. Jud. Nte., Exh. 7, at 1.

AB 2571 also reflects the fact that "[f]or decades, researchers have recognized children as a vulnerable consumer group because of their budding developmental abilities." Matthew A. Lapierre, Ph.D. et al., *The Effect of Advertising on Children and Adolescents*, 140 PEDIATRICS S152, S153 (2017), annexed to the Kelly Dec. as Exh. C. For example, research has linked the marketing of certain products, including unhealthy food, alcohol, and tobacco, to an increased likelihood that adolescents will use these products. *See id*. Moreover, while "there have been calls to invest in the development of educational interventions to empower children by increasing their advertising knowledge," "research indicates that possessing advertising knowledge does not necessarily enable children to cope with advertising in a conscious and critical manner." *Id.* at S154.

It was with these concerns in mind that the Legislature enacted AB 2571. The Legislature found that California "has a compelling interest in ensuring that minors do not possess these dangerous weapons and in protecting its citizens, especially minors, from gun violence and from intimidation by persons brandishing these weapons." Req. Jud. Nte., Exh. 1, at 2. "The proliferation of firearms to and among minors poses a threat to the health, safety, and security of all residents of, and visitors to, this state." *Id.* at 1.

The Legislature further determined that "[t]hese weapons are especially dangerous in the hands of minors because current research and scientific evidence shows that minors are more impulsive, more likely to engage in risky and reckless behavior, unduly influenced by peer pressure, motivated more by rewards than costs or negative consequences, less likely to consider the future consequences of their actions and decisions, and less able to control themselves in emotionally arousing situations." *Id.* at 1-2. Despite these risks, and the fact that "children are especially susceptible to marketing appeals, as well as more prone to impulsive, risky, thrill-seeking, and violent behavior than other age groups," "firearms manufacturers and retailers continue to market firearms to minors." *See id.* at 2.

Against this backdrop, AB 2571 prohibits members of the firearm industry, as defined, from advertising, marketing, or arranging for placement of an advertising or marketing communication concerning firearm-related products in a way that is designed, intended, or reasonably appears to be attractive to minors. *See* § 22949.80(a)(1). Courts are directed to look to the "totality of the circumstances" to determine whether the marketing or advertising is attractive to minors, and the statute provides a non-exclusive list of characteristics to assist courts in making that determination. *See id.* § 22949.80(2). Violators of the prohibition are subject to a maximum $25,000 penalty (*see id.* § 22949.80(e)(1)), and a person harmed by a violation may commence a civil action to recover damages (*see id.* § 22949.80(e)(3)). A court may also issue injunctive relief to prevent the harm

described in the statute and must award reasonable attorney's fees and costs to a prevailing plaintiff. *See id.* § 22949.80(e)(5).

### B. California's Restrictions on the Ownership, Possession, and Use of Firearms by Minors.

AB 2571 restricts advertising and marketing in a narrow field that is already closely regulated. California law generally prohibits the sale, loan, or transfer of any firearm to a person under 21 years of age, with certain enumerated exceptions. *See* Cal. Pen. Code §§ 27505 & 27510. Furthermore, minors – those under the age of 18 – are generally prohibited from possessing a handgun, a semiautomatic centerfire rifle, and, as of July 1, 2023, any firearm. *See* Cal. Pen. Code § 29610.[2] There are very limited exceptions to these prohibitions. For example, the law allows a minor to possess or be loaned a firearm for certain limited purposes and under very specific circumstances. *See, e.g., id.* § 27505(b)(2) (permitting the loan of a firearm to a minor by the minor's parent or legal guardian for lawful recreational, agricultural, hunting, or artistic performance purposes, and for no longer than is reasonably necessary); *id.* § 29615 (permitting a minor to possess a firearm for lawful recreational, agricultural, hunting, or artistic performance purposes if accompanied by a parent or adult guardian and/or with the prior written consent of a parent or adult guardian and/or accompanied by a responsible adult). All of these permitted uses require the supervision and/or permission of a parent, legal guardian, and/or a responsible adult, depending on the purpose for which the item is used and, in some cases, the age of the minor. *See* Cal. Pen. Code §§ 27505 & 29615.

---

[2] For purposes of Cal. Pen. Code § 29610, a "firearm" is generally "a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion," and includes "the frame or receiver of the weapon, including both a completed frame or receiver, or a firearm precursor part." *See* Cal. Pen. Code § 16520.

