C.D. Michel-SBN 144258
Anna M. Barvir-SBN 268728
Tiffany D. Cheuvront-SBN 317144
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Fax: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs Junior Sports Magazines Incorporated, Raymond Brown, California Youth Shooting Sports Association, Redlands California Youth Clay Shooting Sports Inc., California Rifle & Pistol Association, Inc., The CRPA Foundation, and Gun Owners of California

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorney for Plaintiff Second Amendment Foundation

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

JUNIOR SPORTS MAGAZINES INC., RAYMOND BROWN; CALIFORNIA YOUTH SHOOTING SPORTS ASSOCIATION; REDLANDS CALIFORNIA YOUTH CLAY SHOOTING SPORTS INC.; CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED; THE CRPA FOUNDATION; GUN OWNERS OF CALIFORNIA; and SECOND AMENDMENT FOUNDATION,

Plaintiffs,

v.

ROB BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-10,

Defendants.

CASE NO: 2:22-cv-04663-CAS (JCx)

**REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Hearing Date:      August 22, 2022
Hearing Time:      10:00 a.m.
Courtroom:         8D
Judge:             Christina A. Snyder

# TABLE OF CONTENTS

Page

Table of Contents ............................................................................................. ii

Table of Authorities ........................................................................................ iii

Introduction ....................................................................................................... 1

I.    Plaintiffs Are Likely to Succeed on the Merits of their Claims ...................... 2

    A.    AB 2571 Is an Unconstitutional Content- and Viewpoint-based Restriction on Plaintiffs' Pure Speech ............................................... 2

        1.    AB 2571 Does Not Restrict Only Commercial Speech; Rather, It Restricts a Broad Swath of Pure Speech Promoting the Mere Use of "Firearm-related Products" ................................ 2

            a.    The plain language of AB 2571 reveals the legislative intent to restrict both commercial and non-commercial speech. ......................................... 2

            b.    The *Bolger* factors do not support the State's position that AB 2571 restricts only commercial speech ................ 8

        2.    AB 2571 Is Both Content- and Speaker-based and Viewpoint-discriminatory ................................................. 10

    B.    Even if AB 2571 Restricted Only "Commercial Speech," the Outcome Is the Same ....................................................... 13

        1.    AB 2571 Does Not Restrict Only Misleading Commercial Speech Concerning Unlawful Activity ............................ 14

        2.    AB 2571 Does Not Directly or Materially Advance the State's Purported Interest in Protecting the Physical and Psychological Well-being of Children in California .................. 15

        3.    AB 2371 Is Also More Extensive than Necessary to Serve the State's Purported Interest in Protecting the Physical and Psychological Well-being of Children in California ................ 17

    C.    AB 2571 Also Violates Plaintiffs' Right to Equal Protection Under the Law ................................................................ 20

II.   The Other Preliminary Injunction Factors Warrant Enjoining AB 2571 While this Case Proceeds on the merits .......................................... 21

    A.    Plaintiffs Will Suffer Irreparable Harm if the Court Denies Relief ..... 21

    B.    The Balance of Equities Tip Sharply in Plaintiffs' Favor .................... 21

    C.    Granting Preliminary Injunctive Relief Is in the Public Interest .......... 23

Conclusion ...................................................................................................... 23

ii

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**Cases**

*All. for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ............................................................ 21

*Ariix, LLC v. NutriSearch Corp.*,
  985 F.3d 1107 (9th Cir. 2021) ............................................................ 10

*B&L Prods., Inc. v. 22nd Dist. Agric. Ass'n*,
  394 F. Supp. 3d 1226 (S.D. Cal. 2019) ................................... 10, 12, 21

*Bd. of Trs. of State Univ. of N.Y. v. Fox*,
  492 U.S. 469 (1989) .......................................................................... 2, 18

*Bigelow v. Virginia*,
  421 U.S. 809 (1975) ............................................................................. 10

*Bolger v. Youngs Drug Prods. Corp.*,
  463 U.S. 60 (1983) ............................................................................... 2, 9

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,
  447 U.S. 557 (1980) ......................................................................... 13, 17

*Cincinnati v. Discovery Network*,
  507 U.S. 410 (1993) ............................................................................. 11

*Colautti v. Franklin*,
  439 U.S. 379 (1979) ............................................................................... 6

*Coyote Publ'g Inc. v. Miller*,
  598 F.3d 592 (9th Cir. 2010) ............................................................... 13

*Dariano v. Morgan Hill Unif. Sch. Dist.*,
  767 F.3d 764 (9th Cir. 2014) ............................................................... 20

*Demore v. Kim*,
  538 U.S. 510 (2003) ............................................................................... 5

*Doe v. Harris*,
  772 F.3d 563 (9th Cir. 2014) ............................................................... 23

*Elrod v. Burns*,
  427 U.S. 347 (1976) ............................................................................. 21

*Erznoznik v. Jacksonville*,
  422 U.S. 205 (1975) ............................................................................. 18

*FCC v. League of Women Voters of Cal.*,
  468 U.S. 364 (1984) ............................................................................. 11

*Greater New Orleans Broadcasting Assn., Inc. v. United States*,
  527 U.S. 173 (1999) ............................................................................. 14

iii

TABLE OF AUTHORITIES

*Harbison v. Bell*,
   556 U.S. 180 (2009) ......................................................................................... 6

*King v. Burwell*,
   576 U.S. 473 (2015) ......................................................................................... 5

*Klein v. City of San Clemente*,
   584 F.3d 1196 (9th Cir. 2009) ....................................................................... 23

*Lorillard Tobacco Co. v. Reilly*,
   533 U.S. 525 (2001) ................................................................................. 18, 19

*McCullen v. Coakley*,
   573 U.S. 464 (2014) ....................................................................................... 11

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) ......................................................................... 21

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ....................................................................................... 10

*Police Dep't of Chic. v. Mosley*,
   408 U.S. 92 (1972) ......................................................................................... 20

*Preminger v. Principi*,
   422 F.3d 815 (9th Cir. 2005) ......................................................................... 23

*Prog. Dems. for Soc. Just. v. Bonta*,
   No. 21-cv-03875, 2021 U.S. Dist. LEXIS 250746 (N.D. Cal. July 16, 2021) ...... 22

*R.A.V. v. St. Paul*,
   505 U.S. 377 (1992) ....................................................................................... 12

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) ....................................................................................... 11

*Renton v. Playtime Theatres, Inc.*,
   475 U.S. 41 (1986) ......................................................................................... 11