**C.    Plaintiffs' Allegations**

On July 8, 2022, Plaintiffs filed their Complaint. *See* ECF No. 1. The Complaint names eight individuals and entities as Plaintiffs and purports to allege a variety of constitutional claims, including violations of Plaintiffs' First Amendment rights to "political & ideological speech," "commercial speech," and "association & assembly," and their Fourteenth Amendment equal protection rights. *See* Complaint ¶¶ 107-141.

Plaintiffs allege that AB 2571 "imposes a content- and speaker-based restriction on protected speech that is viewpoint discriminatory, that serves no legitimate government interest (directly or indirectly), and that is both facially overbroad and far more extensive than necessary to achieve any purported interest." *Id.* ¶ 7. They further allege that it violates their "rights to assemble and associate" because "it directly prohibits advertising, marketing, or arranging for the placement of advertising or marketing promoting various firearm-related events and programs, where Plaintiffs peaceably and lawfully assemble and associate with each other and members of the public," and it "impermissibly restricts pro-gun (but not anti-gun) organizations from promoting membership in or financial support of their organizations in ways that might be deemed 'attractive to minors.'" *Id.* ¶ 9. They additionally allege that AB 2571 violates their equal protection rights "for many of the reasons [AB 2571] violates Plaintiffs' rights to engage in free speech[.]" *Id.* ¶ 10.

On July 20, 2022, Plaintiffs filed the instant motion. *See* ECF No. 12. Plaintiffs concurrently filed an ex parte motion to shorten the time for a hearing on the preliminary injunction motion, which Defendant opposed and the Court denied. *See* ECF Nos. 13, 14, & 15.

In their motion, Plaintiffs contend that, as a result of the passage of AB 2571, they and other "firearm industry members" have "immediately postponed or canceled youth shooting events and hunter's safety courses, scrubbed advertising

1  for such events from their websites, and terminated magazine subscriptions for

2  minors living in California." Plaintiffs' Memorandum of Points and Authorities in

3  Support of Plaintiffs' Motion for Preliminary Injunction ("Plaintiffs' Memo") at 5.

4  As a remedy, they seek an order barring enforcement of the statute in its entirety.

5  *See id.* at 25.

6                                **LEGAL STANDARD**

7          Injunctive relief is an "extraordinary remedy that may only be awarded upon a

8  clear showing that the plaintiff is entitled to such relief." *Alvarez v. Larose*, 445 F.

9  Supp. 3d 861, 865 (S.D. Cal. 2020) (quoting *Winter v. Natural Res. Def. Council,*

10 *Inc.*, 555 U.S. 7, 20 (2008)). "In cases where the movant seeks to alter the status

11 quo," injunctive relief is "disfavored and a higher level of scrutiny must apply."

12 *Disbar Corp. v. Newsom*, 508 F. Supp. 3d 747, 751 (E.D. Cal. 2020).

13         "A plaintiff seeking a preliminary injunction must establish that he is likely to

14 succeed on the merits, that he is likely to suffer irreparable harm in the absence of

15 preliminary relief, that the balance of equities tips in his favor, and that an

16 injunction is in the public interest." *Winter*, 555 U.S. at 20. "When the government

17 is a party, these last two factors," balance of the equities and public interest,

18 "merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014);

19 *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (same). Analysis of the first

20 factor (*i.e.*, likelihood of success on the merits) is a "threshold inquiry," and thus if

21 a movant fails to establish that factor, the court "need not consider the other

22 factors." *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018).

23                                **ARGUMENT**

24 **I.   PLAINTIFFS HAVE NOT SHOWN A LIKELIHOOD OF SUCCESS ON THE**
        **MERITS.**
25
        **A.   Contrary to Plaintiffs' contentions, AB 2571 is a regulation of**
26            **commercial speech, not core political speech or association.**

27         The Supreme Court has long distinguished between "commercial speech" –

28 that is, "speech proposing a commercial transaction" – and other types of speech,

                                     -7-

1  which may enjoy greater First Amendment protection. *See Cent. Hudson Gas &*
2  *Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 562 (1980). Factors
3  to be considered in deciding whether speech constitutes "commercial speech"
4  include whether (1) the speech is an advertisement; (2) the speech refers to a
5  particular product; and (3) the speaker has an economic motivation. *See Hunt v.*
6  *City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) (citing *Bolger v. Youngs*
7  *Drug Prods. Corp.*, 463 U.S. 60, 66-68 (1983)). These factors are "not dispositive"
8  (*Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1116 (9th Cir. 2021)), and not all
9  of these factors "must necessarily be present in order for speech to be commercial"
10 (*Bolger*, 463 U.S. at 67 n.14).