*Rodriguez v. Robbins*,
   715 F.3d 1127 (9th Cir. 2013) ....................................................................... 21

*Sable Commc'ns of Cal., Inc. v. F.C.C.*,
   492 U.S. 115 (1989) ....................................................................................... 15

*Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*,
   502 U.S. 105 (1991) ....................................................................................... 11

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ................................................................................. passim

*Tanner Motor Livery, Ltd. v. Avis, Inc.*,
   316 F.2d 804 (9th Cir. 1963) ......................................................................... 22

*Thompson v. W. States Med. Ctr.*,
   535 U.S. 357 (2002) ....................................................................................... 20

TABLE OF AUTHORITIES

*Tracy Rifle & Pistol LLC v. Harris*,
    339 F. Supp. 3d 1007 (E.D. Cal. 2018) ................................................. 19

*Trainmen v. Baltimore & Ohio R.R.*,
    331 U.S. 519 (1947) ....................................................................................... 5

*United States v. Edge Broadcasting*,
    509 U.S. 418 (1993) ..................................................................................... 17

*United States v. O'Brien*,
    391 U.S. 367 (1968) ..................................................................................... 13

*Va. Bd. of Pharm. v. Va. Citzs. Consumer Council*,
    425 U.S. 748 (1976) ..................................................................................... 16

*Valle Del Sol v. Whiting*,
    709 F.3d 808 (9th Cir. 2013) ....................................................................... 18

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989) ..................................................................................... 10

*Westinghouse Elec. Corp. v. Free Sewing Mach. Co.*,
    256 F.2d 806 (7th Cir. 1958) ....................................................................... 22

**Statutes**

Cal. Bus. & Prof. Code § 22949.80 ............................................................... passim

Cal. Bus. & Prof. Code § 25664 ........................................................................ 17

**Other Authorities**

11A Charles Alan Wright et al.,
    Federal Practice and Procedure § 2948.1 (2d ed. 1995) ............................ 21

# INTRODUCTION

In their moving papers, Plaintiffs explain in detail how, on its face, Assembly Bill 2571 restricts their protected speech, applying not only to misleading commercial speech encouraging children to engage in unlawful behavior, but to a great deal of fully protected political and educational speech, truthful commercial speech aimed at adults, and speech promoting activities that are lawful to engage in by both adults and minors in California. In response, the State points to extrinsic evidence, providing dubious support for its fundamental claim that AB 2571 regulates only commercial speech proposing the sale of "firearm-related products" to minors and so, at most, intermediate scrutiny applies. The State also doubles down on misleading (if not entirely false) claims that legal firearm possession and use by minors is so extremely rare and narrowly prescribed in California that any commercial speech promoting such conduct is "inherently misleading" to young people, giving the State broad authority to restrict such speech.

But the State's reliance on extrinsic evidence of legislative intent is improper here, where the plain language of the statute itself makes clear that the State's exceedingly narrow interpretation was not intended by the Legislature. And no matter how many times the State repeats it, the fact remains that minors can and do lawfully possess and use firearms for lawful purposes even in California. AB 2571 thus restricts not only potentially misleading speech about unlawful behavior but protected truthful speech about lawful (and constitutionally protected) activities.

Under either strict scrutiny applied to restrictions on pure speech or intermediate scrutiny applied to restrictions on commercial speech, AB 2571 violates Plaintiffs' First Amendment rights to free speech, assembly, and association. And, because the law targets speech concerning the exercise of a fundamental right and is rooted in animus, it similarly violates their right to equal protection under the law.

Because Plaintiffs have shown they are likely to succeed on the merits,

1

REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

because they suffer irreparable harm from the ongoing unconstitutional enforcement of AB 2571, and because the balance of equities and the public interest favor preliminarily enjoining the law while this case proceeds, the Court should grant Plaintiffs' motion.

## I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS

### A.   AB 2571 Is an Unconstitutional Content- and Viewpoint-based Restriction on Plaintiffs' Pure Speech

#### 1.   AB 2571 Does Not Restrict Only Commercial Speech; Rather, It Restricts a Broad Swath of Pure Speech Promoting the Mere Use of "Firearm-related Products"

As explained in Plaintiffs' moving papers, AB 2571 restricts Plaintiffs' core speech, including political and educational speech promoting the lawful purchase and use of "firearm-related products," including firearms, ammunition, firearm precursor parts, and accessories. Mot. 9-11. Contrary to the State's characterizations, the law is not limited to so-called "commercial speech" because it does not restrict only speech that proposes a commercial transaction. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983); *see Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 473-74 (1989) (stating that the proposal of a commercial transaction test is "the test for identifying commercial speech"). While it is true that AB 2571 has been publicly described by its political supporters as a ban on advertising firearms to children, the law, as drafted and adopted, is simply not so narrow. It sweeps within its broad grasp a wide range of speech (both commercial and non-commercial) promoting the lawful purchase or use of firearms and related products.

##### a.   The plain language of AB 2571 reveals the legislative intent to restrict both commercial and non-commercial speech.

Recall, AB 2571 bars any "firearm industry member" from "advertis[ing], market[ing], or arrang[ing] for the placement of an advertising or marketing communication concerning any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors." Cal. Bus. & Prof. Code §

2

22949.80(a)(1). In clarifying what speech is prohibited, AB 2571 provides a statutory definition of "marketing or advertising." Rather than rely on commonly understood or dictionary definitions of these terms, under the newly enacted law:

> "Marketing or advertising" means, in exchange for monetary compensation, to make a communication to one or more individuals, or to arrange for the dissemination to the public of a communication, about a product or service the primary purpose of which is to encourage recipients of the communication to purchase *or use* the product or service.

*Id.* at 22949.80(c)(6) (emphasis added). While it is difficult to determine the full scope of restricted speech because it is hard to say what speech might be "attractive to minors," the plain language of the statute is clear about one thing: the law does not merely restrict speech proposing a commercial transaction. To the contrary, it bars "firearm industry members" from making or distributing any "communication" "in exchange for monetary compensation" if the speech (1) "concerns" a "firearm-related product," (2) is designed, intended, or could reasonably be considered "attractive to minors," and (3) seeks to encourage the audience (whether adult or child) to either purchase *or use* the product. *Id.* at 22949.80(a)(1), (c)(6). This is not an unfairly broad interpretation of AB 2571. It is a plain reading of the law as it was drafted and adopted by the Legislature.