11     Here, AB 2571 is properly understood as a regulation of commercial speech,
12 not core political speech, as Plaintiffs contend. It prohibits a "firearm industry
13 member" from *advertising, marketing, or arranging for placement of an*
14 *advertising or marketing communication* concerning any firearm-related product in
15 a manner that is designed, intended, or reasonably appears to be attractive to
16 minors. § 22949.80(a)(1). Thus, it regulates speech with an obvious economic or
17 commercial motivation. *See Hunt*, 638 F.3d at 715. The statute also defines
18 "marketing or advertising" with reference to commercial transactions, i.e., those
19 involving a proposed "exchange for monetary compensation." *See*
20 § 22949.80(c)(6). Thus, AB 2571 regulates speech constituting an "advertisement."
21 *See Hunt*, 638 F.3d at 715. AB 2571 also explicitly regulates advertising and
22 marketing in connection with a "particular product" (*see id.*), that is, "firearm-
23 related products" (*see* § 22949.80(c)(6)). Therefore, all of the hallmarks for
24 applying commercial speech doctrine are present here.

25     Plaintiffs argue incorrectly that AB 2571 regulates speech that "ranges from
26 purely political to commercial," because it applies to (1) magazines that include
27 images and articles depicting minors enjoying shooting sports and selling
28 advertising space for "firearm-related products;" (2) organizations that sell and give

-8-

away branded merchandise that promote their organization and messages; and (3) entities that advertise and market lawful recreational and competitive shooting events, educational programs, safety courses, and gun shows where youth are likely to attend and use firearm-related products. *See* Plaintiffs' Memo at 9-10. In support, they point to the law's language prohibiting advertising and marketing "concerning" a firearm-related product, as well as to the definition of "marketing or advertising," which includes commercial appeals to "use" a particular product. *See id.* at 3-4.

Plaintiffs read AB 2571 too broadly. The statute should be read holistically and in its entirety, and with a view to the dangers that the Legislature designed it to address. Plaintiffs largely ignore the statute's narrow definition of "firearm-related product," which encompasses only certain tangible products, described as "items" – firearms, their components, and accessories. § 22949.80(c)(5). Instead, Plaintiffs argue that, despite the fact that the law includes no express reference to the broad swath of educational, sporting and political activity they invoke, the statute's prohibition against marketing "concerning" certain tangible products encompasses anything and everything related to firearms in any way. This reading stretches AB 2571 too far and renders the narrow definition of "firearm-related products" superfluous.[3] Implicit in the terms "marketing or advertising" in relation to *any* specific product is an offer to engage in a *commercial* transaction for the *sale and purchase* of that product; AB 2571 does not purport to restrict communications of *any* kind about firearms or firearm-related activities. The title of the bill – "Marketing Firearms to Minors" – indicates what it regulates and how it should be interpreted and applied.

---

[3] Similarly, *commercial appeals* to "use" a particular product offered for sale necessarily includes the limiting definition of product, and thus do not include communications concerning educational or sporting events, much less political speech. *See* Cal. Bus. & Prof. Code § 22949.80(c)(6) (defining "marketing or advertising" as communications encouraging "purchase or use of a product or service," only "in exchange for monetary compensation").

The Legislature's express statements of purpose, which focus exclusively on marketing of tangible products – firearms and accessories – to minors, further support this common-sense reading. *See* Req. Jud. Nte., Exh. 1, at 1 (introductory paragraph stating intent to regulate "commercial speech" and "advertising"); *id.* ("This bill would prohibit a firearm industry member, as defined, from advertising or marketing any firearm-related product as defined, in a manner that is designed, intended, or reasonably appears to be attractive to minors."); *id.* at 2 ("It is the intent of the Legislature in enacting this act to further restrict the marketing and advertising of firearms to minors."). Nothing in the extensive legislative history evinces an intent to restrict promotion of educational, recreational, or competitive events, much less solicitation of membership in any organization or political speech of any kind.

Thus, fairly read, AB 2571 cannot be viewed as a content- or viewpoint-based restriction on core speech or on Plaintiffs' right to associate. The statute regulates commercial speech, and was not adopted to regulate speech "because of disagreement with the message it conveys." *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Rather, it was adopted to serve important government interests implicated by the marketing and advertising of firearms-related to products to children (that are discussed more fully below, *see infra* at I.(c)(1)).