All the examples of non-commercial speech Plaintiffs identify in their complaint and motion fall within AB 2571's restrictions. *See* Compl. ¶¶ 70-87; Mot. 5-8. For example, *Junior Shooters* magazine cannot run articles endorsing a "firearm-related product" and its particular benefits to young and beginner shooters. Fink Decl. ¶¶ 14-20. Plaintiff CRPA cannot sell branded t-shirts with its logo and "Be safe. Shoot straight. Fight back!" motto because AB 2571 tells us that such merchandise is "attractive to minors" and the slogan necessarily promotes the use of firearms and ammunition. Minnich Decl. ¶¶ 14-15; *see also* Home, www.crpa.org (last accessed Aug. 15, 2022) (for an image of CRPA's logo and motto). Nor can CRPA host a youth recreational shooting event or "hunt" because the primary

3

purpose of promoting and holding such events is to encourage children to use firearms both at the event and in the future. Minnich Decl. ¶ 12.[1] Plaintiffs CRPA and SAF cannot offer or promote paid youth memberships because such offers are inextricably related to the organizations' foundational purpose of promoting the lawful purchase, possession, and use of firearms and related products. *Id.* ¶ 3; Gottlieb Decl. ¶ 4. Plaintiff Brown cannot engage in his business of training youth shooters because such training necessarily includes speech that encourages the minor to use "firearm-related products." Brown Decl. ¶¶ 10. And Plaintiffs CYSSA and RCYCSS cannot encourage minors to enter their youth shooting competitions (if entry or membership fees are charged) because such communications encourage youth to use "firearm-related products," both in preparation for such events and competing in them. Coleman Decl. ¶¶ 8-10; Rangel Decl. ¶¶ 9-11.

The State fights the conclusion that AB 2571 restricts these expressive and associational activities, but Plaintiffs—while genuinely hopeful that they would not be targeted if they engage in this fully protected speech—are not convinced that every Attorney General, District Attorney, County or City Counsel, *private person*, or reviewing court would read the law as narrowly as the State does now. To the contrary, Plaintiffs reasonably fear that most would not.[2] The State's opposition

---

[1] Assuming, without conceding, that the State is correct that—despite the law's express reference to "services"—AB 2571 does not bar speech about "services" requiring or promoting the use of "firearm-related products," like competitive and recreational youth shooting events, the State ignores a crucial concern about the law's impact on such events. AB 2571 effectively shutters such events because they are tied to speech promoting the sale or use of "firearm-related products." Such events often rely on the support of firearm retailers and manufacturers in exchange for the opportunity to showcase their products through logo placement on event promotional materials, traditional advertisements in event programs, and vendor booths, banners, or other signage at the event. What's more, by promoting a youth event where youth are handling and using "firearms-related products," one is necessarily promoting the use of "firearm-related products" in a manner designed and intended to appeal to minors.

[2] That reasonable fear, of course, creates the sort of "chilling effect" on Plaintiffs'' speech that the First Amendment simply does not tolerate. *Edge v. City of Everett*, 929 F.3d 657, 664-65 (9th Cir. 2019) (requiring "specificity of laws" when "First Amendment freedoms are" implicated because unclear laws might "chill[] protected speech or expression by discouraging participation").

4

presents a tortured interpretation of AB 2571 that misrepresents key provisions of the law, ignores the plain language of the statute, and replaces that language with "implicit" meanings that the Legislature did not adopt. What's more, it relies on extrinsic evidence that purportedly shows a legislative intent to restrict only traditional marketing of "firearm-related products" to children. Opp'n 9-10. But the State's interpretation of that evidence contradicts the unambiguous language of AB 2571, improperly narrowing the scope of the law in violation of established canons of statutory construction. *See, e.g.*, *King v. Burwell*, 576 U.S. 473, 486 (2015) (describing the "plain meaning rule" that, where the language of a statute is plain, the only role of the courts is to enforce it according to its terms and reference to otherwise-relevant information about statutory meaning is impermissible).

For instance, the State argues that the bill's title, "Marketing Firearms to Minors," "indicates what it regulates and how it should be interpreted and applied." Opp'n 9. While a title can help explain the Legislature's motivations, the limitations of such evidence can hardly be understated. A title, being only "a short-hand reference to the *general subject matter* involved," *Trainmen v. Baltimore & Ohio R.R.*, 331 U.S. 519, 528 (1947) (emphasis added), may reflect the law's basic thrust or help clarify *ambiguous* statutory language. But titles are "not meant to take the place of the detailed provisions of the text." *Id.* They "cannot limit the plain meaning of the text," *id.* at 529, and they have "no power to give what the text of the statute takes away," *Demore v. Kim*, 538 U.S. 510, 535 (2003) (O'Connor, J., concurring) (citing *INS v. St. Cyr*, 533 U.S. 289, 308- 09 (2001)).

So, while AB 2571 no doubt restricts traditional marketing of firearms to minors consistent with the bill's title, the more "detailed provisions of the text" are no less clear that the law's restrictions do not stop there. Indeed, nothing about the statutory definition of "marketing or advertising" limits AB 2571 to speech proposing a commercial transaction. To the contrary, it expressly includes within its scope speech that promotes even the lawful use (not just the sale) of "firearm-related

5

products." Cal. Bus. & Prof. Code § 22949.80(c)(6). The bill's title, which merely summarizes the basic thrust of the law, cannot replace the Legislature's clear expression of intent in the plain language of the statute. After all, the intent of the legislature "is found in the words it has chosen to use." *Harbison v. Bell*, 556 U.S. 180, 198 (2009) (Thomas, J., concurring).

What's more, if the bill's title and other isolated statements narrow the scope of the law as the State contends, the State must also concede that AB 2571 would be limited to marketing of *firearms* to *minors*. *See, e.g.*, Pls.' Req. Jud. Ntc., Ex. 1 at 93 (finding and declaring that the "proliferation of firearms to and among minors poses" a public safety threat); *id.* at 94 (declaring the legislative intent "to further restrict the marketing and advertising of firearms to minors"). It would not extend to other "firearm-related products," like ammunition, precursor parts, or firearm accessories. Nor would it extend to marketing of firearms to adults that "appears attractive to minors." Surely, the State would not take such a position. For the plain language of the statute conflicts with such an interpretation. Just as it conflicts with claims that AB 2571 restricts only communications that propose the commercial sale of "firearm-related products," when the law expressly refers to speech promoting even the *use* of such products.