Indeed, Plaintiffs are incorrect that the law prohibits them from, for example, "engaging in noncommercial speech soliciting memberships for youth and using branding merchandise." Plaintiffs' Memo at 12. As explained above, the only activity of Second Amendment rights organizations prohibited by AB 2571 is the advertising of firearms-related products to minors "in exchange for monetary compensation" – that is, if they proposed a commercial transaction for the product. *See* § 22949.80(c)(6).

Plaintiffs are similarly incorrect that the law targets those expressing a particular viewpoint and that they are targeted as a disfavored class. *See id.* at 12,

22. Indeed, if organizations such as Moms Demand Action for Gun Sense in America and Gun Free Kids (*see id.* at 12) engaged in the same prohibited "advertising or marketing" conduct for the purchase of firearms, they too would run afoul of the statute as a "firearm industry member" (*see* Cal. Bus. & Prof. Code § 22949.80(c)(4)(A) (defining "firearm industry member" as "[a] person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association engaged in the . . . retail sale of firearm-related products")). Contrary to Plaintiffs' assertion, no individual, company or organization is exempt from the prohibition on marketing firearm-related products to children because, by doing so, they become a "firearm industry member" subject to the law. Accordingly, the law does not target any particular group or viewpoint, but rather specific prohibited conduct.

Plaintiffs' allegations about the personal feelings or motivations of individual government officials (*see, e.g.*, Plaintiffs' Memo at 1, 8-9, 12) do not change this result. In *Nordyke*, 644 F.3d at 792, the Ninth Circuit rejected the contention that a county ordinance prohibiting possession of firearms on county property was adopted "in order to prevent members of the 'gun culture' from expressing their views about firearms and the Second Amendment," finding that "the Ordinance's language suggests that gun violence, not gun culture, motivated its passage." *Id*. (citing statement in ordinance that "[p]rohibiting the possession of firearms on County property will promote the public health and safety by contributing to the reduction of gunshot fatalities and injuries in the County"). The Court declined to rely on comments made by an individual county supervisor, because "the feelings of one county official do not necessarily bear any relation to the aims and interests of the county legislature as a whole," and because "the Supreme Court has admonished litigants against attributing the motivations of legislators to legislatures." *Id.* (citing *United States v. O'Brien,* 391 U.S. 367, 384 (1968) ("What motivates one legislator to make a speech about a statute is not necessarily what

motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork.")); *Johnson*, 491 U.S. 397; *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986). The same reasoning applies here; the Court should disregard Plaintiffs' assertions regarding the purported motivations of individual government officials in adopting AB 2571.

### B.   AB 2571 permissibly regulates commercial speech concerning unlawful activity.

As established above, AB 2571 – in light of both the operative language and the Legislature's express statements of purpose – regulates commercial speech. And for commercial speech to enjoy First Amendment protection, "it at least must concern lawful activity and not be misleading" (*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980)), which Plaintiffs acknowledge (*see* Plaintiffs' Memo at 16). "[W]hen the particular content or method of the advertising suggests that it is inherently misleading or when experience has proved that in fact such advertising is subject to abuse, the States may impose appropriate restrictions." *In re R. M. J.*, 455 U.S. 191, 203 (1982).

It is illegal in California to sell a firearm to a minor under any circumstances, and illegal to loan or transfer any firearm to a person under 21 years of age, subject to narrow exceptions. *See* Cal. Pen. Code §§ 27505, 27510, & 29615. California law also generally prohibits a minor from possessing a handgun, a semiautomatic centerfire rifle, and, as of July 1, 2023, any firearm. *See* Cal. Pen. Code § 29610. As Plaintiffs point out, there are exceptions to these prohibitions, but they are quite narrow and carefully circumscribed. Moreover, in each and every circumstance in which a minor is permitted to possess a gun, adult supervision or permission in some form is required for obvious safety reasons. Plaintiffs' assertion that these exceptions are "so broad that [they] nearly swallow the rule" (*see* Plaintiffs' Memo at 16) is plainly refuted by the statutory scheme itself. Therefore, AB 2571 regulates commercial speech respecting unlawful activity – the sale of guns to

minors. And, for the same reason, AB 2571 regulates advertising and marketing that is inherently misleading to the young viewers and readers it seeks to protect, a point that Plaintiffs appear to concede (although they seek to minimize its importance). *See* Plaintiffs' Memo at 11 (observing that "AB 2571 might technically ban misleading speech promoting the unlawful sale of firearms to minors[.]"). It is inherently misleading to advertise the sale of a product to an audience that is legally barred from purchasing the product being advertised.