In response, the State claims (without support) that "*implicit* in the terms 'marketing or advertising' in relation to any specific product is an offer to engage in a commercial transaction for the sale and purchase of that product." Opp'n 9. But even if that is so, the State does not get to rely on "implicit" definitions of terms that it explicitly defined in the statute. *See Colautti v. Franklin*, 439 U.S. 379, 392 (1979) (observing that, if a word or phrase is defined in the statute, then that definition governs). The statutorily created definition of "marketing or advertising" is not limited to offers to engage in the commercial sale of a specific product. In fact, no such language appears anywhere in the statute at all. If the Legislature meant to incorporate the State's purportedly implicit definition of "marketing or advertising,"

REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

one would think it would have done so. Instead, the Legislature chose to create its own definition that includes any communication, made in exchange for monetary compensation, about a product or service, the primary purpose of which is to encourage the audience to purchase *or use* that product or service. Cal. Bus. & Prof. Code § 22949.80(c)(6). That is the definition that must control.

The State goes on, remarkably claiming that Plaintiffs argue that "the statute's prohibition against marketing 'concerning' certain tangible products encompasses anything and everything related to firearms in any way." Opp'n 9. Of course, the State provides no citation to anything in Plaintiffs' memorandum making such a wild claim. And for good reason. Plaintiffs never argued such a thing. Rather, Plaintiffs highlight the Legislature's use of the phrase "*concerning* any firearm-related product" in subsection (a)(1) because it illustrates the Legislature's intent *not* to limit AB 2571 to commercial speech about the sale of "firearm-related products," and aligns with subsection (c)(6)'s explicit reference to not just the sale of such products, but also their use. That is, the Legislature chose to restrict "advertising or marketing communication[s] *concerning* any firearm-related product," instead of "advertising or marketing communication[s] promoting the sale or purchase of any firearm-related product" or similar language. *See* Cal. Bus. & Prof. Code § 22949.80(a)(1). And, likewise, it chose to define "marketing or advertising" to include communications intended to encourage recipients to *use* "firearm-related products," not just purchase them *Id.* § 22949.80(c)(1). Assuming the Legislature means to use the words that it uses (and not to use the words it doesn't), it is hard to see how AB 2571 could be limited in the way the State's opposition contends it is.

In a footnote, the State attempts to explain away the law's reference to communications promoting the mere "use" of a product. In doing so, the State again assigns its own meaning to the statutory language, claiming that the Legislature's unqualified use of the word "use" really refers to a "commercial appeal[] to 'use' a particular product offered for sale." Opp'n 9. For support, the State argues that AB

7

2571 defines "'marketing or advertising' as communications encouraging [the] 'purchase or use of a product or service,' only 'in exchange for monetary compensation." Opp'n 9, n.3. But the State's argument relies on a critical sleight of hand that it employs repeatedly throughout its opposition. *See also id.* at 8 ("The statute also defines 'marketing or advertising' with reference to commercial transactions, i.e., those involving a proposed "exchange for monetary compensation.""). Recall, subsection (c)(6) reads:

> "Marketing or advertising" means, *in exchange for monetary compensation*, to make a communication to one or more individuals, or to arrange for the dissemination to the public of a communication, about a product or service the primary purpose of which is to encourage recipients of the communication to purchase *or use* the product or service.

(Emphases added). The placement of the clause "in exchange for monetary compensation" is crucial here. It directly precedes the reference to "mak[ing] a communication to one or more individuals." It does not follow the reference to encouraging recipients of the communication to purchase or use the product. So, contrary to the State's claim that the definition refers to communications "involving a proposed 'exchange for monetary compensation,'" Opp'n 8, or "encouraging [the] 'purchase or use of a product or service,' only 'in exchange for monetary compensation," Opp'n 9, n.3, AB 2571 refers to *making a communication* in exchange for monetary compensation—whether or not it also proposes an exchange of monetary compensation with regard to the subject product or service.

In short, the plain language AB 2571 is clear that the law restricts not just speech that proposes a commercial sale of "firearm-related products," but also speech that promotes the use of such products. The State's repeated appeals to extrinsic evidence to narrow the unambiguous language of the statute are unavailing.

### b. The *Bolger* factors do not support the State's position that AB 2571 restricts only commercial speech.

Trying to immunize AB 2571 from the full protections of the First

REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Amendment afforded to non-commercial speech, the State abandons the straightforward "commercial transaction test" described above in favor of analyzing the law under three non-dispositive factors laid out in *Bolger*. Opp'n 8. The *Bolger* factors consider whether the speech is an advertisement, whether the speech refers to a particular product, and whether the speaker has an economic motivation. 463 U.S. at 66-68. In the first place, it is doubtful that the *Bolger* factors can aid this Court in determining whether AB 2571 restricts only commercial speech on its face, as opposed to analyzing whether a particular communication constitutes commercial speech. In any event, none of the *Bolger* factors provide any real support for the State's position that "AB 2571 is properly understood as a regulation of commercial speech, not core political speech." Opp'n 8.

The first *Bolger* factor—whether the restricted speech is an advertisement—does not fairly point in either party's direction. To be sure, AB 2571 does restrict traditional advertising of "firearm-related products." But the law does not stop there. As established above, AB 2571 defines "marketing or advertising" to include pure speech that does not constitute "advertising," as we commonly know it. *See* Part I.A.1.a., *supra*.

Second, AB 2571 does not restrict only speech about a particular product. To be sure, the law is limited to speech concerning "firearm-related products," but it does not restrict only speech about a "*particular* product." Rather, it refers to "any firearm-related product," which is broadly defined as "a firearm, ammunition, reloaded ammunition, a firearm precursor part, a firearm component, or a firearm accessory" that has some connection with the state of California. Cal. Bus. & Prof. Code § 22949.80(c)(5).

Finally, the third *Bolger* factor does not support the State's position because, again, the law does not restrict only speech proposing an exchange of products or services for monetary compensation. Under AB 2571, it is enough that the speaker makes the communication in exchange for monetary compensation. *Id.* §

9

22949.80(c)(6). That is not the sort of economic motivation that is the hallmark of commercial speech. This matters, of course, because "[t]the mere fact of 'monetary compensation' for producing speech does not make the speech purely commercial." Pls.' Req. Jud. Ntc., Ex. 3 at 7 (citing *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1117 (9th Cir. 2021)). This must be so. For "a great deal of vital expression" emerges from an economic motivation. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) (citing *Bigelow v. Virginia*, 421 U.S. 809, 818 (1975); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 266 (1964)). So that factor, standing alone, does not make all economically motivated speech "commercial."