   **C.    Even assuming AB 2571 regulates commercial speech that is protected by the First Amendment, it directly advances a substantial government interest and is no more restrictive than necessary to serve that interest.**

   Regulations of protected commercial speech are reviewed under a form of intermediate, not strict, scrutiny. *See Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 563-66 (1980); *Coyote Publ'g Inc. v. Miller*, 598 F.3d 592, 598-610 (9th Cir. 2010). If the commercial speech at issue concerns a lawful activity and is not misleading, then government regulation of the speech will be upheld so long as the government asserts a substantial interest, the regulation directly advances the government's asserted interest, and the regulation is no more restrictive than necessary to serve that interest. *See Central Hudson*, 447 U.S. at 566. When applying the intermediate scrutiny standard, courts give "substantial deference to the predictive judgments of [the legislature]." *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997) (internal quotation marks and citation omitted); *see also United States v. Edge Broad. Co.*, 509 U.S. 418, 434 (1993) ("Within the bounds of the general protection provided by the Constitution to commercial speech, we allow room for legislative judgments.").

   Lawmakers "must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems." *City of Renton*, 475 U.S. at 52 (internal quotation marks and citation omitted). In making such judgments, the legislature may rely on evidence "reasonably believed to be relevant to the problem" (*id.* at 51)

-13-

and such evidence need not be empirical (*see, e.g.*, *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 439 (2002) (plurality opinion) (explaining that city did not need empirical data to support its conclusion that adult-bookstore ordinance would lower crime)). Indeed, "history, consensus, and simple common sense" can suffice. *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995) (internal quotation marks and citation omitted). To the extent that AB 2471 regulates truthful, lawful commercial speech, it directly advances the State's asserted substantial interest and is no more extensive than necessary to serve that interest, and it passes muster under *Central Hudson*.

> **1.    AB 2571 serves significant government interests in protecting minors and the general public from gun-related injuries and deaths.**

As the Supreme Court has recognized, a state has "a compelling interest in protecting the physical and psychological well-being of minors." *Sable Commc'ns of California, Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989). Furthermore, "the government may have a compelling interest in protecting minors from certain things that it does not for adults." *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 945 (9th Cir. 1997). Consistent with these basic principles, AB 2571 declares that the State has "a compelling interest in ensuring minors do not possess these dangerous weapons [*i.e.*, firearms] and in protecting its citizens, especially minors, from gun violence and from intimidation by persons brandishing these weapons." *See* Req. Jud. Nte., Exh. 1, at 2. These are undeniably compelling interests.

The Legislature found that "the proliferation of firearms to and among minors poses a threat to the health, safety, and security of all residents of, and visitors to, this state." *See id.*, Exh. 1, at 1. This finding is borne out by the facts: "[i]n 2021 there were approximately 259 unintentional shootings by children, resulting in 104 deaths and 168 injuries." *See id.*, Exh. 6, at 9. Furthermore, to date, there have been at least 169 unintentional shootings by children in 2022, resulting in 74 deaths and 104 injuries nationally. *See* Everytown Research & Policy, *#NotAnAccident Index*,

https://everytownresearch.org/maps/notanaccident (last visited August 8, 2022), annexed to the Kelly Dec. as Exh. D. And in 2020, for the first time, firearms-related injuries surpassed motor vehicle crashes as the leading cause of death nationwide for children and adolescents. *See* Req. Jud. Nte., Exh. 7, at 1; Kelly Dec., Exh. C, at 1955.

Plaintiffs try to cast doubt on the above interests as "genuine" and claim that they are somehow "undercut by the State's laws expressly allowing minors to possess firearms for lawful purposes." *See* Plaintiffs' Memo at 17-18. But, as explained above, the prohibition on firearm possession by minors is the rule, not the exception. The existing statutory framework reflects a policy concern that firearm possession by minors – for any purpose, including the narrowly specified, permissible uses set out in statute – presents inherent safety concerns. In any event, as evidenced by the bill itself, the State's interest arises from safety concerns regarding the *illegal* possession and use of firearms by minors. *See* Req. Jud. Nte., Exh. 1, at 2 ("In recognition of these facts, the Legislature has already prohibited minors from possessing firearms, except in limited circumstances.").

The government interests explicitly stated by the Legislature in AB 2571 easily satisfy the "substantial state interest" prong of the analysis.