### 2.     AB 2571 Is Both Content- and Speaker-based and Viewpoint-discriminatory

Once the State's mischaracterizations of AB 2571 are stripped away, and it becomes clear that the law does not strictly regulate commercial speech, support for the State's claim that AB 2571 is not "a content- or viewpoint-based restriction on core speech or on Plaintiffs' right to associate"[3] largely falls away too. Indeed, in support of its argument, the State simply claims that "the statute regulates [only] commercial speech." Opp'n 10. And it assures the reader that the law "was not adopted to regulate speech 'because of the disagreement with the message it conveys," *id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)), but to "serve important government interests implicated by the marketing and advertising of firearms-related to products to children," *id.*

The State's argument conflates the interests purportedly served by AB 2571 with the determination of whether the law is content based. "A court, however, must consider 'whether a law is content neutral on its face *before* turning to the law's justification or purpose.'" *B&L Prods., Inc. v. 22nd Dist. Agric. Ass'n*, 394 F. Supp. 3d 1226, 1245 (S.D. Cal. 2019) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 165

---

[3] The State's entire opposition to Plaintiffs' freedom of association claim is limited to this single passing reference.

10

REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

(2015)). "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Reed*, 576 U.S. at 165. Indeed, the Supreme Court has confirmed that "'[i]llicit legislative intent is not the *sine qua non* of a violation of the First Amendment,'" and a party opposing the government "need adduce 'no evidence of an improper censorial motive.'" *Id.* (quoting *Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 117 (1991)). Though evidence of such makes the determination simpler. *See, e.g.*, *Sorrell*, 564 U.S. at 563-565 (statute was content based "on its face," and there was also evidence of an impermissible legislative motive).

On its face, AB 2571 is content- and speaker-based because it targets speech by specified individuals and businesses, i.e., "firearm industry members," based on the communication's "subject matter" and its "function or purpose." That is, it restricts certain speech "concerning firearm-related products," if the "primary purpose" of the communication "is to encourage recipients of the communication to purchase or use the product or service." Cal. Bus. & Prof. Code § 22949.80(c)(6). Because the statute "require[s] 'enforcement authorities 'to examine the content of the message that is conveyed to determine whether' a violation has occurred," it is content based, not content neutral. *McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (quoting *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 383 (1984)); *see also Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986) (explaining that "'content-neutral' speech regulations" are "those that are *justified* without reference to the content of the regulated speech" (internal quotation marks omitted)).[4]

What's more, because speech promoting the lawful purchase and use of firearms "is likely to be predominantly, if not exclusively, favorable to guns and gun

---

[4] Even if AB 2571 regulated strictly "commercial speech," such a restriction is not content neutral if it lacks a "neutral justification." *Sorrell*, 564 U.S. at 566 (citing *Cincinnati v. Discovery Network*, 507 U.S. 410, 429-30 (1993)).

11

rights, '[i]n its practical operation,' [AB 2571] 'goes even beyond mere content discrimination, to actual viewpoint discrimination.'" *B&L Prods.*, 394 F. Supp. 3d at 1245 (quoting *R.A.V. v. St. Paul*, 505 U.S. 377, 391 (1992)). "In the ordinary case it is all but dispositive to conclude that a law is content-based and, in practice, viewpoint-discriminatory." *Sorrell*, 564 U.S. at 571 (citing *R.A.V.*, 505 U.S. at 382 (holding that "[c]ontent-based regulations are presumptively invalid")).

The State argues that AB 2571 is not viewpoint discriminatory because gun control organizations are not exempt if they engage in traditional marketing of "firearm-related products." Opp'n 10-11. Setting aside the absurdity of arguing that groups like Moms Demand Action and ***Gun Free*** Kids would suddenly start engaging in the advertising of firearms, the State's argument relies on its improper narrowing of the law to only speech proposing the commercial sale of "firearm-related products." Because it is not so limited, and touches upon non-commercial speech promoting the use of firearms in ways that are attractive to minors, the law restricts groups like CRPA, GOC, and SAF from engaging in such speech. While it leaves untouched the opposing views of groups like Moms Demand Action.

But even if the State's narrow interpretation of AB 2571 were correct, gun-control groups and anti-gun politicians like Governor Newsom are free to use traditional marketing communications promoting the commercial sale of firearms as examples to further their message that such speech is "bad," and that minors should not have access to information about firearms designed for their smaller hands. Mot. 12 (discussing Newsom's use of advertising from WEE1 Tactical of their JR-15 to express his disdain for such speech). Firearm manufacturers, retailers, and gun-rights groups, on the other hand, are expressly barred from distributing those very same advertisements—simply because they seek to promote the lawful use of firearms, not end it. *Id.* The State never explains how this could be viewed as anything but content based and viewpoint discriminatory.

Instead, the State attacks Plaintiffs' use of the statements of Governor

12

1   Newsom and Assemblymember Bauer-Kahan—the sponsors of AB 2571—as
2   evidence that the law was driven by animus. Opp'n 11-12. Concededly, the Supreme
3   Court has cautioned against "void[ing] a statute that is, under well-settled criteria,
4   constitutional on its face, on the basis of what fewer than a handful of [legislators]
5   said about it. What motivates one legislator to make a speech about a statute is not[,
6   after all,] necessarily what motivates scores of others to enact it." *United States v.*
7   *O'Brien*, 391 U.S. 367, 384 (1968). But Plaintiffs do not ask this Court to void a law
8   that is constitutional on its face based on the isolated comments of a few legislators.
9   To the contrary, AB 2571 is both content-based and viewpoint-discriminatory on its
10  face. *See* Part I.A.2, *supra*. And the statements of Newsom and Bauer-Kahan merely
11  confirm that the bill's *sponsors* were motivated by animus to draft, introduce, and
12  hurry AB 2571 through the legislative process. *See* Mot. 1, 8-9, 12. While their
13  statements may not be dispositive, they are at least revealing.

14      Even so, the State is so confident that its law is not content- or viewpoint-
15  based restriction, it does not even attempt to defend AB 2571 under strict scrutiny.
16  As a result, the State has waived any argument that it could survive such review. So
17  if the Court agrees that AB 2571 likely imposes a content-based restriction on
18  protected speech, it should hold that Plaintiffs have shown a likelihood of success on
19  the merits of their First Amendment free speech claim and preliminarily enjoin AB
20  2571 while this case proceeds.