### 2. AB 2571 directly advances the State's significant government interests.

In applying the third prong of the *Central Hudson* test, "a government body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield v. Fane*, 507 U.S. 761, 762 (1993). Nevertheless, "empirical data [need not] come . . . accompanied by a surfeit of background information," and such restrictions may be "based solely on history, consensus, and 'simple common sense.'" *Fla. Bar*, 515 U.S. at 628 (quotation marks omitted). Of particular relevance here, the Supreme Court has long held that the government

may restrict advertising in order to dampen demand, and thereby advance a substantial government interest. *See, e.g.*, *Edge Broad.*, 509 U.S. at 434 ("If there is an immediate connection between advertising [for gambling] and demand, and the federal regulation decreases advertising, it stands to reason that the policy of decreasing demand for gambling is correspondingly advanced.").[4]

As described above, the Legislature found – and the factual record it relied on demonstrates – that the illegal possession of firearms by minors constitutes a serious health and safety risk to children and other residents of this state. Further, as the Legislature noted, studies have linked the influence of advertising to the use of certain products by youth. *See* Req. Jud. Nte., Exh. 3, at 12 ("Research on the effects of advertising has shown that they may be responsible for up to 30% of underage tobacco and alcohol use.") (citing John P. Pierce, Ph.D. et al., *Tobacco Industry Promotion of Cigarettes and Adolescent Smoking*, 279 J. OF AM. MED. ASS'N 511, 511-515 (1998)). Conversely, studies have shown that *restrictions* on advertising are associated with the *decreased* use of certain products by youth. *See id.* ("On the other hand, restrictions on alcohol advertising are associated with both (1) lower prevalence and frequency of adolescent alcohol consumption; and (2) older age of first alcohol use.") (citing Mallie J. Paschall, Ph.D. et al., *Alcohol Control Policies and Alcohol Consumption by Youth: A Multi-National Study*, 104 ADDICTION 1849-1855).

As the VPC found and as the Legislature recognized at the time of the bill's passage, firearm industry members have been directly advertising and marketing firearms to children. *See* Kelly Dec. Exh. A at 45; Req. Jud. Nte., Exh. 1, at 2 (observing that "firearms manufacturers and retailers continue to market firearms to

---

[4] The State has used a similar policy approach in regulating alcohol advertising aimed at minors. *See* Cal. Bus. & Prof. Code § 25664 (prohibiting "[t]he use, in any advertisement of alcoholic beverages, of any subject matter, language, or slogan addressed to and intended to encourage minors to drink the alcoholic beverages").

minors"). By restricting such advertising and marketing, and thereby reducing demand for firearm-related products among minors, AB 2571 is likely to reduce the unsafe use of firearms by minors. It will thus directly advance the State's goals of reducing gun violence perpetrated by and against minors and others, both intentional and unintentional.

Nevertheless, Plaintiffs argue that AB 2571 "builds on the deceptive claim that minors may not lawfully possess firearms in California, while ignoring the fact that the law bars even communications about expressly lawful recreational and training purposes." *See* Plaintiffs' Memo at 18. Again, this argument oversimplifies both AB 2571 and the background prohibition on possession of firearms by minors, which permits only narrow exceptions for specified uses, and even in those limited circumstances requires mandatory adult supervision and/or parent or legal guardian permission, depending on the circumstances and/or the age of the minor.

### 3.     AB 2571 sweeps no further than necessary to serve the State's significant interests.

The fourth prong of the *Central Hudson* test "complements" the third prong by providing that a restriction on commercial speech must not be "more extensive than necessary to serve the interests that support it." *Greater New Orleans Broadcasting Ass'n, Inc. v. United States*, 527 U.S. 173, 188 (1999). In analyzing this prong, the court must look for a fit between the government's ends and the means chosen to accomplish those ends that is reasonable, representing "not necessarily the single best disposition but one whose scope is in proportion to the interest served . . . ." *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989) (quotation marks omitted). So long as a statute falls within those bounds, courts "leave it to governmental decisionmakers to judge what manner of regulation may best be employed." *Id.* In fact, the Supreme Court has written "of the difficulty of establishing with precision the point at which restrictions become more extensive than their objective requires," and of the virtue of providing "the Legislative and

Executive Branches needed leeway in a field (commercial speech) traditionally subject to government regulation . . . ." *Id.* at 481 (quotation marks omitted).