21
22  **B.      Even if AB 2571 Restricted Only "Commercial Speech," the
             Outcome Is the Same**

23      The State advocates for a more forgiving standard than strict scrutiny because,
24  in its view, AB 2571 burdens strictly commercial speech. Opp'n 13 (citing *Cent.*
25  *Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 563-66 (1980);
26  *Coyote Publ'g Inc. v. Miller*, 598 F.3d 592, 598-610 (9th Cir. 2010)). "[T]he
27  outcome is the same[, however,] whether a special commercial speech inquiry or a
28  stricter form of judicial scrutiny is applied. *Sorrell*, 564 U.S. at 571 (citing *Greater*

13

*New Orleans Broadcasting Assn., Inc. v. United States*, 527 U.S. 173, 184 (1999)).

### 1. AB 2571 Does Not Restrict Only Misleading Commercial Speech Concerning Unlawful Activity

Simply put, AB 2571 does not restrict only potentially misleading speech promoting the unlawful sale of firearms to minors. Sure, it does restrict that speech, but it also prohibits speech encouraging the lawful use of firearms by minors and the lawful sale of firearms and related products to adults, either for their personal use or for their children's supervised use. Cal. Bus. & Prof. Code § 22949.80(a)(1), (c)(6). Because AB 2571 plainly regulates truthful speech about lawful activities, it cannot be fairly characterized as a law that "permissibly regulates commercial speech concerning unlawful activity." Opp'n 12.

To be very clear, minors may lawfully possess and use firearms for various lawful purposes—even in California. Mot. 16 (citing Cal. Pen. Code §§ 29615, 29655). Trying to minimize the importance of this fact, the State observes that minors in the state generally must have the consent or supervision of their parents to engage in such conduct. Opp'n 12. But that fact does not make it any less true that minors may lawfully engage in various activities with firearms, including education and safety courses, firearm training, hunting, competitive shooting, and other recreational shooting sports, as well as traveling to and from such activities. *Id.* And there are countless activities children may not engage in without their parent's consent—that does not make promotion of those activities unlawful or misleading. What's more, there is no law in California that bars adults from purchasing firearms for their children to use with their consent or supervision. Even still, AB 2571 restricts speech promoting the purchase of firearms not only by minors, but also the lawful purchase of lawful firearms by adults.

Yet the State misleadingly claims that "AB 2571 regulates commercial speech respecting unlawful activity—the sale of guns to minors." Opp'n 12-13. Again, while the law does restrict that speech, it also sweeps up a great deal more speech

14

that promotes the lawful purchase or use of "firearm-related products" if it "reasonably appears to be attractive to minors." If AB 2571 were limited to "marketing or advertising the sale of firearms to minors," perhaps the State's argument would hold some weight. But that is not the law the Legislature passed.

By selectively quoting just part of a sentence from Plaintiffs' brief, the State makes a bad-faith argument that Plaintiffs concede that "AB 2571 regulates advertising and marketing that is inherently misleading to the young viewers and readers it seeks to protect." Opp'n 13. Plaintiffs do not concede that the speech restricted by AB 2571 is "inherently misleading," and they do not merely recognize that "AB 2571 might technically ban misleading speech promoting the unlawful sale of firearms to minors[.]" *Id.* (selectively quoting Mot. 11). They explain that the law "*is in no way limited to such speech*. In fact, it ensnares a substantial amount of protected political, educational, and commercial speech—*likely far more of such speech than the arguably unprotected speech the bill purports to target*." Mot. 11.

But conceding that AB 2571 does, in fact, ban such speech is no big revelation. Of course, it does. What matters is that the law also restricts a substantial amount of truthful, lawful, and fully protected commercial (and non-commercial) speech. Because it does so, AB 2571 does not simply regulate misleading commercial speech about an unlawful activity. It restricts protected commercial speech and, to survive Plaintiffs' challenge, must survive heightened scrutiny.

### 2. AB 2571 Does Not Directly or Materially Advance the State's Purported Interest in Protecting the Physical and Psychological Well-being of Children in California

Plaintiffs conceded in their moving papers that the State generally "has a substantial interest in preventing violence against its citizens," Mot. 17-18, and they do not now argue that the State's "interest in protecting the physical and psychological well-being of minors" is not compelling. Opp'n 14 (quoting *Sable Commc'ns of Cal., Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989) Rather, as they did in their moving papers, Plaintiffs focus on the bill's absolute failure to advance the

1    State's purported interests in any direct or material way.

2         The State relies on legislative findings that "the *illegal* possession of firearms

3    by minors constitutes a serious health and safety risk to children and other residents

4    of this state." Opp'n 16 (quoting Req. Jud. Ntc., Ex. 3 at 12) (emphasis added). But

5    it does not link the existence of communications promoting the lawful purchase and

6    use of firearms—communications that are undisputedly restricted by AB 2571—to

7    the illegal possession of firearms by minors. Opp'n 15-17. Rather, the State simply

8    argues that advertising is linked to the use of certain products by youth, and that

9    "restrictions on advertising are associated with decreased use of certain products by

10   youth." *Id.* at 16 (citing Req. Jud. Ntc., Ex. 3 at 12). So what? The very purpose of

11   advertising is to encourage the use of the advertised products, so naturally the

12   proliferation of such communications correlates with increased use and the

13   restriction of such communications correlates with decreased use. That does not give

14   the State carte blanche to ban truthful speech about otherwise lawful (and

15   constitutionally protected) products and commercial transactions.

16        Arguing that AB 2571 seeks to "reduc[e] demand for firearm-related products

17   among minors" by "restricting such advertising and marketing," the State tacitly

18   admits that its illegitimate aim is to reduce the demand for even the lawful use of

19   lawful firearms by minors in hopes that reducing such demand might serve its more

20   permissible goal of "reducing gun violence perpetrated by and against minors and

21   others, both intentional and unintentional." Opp'n 17. This is, at best, an

22   impermissible restriction on speech that only *indirectly* serves the State's compelling

23   public safety interest. *Sorrell*, 564 U.S. at 554-55 (holding that the state may not

24   "achieve its policy objectives through the indirect means of restraining certain

25   speech by certain speakers"). It is also the sort of "paternalistic approach" the

26   Supreme Court has long condemned. *See Va. Bd. of Pharm. v. Va. Citzs. Consumer*

27   *Council*, 425 U.S. 748, 770 (1976). Plaintiffs made both these points in their moving

28   papers, and the State simply ignored them.