Here, as demonstrated above, AB 2571 regulates only a narrow category of commercial speech (that offering firearms, their components, and accessories for sale), and only by those "engaged in the manufacture, distribution, importation, marketing, wholesale, or retail sale of firearm-related products" and entities or associations "formed for the express purpose of promoting, encouraging, or advocating for the purchase, use, or ownership" of a firearm-related product and that advertises, endorses, or sponsors the products or the events where they are sold. *See* Req. Jud. Nte., Exh. 1, at 3. As the legislative materials reiterate, AB 2571 focuses on commercial speech "promulgated by a narrowly defined group of commercial speakers – the firearm industry – rather than on publishers, or even advertisers, in general." *Id.*, Exh. 5, at 3. Accordingly, it sweeps no further than necessary.

Plaintiffs argue that AB 2571 is overbroad because it "includes communications that are equally attractive to adults who have a right to obtain information about such products to make informed decisions for both themselves and their children." Plaintiffs' Memo at 20. In so arguing, they point to the Legislature's statement that the prohibition "applies whether the media is directed to children or a general audience. In other words, it applies to all marketing, regardless of the target audience." *See id.* (quoting Req. Jud. Nte., Exh. 2 at 6). Plaintiffs ignore that AB 2571 narrowly regulates advertising and marketing communications that are "designed, intended, or reasonably appear[] to be attractive to minors" as demonstrated by a variety of non-exclusive factors. *See* § 22949.80(a)(2). Indeed, these factors may include that they are "part of a marketing or advertising campaign designed with the intent to appeal to minors" (*id.* § 22949.80(a)(2)(D)) and/or "placed in a publication created for the purpose of reaching an audience that is predominantly composed of minors and not intended

-18-

for a more general audience composed of adults" (*id.* § 22949.80(a)(2)(F)). And even so, an advertising or marketing communication is subject to the prohibition *only* if a court determines that they meet a "totality of the circumstances" test, a legal exercise that courts routinely perform in various other contexts.

    **4.   Plaintiffs are not likely to succeed on their Equal Protection claim because it is duplicative of their First Amendment claims, and because they have not alleged sufficient facts showing that they are part of a protected class of individuals.**

"The Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike.'" *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)). "But so too, the Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Id.* (internal quotation marks and brackets omitted) (quoting *Tigner v. Texas*, 310 U.S. 141, 147 (1940)). Conclusory allegations that the government is treating plaintiffs differently from other similarly-situated individuals are insufficient to allege a valid Equal Protection claim. *See Ventura Mobilehome Communities Owners Ass'n v. City of San Buenaventura,* 371 F.3d 1046, 1055 (9th Cir. 2004) (conclusory allegations of Equal Protection violation, unaccompanied by allegations identifying others similarly situated or alleging how they are treated differently from plaintiff, are insufficient to withstand motion to dismiss).

Here, Plaintiffs allege in conclusory fashion that AB 2571 "targets only 'firearm industry members,'" a purportedly unpopular group, and that government officials adopted the law solely out of animus toward the Plaintiffs. *See* Plaintiffs' Memo at 22-23. This fails to identify any protected class. Indeed, Plaintiffs' claims are duplicative of and subsumed by their flawed First Amendment claim. Where, as here, the plaintiffs have failed to allege membership in a protected class, and speech is the only fundamental right underpinning the equal protection claim, the claim

-19-

"rise[s] and fall[s] with the First Amendment claims." *OSU Student All. v. Ray*, 699 F.3d 1053, 1067 (9th Cir. 2012).

## II. PLAINTIFFS CANNOT ESTABLISH IRREPARABLE HARM IN THE ABSENCE OF INJUNCTIVE RELIEF.

Even if Plaintiffs had demonstrated a likelihood of success on the merits, they would still need to demonstrate that they would suffer irreparable harm if an injunction were not issued. It is true that, as Plaintiffs point out, a demonstration of even minimal loss of First Amendment freedoms constitutes "irreparable harm" for purposes of seeking injunctive relief. *See* Plaintiffs' Memo at 23 (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). But as demonstrated above, Plaintiffs are not likely to succeed on the merits because AB 2571 does not unconstitutionally burden any of their constitutional rights. For the same reason, they cannot show they will suffer irreparable harm if their motion is denied.