The State relies on *United States v. Edge Broadcasting*, 509 U.S. 418 (1993), to argue "that the government may restrict advertising in order to dampen demand, and thereby advance a substantial government interest." *See, e.g.*, *Edge Broad. Co.*, 509 U.S. at 434 ("If there is an immediate connection between advertising [for gambling] and demand, and the federal regulation decreases advertising, it stands to reason that the policy of decreasing demand for gambling is correspondingly advanced."). But *Edge Broadcasting* dealt with restrictions on advertising for gambling—conduct that is neither expressive nor protected by any provision of the federal Constitution. In short, the government can legitimately seek to decrease the demand for gambling in service of other substantial interests.[5]

Simply put, the State has no legitimate interest in merely reducing the demand to lawfully engage in constitutionally protected conduct. Mot. 19. And the State does not argue that minors are wholly without Second Amendment rights, so it may not "achieve its policy objectives through the indirect means of restraining certain speech by certain speakers." *Sorrell*, 564 U.S. at 554-55. Rather, it must directly work to combat the problem of unlawful possession and use of firearms by minors in ways that do not impermissibly ban large swaths of protected truthful speech.

### 3.   AB 2371 Is Also More Extensive than Necessary to Serve the State's Purported Interest in Protecting the Physical and Psychological Well-being of Children in California

Finally, the last prong of *Central Hudson* requires the State to show that the speech restriction "is no more extensive than necessary to further" its purported interests. 447 U.S. at 569-70. Even commercial speech restrictions purportedly

---

[5] The State also cites its "similar policy approach in regulating alcohol advertising aimed at minors." Opp'n 16, n.4 (citing Cal. Bus. & Prof. Code § 25664). But, as explained in Plaintiffs' moving papers, "restrictions on advertising of alcohol, tobacco, and cannabis to children are irrelevant because—unlike possession and use of firearms—it is not legal for minors to possess or use those substances in California. And none of those products are constitutionally protected." Mot. 11-12 (internal citation omitted). So, much like restrictions on advertising for gambling, the State may permissibly seek to reduce the demand for alcohol, tobacco, and cannabis among children in service of broader policy aims of protecting minors from the harms of those substances.

REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

aimed at protecting minors must be narrowly drawn to achieving an asserted state interest. *See, e.g.*, *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 565-66 (2001) (striking restrictions on tobacco marketing likely to be observed by children). Indeed, "only in relatively narrow and well-defined circumstances may the government bar public dissemination of protected materials to" children because even "minors are entitled to a significant measure of First Amendment protection." *Erznoznik v. Jacksonville*, 422 U.S. 205, 212-13 (1975). Ignoring the Supreme Court's guidance in *Lorillard* and *Erznoznik*, two binding authorities on the regulation of commercial speech aimed at minors, the State implies it has "leeway" to regulate here because "the Supreme Court has written … of the virtue of providing 'the Legislative and Executive Branches needed leeway in a field (commercial speech) traditionally subject to government regulation . . ..'" Opp'n 17-18 (quoting *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989)).

The State then argues that AB 2571 is no more extensive than necessary to serve the state's purported compelling interests because it "regulates only a narrow category of commercial speech (that offering firearms, their components, and accessories for sale)" "promulgated by a narrowly defined group of commercial speakers—the firearm industry—rather than on publishers, or even advertisers, in general."[6] Even if AB 2571 regulates as narrowly as the State claims, no matter how narrowly a law regulates speech, it is far too broad if the State "has various other laws at its disposal that would allow it to achieve its stated interests while burdening little or no speech." *Valle Del Sol v. Whiting*, 709 F.3d 808, 826 (9th Cir. 2013). "If the [State] considers its existing safeguards inadequate to combat [firearm misuse by minors], it may pass additional direct regulations within constitutionally permissible boundaries." *Tracy Rifle & Pistol LLC v. Harris*, 339 F. Supp. 3d 1007, 1018-19

---

[6] This argument contradicts the State's earlier claim that "no individual, company or organization is exempt from the prohibition on marketing firearm-related products to children because, by doing so, they become a 'firearm industry member' subject to the law." Opp'n 11.

REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

(E.D. Cal. 2018). Or it may counter firearm advertising with which it disagrees with "more speech," not less. *Lorillard*, 533 U.S. at 586 (Thomas, J., concurring). But it may *not* ban truthful advertising promoting the lawful sale or use of lawful products simply because some of its viewers might be inspired to act on it unlawfully.

Contrary to the State's assertion, in arguing that the prohibition "applies whether the media is directed to children or a general audience," Mot. 20 (quoting Req. Jud. Ntc., Ex. 2 at 6), Plaintiffs do *not* ignore that AB 2571 "regulates advertising and marketing communications that are 'designed, intended, or reasonably appear[] to be attractive to minors' as demonstrated by a variety of non-exclusive factors." Opp'n 18. To the contrary, they are acutely aware that AB 2571 regulates in this way. Communications that are "designed, intended, or reasonably appear[] to be attractive to minors" are often the same sorts of communications that are attractive to adults who have an "interest in receiving truthful information about [firearm-related] products" to make informed decisions for both themselves and their children. *Lorillard*, 533 U.S. at 564. AB 2571 does not necessarily exempt speech that is attractive to minors just because it is also attractive to adults.

For instance, AB 2571 identifies among the list of relevant factors that help to establish whether a communication "reasonably appears to be attractive to minors" speech that "[o]ffers firearm-related products in sizes, colors, or designs that are specifically designed to be used by, or appeal to, minors." Cal. Bus. & Prof. Code § 22949.80(a)(2)(C). But firearms in nontraditional colors are just as fun and attractive to many adults. And many lawful firearms come in sizes designed to be lawfully and safely used by minors; parents have a protected interest in receiving non-misleading information about these lawful products so they may responsibly decide whether a particular firearm is a good fit for their child's lawful recreational or competitive shooting needs. The State cannot restrict this commercial speech to adults in order "to shield a segment of the population when there are less restrictive alternatives." *Tracy Rifle*, 339 F. Supp. 3d at 1014, n.8; *see also Lorillard*, 533 U.S. at 581 ("[T]

19

governmental interest in protecting children from harmful materials does not justify an unnecessarily broad suppression of speech addressed to adults.").

In short, AB 2571 is more extensive than necessary to achieve the State's purported interests because it impermissibly burdens speech concerning not only the illegal purchase or use of firearms by minors, but also the lawful use of "firearm-related products" by minors and the lawful purchase and use of such products by adults. It is also more extensive than necessary because the State has a variety of tools available to combat the problem of illegal firearm use by minors that would not restrict speech at all. The State's choice to reject those options and, instead, indirectly attack the problem through the regulation of protected speech dooms AB 2571. Indeed, "if the [g]overnment could achieve its interests in a manner that does not restrict speech, or that restricts less speech, the [g]overnment must do so." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 371 (2002).