## III. THE BALANCE OF EQUITIES, WHICH INCLUDES ANALYSIS OF THE PUBLIC INTEREST, TIPS AGAINST AN INJUNCTION.

Even if Plaintiffs could show that they would suffer irreparable harm in the absence of a preliminary injunction, the balance of the equities (which, where the defendant is a government official, includes analysis of the public interest) weighs against a preliminary injunction for numerous reasons. *See Johnson v. Brown*, 567 F. Supp. 3d 1230, 1266 (D. Or. 2021) (balancing equities even where Plaintiffs asserted that their "fundamental constitutional rights" were implicated). "[W]hen a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight." *FTC. v. Affordable Media*, 179 F.3d 1228, 1236 (9th Cir. 1999) (quoting *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir.1989)). First, the balance of the equities does not weigh in favor of the issuance of a preliminary injunction because AB 2571 promotes "a compelling interest in ensuring that minors do not possess these dangerous weapons [i.e., firearms] and in protecting its citizens, especially minors, from gun violence and from intimidation by persons brandishing these weapons." *See* Req. Jud. Nte.,

Exh. 1, at 2. Indeed, Plaintiffs seek an order barring *any* enforcement of the statute pending trial, yet they do not and cannot contend that it lacks *any* legitimate sweep. Although they are asking the court to enjoin AB 2571 on its face, Plaintiffs do not dispute that it bars at least some conduct harmful to the public's safety.

Moreover, the significance of the harm that could result from the improper issuance of an injunction would be substantial. "The costs of being mistaken, on the issue of whether the injunction would have a detrimental effect on handgun crime, violence, and suicide, would be grave," and those costs would impact both "members of the public" and "the Government which is tasked with managing handgun violence." *Tracy Rifle & Pistol LLC v. Harris*, 118 F. Supp. 3d 1182, 1193 (E.D. Cal. 2015), *aff'd*, 637 F. App'x 401 (9th Cir. 2016). The same cautions apply here.

Furthermore, the public interest would not be served by a preliminary injunction because "gun violence threatens the public at large." *See Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1283 (N.D. Cal. 2014), *aff'd sub nom. Fyock v. Sunnyvale*, 779 F.3d 991 (9th Cir. 2015) (denying preliminary injunction where the public interest factor weighed against issuance of an injunction); *see also Wiese v. Becerra*, 263 F.Supp.3d 986, 994 (finding that the public interest is furthered "by preventing and minimizing the harm of gun violence"); *Rupp v. Becerra*, No. 817CV00746JLSJDE, 2018 WL 2138452, at *13 (C.D. Cal. May 9, 2018) ("[B]ecause the objective of the [challenged firearms law] is public safety, Plaintiffs fail to show that an injunction would be in the public interest."); *Zaitzeff v. City of Seattle*, No. C17-0184JLR, 2017 WL 2169941, at *3 (W.D. Wash. May 16, 2017) (denying motion for preliminary injunction based in part on a finding that a local ordinance banning certain uses of weapons, including nunchucks and fixed-blade knives, "serves a public safety interest").

Finally, the preliminary relief Plaintiffs seek here should also denied because they effectively seek to litigate the merits of the dispute without a motion for

summary judgment or trial. "[C]ourts generally disfavor preliminary injunctive relief that is identical to the ultimate relief sought in the case." *See Progressive Democrats for Soc. Just. v. Bonta*, No. 21-CV-03875-HSG, 2021 WL 6496784, at *11 (N.D. Cal. July 16, 2021) (holding that "it is not usually proper to grant the moving party the full relief to which he might be entitled if successful at the conclusion of a trial") (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808–09 (9th Cir. 1963); *see also Hennessy-Waller v. Snyder*, 529 F. Supp. 3d 1031, 1046 (D. Ariz. 2021), *aff'd sub nom. Doe v. Snyder*, 28 F.4th 103 (9th Cir. 2022) (denying motion "because the preliminary injunctive relief sought is identical to the ultimate relief sought in the underlying complaint" and it would be "premature to grant such relief prior to discovery and summary judgment briefing"). The relief sought by Plaintiffs here is the same relief that Plaintiffs would obtain after summary judgment or a trial, weighing heavily against issuance of a preliminary injunction.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' request for a preliminary injunction.

Dated: August 8, 2022                    Respectfully submitted,

                                               ROB BONTA
                                               Attorney General of California
                                               MARK R. BECKINGTON
                                             Supervising Deputy Attorney General

                                             */s/ Kevin J. Kelly*
                                             KEVIN J. KELLY
                                             Deputy Attorney General
                                             *Attorneys for Defendant Rob Bonta, in his Official Capacity as Attorney General of the State of California*

SA2022301332
65331219.docx