### C.    AB 2571 Also Violates Plaintiffs' Right to Equal Protection

Because AB 2571 treats some speech (and, necessarily, some speakers) differently from others, it also violates the Equal Protection Clause of the Fourteenth Amendment. *Dariano v. Morgan Hill Unif. Sch. Dist.*, 767 F.3d 764, 779-780 (9th Cir. 2014) ("Government action that suppresses protected speech in a discriminatory manner may violate both the First Amendment and the Equal Protection Clause.") The analysis of Plaintiffs' equal protection claim is "essentially the same" as the analysis of their First Amendment claim. *Id.* at 780. Indeed, "[t]he Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives." *Police Dep't of Chic. v. Mosley*, 408 U.S. 92, 101 (1972). So if the Court finds that Plaintiffs are likely to succeed on their claim that AB 2571 is an impermissible content-based and viewpoint-discriminatory restriction on their core speech, it naturally follows that the law also violates their right to equal protection under the law.

/ / /

## II. THE OTHER PRELIMINARY INJUNCTION FACTORS WARRANT ENJOINING AB 2571 WHILE THIS CASE PROCEEDS ON THE MERITS

### A. Plaintiffs Will Suffer Irreparable Harm if the Court Denies Relief

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). The State's opposition concedes, as it must, that if Plaintiffs are likely to prevail on any of their free speech claims, then irreparable harm is presumed. Opp'n 20. "By demonstrating a likelihood of success on the merits of their First Amendment claims, Plaintiffs have demonstrated that irreparable harm will result from the continued restriction of their protected speech." *B&L Prods.*, 394 F. Supp. 3d at 1250. So if this Court finds that Plaintiffs have shown a likelihood of success on the merits on any of their constitutional claims, it must follow that they have established irreparable harm for purposes of granting preliminary injunctive relief.

### B. The Balance of Equities Tip Sharply in Plaintiffs' Favor

This factor considers the "balance of hardships between the parties." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1137 (9th Cir. 2011). Unlike Plaintiffs' injuries detailed in the complaint and Plaintiff' moving papers, the State will suffer no injury. For there is no plausible, identifiable interest that infringing Plaintiffs' constitutional rights serves. Indeed, the State "cannot suffer harm from an injunction that merely ends an unlawful practice…." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

Yet, the State argues that the balance of equities weighs in its favor because AB 2571 promotes a compelling interest. Opp'n 20-21. But even if it does, the State never argued that AB 2571 is narrowly tailored or that it employs the least restrictive means under strict scrutiny. *See* Part I.A.2, *supra*. And it failed to establish under

21

*Central Hudson* that the law directly and materially advances the State's purported interest or that it is no more extensive than necessary. *See* Part I.B.2-3, *supra*. Instead, the State implores the Court to withhold the relief Plaintiffs are entitled to because AB 2571 bars "at least some conduct harmful to the public's safety." *Id*. To be clear, it is the State's job to craft legislation that meets the exacting tests of heightened scrutiny applied to restrictions on free speech. Its failure to do so renders the law unconstitutional, stripping the State of any interest in the continued enforcement of the law. The mere fact that the law might still prevent *some* harm to public safety is not enough to shift the balance of equities in the State's favor.

Finally, the State argues that Plaintiffs' motion should be denied because it "effectively seek[s] to litigate the merits of the dispute without a motion for summary judgment or trial." Opp'n 21-22. The argument is a strange one indeed. Every motion for preliminary injunction involves the litigation of the merits of a dispute to some extent—that's how Plaintiffs establish whether they are likely to succeed on the merits, after all. Instead, the State's citations, which do not support its position, illustrate the real test. For example, the State cites *Progressive Democrats for Social Justice v. Bonta*, but that case just reiterates the principle that it "is so well settled as not to require citation of authority that the usual function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits." *Prog. Dems. for Soc. Just. v. Bonta*, No. 21-cv-03875, 2021 U.S. Dist. LEXIS 250746, at *34 (N.D. Cal. July 16, 2021); *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808-09 (9th Cir. 1963).

Preservation of the status quo—a return to "the last uncontested status which preceded the pending controversy" or the state of affairs as they existed on June 29, 2022—is all Plaintiffs seek here. This is clearly permissible on a motion for preliminary injunction, as the State's own authorities confirm. *Tanner Motor Livery*, 316 F.2d at 808-09 (citing *Westinghouse Elec. Corp. v. Free Sewing Mach. Co.*, 256 F.2d 806, 808 (7th Cir. 1958)).

REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

C.    **Granting Preliminary Injunctive Relief Is in the Public Interest**

When challenging government action that affects the exercise of constitutional rights, "[t]he public interest ... tip[s] sharply in favor of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). As the Ninth Circuit has made clear, "all citizens have a stake in upholding the Constitution" and have "concerns [that] are implicated when a constitutional right has been violated." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) (emphasis added). The Ninth Circuit has "consistently recognized the significant public interest in upholding First Amendment principles." *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014).

## CONCLUSION

For the reasons laid out in this reply, as well as Plaintiffs' moving papers, the Court should grant Plaintiffs' Motion for Preliminary Injunction and enjoin the enforcement of section 22949.80 while this case proceeds to a final decision on the merits.

Dated:  August 15, 2022          **MICHEL & ASSOCIATES, P.C.**

                                 s/ *Anna M. Barvir*

                                 Anna M. Barvir
                                 Counsel for Plaintiffs Junior Sports Magazines
                                 Incorporated, Raymond Brown, California
                                 Youth Shooting Sports Association, Inc.,
                                 Redlands California Youth Clay Shooting
                                 Sports Inc., California Rifle & Pistol
                                 Association, Inc., The CRPA Foundation, and
                                 Gun Owners of California

Dated:  August 15, 2022          **LAW OFFICES OF DONALD KILMER, APC**

                                 s/ *Donald Kilmer*

                                 Donald Kilmer
                                 Counsel for Plaintiff Second Amendment
                                 Foundation

REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Junior Sports Magazines, Inc., et al. v. Bonta*
Case No.:    2:22-cv-04663-CAS (JCx)

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Kevin J. Kelly, Deputy Attorney General
kevin.kelly@doj.ca.gov
300 South Spring Street, Suite 9012
Los Angeles, CA 90013
    *Attorney for Defendant*

I declare under penalty of perjury that the foregoing is true and correct.

Executed August 15, 2022.

Laura Palmerin