# EXHIBIT A

**Assembly Bill No. 160**

———

Passed the Assembly  August 31, 2022

_____
*Chief Clerk of the Assembly*

———

Passed the Senate  August 30, 2022

_____
*Secretary of the Senate*

———

This bill was received by the Governor this _____ day of _____, 2022, at _____ o'clock ___M.

_____
*Private Secretary of the Governor*

**AB 160**                                    — 2 —

CHAPTER _____

An act to amend Section 22949.80 of the Business and Professions Code, to amend Section 68085.1 of, and to amend, repeal, and add Sections 13956, 13957, 13957.5, 13959, and 13962 of the Government Code, to amend Sections 290.008, 457.1, 1203.4b, and 1463.001 of, to amend, repeal, and add Sections 4900 and 4904 of, and to add Section 679.027 to, the Penal Code, and to amend Section 1732.10 of the Welfare and Institutions Code, relating to public safety, and making an appropriation therefor, to take effect immediately, bill related to the budget.

LEGISLATIVE COUNSEL'S DIGEST

AB 160, Committee on Budget. Public safety trailer bill.

(1) Existing law prohibits a firearm industry member, as defined, from engaging in advertising or marketing related to firearms that is intended for minors or reasonably appears to be attractive to minors, as specified.

This bill would exempt from this prohibition any advertising that is offering or promoting classes or events related to firearm safety, hunting, or sport shooting, as specified, or promoting membership in any organization.

(2) Existing law generally provides for the compensation of victims and derivative victims of specified types of crimes by the California Victim Compensation Board from the Restitution Fund, which is continuously appropriated to the board. Existing law prohibits the board from granting compensation to a person who is convicted of a violent felony, as prescribed, until that person has been discharged from probation or has been released from a correctional institution and has been discharged from parole, or has been discharged from postrelease community supervision or mandatory supervision, if any, for that violent crime.

This bill would instead prohibit compensation from being granted to a person in the above circumstances until after that person has been released from a correctional institution.

(3) Existing law authorizes the board to compensate for pecuniary loss, including compensation equal to the loss of income or loss of support, or both, that a victim or derivative victim incurs

— 3 —                                    **AB 160**

as a direct result of the victim's or derivative victim's injury or the victim's death, as specified. Existing law also provides limits on the compensation a victim and derivative victim may receive.

This bill would authorize the board, in authorizing compensation for loss of income and support, to base the loss of income on the actual loss the victim sustains or the wages that an employee would earn, as specified, during the period that the victim is unable to work or seek work as a result of the injury for adult victims, and upon the loss the victim actually sustains for victims who are under 18 years of age at the time of the crime, as specified. The bill would also specify that an adult derivative victim and a derivative victim who was legally dependent on the victim at the time of the crime are also similarly eligible for compensation for loss of income, as specified. The bill would specify that if a victim is a minor at the time of the crime, the victim is eligible for future loss of income, calculated as specified.

This bill would specify that if an adult victim or derivative victim was not employed or receiving earned income benefits at the time of the crime, the victim or derivative victim, as applicable, shall be eligible for loss of income if they were fully or partially employed or receiving income benefits for a total of at least 2 weeks in the 12 months preceding the qualifying crime, or had an offer of employment at the time of the crime and was unable to begin employment as a result of the crime, as specified. The bill would specify that if a derivative victim who is otherwise eligible for loss of support is eligible for loss of support if the deceased victim was not employed or receiving earned income benefits at the time of the crime, but the deceased victim was fully or partially employed or receiving earned income benefits for a total of at least 2 weeks in the 12 months preceding the qualifying crime, if the victim had an offer of employment at the time of the crime and was unable to begin employment as a result of the crime.

This bill would require the board, by July 1, 2025, to adopt new guidelines to rely on a range of evidence in considering and approving claims for loss of income, as specified.

The bill would also remove or raise various limits on the compensation a victim and derivative victim may receive, as specified. By expanding the eligibility for, and by increasing or removing limits on, compensation from a continuously appropriated fund, this bill would make an appropriation.

**AB 160** — 4 —

(4)  Existing law requires the board to publicize the existence of the victim compensation program, and requires a local law enforcement agency to inform crime victims of these provisions, as specified.

This bill would require the board to provide every general acute care hospital in the state that operates an emergency department with specified information, and require the hospital to display the information, as specified. The bill would also require every local law enforcement agency to inform crime victims of the existence of specified trauma recovery centers. By requiring local law enforcement agencies to provide additional information to crime victims, this bill would impose a state-mandated local program.

(5)  Existing law, as added by Proposition 9, the Victims' Bill of Rights Act of 2008: Marsy's Law, at the November 4, 2008, statewide general election, requires a law enforcement agency investigating a criminal act and an agency prosecuting a criminal act to, at the time of initial contact with a crime victim, during followup investigation, or as soon thereafter as deemed appropriate, provide or make available to the victim a "Marsy Rights" card that contains the constitutional rights of crime victims without charge or cost to the victim.

This bill would require every law enforcement agency investigating a criminal act and every agency prosecuting a criminal act to, at the time of initial contact with a crime victim, during followup investigation, or as soon thereafter as deemed appropriate by investigating officers or prosecuting attorneys, provide or make available to each victim of the criminal act without charge or cost a "Victim Protections and Resources" card and to provide other information, as specified. The bill would also require the Attorney General to design and make available in PDF or other imaging format to these agencies a "Victim Protections and Resources" card containing specified information. The bill would authorize the "Victim Protections and Resources" card to be designed as part of and included with the "Marsy Rights" card described above. By requiring these agencies to provide additional information to crime victims, this bill would impose a state-mandated local program.

(6)  Existing law allows a person who was erroneously convicted of a felony and imprisoned in the state prison or a county jail to present a claim to the board for the injury sustained by the person

through the erroneous conviction and imprisonment or incarceration. Existing law requires the board to provide a recommendation to the Legislature that an appropriation be made for the purpose of indemnifying the claimant for the erroneous conviction injury. Existing law requires that the amount of the appropriation recommended by the board be equivalent to $140 per day of incarceration served, as specified.

This bill would require that the compensation recommendation for a claimant be equivalent to $70 per day served on parole or supervised release, as specified. The bill would require that these amounts be updated annually to account for changes in the United States Bureau of Labor Statistics Consumer Price Index, West Region.

(7)  Existing law creates the Division of Juvenile Justice within the Department of Corrections and Rehabilitation to operate facilities to house specified juvenile offenders. Existing law requires the Division of Juvenile Justice to close on June 30, 2023, and provides for the transition of youth who are currently housed within a Division of Juvenile Justice facility to the care and custody of counties.

Existing law requires a person convicted of specified sex offenses, including a person who is discharged or paroled from the Department of Corrections and Rehabilitation after having been adjudicated a ward of the juvenile court because of the commission of a sex offense, to register with local law enforcement agencies while residing in the state or while attending school or working in the state. Existing law requires a person convicted of arson, or a person who is discharged or paroled from the Department of Corrections and Rehabilitation, Division of Juvenile Justice after being adjudicated a ward for having committed arson, to register with certain local officials in the area in which they reside.

This bill would define a discharged person for purposes of these sex offender and arson registration requirements to include specified persons who transition out of the division due to its statutorily required closure. The bill would require the court of jurisdiction to establish the point at which the ward is required to register and notify the Department of Justice of its decision.

(8) Existing law allows a defendant who successfully participated in the California Conservation Camp program as an

incarcerated individual hand crew member, or successfully participated as a member of a county incarcerated individual hand crew, except as specified, to petition the court to have the pleading dismissed, as described, thus releasing the person of any penalties and disabilities of conviction, except as otherwise provided.

This bill would also grant this relief to a defendant who has successfully participated at an institutional firehouse, as specified.

(9)  Existing law prescribes the distribution of funds collected from specified fines, forfeitures, and civil assessments imposed for crimes.

This bill would correct erroneous cross-references in existing law.

(10)  Existing law, within the Department of Corrections and Rehabilitation, creates the Division of Juvenile Justice, headed by a director, to operate facilities to house specified juvenile offenders. Existing law requires the division to close on June 30, 2023, and provides for the transition of youth who are currently housed within a Division of Juvenile Justice facility to the care and custody of counties. Existing law requires the State Department of State Hospitals, upon closure of the division, to continue to provide evaluation, care, and treatment of state hospital patients referred to the division.

This bill would correct an erroneous cross-reference in existing law.

(11)  This bill provides that certain of its provisions shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions.

(12)  This bill would incorporate additional changes to Sections 13956 and 13957 of the Government Code proposed by SB 299 and SB 877, respectively, and Sections 4900 and 4904 of the Penal Code proposed by SB 1468, to be operative only if this bill and the other specified bills are enacted and this bill is enacted last.

(13)  The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.This bill would provide that, if the Commission on State Mandates determines that the bill contains costs mandated

by the state, reimbursement for those costs shall be made pursuant to the statutory provisions noted above.

(14)  This bill would declare that it is to take effect immediately as a bill providing for appropriations related to the Budget Bill.

Appropriation: yes.

*The people of the State of California do enact as follows:*

SECTION 1.   Section 22949.80 of the Business and Professions Code is amended to read:

22949.80.   (a) (1) A firearm industry member shall not advertise, market, or arrange for placement of an advertising or marketing communication offering or promoting any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors.

(2)  In determining whether marketing or advertising of a firearm-related product is attractive to minors, as described in paragraph (1), a court shall consider the totality of the circumstances, including, but not limited to, whether the marketing or advertising:

(A)  Uses caricatures that reasonably appear to be minors or cartoon characters to promote firearm-related products.

(B)  Offers brand name merchandise for minors, including, but not limited to, hats, t-shirts, or other clothing, or toys, games, or stuffed animals, that promotes a firearm industry member or firearm-related product.

(C)  Offers firearm-related products in sizes, colors, or designs that are specifically designed to be used by, or appeal to, minors.

(D)  Is part of a marketing or advertising campaign designed with the intent to appeal to minors.

(E)  Uses images or depictions of minors in advertising and marketing materials to depict the use of firearm-related products.

(F)  Is placed in a publication created for the purpose of reaching an audience that is predominately composed of minors and not intended for a more general audience composed of adults.

(3)  This subdivision does not apply to a communication offering or promoting any firearm safety program, hunting safety or promotional program, firearm instructional course, sport shooting event or competition, or any similar program, course, or event, nor does it apply to a communication offering or promoting

**AB 160** — 8 —

membership in any organization, or promotion of lawful hunting activity, including, but not limited to, any fundraising event, youth hunting program, or outdoor camp.

(b) A firearm industry member publishing material directed to minors in this state or who has actual knowledge that a minor in this state is using or receiving its material, shall not knowingly use, disclose, compile, or allow a third party to use, disclose, or compile, the personal information of that minor with actual knowledge that the use, disclosure, or compilation is for the purpose of marketing or advertising to that minor any firearm-related product.

(c) As used in this chapter:

(1) "Ammunition" has the same meaning as provided in subdivision (b) of Section 16150 of the Penal Code.

(2) "Firearm" has the same meaning as provided in subdivisions (a) and (b) of Section 16520 of the Penal Code.

(3) "Firearm accessory" means an attachment or device designed or adapted to be inserted into, affixed onto, or used in conjunction with, a firearm which is designed, intended, or functions to alter or enhance the firing capabilities of a firearm, the lethality of the firearm, or a shooter's ability to hold, carry, or use a firearm.

(4) "Firearm industry member" means any of the following:

(A) A person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association engaged in the manufacture, distribution, importation, marketing, wholesale, or retail sale of firearm-related products.

(B) A person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association formed for the express purpose of promoting, encouraging, or advocating for the purchase, use, or ownership of firearm-related products that does one of the following:

(i) Advertises firearm-related products.

(ii) Advertises events where firearm-related products are sold or used.

(iii) Endorses specific firearm-related products.

(iv) Sponsors or otherwise promotes events at which firearm-related products are sold or used.

(5) "Firearm-related product" means a firearm, ammunition, reloaded ammunition, a firearm precursor part, a firearm

component, or a firearm accessory that meets any of the following conditions:

(A)  The item is sold, made, or distributed in California.

(B)  The item is intended to be sold or distributed in California.

(C)  It is reasonably foreseeable that the item would be sold or possessed in California.

(D)  Marketing or advertising for the item is directed to residents of California.

(6)  "Marketing or advertising" means, in exchange for monetary compensation, to make a communication to one or more individuals, or to arrange for the dissemination to the public of a communication, about a product, the primary purpose of which is to encourage recipients of the communication to engage in a commercial transaction.

(7)  "Minor" means a natural person under 18 years of age who resides in this state.

(d)  This section shall not be construed to require or authorize a firearm industry member to collect or retain age information about users or subscribers of products or services offered.

(e)  (1)  Any person who violates any provision of this chapter shall be liable for a civil penalty not to exceed twenty-five thousand dollars ($25,000) for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General or by any district attorney, county counsel, or city attorney in any court of competent jurisdiction.

(2)  The court shall impose a civil penalty under paragraph (1) for each violation of this chapter. In assessing the amount of the civil penalty, the court shall consider any one or more of the relevant circumstances presented by any of the parties to the case, including, but not limited to, the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth.

(3)  A person harmed by a violation of this section may commence a civil action to recover their actual damages.

(4)  The court shall also order injunctive relief, including a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for the conduct, as

the court deems necessary to prevent the harm described in this section.

(5)  Upon a motion, a court shall award reasonable attorney's fees and costs, including expert witness fees and other litigation expenses, to a plaintiff who is a prevailing party in an action brought pursuant to this section.

(6)  Each copy or republication of marketing or advertising prohibited by this section shall be deemed a separate violation.

(f)  The provisions of this section are severable. If any portion, subdivision, paragraph, clause, sentence, phrase, word, or application of this section is for any reason held to be invalid by any court of competent jurisdiction, that decision shall not affect the validity of the remaining portions of this chapter. The Legislature hereby declares that it would have adopted this section and each and every portion, subdivision, paragraph, clause, sentence, phrase, word, and application not declared invalid or unconstitutional without regard to whether any other portion of this section or application thereof would be subsequently declared invalid.

SEC. 2.  Section 13956 of the Government Code is amended to read:

13956.  Notwithstanding Section 13955, a person shall not be eligible for compensation under the following conditions:

(a)  An application may be denied, in whole or in part, if the board finds that denial is appropriate because of the nature of the victim's or other applicant's involvement in the events leading to the crime, or the involvement of the person whose injury or death gives rise to the application.

(1)  Factors that may be considered in determining whether the victim or derivative victim was involved in the events leading to the qualifying crime include, but are not limited to:

(A)  The victim or derivative victim initiated the qualifying crime, or provoked or aggravated the suspect into initiating the qualifying crime.

(B)  The qualifying crime was a reasonably foreseeable consequence of the conduct of the victim or derivative victim.

(C)  The victim or derivative victim was committing a crime that could be charged as a felony and reasonably lead to the victim being victimized. However, committing a crime shall not be considered involvement if the victim's injury or death occurred as

a direct result of a crime committed in violation of Section 261, 273.5, or former Section 262 of, or for a crime of unlawful sexual intercourse with a minor in violation of subdivision (d) of Section 261.5 of, the Penal Code.

(2)  If the victim is determined to have been involved in the events leading to the qualifying crime, factors that may be considered to mitigate or overcome involvement include, but are not limited to:

(A)  The victim's injuries were significantly more serious than reasonably could have been expected based on the victim's level of involvement.

(B)  A third party interfered in a manner not reasonably foreseeable by the victim or derivative victim.

(C)  The board shall consider the victim's age, physical condition, and psychological state, as well as any compelling health and safety concerns, in determining whether the application should be denied pursuant to this section. The application of a derivative victim of domestic violence under 18 years of age or derivative victim of trafficking under 18 years of age shall not be denied on the basis of the denial of the victim's application under this subdivision.

(b)  (1)  An application shall be denied if the board finds that the victim or, if compensation is sought by, or on behalf of, a derivative victim, either the victim or derivative victim failed to cooperate reasonably with a law enforcement agency in the apprehension and conviction of a criminal committing the crime. In determining whether cooperation has been reasonable, the board shall consider the victim's or derivative victim's age, physical condition, and psychological state, cultural or linguistic barriers, any compelling health and safety concerns, including, but not limited to, a reasonable fear of retaliation or harm that would jeopardize the well-being of the victim or the victim's family or the derivative victim or the derivative victim's family, and giving due consideration to the degree of cooperation of which the victim or derivative victim is capable in light of the presence of any of these factors. A victim of domestic violence shall not be determined to have failed to cooperate based on the victim's conduct with law enforcement at the scene of the crime. Lack of cooperation shall also not be found solely because a victim of sexual assault,

**AB 160** — 12 —

domestic violence, or human trafficking delayed reporting the qualifying crime.

(2) An application for a claim based on domestic violence shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on domestic violence relying upon evidence other than a police report to establish that a domestic violence crime has occurred. Factors evidencing that a domestic violence crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations of domestic violence, mental health records, or that the victim has obtained a permanent restraining order.

(3) An application for a claim based on a sexual assault shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow it to consider and approve applications for assistance based on a sexual assault relying upon evidence other than a police report to establish that a sexual assault crime has occurred. Factors evidencing that a sexual assault crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations of sexual assault, mental health records, or that the victim received a sexual assault examination.

(4) An application for a claim based on human trafficking as defined in Section 236.1 of the Penal Code shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on human trafficking relying upon evidence other than a police report to establish that a human trafficking crime has occurred. That evidence may include any reliable corroborating information approved by the board, including, but not limited to, the following:

(A) A Law Enforcement Agency Endorsement issued pursuant to Section 236.5 of the Penal Code.

(B) A human trafficking caseworker, as identified in Section 1038.2 of the Evidence Code, has attested by affidavit that the individual was a victim of human trafficking.

(5) (A) An application for a claim by a military personnel victim based on a sexual assault by another military personnel shall not

94

be denied solely because it was not reported to a superior officer or law enforcement at the time of the crime.

(B) Factors that the board shall consider for purposes of determining if a claim qualifies for compensation include, but are not limited to, the evidence of the following:

(i) Restricted or unrestricted reports to a military victim advocate, sexual assault response coordinator, chaplain, attorney, or other military personnel.

(ii) Medical or physical evidence consistent with sexual assault.

(iii) A written or oral report from military law enforcement or a civilian law enforcement agency concluding that a sexual assault crime was committed against the victim.

(iv) A letter or other written statement from a sexual assault counselor, as defined in Section 1035.2 of the Evidence Code, licensed therapist, or mental health counselor, stating that the victim is seeking services related to the allegation of sexual assault.

(v) A credible witness to whom the victim disclosed the details that a sexual assault crime occurred.

(vi) A restraining order from a military or civilian court against the perpetrator of the sexual assault.

(vii) Other behavior by the victim consistent with sexual assault.

(C) For purposes of this subdivision, the sexual assault at issue shall have occurred during military service, including deployment.

(D) For purposes of this subdivision, the sexual assault may have been committed off base.

(E) For purposes of this subdivision, a "perpetrator" means an individual who is any of the following at the time of the sexual assault:

(i) An active duty military personnel from the United States Army, Navy, Marine Corps, Air Force, or Coast Guard.

(ii) A civilian employee of any military branch specified in clause (i), military base, or military deployment.

(iii) A contractor or agent of a private military or private security company.

(iv) A member of the California National Guard.

(F) For purposes of this subdivision, "sexual assault" means an offense included in Section 261, 264.1, 286, 287, formerly 288a, or Section 289 of the Penal Code, as of January 1, 2015.

(c) (1) Notwithstanding Section 13955, a person who is convicted of a violent felony listed in subdivision (c) of Section

**AB 160** — 14 —

667.5 of the Penal Code shall not be granted compensation until that person has been discharged from probation or has been released from a correctional institution and has been discharged from parole, or has been discharged from postrelease community supervision or mandatory supervision, if any, for that violent crime. Compensation shall not be granted to an applicant pursuant to this chapter during any period of time the applicant is held in a correctional institution or while an applicant is required to register as a sex offender pursuant to Section 290 of the Penal Code.

(2)  A person who has been convicted of a violent felony listed in subdivision (c) of Section 667.5 of the Penal Code may apply for compensation pursuant to this chapter at any time, but the award of that compensation may not be considered until the applicant meets the requirements for compensation set forth in paragraph (1).

(d)  (1)  This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2)  The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 2.5.  Section 13956 of the Government Code is amended to read:

13956.  Notwithstanding Section 13955, a person shall not be eligible for compensation under the following conditions:

(a)  Except as otherwise provided in this subdivision and in subdivision (c), an application may be denied, in whole or in part, if the board finds that denial is appropriate because of the nature of the victim's or other applicant's involvement in the events leading to the crime, or the involvement of the person whose injury or death gives rise to the application.

(1)  Factors that may be considered in determining whether the victim or derivative victim was involved in the events leading to the qualifying crime include, but are not limited to:

(A)  The victim or derivative victim initiated the qualifying crime, or provoked or aggravated the suspect into initiating the qualifying crime.

(B) The qualifying crime was a reasonably foreseeable consequence of the conduct of the victim or derivative victim.

(C) The victim or derivative victim was committing a crime that could be charged as a felony and reasonably lead to the victim being victimized. However, committing a crime shall not be considered involvement if the victim's injury or death occurred as a direct result of a crime committed in violation of Section 261, 262, or 273.5 of, or for a crime of unlawful sexual intercourse with a minor in violation of subdivision (d) of Section 261.5 of, the Penal Code.

(2) If the victim is determined to have been involved in the events leading to the qualifying crime, factors that may be considered to mitigate or overcome involvement include, but are not limited to:

(A) The victim's injuries were significantly more serious than reasonably could have been expected based on the victim's level of involvement.

(B) A third party interfered in a manner not reasonably foreseeable by the victim or derivative victim.

(C) The board shall consider the victim's age, physical condition, and psychological state, as well as any compelling health and safety concerns, in determining whether the application should be denied pursuant to this section. The application of a derivative victim of domestic violence under 18 years of age or derivative victim of trafficking under 18 years of age shall not be denied on the basis of the denial of the victim's application under this subdivision.

(3) Notwithstanding paragraphs (1) and (2), and except as provided in paragraph (2) of subdivision (c), for a claim based on a victim's death as a result of a crime, the board shall not deny the application, in whole or in part, based on the deceased victim's involvement in the crime that gave rise to the claim.

(b) (1) An application shall be denied if the board finds that the victim or, if compensation is sought by, or on behalf of, a derivative victim, either the victim or derivative victim failed to cooperate reasonably with a law enforcement agency in the apprehension and conviction of a criminal committing the crime. In determining whether cooperation has been reasonable, the board shall consider the victim's or derivative victim's age, physical condition, and psychological state, cultural or linguistic barriers,

any compelling health and safety concerns, including, but not limited to, a reasonable fear of retaliation or harm that would jeopardize the well-being of the victim or the victim's family or the derivative victim or the derivative victim's family, and giving due consideration to the degree of cooperation of which the victim or derivative victim is capable in light of the presence of any of these factors. A victim of domestic violence shall not be determined to have failed to cooperate based on the victim's conduct with law enforcement at the scene of the crime. Lack of cooperation shall also not be found solely because a victim of sexual assault, domestic violence, or human trafficking delayed reporting the qualifying crime.

(2) Notwithstanding paragraph (1), for a claim based on a victim's serious bodily injury or death that resulted from a law enforcement officer's use of force, the board shall not deny the application based on the victim's failure to cooperate.

(3) Notwithstanding paragraph (1), for a claim based on a victim's death as a result of a crime, the board shall not deny the application based on a victim's or derivative victim's failure to cooperate.

(4) An application for a claim based on domestic violence shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on domestic violence relying upon evidence other than a police report to establish that a domestic violence crime has occurred. Factors evidencing that a domestic violence crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations of domestic violence, mental health records, or that the victim has obtained a permanent restraining order.

(5) An application for a claim based on a sexual assault shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow it to consider and approve applications for assistance based on a sexual assault relying upon evidence other than a police report to establish that a sexual assault crime has occurred. Factors evidencing that a sexual assault crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations

of sexual assault, mental health records, or that the victim received a sexual assault examination.

(6)  An application for a claim based on human trafficking as defined in Section 236.1 of the Penal Code shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on human trafficking relying upon evidence other than a police report to establish that a human trafficking crime has occurred. That evidence may include any reliable corroborating information approved by the board, including, but not limited to, the following:

(A)  A law enforcement agency endorsement issued pursuant to Section 236.5 of the Penal Code.

(B)  A human trafficking caseworker, as identified in Section 1038.2 of the Evidence Code, has attested by affidavit that the individual was a victim of human trafficking.

(7)  (A)  An application for a claim by a military personnel victim based on a sexual assault by another military personnel shall not be denied solely because it was not reported to a superior officer or law enforcement at the time of the crime.

(B)  Factors that the board shall consider for purposes of determining if a claim qualifies for compensation include, but are not limited to, the evidence of the following:

(i)  Restricted or unrestricted reports to a military victim advocate, sexual assault response coordinator, chaplain, attorney, or other military personnel.

(ii)  Medical or physical evidence consistent with sexual assault.

(iii)  A written or oral report from military law enforcement or a civilian law enforcement agency concluding that a sexual assault crime was committed against the victim.

(iv)  A letter or other written statement from a sexual assault counselor, as defined in Section 1035.2 of the Evidence Code, licensed therapist, or mental health counselor, stating that the victim is seeking services related to the allegation of sexual assault.

(v)  A credible witness to whom the victim disclosed the details that a sexual assault crime occurred.

(vi)  A restraining order from a military or civilian court against the perpetrator of the sexual assault.

(vii)  Other behavior by the victim consistent with sexual assault.

**AB 160**                    — 18 —

(C)  For purposes of this subdivision, the sexual assault at issue shall have occurred during military service, including deployment.

(D)  For purposes of this subdivision, the sexual assault may have been committed off base.

(E)  For purposes of this subdivision, a "perpetrator" means an individual who is any of the following at the time of the sexual assault:

(i)  An active duty military personnel from the United States Army, Navy, Marine Corps, Air Force, or Coast Guard.

(ii)  A civilian employee of any military branch specified in clause (i), military base, or military deployment.

(iii)  A contractor or agent of a private military or private security company.

(iv)  A member of the California National Guard.

(F)  For purposes of this subdivision, "sexual assault" means an offense included in Section 261, 264.1, 286, 287, formerly 288a, or Section 289 of the Penal Code, as of January 1, 2015.

(c)  Notwithstanding any provision of statute, administrative rule, local ordinance, or other law, for applications based on a victim's serious bodily injury or death that resulted from a law enforcement officer's use of force, if the board receives a form of documentation that describes or demonstrates that a person suffered serious bodily injury or death as a result of a law enforcement officer's use of force, the board shall accept this as sufficient evidence to establish that such use of force constitutes a crime and that the person who suffered serious bodily injury or death as a result of a law enforcement officer's use of force is a victim, solely for the purposes of eligibility for compensation under this chapter. Such a form of documentation may include, but is not limited to, medical records documenting the victim's injury, mental health records, a written statement from a victim services provider, a death certificate, or evidence that the qualifying crime was reported under Section 12525.2 to the Department of Justice as an incident in which the use of force by a law enforcement officer against a civilian resulted in serious bodily injury or death.

(1)  For a claim based on a victim's serious bodily injury that resulted from a law enforcement officer's use of force, the board shall not deny the application based on the victim's or other applicant's involvement in the qualifying crime that gave rise to the claim unless the victim is convicted of a violent crime as

defined in Section 667.5 of the Penal Code, or of a crime that resulted in serious bodily injury, as defined in Section 243 of the Penal Code, to or death of another person, and the crime occurred at the time and location of the incident on which the claim is based. The board shall not consider a claim for compensation while charges are pending alleging that a victim subject to this paragraph committed such a crime. A victim or applicant subject to this paragraph may apply for compensation pursuant to this chapter at any time for any expense, but the award of that compensation shall not be granted until the charges are no longer pending against the victim. If the victim is deceased, charges shall not be considered pending against the victim for the purposes of this paragraph.

(2) For a claim based on a victim's death that resulted from a law enforcement officer's use of force, the board shall not deny the application based on the victim's or other applicant's involvement in the qualifying crime that gave rise to the claim unless there is clear and convincing evidence that the deceased victim committed a crime during which the deceased victim personally inflicted serious bodily injury, as defined in Section 243 of the Penal Code, on another person or personally killed another person at the time and location of the incident on which the claim is based.

(d) (1) Notwithstanding Section 13955, a person who is convicted of a violent felony listed in subdivision (c) of Section 667.5 of the Penal Code shall not be granted compensation until that person has been discharged from probation or has been released from a correctional institution and has been discharged from parole, or has been discharged from postrelease community supervision or mandatory supervision, if any, for that violent crime. Compensation shall not be granted to an applicant pursuant to this chapter during any period of time the applicant is held in a correctional institution or while an applicant is required to register as a sex offender pursuant to Section 290 of the Penal Code.

(2) A person who has been convicted of a violent felony listed in subdivision (c) of Section 667.5 of the Penal Code may apply for compensation pursuant to this chapter at any time, but the award of that compensation may not be considered until the applicant meets the requirements for compensation set forth in paragraph (1).

(e)  (1)  This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2)  The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 3.  Section 13956 is added to the Government Code, to read:

13956.  Notwithstanding Section 13955, a person shall not be eligible for compensation under the following conditions:

(a)  An application may be denied, in whole or in part, if the board finds that denial is appropriate because of the nature of the victim's or other applicant's involvement in the events leading to the crime, or the involvement of the person whose injury or death gives rise to the application.

(1)  Factors that may be considered in determining whether the victim or derivative victim was involved in the events leading to the qualifying crime include, but are not limited to:

(A)  The victim or derivative victim initiated the qualifying crime, or provoked or aggravated the suspect into initiating the qualifying crime.

(B)  The qualifying crime was a reasonably foreseeable consequence of the conduct of the victim or derivative victim.

(C)  The victim or derivative victim was committing a crime that could be charged as a felony and reasonably lead to the victim being victimized. However, committing a crime shall not be considered involvement if the victim's injury or death occurred as a direct result of a crime committed in violation of Section 261, 273.5, or former Section 262 of, or for a crime of unlawful sexual intercourse with a minor in violation of subdivision (d) of Section 261.5 of, the Penal Code.

(2)  If the victim is determined to have been involved in the events leading to the qualifying crime, factors that may be considered to mitigate or overcome involvement include, but are not limited to:

(A)  The victim's injuries were significantly more serious than reasonably could have been expected based on the victim's level of involvement.

(B)  A third party interfered in a manner not reasonably foreseeable by the victim or derivative victim.

(C)  The board shall consider the victim's age, physical condition, and psychological state, as well as any compelling health and safety concerns, in determining whether the application should be denied pursuant to this section. The application of a derivative victim of domestic violence under 18 years of age or derivative victim of trafficking under 18 years of age shall not be denied on the basis of the denial of the victim's application under this subdivision.

(b)  (1)  An application shall be denied if the board finds that the victim or, if compensation is sought by, or on behalf of, a derivative victim, either the victim or derivative victim failed to cooperate reasonably with a law enforcement agency in the apprehension and conviction of a criminal committing the crime. In determining whether cooperation has been reasonable, the board shall consider the victim's or derivative victim's age, physical condition, and psychological state, cultural or linguistic barriers, any compelling health and safety concerns, including, but not limited to, a reasonable fear of retaliation or harm that would jeopardize the well-being of the victim or the victim's family or the derivative victim or the derivative victim's family, and giving due consideration to the degree of cooperation of which the victim or derivative victim is capable in light of the presence of any of these factors. A victim shall not be determined to have failed to cooperate based on the victim's conduct with law enforcement at the scene of the crime. Lack of cooperation shall also not be found solely because a victim delayed reporting the qualifying crime.

(2)  An application for a claim based on domestic violence shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on domestic violence relying upon evidence other than a police report to establish that a domestic violence crime has occurred. Factors evidencing that a domestic violence crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations of domestic violence, mental

**AB 160** — 22 —

health records, or that the victim has obtained a permanent restraining order.

(3)  An application for a claim based on a sexual assault shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow it to consider and approve applications for assistance based on a sexual assault relying upon evidence other than a police report to establish that a sexual assault crime has occurred. Factors evidencing that a sexual assault crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations of sexual assault, mental health records, or that the victim received a sexual assault examination.

(4)  An application for a claim based on human trafficking as defined in Section 236.1 of the Penal Code shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on human trafficking relying upon evidence other than a police report to establish that a human trafficking crime has occurred. That evidence may include any reliable corroborating information approved by the board, including, but not limited to, the following:

(A)  A Law Enforcement Agency Endorsement issued pursuant to Section 236.5 of the Penal Code.

(B)  A human trafficking caseworker, as identified in Section 1038.2 of the Evidence Code, has attested by affidavit that the individual was a victim of human trafficking.

(5)  (A) An application for a claim by a military personnel victim based on a sexual assault by another military personnel shall not be denied solely because it was not reported to a superior officer or law enforcement at the time of the crime.

(B)  Factors that the board shall consider for purposes of determining if a claim qualifies for compensation include, but are not limited to, the evidence of the following:

(i)  Restricted or unrestricted reports to a military victim advocate, sexual assault response coordinator, chaplain, attorney, or other military personnel.

(ii)  Medical or physical evidence consistent with sexual assault.

(iii)  A written or oral report from military law enforcement or a civilian law enforcement agency concluding that a sexual assault crime was committed against the victim.

(iv) A letter or other written statement from a sexual assault counselor, as defined in Section 1035.2 of the Evidence Code, licensed therapist, or mental health counselor, stating that the victim is seeking services related to the allegation of sexual assault.

(v) A credible witness to whom the victim disclosed the details that a sexual assault crime occurred.

(vi) A restraining order from a military or civilian court against the perpetrator of the sexual assault.

(vii) Other behavior by the victim consistent with sexual assault.

(C) For purposes of this subdivision, the sexual assault at issue shall have occurred during military service, including deployment.

(D) For purposes of this subdivision, the sexual assault may have been committed off base.

(E) For purposes of this subdivision, a "perpetrator" means an individual who is any of the following at the time of the sexual assault:

(i) An active duty military personnel from the United States Army, Navy, Marine Corps, Air Force, or Coast Guard.

(ii) A civilian employee of any military branch specified in clause (i), military base, or military deployment.

(iii) A contractor or agent of a private military or private security company.

(iv) A member of the California National Guard.

(F) For purposes of this subdivision, "sexual assault" means an offense included in Section 261, 264.1, 286, 287, formerly 288a, or Section 289 of the Penal Code, as of January 1, 2015.

(c) (1) Notwithstanding Section 13955, a person who is convicted of a violent felony listed in subdivision (c) of Section 667.5 of the Penal Code shall not be granted compensation until that person has been released from a correctional institution. Compensation shall not be granted to an applicant pursuant to this chapter during any period of time the applicant is held in a correctional institution or while an applicant is required to register as a sex offender pursuant to Section 290 of the Penal Code.

(2) A person who has been convicted of a violent felony listed in subdivision (c) of Section 667.5 of the Penal Code may apply for compensation pursuant to this chapter at any time, but the award of that compensation may not be considered until the applicant meets the requirements for compensation set forth in paragraph (1).

**AB 160**                        — 24 —

(d)  This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

 SEC. 3.5.  Section 13956 is added to the Government Code, to read:

 13956.  Notwithstanding Section 13955, a person shall not be eligible for compensation under the following conditions:

(a)  Except as otherwise provided in this subdivision and in subdivision (c), an application may be denied, in whole or in part, if the board finds that denial is appropriate because of the nature of the victim's or other applicant's involvement in the events leading to the crime, or the involvement of the person whose injury or death gives rise to the application.

(1)  Factors that may be considered in determining whether the victim or derivative victim was involved in the events leading to the qualifying crime include, but are not limited to:

(A)  The victim or derivative victim initiated the qualifying crime, or provoked or aggravated the suspect into initiating the qualifying crime.

(B)  The qualifying crime was a reasonably foreseeable consequence of the conduct of the victim or derivative victim.

(C)  The victim or derivative victim was committing a crime that could be charged as a felony and reasonably lead to the victim being victimized. However, committing a crime shall not be considered involvement if the victim's injury or death occurred as a direct result of a crime committed in violation of Section 261, 273.5, or former Section 262 of, or for a crime of unlawful sexual intercourse with a minor in violation of subdivision (d) of Section 261.5 of, the Penal Code.

(2)  If the victim is determined to have been involved in the events leading to the qualifying crime, factors that may be considered to mitigate or overcome involvement include, but are not limited to:

(A)  The victim's injuries were significantly more serious than reasonably could have been expected based on the victim's level of involvement.

(B)  A third party interfered in a manner not reasonably foreseeable by the victim or derivative victim.

**AB 160**

(C) The board shall consider the victim's age, physical condition, and psychological state, as well as any compelling health and safety concerns, in determining whether the application should be denied pursuant to this section. The application of a derivative victim of domestic violence under 18 years of age or derivative victim of trafficking under 18 years of age shall not be denied on the basis of the denial of the victim's application under this subdivision.

(3) Notwithstanding paragraphs (1) and (2), and except as provided in paragraph (2) of subdivision (c), for a claim based on a victim's death as a result of a crime, the board shall not deny the application, in whole or in part, based on the deceased victim's involvement in the crime that gave rise to the claim.

(b) (1) An application shall be denied if the board finds that the victim or, if compensation is sought by, or on behalf of, a derivative victim, either the victim or derivative victim failed to cooperate reasonably with a law enforcement agency in the apprehension and conviction of a criminal committing the crime. In determining whether cooperation has been reasonable, the board shall consider the victim's or derivative victim's age, physical condition, and psychological state, cultural or linguistic barriers, any compelling health and safety concerns, including, but not limited to, a reasonable fear of retaliation or harm that would jeopardize the well-being of the victim or the victim's family or the derivative victim or the derivative victim's family, and giving due consideration to the degree of cooperation of which the victim or derivative victim is capable in light of the presence of any of these factors. A victim shall not be determined to have failed to cooperate based on the victim's conduct with law enforcement at the scene of the crime. Lack of cooperation shall also not be found solely because a victim delayed reporting the qualifying crime.

(2) Notwithstanding paragraph (1), for a claim based on a victim's serious bodily injury or death that resulted from a law enforcement officer's use of force, the board shall not deny the application based on the victim's failure to cooperate.

(3) Notwithstanding paragraph (1), for a claim based on a victim's death as a result of a crime, the board shall not deny the application based on a victim's or derivative victim's failure to cooperate.

**AB 160** — 26 —

(4)  An application for a claim based on domestic violence shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on domestic violence relying upon evidence other than a police report to establish that a domestic violence crime has occurred. Factors evidencing that a domestic violence crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations of domestic violence, mental health records, or that the victim has obtained a permanent restraining order.

(5)  An application for a claim based on a sexual assault shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow it to consider and approve applications for assistance based on a sexual assault relying upon evidence other than a police report to establish that a sexual assault crime has occurred. Factors evidencing that a sexual assault crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations of sexual assault, mental health records, or that the victim received a sexual assault examination.

(6)  An application for a claim based on human trafficking as defined in Section 236.1 of the Penal Code shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on human trafficking relying upon evidence other than a police report to establish that a human trafficking crime has occurred. That evidence may include any reliable corroborating information approved by the board, including, but not limited to, the following:

(A)  A law enforcement agency endorsement issued pursuant to Section 236.5 of the Penal Code.

(B)  A human trafficking caseworker, as identified in Section 1038.2 of the Evidence Code, has attested by affidavit that the individual was a victim of human trafficking.

(7)  (A) An application for a claim by a military personnel victim based on a sexual assault by another military personnel shall not be denied solely because it was not reported to a superior officer or law enforcement at the time of the crime.

(B) Factors that the board shall consider for purposes of determining if a claim qualifies for compensation include, but are not limited to, the evidence of the following:

(i) Restricted or unrestricted reports to a military victim advocate, sexual assault response coordinator, chaplain, attorney, or other military personnel.

(ii) Medical or physical evidence consistent with sexual assault.

(iii) A written or oral report from military law enforcement or a civilian law enforcement agency concluding that a sexual assault crime was committed against the victim.

(iv) A letter or other written statement from a sexual assault counselor, as defined in Section 1035.2 of the Evidence Code, licensed therapist, or mental health counselor, stating that the victim is seeking services related to the allegation of sexual assault.

(v) A credible witness to whom the victim disclosed the details that a sexual assault crime occurred.

(vi) A restraining order from a military or civilian court against the perpetrator of the sexual assault.

(vii) Other behavior by the victim consistent with sexual assault.

(C) For purposes of this subdivision, the sexual assault at issue shall have occurred during military service, including deployment.

(D) For purposes of this subdivision, the sexual assault may have been committed off base.

(E) For purposes of this subdivision, a "perpetrator" means an individual who is any of the following at the time of the sexual assault:

(i) An active duty military personnel from the United States Army, Navy, Marine Corps, Air Force, or Coast Guard.

(ii) A civilian employee of any military branch specified in clause (i), military base, or military deployment.

(iii) A contractor or agent of a private military or private security company.

(iv) A member of the California National Guard.

(F) For purposes of this subdivision, "sexual assault" means an offense included in Section 261, 264.1, 286, 287, formerly 288a, or Section 289 of the Penal Code, as of January 1, 2015.

(c) Notwithstanding any provision of statute, administrative rule, local ordinance, or other law, for applications based on a victim's serious bodily injury or death that resulted from a law enforcement officer's use of force, if the board receives a form of

**AB 160** — 28 —

documentation that describes or demonstrates that a person suffered serious bodily injury or death as a result of a law enforcement officer's use of force, the board shall accept this as sufficient evidence to establish that such use of force constitutes a crime and that the person who suffered serious bodily injury or death as a result of a law enforcement officer's use of force is a victim, solely for the purposes of eligibility for compensation under this chapter. Such a form of documentation may include, but is not limited to, medical records documenting the victim's injury, mental health records, a written statement from a victim services provider, a death certificate, or evidence that the qualifying crime was reported under Section 12525.2 to the Department of Justice as an incident in which the use of force by a law enforcement officer against a civilian resulted in serious bodily injury or death.

(1) For a claim based on a victim's serious bodily injury that resulted from a law enforcement officer's use of force, the board shall not deny the application based on the victim's or other applicant's involvement in the qualifying crime that gave rise to the claim unless the victim is convicted of a violent crime as defined in Section 667.5 of the Penal Code, or of a crime that resulted in serious bodily injury, as defined in Section 243 of the Penal Code, to or death of another person, and the crime occurred at the time and location of the incident on which the claim is based. The board shall not consider a claim for compensation while charges are pending alleging that a victim subject to this paragraph committed such a crime. A victim or applicant subject to this paragraph may apply for compensation pursuant to this chapter at any time for any expense, but the award of that compensation shall not be granted until the charges are no longer pending against the victim. If the victim is deceased, charges shall not be considered pending against the victim for the purposes of this paragraph.

(2) For a claim based on a victim's death that resulted from a law enforcement officer's use of force, the board shall not deny the application based on the victim's or other applicant's involvement in the qualifying crime that gave rise to the claim unless there is clear and convincing evidence that the deceased victim committed a crime during which the deceased victim personally inflicted serious bodily injury, as defined in Section 243 of the Penal Code, on another person or personally killed

another person at the time and location of the incident on which the claim is based.

(d) (1) Notwithstanding Section 13955, a person who is convicted of a violent felony listed in subdivision (c) of Section 667.5 of the Penal Code shall not be granted compensation until that person has been released from a correctional institution. Compensation shall not be granted to an applicant pursuant to this chapter during any period of time the applicant is held in a correctional institution or while an applicant is required to register as a sex offender pursuant to Section 290 of the Penal Code.

(2) A person who has been convicted of a violent felony listed in subdivision (c) of Section 667.5 of the Penal Code may apply for compensation pursuant to this chapter at any time, but the award of that compensation may not be considered until the applicant meets the requirements for compensation set forth in paragraph (1).

(e) This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 4.   Section 13957 of the Government Code is amended to read:

13957.   (a) The board may grant for pecuniary loss, when the board determines it will best aid the person seeking compensation, as follows:

(1) Subject to the limitations set forth in Section 13957.2, reimburse the amount of medical or medical-related expenses incurred by the victim for services that were provided by a licensed medical provider, including, but not limited to, eyeglasses, hearing aids, dentures, or any prosthetic device taken, lost, or destroyed during the commission of the crime, or the use of which became necessary as a direct result of the crime.

(2) Subject to the limitations set forth in Section 13957.2, reimburse the amount of outpatient psychiatric, psychological, or other mental health counseling-related expenses incurred by the victim or derivative victim, including peer counseling services provided by a rape crisis center as defined by Section 13837 of the Penal Code, and including family psychiatric, psychological, or mental health counseling for the successful treatment of the

victim provided to family members of the victim in the presence of the victim, whether or not the family member relationship existed at the time of the crime, that became necessary as a direct result of the crime, subject to the following conditions:

(A)  The following persons may be reimbursed for the expense of their outpatient mental health counseling in an amount not to exceed ten thousand dollars ($10,000):

(i)  A victim.

(ii)  A derivative victim who is the surviving parent, grandparent, sibling, child, grandchild, spouse, or fiance of a victim of a crime that directly resulted in the death of the victim.

(iii)  A derivative victim, as described in paragraphs (1) to (4), inclusive, of subdivision (c) of Section 13955, who is the primary caretaker of a minor victim whose claim is not denied or reduced pursuant to Section 13956 in a total amount not to exceed ten thousand dollars ($10,000) for not more than two derivative victims.

(B)  The following persons may be reimbursed for the expense of their outpatient mental health counseling in an amount not to exceed five thousand dollars ($5,000):

(i)  A derivative victim not eligible for reimbursement pursuant to subparagraph (A), provided that mental health counseling of a derivative victim described in paragraph (5) of subdivision (c) of Section 13955, shall be reimbursed only if that counseling is necessary for the treatment of the victim.

(ii)  A minor who suffers emotional injury as a direct result of witnessing a violent crime and who is not eligible for reimbursement of the costs of outpatient mental health counseling under any other provision of this chapter. To be eligible for reimbursement under this clause, the minor must have been in close proximity to the victim when the minor witnessed the crime.

(C)  The board may reimburse a victim or derivative victim for outpatient mental health counseling in excess of that authorized by subparagraph (A) or (B) or for inpatient psychiatric, psychological, or other mental health counseling if the claim is based on dire or exceptional circumstances that require more extensive treatment, as approved by the board.

(D) Expenses for psychiatric, psychological, or other mental health counseling-related services may be reimbursed only if the services were provided by either of the following individuals:

(i) A person who would have been authorized to provide those services pursuant to former Article 1 (commencing with Section 13959) as it read on January 1, 2002.

(ii) A person who is licensed in California to provide those services, or who is properly supervised by a person who is licensed in California to provide those services, subject to the board's approval and subject to the limitations and restrictions the board may impose.

(3) Subject to the limitations set forth in Section 13957.5, authorize compensation equal to the loss of income or loss of support, or both, that a victim or derivative victim incurs as a direct result of the victim's or derivative victim's injury or the victim's death. If the qualifying crime is a violation of Section 236.1 of the Penal Code, the board may authorize compensation equal to loss of income or support that a victim incurs as a direct result of the victim's deprivation of liberty during the crime, not to exceed the amount set forth in Section 13957.5. If the victim or derivative victim requests that the board give priority to reimbursement of loss of income or support, the board may not pay medical expenses, or mental health counseling expenses, except upon the request of the victim or derivative victim or after determining that payment of these expenses will not decrease the funds available for payment of loss of income or support.

(4) Authorize a cash payment to or on behalf of the victim for job retraining or similar employment-oriented services.

(5) Reimburse the expense of installing or increasing residential security, not to exceed one thousand dollars ($1,000). Installing or increasing residential security may include, but need not be limited to, both of the following:

(A) Home security device or system.

(B) Replacing or increasing the number of locks.

(6) Reimburse the expense of renovating or retrofitting a victim's residence, or the expense of modifying or purchasing a vehicle, to make the residence or the vehicle accessible or operational by a victim upon verification that the expense is medically necessary for a victim who is permanently disabled as a direct result of the crime, whether the disability is partial or total.

(7) (A) Authorize a cash payment or reimbursement not to exceed three thousand four hundred and eighteen dollars ($3,418) to a victim for expenses incurred in relocating, if the expenses are

determined by law enforcement to be necessary for the personal safety of the victim or by a mental health treatment provider to be necessary for the emotional well-being of the victim. For purposes of this paragraph, "expenses incurred in relocating" may include the costs of temporary housing for any pets belonging to the victim upon immediate relocation.

(B)  The cash payment or reimbursement made under this paragraph shall only be awarded to one claimant per crime giving rise to the relocation. The board may authorize more than one relocation per crime if necessary for the personal safety or emotional well-being of the claimant. However, the total cash payment or reimbursement for all relocations due to the same crime shall not exceed three thousand four hundred and eighteen dollars ($3,418). For purposes of this paragraph, a claimant is the crime victim, or, if the victim is deceased, a person who resided with the deceased at the time of the crime.

(C)  The board may, under compelling circumstances, award a second cash payment or reimbursement to a victim for another crime if both of the following conditions are met:

(i)  The crime occurs more than three years from the date of the crime giving rise to the initial relocation cash payment or reimbursement.

(ii)  The crime does not involve the same offender.

(D)  When a relocation payment or reimbursement is provided to a victim of sexual assault or domestic violence and the identity of the offender is known to the victim, the victim shall agree not to inform the offender of the location of the victim's new residence and not to allow the offender on the premises at any time, or shall agree to seek a restraining order against the offender. A victim may be required to repay the relocation payment or reimbursement to the board if the victim violates the terms set forth in this paragraph.

(E)  Notwithstanding subparagraphs (A) and (B), the board may increase the cash payment or reimbursement for expenses incurred in relocating to an amount greater than three thousand four hundred and eighteen dollars ($3,418) if the board finds this amount is appropriate due to the unusual, dire, or exceptional circumstances of a particular claim.

(F)  If a security deposit, pet deposit, or both is required for relocation, the board shall be named as the recipient and receive the funds upon expiration of the victim's rental agreement.

(8)  When a victim dies as a result of a crime, the board may reimburse any individual who voluntarily, and without anticipation of personal gain, pays or assumes the obligation to pay any of the following expenses:

(A)  The medical expenses incurred as a direct result of the crime in an amount not to exceed the rates or limitations established by the board.

(B)  The funeral and burial expenses incurred as a direct result of the crime, not to exceed twelve thousand eight hundred and eighteen dollars ($12,818). The board shall not create or comply with a regulation or policy that mandates a lower maximum potential amount of an award pursuant to this subparagraph for less than twelve thousand eight hundred and eighteen dollars ($12,818).

(9)  When the crime occurs in a residence or inside a vehicle, the board may reimburse any individual who voluntarily, and without anticipation of personal gain, pays or assumes the obligation to pay the reasonable costs to clean the scene of the crime in an amount not to exceed one thousand seven hundred and nine dollars ($1,709). Services reimbursed pursuant to this subdivision shall be performed by persons registered with the State Department of Public Health as trauma scene waste practitioners in accordance with Chapter 9.5 (commencing with Section 118321) of Part 14 of Division 104 of the Health and Safety Code.

(10)  When the crime is a violation of Section 600.2 or 600.5 of the Penal Code, the board may reimburse the expense of veterinary services, replacement costs, or other reasonable expenses, as ordered by the court pursuant to Section 600.2 or 600.5 of the Penal Code, in an amount not to exceed ten thousand dollars ($10,000).

(11)  An award of compensation pursuant to paragraph (5) of subdivision (f) of Section 13955 shall be limited to compensation to provide mental health counseling and shall not limit the eligibility of a victim for an award that the victim may be otherwise entitled to receive under this part. A derivative victim shall not be eligible for compensation under this provision.

**AB 160** — 34 —

(b)  The total award to or on behalf of each victim or derivative victim may not exceed thirty-five thousand dollars ($35,000), except that this award may be increased to an amount not exceeding seventy thousand dollars ($70,000) if federal funds for that increase are available.

(c)  (1)  This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2)  The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 4.5.   Section 13957 of the Government Code is amended to read:

13957.   (a)  The board may grant for pecuniary loss, when the board determines it will best aid the person seeking compensation, as follows:

(1)  Subject to the limitations set forth in Section 13957.2, reimburse the amount of medical or medical-related expenses incurred by the victim for services that were provided by a licensed medical provider, including, but not limited to, eyeglasses, hearing aids, dentures, or any prosthetic device taken, lost, or destroyed during the commission of the crime, or the use of which became necessary as a direct result of the crime.

(2)  Subject to the limitations set forth in Section 13957.2, reimburse the amount of outpatient psychiatric, psychological, or other mental health counseling-related expenses incurred by the victim or derivative victim, including peer counseling services provided by a rape crisis center as defined by Section 13837 of the Penal Code, and including family psychiatric, psychological, or mental health counseling for the successful treatment of the victim provided to family members of the victim in the presence of the victim, whether or not the family member relationship existed at the time of the crime, that became necessary as a direct result of the crime, subject to the following conditions:

(A)  The following persons may be reimbursed for the expense of their outpatient mental health counseling in an amount not to exceed ten thousand dollars ($10,000):

— 35 —                          **AB 160**

(i)  A victim.

(ii)  A derivative victim who is the surviving parent, grandparent, sibling, child, grandchild, spouse, or fiance of a victim of a crime that directly resulted in the death of the victim.

(iii)  A derivative victim, as described in paragraphs (1) to (4), inclusive, of subdivision (c) of Section 13955, who is the primary caretaker of a minor victim whose claim is not denied or reduced pursuant to Section 13956 in a total amount not to exceed ten thousand dollars ($10,000) for not more than two derivative victims.

(B)  The following persons may be reimbursed for the expense of their outpatient mental health counseling in an amount not to exceed five thousand dollars ($5,000):

(i)  A derivative victim not eligible for reimbursement pursuant to subparagraph (A), provided that mental health counseling of a derivative victim described in paragraph (5) of subdivision (c) of Section 13955, shall be reimbursed only if that counseling is necessary for the treatment of the victim.

(ii)  A minor who suffers emotional injury as a direct result of witnessing a violent crime and who is not eligible for reimbursement of the costs of outpatient mental health counseling under any other provision of this chapter. To be eligible for reimbursement under this clause, the minor must have been in close proximity to the victim when the minor witnessed the crime.

(C)  The board may reimburse a victim or derivative victim for outpatient mental health counseling in excess of that authorized by subparagraph (A) or (B) or for inpatient psychiatric, psychological, or other mental health counseling if the claim is based on dire or exceptional circumstances that require more extensive treatment, as approved by the board.

(D)  Expenses for psychiatric, psychological, or other mental health counseling-related services may be reimbursed only if the services were provided by either of the following individuals:

(i)  A person who would have been authorized to provide those services pursuant to former Article 1 (commencing with Section 13959) as it read on January 1, 2002.

(ii)  A person who is licensed in the state in which the victim lives to provide those services, or who is properly supervised by a person who is licensed in the state in which the victim lives to

provide those services, subject to the board's approval and subject to the limitations and restrictions the board may impose.

(3) Subject to the limitations set forth in Section 13957.5, authorize compensation equal to the loss of income or loss of support, or both, that a victim or derivative victim incurs as a direct result of the victim's or derivative victim's injury or the victim's death. If the qualifying crime is a violation of Section 236.1 of the Penal Code, the board may authorize compensation equal to loss of income or support that a victim incurs as a direct result of the victim's deprivation of liberty during the crime, not to exceed the amount set forth in Section 13957.5. If the victim or derivative victim requests that the board give priority to reimbursement of loss of income or support, the board may not pay medical expenses, or mental health counseling expenses, except upon the request of the victim or derivative victim or after determining that payment of these expenses will not decrease the funds available for payment of loss of income or support.

(4) Authorize a cash payment to or on behalf of the victim for job retraining or similar employment-oriented services.

(5) Reimburse the expense of installing or increasing residential security, not to exceed one thousand dollars ($1,000). Installing or increasing residential security may include, but need not be limited to, both of the following:

(A) Home security device or system.

(B) Replacing or increasing the number of locks.

(6) Reimburse the expense of renovating or retrofitting a victim's residence, or the expense of modifying or purchasing a vehicle, to make the residence or the vehicle accessible or operational by a victim upon verification that the expense is medically necessary for a victim who is permanently disabled as a direct result of the crime, whether the disability is partial or total.

(7) (A) Authorize a cash payment or reimbursement not to exceed three thousand four hundred and eighteen dollars ($3,418) to a victim for expenses incurred in relocating, if the expenses are determined by law enforcement to be necessary for the personal safety of the victim or by a mental health treatment provider to be necessary for the emotional well-being of the victim. For purposes of this paragraph, "expenses incurred in relocating" may include the costs of temporary housing for any pets belonging to the victim upon immediate relocation.

(B) The cash payment or reimbursement made under this paragraph shall only be awarded to one claimant per crime giving rise to the relocation. The board may authorize more than one relocation per crime if necessary for the personal safety or emotional well-being of the claimant. However, the total cash payment or reimbursement for all relocations due to the same crime shall not exceed three thousand four hundred and eighteen dollars ($3,418). For purposes of this paragraph, a claimant is the crime victim, or, if the victim is deceased, a person who resided with the deceased at the time of the crime.

(C) The board may, under compelling circumstances, award a second cash payment or reimbursement to a victim for another crime if both of the following conditions are met:

(i) The crime occurs more than three years from the date of the crime giving rise to the initial relocation cash payment or reimbursement.

(ii) The crime does not involve the same offender.

(D) When a relocation payment or reimbursement is provided to a victim of sexual assault or domestic violence and the identity of the offender is known to the victim, the victim shall agree not to inform the offender of the location of the victim's new residence and not to allow the offender on the premises at any time, or shall agree to seek a restraining order against the offender. A victim may be required to repay the relocation payment or reimbursement to the board if the victim violates the terms set forth in this paragraph.

(E) Notwithstanding subparagraphs (A) and (B), the board may increase the cash payment or reimbursement for expenses incurred in relocating to an amount greater than three thousand four hundred and eighteen dollars ($3,418) if the board finds this amount is appropriate due to the unusual, dire, or exceptional circumstances of a particular claim.

(F) If a security deposit, pet deposit, or both is required for relocation, the board shall be named as the recipient and receive the funds upon expiration of the victim's rental agreement.

(8) When a victim dies as a result of a crime, the board may reimburse any individual who voluntarily, and without anticipation of personal gain, pays or assumes the obligation to pay any of the following expenses:

(A)  The medical expenses incurred as a direct result of the crime in an amount not to exceed the rates or limitations established by the board.

(B)  The funeral and burial expenses incurred as a direct result of the crime, not to exceed twelve thousand eight hundred and eighteen dollars ($12,818). The board shall not create or comply with a regulation or policy that mandates a lower maximum potential amount of an award pursuant to this subparagraph for less than twelve thousand eight hundred and eighteen dollars ($12,818).

(9)  When the crime occurs in a residence or inside a vehicle, the board may reimburse any individual who voluntarily, and without anticipation of personal gain, pays or assumes the obligation to pay the reasonable costs to clean the scene of the crime in an amount not to exceed one thousand seven hundred and nine dollars ($1,709). Services reimbursed pursuant to this subdivision shall be performed by persons registered with the State Department of Public Health as trauma scene waste practitioners in accordance with Chapter 9.5 (commencing with Section 118321) of Part 14 of Division 104 of the Health and Safety Code.

(10)  When the crime is a violation of Section 600.2 or 600.5 of the Penal Code, the board may reimburse the expense of veterinary services, replacement costs, or other reasonable expenses, as ordered by the court pursuant to Section 600.2 or 600.5 of the Penal Code, in an amount not to exceed ten thousand dollars ($10,000).

(11)  An award of compensation pursuant to paragraph (5) of subdivision (f) of Section 13955 shall be limited to compensation to provide mental health counseling and shall not limit the eligibility of a victim for an award that the victim may be otherwise entitled to receive under this part. A derivative victim shall not be eligible for compensation under this provision.

(b)  The total award to or on behalf of each victim or derivative victim may not exceed thirty-five thousand dollars ($35,000), except that this award may be increased to an amount not exceeding seventy thousand dollars ($70,000) if federal funds for that increase are available.

(c)  (1)  This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support

ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2)  The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 5.   Section 13957 is added to the Government Code, to read:

13957.   (a)  The board may grant for pecuniary loss, when the board determines it will best aid the person seeking compensation, as follows:

(1)  Subject to the limitations set forth in Section 13957.2, reimburse the amount of medical or medical-related expenses incurred by the victim for services that were provided by a licensed medical provider, including, but not limited to, eyeglasses, hearing aids, dentures, or any prosthetic device taken, lost, or destroyed during the commission of the crime, or the use of which became necessary as a direct result of the crime.

(2)  Subject to the limitations set forth in Section 13957.2, reimburse the amount of psychiatric, psychological, or other mental health counseling-related expenses incurred by the victim or derivative victim, including peer counseling services provided by a rape crisis center as defined by Section 13837 of the Penal Code, and including family psychiatric, psychological, or mental health counseling for the successful treatment of the victim provided to family members of the victim in the presence of the victim, whether or not the family member relationship existed at the time of the crime, that became necessary as a direct result of the crime, subject to the following conditions:

(A)  The following persons may be reimbursed for the expense of their outpatient mental health counseling:

(i)  A victim.

(ii)  A derivative victim who is the surviving parent, grandparent, sibling, child, grandchild, spouse, or fiance of a victim of a crime that directly resulted in the death of the victim.

(iii)  A derivative victim, as described in paragraphs (1) to (4), inclusive, of subdivision (c) of Section 13955, who is the primary caretaker of a minor victim whose claim is not denied or reduced pursuant to Section 13956 for not more than two derivative victims.

(iv)  A derivative victim not eligible for reimbursement pursuant to clause (iii), provided that mental health counseling of a derivative victim described in paragraph (5) of subdivision (c) of Section 13955, shall be reimbursed only if that counseling is necessary for the treatment of the victim.

(v)  A minor who suffers emotional injury as a direct result of witnessing a violent crime and who is not eligible for reimbursement of the costs of outpatient mental health counseling under any other provision of this chapter. To be eligible for reimbursement under this clause, the minor must have been in close proximity to the victim when the minor witnessed the crime.

(B)  The board may reimburse a victim or derivative victim for inpatient psychiatric, psychological, or other mental health counseling if the claim is based on dire or exceptional circumstances that require more extensive treatment, as approved by the board.

(C)  Expenses for psychiatric, psychological, or other mental health counseling-related services may be reimbursed only if the services were provided by either of the following individuals:

(i)  A person who would have been authorized to provide those services pursuant to former Article 1 (commencing with Section 13959) as it read on January 1, 2002.

(ii)  A person who is licensed in California to provide those services, or who is properly supervised by a person who is licensed in California to provide those services, subject to the board's approval and subject to the limitations and restrictions the board may impose.

(3)  Subject to the limitations set forth in Section 13957.5, authorize compensation equal to the loss of income or loss of support, or both, that a victim or derivative victim incurs as a direct result of the victim's or derivative victim's injury or the victim's death. If the qualifying crime is a violation of Section 236.1 of the Penal Code, the board may authorize compensation equal to loss of income or support that a victim incurs as a direct result of the victim's deprivation of liberty during the crime, not to exceed the amount set forth in Section 13957.5. If the victim or derivative victim requests that the board give priority to reimbursement of loss of income or support, the board may not pay medical expenses, or mental health counseling expenses, except upon the request of the victim or derivative victim or after determining that payment

94

of these expenses will not decrease the funds available for payment of loss of income or support.

(4)  Authorize a cash payment to or on behalf of the victim for job retraining or similar employment-oriented services.

(5)  Reimburse the expense of installing or increasing residential security, not to exceed one thousand dollars ($1,000). Installing or increasing residential security may include, but need not be limited to, both of the following:

(A)  Home security device or system.

(B)  Replacing or increasing the number of locks.

(6)  Reimburse the expense of renovating or retrofitting a victim's residence, or the expense of modifying or purchasing a vehicle, to make the residence or the vehicle accessible or operational by a victim upon verification that the expense is medically necessary for a victim who is permanently disabled as a direct result of the crime, whether the disability is partial or total.

(7)  (A) Authorize a cash payment or reimbursement not to exceed seven thousand five hundred dollars ($7,500) to a victim for expenses incurred in relocating, if the expenses are determined by law enforcement to be necessary for the personal safety of the victim or by a mental health treatment provider to be necessary for the emotional well-being of the victim. For purposes of this paragraph, "expenses incurred in relocating" may include the costs of temporary housing for any pets belonging to the victim upon immediate relocation.

(B)  The cash payment or reimbursement made under this paragraph shall only be awarded to one claimant per crime giving rise to the relocation. The board may authorize more than one relocation per crime if necessary for the personal safety or emotional well-being of the claimant. However, the total cash payment or reimbursement for all relocations due to the same crime shall not exceed seven thousand five hundred dollars ($7,500). For purposes of this paragraph, a claimant is the crime victim, or, if the victim is deceased, a person who resided with the deceased at the time of the crime.

(C)  The board may, under compelling circumstances, award a second cash payment or reimbursement to a victim for another crime if both of the following conditions are met:

(i)  The crime occurs more than three years from the date of the crime giving rise to the initial relocation cash payment or reimbursement.

(ii)  The crime does not involve the same offender.

(D)  When a relocation payment or reimbursement is provided to a victim of sexual assault or domestic violence and the identity of the offender is known to the victim, the victim shall agree not to inform the offender of the location of the victim's new residence and not to allow the offender on the premises at any time, or shall agree to seek a restraining order against the offender. A victim may be required to repay the relocation payment or reimbursement to the board if the victim violates the terms set forth in this paragraph.

(E)  Notwithstanding subparagraphs (A) and (B), the board may increase the cash payment or reimbursement for expenses incurred in relocating to an amount greater than seven thousand five hundred dollars ($7,500) if the board finds this amount is appropriate due to the unusual, dire, or exceptional circumstances of a particular claim.

(F)  If a security deposit, pet deposit, or both is required for relocation, the board shall be named as the recipient and receive the funds upon expiration of the victim's rental agreement.

(8)  When a victim dies as a result of a crime, the board may reimburse any individual who voluntarily, and without anticipation of personal gain, pays or assumes the obligation to pay any of the following expenses:

(A)  The medical expenses incurred as a direct result of the crime in an amount not to exceed the rates or limitations established by the board.

(B)  The funeral and burial expenses incurred as a direct result of the crime, not to exceed twenty thousand dollars ($20,000). The board shall not create or comply with a regulation or policy that mandates a lower maximum potential amount of an award pursuant to this subparagraph for less than twenty thousand dollars ($20,000).

(9)  When the crime occurs in a residence or inside a vehicle, the board may reimburse any individual who voluntarily, and without anticipation of personal gain, pays or assumes the obligation to pay the reasonable costs to clean the scene of the crime in an amount not to exceed one thousand seven hundred and

nine dollars ($1,709). Services reimbursed pursuant to this subdivision shall be performed by persons registered with the State Department of Public Health as trauma scene waste practitioners in accordance with Chapter 9.5 (commencing with Section 118321) of Part 14 of Division 104 of the Health and Safety Code.

(10)  When the crime is a violation of Section 600.2 or 600.5 of the Penal Code, the board may reimburse the expense of veterinary services, replacement costs, or other reasonable expenses, as ordered by the court pursuant to Section 600.2 or 600.5 of the Penal Code, in an amount not to exceed ten thousand dollars ($10,000).

(11)  An award of compensation pursuant to paragraph (5) of subdivision (f) of Section 13955 shall be limited to compensation to provide mental health counseling and shall not limit the eligibility of a victim for an award that the victim may be otherwise entitled to receive under this part. A derivative victim shall not be eligible for compensation under this provision.

(b)  The total award to or on behalf of each victim or derivative victim shall not exceed one hundred thousand dollars ($100,000).

(c)  This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 5.5.  Section 13957 is added to the Government Code, to read:

13957.  (a)  The board may grant for pecuniary loss, when the board determines it will best aid the person seeking compensation, as follows:

(1)  Subject to the limitations set forth in Section 13957.2, reimburse the amount of medical or medical-related expenses incurred by the victim for services that were provided by a licensed medical provider, including, but not limited to, eyeglasses, hearing aids, dentures, or any prosthetic device taken, lost, or destroyed during the commission of the crime, or the use of which became necessary as a direct result of the crime.

(2)  Subject to the limitations set forth in Section 13957.2, reimburse the amount of psychiatric, psychological, or other mental health counseling-related expenses incurred by the victim or derivative victim, including peer counseling services provided by

a rape crisis center as defined by Section 13837 of the Penal Code, and including family psychiatric, psychological, or mental health counseling for the successful treatment of the victim provided to family members of the victim in the presence of the victim, whether or not the family member relationship existed at the time of the crime, that became necessary as a direct result of the crime, subject to the following conditions:

(A)  The following persons may be reimbursed for the expense of their outpatient mental health counseling:

(i)  A victim.

(ii)  A derivative victim who is the surviving parent, grandparent, sibling, child, grandchild, spouse, or fiance of a victim of a crime that directly resulted in the death of the victim.

(iii)  A derivative victim, as described in paragraphs (1) to (4), inclusive, of subdivision (c) of Section 13955, who is the primary caretaker of a minor victim whose claim is not denied or reduced pursuant to Section 13956 for not more than two derivative victims.

(iv)  A derivative victim not eligible for reimbursement pursuant to clause (iii), provided that mental health counseling of a derivative victim described in paragraph (5) of subdivision (c) of Section 13955, shall be reimbursed only if that counseling is necessary for the treatment of the victim.

(v)  A minor who suffers emotional injury as a direct result of witnessing a violent crime and who is not eligible for reimbursement of the costs of outpatient mental health counseling under any other provision of this chapter. To be eligible for reimbursement under this clause, the minor must have been in close proximity to the victim when the minor witnessed the crime.

(B)  The board may reimburse a victim or derivative victim for inpatient psychiatric, psychological, or other mental health counseling if the claim is based on dire or exceptional circumstances that require more extensive treatment, as approved by the board.

(C)  Expenses for psychiatric, psychological, or other mental health counseling-related services may be reimbursed only if the services were provided by either of the following individuals:

(i)  A person who would have been authorized to provide those services pursuant to former Article 1 (commencing with Section 13959) as it read on January 1, 2002.

(ii)  A person who is licensed in the state in which the victim lives to provide those services, or who is properly supervised by a person who is licensed in the state in which the victim lives to provide those services, subject to the board's approval and subject to the limitations and restrictions the board may impose.

(3)  Subject to the limitations set forth in Section 13957.5, authorize compensation equal to the loss of income or loss of support, or both, that a victim or derivative victim incurs as a direct result of the victim's or derivative victim's injury or the victim's death. If the qualifying crime is a violation of Section 236.1 of the Penal Code, the board may authorize compensation equal to loss of income or support that a victim incurs as a direct result of the victim's deprivation of liberty during the crime, not to exceed the amount set forth in Section 13957.5. If the victim or derivative victim requests that the board give priority to reimbursement of loss of income or support, the board may not pay medical expenses, or mental health counseling expenses, except upon the request of the victim or derivative victim or after determining that payment of these expenses will not decrease the funds available for payment of loss of income or support.

(4)  Authorize a cash payment to or on behalf of the victim for job retraining or similar employment-oriented services.

(5)  Reimburse the expense of installing or increasing residential security, not to exceed one thousand dollars ($1,000). Installing or increasing residential security may include, but need not be limited to, both of the following:

(A)  Home security device or system.

(B)  Replacing or increasing the number of locks.

(6)  Reimburse the expense of renovating or retrofitting a victim's residence, or the expense of modifying or purchasing a vehicle, to make the residence or the vehicle accessible or operational by a victim upon verification that the expense is medically necessary for a victim who is permanently disabled as a direct result of the crime, whether the disability is partial or total.

(7) (A)  Authorize a cash payment or reimbursement not to exceed seven thousand five hundred dollars ($7,500) to a victim for expenses incurred in relocating, if expenses are determined by law enforcement to be necessary for the personal safety of the victim or by a mental health treatment provider to be necessary for the emotional well-being of the victim. For purposes of this

paragraph, "expenses incurred in relocating" may include the costs of temporary housing for any pets belonging to the victim upon immediate relocation.

(B) The cash payment or reimbursement made under this paragraph shall only be awarded to one claimant per crime giving rise to the relocation. The board may authorize more than one relocation per crime if necessary for the personal safety or emotional well-being of the claimant. However, the total cash payment or reimbursement for all relocations due to the same crime shall not exceed seven thousand five hundred dollars ($7,500). For purposes of this paragraph, a claimant is the crime victim, or, if the victim is deceased, a person who resided with the deceased at the time of the crime.

(C) The board may, under compelling circumstances, award a second cash payment or reimbursement to a victim for another crime if both of the following conditions are met:

(i) The crime occurs more than three years from the date of the crime giving rise to the initial relocation cash payment or reimbursement.

(ii) The crime does not involve the same offender.

(D) When a relocation payment or reimbursement is provided to a victim of sexual assault or domestic violence and the identity of the offender is known to the victim, the victim shall agree not to inform the offender of the location of the victim's new residence and not to allow the offender on the premises at any time, or shall agree to seek a restraining order against the offender. A victim may be required to repay the relocation payment or reimbursement to the board if the victim violates the terms set forth in this paragraph.

(E) Notwithstanding subparagraphs (A) and (B), the board may increase the cash payment or reimbursement for expenses incurred in relocating to an amount greater than seven thousand five hundred dollars ($7,500) if the board finds this amount is appropriate due to the unusual, dire, or exceptional circumstances of a particular claim.

(F) If a security deposit, pet deposit, or both is required for relocation, the board shall be named as the recipient and receive the funds upon expiration of the victim's rental agreement.

(8) When a victim dies as a result of a crime, the board may reimburse any individual who voluntarily, and without anticipation

of personal gain, pays or assumes the obligation to pay any of the following expenses:

(A) The medical expenses incurred as a direct result of the crime in an amount not to exceed the rates or limitations established by the board.

(B) The funeral and burial expenses incurred as a direct result of the crime, not to exceed twenty thousand dollars ($20,000). The board shall not create or comply with a regulation or policy that mandates a lower maximum potential amount of an award pursuant to this subparagraph for less than twenty thousand dollars ($20,000).

(9) When the crime occurs in a residence or inside a vehicle, the board may reimburse any individual who voluntarily, and without anticipation of personal gain, pays or assumes the obligation to pay the reasonable costs to clean the scene of the crime in an amount not to exceed one thousand seven hundred and nine dollars ($1,709). Services reimbursed pursuant to this subdivision shall be performed by persons registered with the State Department of Public Health as trauma scene waste practitioners in accordance with Chapter 9.5 (commencing with Section 118321) of Part 14 of Division 104 of the Health and Safety Code.

(10) When the crime is a violation of Section 600.2 or 600.5 of the Penal Code, the board may reimburse the expense of veterinary services, replacement costs, or other reasonable expenses, as ordered by the court pursuant to Section 600.2 or 600.5 of the Penal Code, in an amount not to exceed ten thousand dollars ($10,000).

(11) An award of compensation pursuant to paragraph (5) of subdivision (f) of Section 13955 shall be limited to compensation to provide mental health counseling and shall not limit the eligibility of a victim for an award that the victim may be otherwise entitled to receive under this part. A derivative victim shall not be eligible for compensation under this provision.

(b) The total award to or on behalf of each victim or derivative victim shall not exceed one hundred thousand dollars ($100,000).

(c) This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 6.   Section 13957.5 of the Government Code is amended to read:

13957.5.   (a)   In authorizing compensation for loss of income and support pursuant to paragraph (3) of subdivision (a) of Section 13957, the board may take any of the following actions:

(1)   Compensate the victim for loss of income directly resulting from the injury, except that loss of income may not be paid by the board for more than five years following the crime, unless the victim is disabled as defined in Section 416(i) of Title 42 of the United States Code, as a direct result of the injury.

(2)   Compensate an adult derivative victim for loss of income, subject to all of the following:

(A)   The derivative victim is the parent or legal guardian of a victim, who at the time of the crime was under 18 years of age and is hospitalized as a direct result of the crime.

(B)   The minor victim's treating physician certifies in writing that the presence of the victim's parent or legal guardian at the hospital is necessary for the treatment of the victim.

(C)   Reimbursement for loss of income under this paragraph may not exceed the total value of the income that would have been earned by the adult derivative victim during a 30-day period.

(3)   Compensate an adult derivative victim for loss of income, subject to all of the following:

(A)   The derivative victim is the parent or legal guardian of a victim who at the time of the crime was under 18 years of age.

(B)   The victim died as a direct result of the crime.

(C)   The board shall pay for loss of income under this paragraph for not more than 30 calendar days from the date of the victim's death.

(4)   Compensate a derivative victim who was legally dependent on the victim at the time of the crime for the loss of support incurred by that person as a direct result of the crime, subject to both of the following:

(A)   Loss of support shall be paid by the board for income lost by an adult for a period up to, but not more than, five years following the date of the crime.

(B)   Loss of support shall not be paid by the board on behalf of a minor for a period beyond the child's attaining 18 years of age.

(5)   (A)   If the qualifying crime is a violation of Section 236.1 of the Penal Code, and the victim has not been and will not be

compensated from any other source, compensate the victim for loss of income or support directly resulting from the deprivation of liberty during the crime based upon the value of the victim's labor as guaranteed under California law at the time that the services were performed for the number of hours that the services were performed, for up to 40 hours per week.

(B) On or before July 1, 2020, the board shall adopt guidelines that allow it to rely on evidence other than official employment documentation in considering and approving an application for that compensation. The evidence may include any reliable corroborating information approved by the board, including, but not limited to, a statement under penalty of perjury from the applicant, a human trafficking caseworker as defined in Section 1038.2 of the Evidence Code, a licensed attorney, or a witness to the circumstances of the crime.

(C) Compensation for loss of income paid by the board pursuant to this paragraph shall not exceed ten thousand dollars ($10,000) per year that the services were performed, for a maximum of two years.

(D) If the victim is a minor at the time of application, the board shall distribute payment under this paragraph when the minor reaches 18 years of age.

(b) The total amount payable to all derivative victims pursuant to this section as the result of one crime shall not exceed seventy thousand dollars ($70,000).

(c) (1) This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2) The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 7.  Section 13957.5 is added to the Government Code, to read:

13957.5. (a) In authorizing compensation for loss of income and support pursuant to paragraph (3) of subdivision (a) of Section 13957, the board may take any of the following actions:

(1)  Subject to paragraph (7), and calculated as provided in paragraph (8), compensate the victim for loss of income directly resulting from the injury, except that loss of income shall not be paid by the board for more than five years following the crime, unless the victim is disabled as defined in Section 416(i) of Title 42 of the United States Code, as a direct result of the injury.

(2)  Compensate an adult derivative victim for loss of income, subject to all of the following:

(A)  The derivative victim is the parent, legal guardian, or spouse of the victim, or if no parent, legal guardian, or spouse of the victim is present at the hospital, is another derivative victim, who is present at the hospital during the period the victim is hospitalized as a direct result of the crime.

(B)  The victim's treating physician certifies in writing that the presence of the derivative victim at the hospital is reasonably necessary for the treatment of the victim, or is reasonably necessary for the victim's psychological well-being.

(C)  Reimbursement for loss of income under this paragraph shall not exceed the total value of the income that would have been earned, calculated as described in paragraph (8), by the adult derivative victim during a 30-day period.

(3)  Compensate an adult derivative victim for loss of income, subject to all of the following:

(A)  The victim died as a direct result of the crime.

(B)  (i)  If the derivative victim is the spouse of the victim, is the parent of the victim, was living in the household of the victim at the time of the crime, was the legal guardian of the victim at the time of the crime, or was the legal guardian of the victim when the victim was under 18 years of age, the board shall pay for loss of income under this paragraph, calculated as provided by paragraph (8), for not more than 30 calendar days occurring within 90 calendar days of the victim's death.

(ii)  For a derivative victim not included in clause (i), the board shall pay for loss of income under this paragraph, calculated as provided by paragraph (8), for not more than seven calendar days occurring within 90 calendar days of the victim's death.

(4)  Compensate a derivative victim who was legally dependent on the victim at the time of the crime for the loss of support incurred by that person as a direct result of the crime, calculated as provided in paragraph (8), subject to both of the following:

(A)  Loss of support shall be paid by the board for income lost by an adult for a period up to, but not more than, five years following the date of the crime.

(B)  Loss of support shall not be paid by the board on behalf of a minor for a period beyond the child's attaining 18 years of age.

(5)  (A)  If the qualifying crime is a violation of Section 236.1 of the Penal Code, and the victim has not been and will not be compensated from any other source, compensate the victim for loss of income or support directly resulting from the deprivation of liberty during the crime based upon the value of the victim's labor as guaranteed under California law at the time that the services were performed for the number of hours that the services were performed, for up to 40 hours per week.

(B)  On or before July 1, 2020, the board shall adopt guidelines that allow it to rely on evidence other than official employment documentation in considering and approving an application for that compensation. The evidence may include any reliable corroborating information approved by the board, including, but not limited to, a statement under penalty of perjury from the applicant, a human trafficking caseworker as defined in Section 1038.2 of the Evidence Code, a licensed attorney, or a witness to the circumstances of the crime.

(C)  Compensation for loss of income paid by the board pursuant to this paragraph shall not exceed ten thousand dollars ($10,000) per year that the services were performed, for a maximum of two years.

(D)  If the victim is a minor at the time of application, the board shall distribute payment under this paragraph when the minor reaches 18 years of age.

(6)  If the victim is a minor at the time of the crime, the victim shall be eligible for future loss of income due to disability from future employment directly resulting from the injury at a rate an employee would earn if employed for 35 hours per week at the minimum wage required at the time of the crime by Section 1182.12 of the Labor Code for a maximum of one year.

(7)  (A)  A victim or derivative victim who is otherwise eligible for loss of income under paragraph (1), (2), or (3) shall be eligible for loss of income if they were employed or receiving earned income benefits at the time of the crime. If an otherwise eligible adult victim or derivative victim was not employed or receiving

earned income benefits at the time of the crime, they shall be eligible for loss of income under paragraph (1), (2), or (3) if the victim or derivative victim was fully or partially employed or receiving income benefits for a total of at least two weeks in the 12 months preceding the qualifying crime, or had an offer of employment at the time of the crime and was unable to begin employment as a result of the crime.

(B)  A derivative victim who is otherwise eligible for loss of support under paragraph (4) shall be eligible for loss of support if the victim was employed or receiving earned income benefits at the time of the crime. If the victim was not employed or receiving earned income benefits at the time of the crime, the derivative victim shall be eligible if the victim was fully or partially employed or receiving earned income benefits for a total of at least two weeks in the 12 months preceding the qualifying crime, or if the victim had an offer of employment at the time of the crime and was unable to begin employment as a result of the crime.

(8)  (A)  Except as provided by subparagraph (B), loss of income or support under paragraph (1), (2), (3), or (4) shall be based on the actual loss the victim or derivative victim, as applicable, sustains or the wages the victim or derivative victim, as applicable, would have earned if employed for 35 hours per week at the minimum wage required by Section 1182.12 of the Labor Code during the applicable period, whichever is greater.

(B)  For victims who are under 18 years of age at the time of the crime, loss of income under paragraph (1) shall be based upon the actual loss the victim sustains.

(b)  By July 1, 2025, the board shall adopt new guidelines for accepting evidence that may be available to the victim or derivative victim in considering and approving a claim for loss of income or support under this section, which shall require the board to accept any form of reliable corroborating information approved by the board regarding the victim or derivative victim's income, including, but not limited to, all of the following:

(1)  A statement from the employer.

(2)  A pattern of deposits into a bank or credit union account of the victim or derivative victim.

(3)  Pay stubs or copies of checks received as payment.

(4)  A copy of a job offer letter from an employer.

(5)  Income tax records.

(6) Verification through a vendor, if the employer contracts with a vendor for employment verification.

(7) Information related to eligibility or enrollment from any of the following:

(A) The CalFresh program pursuant to Chapter 10 (commencing with Section 18900) of Part 6 of Division 9 of the Welfare and Institution Code.

(B) The CalWORKs program.

(C) The state's children's health insurance program under Title XXI of the federal Social Security Act (42 U.S.C. Sec. 1397aa et seq.).

(D) The California Health Benefit Exchange established pursuant to Title 22 (commencing with Section 100500) of the Government Code.

(E) The electronic service established in accordance with Section 435.949 of Title 42 of the Code of Federal Regulations.

(F) Records from the Employment Development Department.

(c) The total amount payable to all derivative victims pursuant to this section as the result of one crime shall not exceed one hundred thousand dollars ($100,000).

(d) This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 8.  Section 13959 of the Government Code is amended to read:

13959.  (a) The board shall grant a hearing to an applicant who contests a staff recommendation to deny compensation in whole or in part.

(b) The board shall notify the applicant not less than 10 days prior to the date of the hearing. Notwithstanding Section 11123, if the appeal that the board is considering involves either a crime against a minor, a crime of sexual assault, or a crime of domestic violence, the board may exclude from the hearing all persons other than board members and members of its staff, the applicant for benefits, a minor applicant's parents or guardians, the applicant's representative, witnesses, and other persons of the applicant's choice to provide assistance to the applicant during the hearing. However, the board shall not exclude persons from the hearing if

the applicant or applicant's representative requests that the hearing be open to the public.

(c)  At the hearing, the person seeking compensation shall have the burden of establishing, by a preponderance of the evidence, the elements for eligibility under Section 13955.

(d)  Except as otherwise provided by law, in making determinations of eligibility for compensation and in deciding upon the amount of compensation, the board shall apply the law in effect as of the date an application was submitted.

(e)  (1)  The hearing shall be informal and need not be conducted according to the technical rules relating to evidence and witnesses. The board may rely on any relevant evidence if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of a common law or statutory rule that might make improper the admission of the evidence over objection in a civil action. The board may rely on written reports prepared for the board, or other information received, from public agencies responsible for investigating the crime. If the applicant or the applicant's representative chooses not to appear at the hearing, the board may act solely upon the application for compensation, the staff's report, and other evidence that appears in the record.

(2)  The board shall allow a service animal to accompany and support a witness while testifying at a hearing.

(f)  Hearings shall be held in various locations with the frequency necessary to provide for the speedy adjudication of the appeals. If the applicant's presence is required at the hearing, the board shall schedule the applicant's hearing in as convenient a location as possible or conduct the hearing by telephone.

(g)  The board may delegate the hearing of appeals to hearing officers.

(h)  The decisions of the board shall be in writing within six months of the date the board received the appeal unless the board determines that there was insufficient information to make a decision. If the board determines that there was insufficient information to make a decision, the board shall notify the applicant in writing within six months of the date the board received the appeal. Copies of the decisions shall be delivered to the applicant or to the applicant's representative personally or sent to them by mail.

(i)  The board may order a reconsideration of all or part of a decision on written request of the applicant. The board shall not grant more than one request for reconsideration with respect to any one decision on an appeal for compensation. The board shall not consider any request for reconsideration filed with the board more than 30 calendar days after the personal delivery or 60 calendar days after the mailing of the original decision.

(j)  The board may order a reconsideration of all or part of a decision on its own motion, at its discretion, at any time.

(k)  Evidence submitted after the board has denied a request for reconsideration shall not be considered unless the board chooses to reconsider its decision on its own motion.

(*l*)  (1)  This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2)  The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 9.   Section 13959 is added to the Government Code, to read:

13959.   (a)  The board shall grant a hearing to an applicant who contests a staff recommendation to deny compensation in whole or in part.

(b)  The board shall notify the applicant not less than 10 days prior to the date of the hearing. Notwithstanding Section 11123, if the appeal that the board is considering involves either a crime against a minor, a crime of sexual assault, or a crime of domestic violence, the board may exclude from the hearing all persons other than board members and members of its staff, the applicant for benefits, a minor applicant's parents or guardians, the applicant's representative, witnesses, and other persons of the applicant's choice to provide assistance to the applicant during the hearing. However, the board shall not exclude persons from the hearing if the applicant or applicant's representative requests that the hearing be open to the public.

(c)  At the hearing, the person seeking compensation shall have the burden of establishing, by a preponderance of the evidence, the elements for eligibility under Section 13955.

(d) Except as otherwise provided by law, in making determinations of eligibility for compensation and in deciding upon the amount of compensation, the board shall apply the law in effect as of the date an application was submitted.

(e)  (1)  The hearing shall be informal and need not be conducted according to the technical rules relating to evidence and witnesses. The board may rely on any relevant evidence if it is the sort of evidence on which responsible persons are accustomed to rely on the conduct of serious affairs, regardless of the existence of a common law or statutory rule that might make improper the admission of the evidence over objection in a civil action. The board may rely on written reports prepared for the board, or other information received, from public agencies responsible for investigating the crime. If the applicant or the applicant's representative chooses not to appear at the hearing, the board may act solely upon the application for compensation, the staff's report, and other evidence that appears in the record.

(2)  The board shall allow a service animal to accompany and support a witness while testifying at a hearing.

(f)  Hearings shall be held in various locations with the frequency necessary to provide for the speedy adjudication of the appeals. If the applicant's presence is required at the hearing, the board shall schedule the applicant's hearing in as convenient a location as possible or conduct the hearing by telephone.

(g)  The board may delegate the hearing of appeals to hearing officers.

(h)  The decisions of the board shall be in writing within four months of the date the board received the appeal unless the board determines that there was insufficient information to make a decision. If the board determines that there was insufficient information to make a decision, the board shall notify the applicant in writing within four months of the date the board received the appeal. Copies of the decisions shall be delivered to the applicant or to the applicant's representative personally or sent to them by mail.

(i)  The board may order a reconsideration of all or part of a decision on written request of the applicant. The board shall not

grant more than one request for reconsideration with respect to any one decision on an appeal for compensation. The board shall not consider any request for reconsideration filed with the board more than 365 calendar days after the personal delivery or the mailing of the original decision.

(j) The board may order a reconsideration of all or part of a decision on its own motion, at its discretion, at any time.

(k) Evidence submitted after the board has denied a request for reconsideration shall not be considered unless the board chooses to reconsider its decision on its own motion.

(*l*) This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 10.   Section 13962 of the Government Code is amended to read:

13962.   (a) The board shall publicize through the board, law enforcement agencies, victim centers, hospitals, medical, mental health or other counseling service providers, and other public or private agencies, the existence of the program established pursuant to this chapter, including the procedures for obtaining compensation under the program.

(b) It shall be the duty of every local law enforcement agency to inform crime victims of the provisions of this chapter, of the existence of victim centers, and in counties where no victim center exists, to provide application forms to victims who desire to seek compensation pursuant to this chapter. The board shall provide application forms and all other documents that local law enforcement agencies and victim centers may require to comply with this section. The board, in cooperation with victim centers, shall set standards to be followed by local law enforcement agencies for this purpose and may require them to file with the board a description of the procedures adopted by each agency to comply with the standards. The board shall conduct outreach to local law enforcement agencies about their duties under this section.

(c) Every local law enforcement agency shall annually provide to the board contact information for the Victims of Crime Liaison

**AB 160** — 58 —

Officer designated pursuant to Section 649.36 of Title 2 of the California Code of Regulations.

(d)  The board shall annually make available to the Victims of Crime Liaison Officer at every local law enforcement agency one hour of training on victim compensation in California and materials to educate the officers and staff in their law enforcement agencies and publicize the program within their jurisdictions.

(e)  The board's outreach pursuant to subdivision (a) and training pursuant to subdivision (d) shall affirm that neither access to information about victim compensation, nor an application for compensation, shall be denied on the basis of the victim's or derivative victim's membership in, association with, or affiliation with, a gang, or on the basis of the victim's or derivative victim's designation as a suspected gang member, associate, or affiliate in a shared gang database, as defined in Section 186.34 of the Penal Code.

(f)  The board's outreach pursuant to subdivision (a) and training pursuant to subdivision (d) shall affirm that neither access to information about victim compensation, nor an application for compensation, shall be denied on the basis of the victim's or derivative victim's documentation or immigration status.

(g)  (1)  This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2)  The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 11.  Section 13962 is added to the Government Code, to read:

13962.  (a)  The board shall publicize through the board, law enforcement agencies, victim centers, hospitals, medical, mental health or other counseling service providers, and other public or private agencies, the existence of the program established pursuant to this chapter, including the procedures for obtaining compensation under the program.

(b)  It shall be the duty of every local law enforcement agency to inform crime victims of the provisions of this chapter, of the

existence of victim centers, and of the existence of trauma recovery centers as described under Section 13963.1, and to provide application forms to victims who desire to seek compensation pursuant to this chapter. The board shall provide application forms and all other documents that local law enforcement agencies and victim centers may require to comply with this section. The board, in cooperation with victim centers, shall set standards to be followed by local law enforcement agencies for this purpose and may require them to file with the board a description of the procedures adopted by each agency to comply with the standards. The board shall conduct outreach to local law enforcement agencies about their duties under this section.

(c) Every local law enforcement agency shall annually provide to the board contact information for the Victims of Crime Liaison Officer designated pursuant to Section 649.36 of Title 2 of the California Code of Regulations.

(d) The board shall annually make available to the Victims of Crime Liaison Officer at every local law enforcement agency one hour of training on victim compensation in California and materials to educate the officers and staff in their law enforcement agencies and publicize the program within their jurisdictions.

(e) The board's outreach pursuant to subdivision (a) and training pursuant to subdivision (d) shall affirm that neither access to information about victim compensation, nor an application for compensation, shall be denied on the basis of the victim's or derivative victim's membership in, association with, or affiliation with, a gang, or on the basis of the victim's or derivative victim's designation as a suspected gang member, associate, or affiliate in a shared gang database, as defined in Section 186.34 of the Penal Code.

(f) The board's outreach pursuant to subdivision (a) and training pursuant to subdivision (d) shall affirm that neither access to information about victim compensation, nor an application for compensation, shall be denied on the basis of the victim's or derivative victim's documentation or immigration status.

(g) (1) The board shall provide every general acute care hospital in the state that operates an emergency department with both of the following:

(A)  A poster developed by the board describing the existence of the program established pursuant to this chapter, including the procedures for obtaining compensation under the program.

(B)  Application forms to distribute to victims, derivative victims, and their family members who desire to seek compensation pursuant to this chapter.

(2)  It shall be the duty of every general acute care hospital to display a poster provided to the hospital pursuant to subparagraph (A) of paragraph (1) prominently in the lobby or waiting area of its emergency department.

(3)  At the request of the hospital, the board shall provide the documents described in paragraph (1) in any of the languages listed in paragraph (4) of subdivision (d) of Section 13952.

(h)  This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 12.  Section 68085.1 of the Government Code is amended to read:

68085.1.  (a)  This section applies to all fees and fines that are collected on or after January 1, 2006, under all of the following:

(1)  Sections 177.5, 209, 403.060, 491.150, 631.3, 683.150, 704.750, 708.160, 724.100, 1161.2, 1218, and 1993.2 of, subdivision (g) of Section 411.20 and subdivisions (c) and (g) of Section 411.21 of, subdivision (b) of Section 631 of, and Chapter 5.5 (commencing with Section 116.110) of Title 1 of Part 1 of, the Code of Civil Procedure.

(2)  Section 3112 of the Family Code.

(3)  Section 31622 of the Food and Agricultural Code.

(4)  Subdivision (d) of Section 6103.5, Sections 68086 and 68086.1, Sections 68926.1 and 69953.5, and Chapter 5.8 (commencing with Section 70600).

(5)  Section 103470 of the Health and Safety Code.

(6)  Subdivisions (b) and (c) of Section 166 of the Penal Code.

(7)  Sections 1835, 1851.5, 7660, and 13201 of the Probate Code.

(8)  Sections 14607.6 and 16373 of the Vehicle Code.

(9)  Section 71386 of this code, Sections 304, 7851.5, and 9002 of the Family Code, and Section 1513.1 of the Probate Code, if the reimbursement is for expenses incurred by the court.

(10)  Section 3153 of the Family Code, if the amount is paid to the court for the cost of counsel appointed by the court to represent a child.

(b)  On and after January 1, 2006, each superior court shall deposit all fees and fines listed in subdivision (a), as soon as practicable after collection and on a regular basis, into a bank account established for this purpose by the Administrative Office of the Courts. Upon direction of the Administrative Office of the Courts, the county shall deposit any money it collects under the sections listed in subdivision (a) as soon as practicable after collection and on a regular basis into the bank account established for this purpose and specified by the Administrative Office of the Courts. The deposits shall be made as required by rules adopted by, and financial policies and procedures authorized by, the Judicial Council under subdivision (a) of Section 77206. Within 15 days after the end of the month in which the fees and fines are collected, each court, and each county that collects any fines or fees under subdivision (a), shall provide the Administrative Office of the Courts with a report of the fees by categories as specified by the Administrative Office of the Courts. The Administrative Office of the Courts and any court may agree upon a time period greater than 15 days, but in no case more than 30 days after the end of the month in which the fees and fines are collected. The fees and fines listed in subdivision (a) shall be distributed as provided in this section.

(c)  (1)  Within 45 calendar days after the end of the month in which the fees and fines listed in subdivision (a) are collected, the Administrative Office of the Courts shall make the following distributions:

(A)  To the small claims advisory services, as described in subdivision (f) of Section 116.230 of the Code of Civil Procedure.

(B)  To dispute resolution programs, as described in subdivision (b) of Section 68085.3 and subdivision (b) of Section 68085.4.

(C)  To the county law library funds, as described in Sections 116.230 and 116.760 of the Code of Civil Procedure, subdivision (b) of Section 68085.3, subdivision (b) of Section 68085.4, and Section 70621 of this code, and Section 14607.6 of the Vehicle Code.

(D) To the courthouse construction funds in the Counties of Riverside, San Bernardino, and San Francisco, as described in Sections 70622, 70624, and 70625.

(E) Commencing July 1, 2011, to the Trial Court Trust Fund, as described in subdivision (e) of Section 70626, to be used by the Judicial Council to implement and administer the civil representation pilot program under Section 68651.

(2) If any distribution under this subdivision is delinquent, the Administrative Office of the Courts shall add a penalty to the distribution as specified in subdivision (i).

(d) Within 45 calendar days after the end of the month in which the fees and fines listed in subdivision (a) are collected, the amounts remaining after the distributions in subdivision (c) shall be transmitted to the State Treasury for deposit in the Trial Court Trust Fund and other funds as required by law. This remittance shall be accompanied by a remittance advice identifying the collection month and the appropriate account in the Trial Court Trust Fund or other fund to which it is to be deposited. Upon the receipt of any delinquent payment required under this subdivision, the Controller shall calculate a penalty as provided under subdivision (i).

(e) From the money transmitted to the State Treasury under subdivision (d), the Controller shall make deposits as follows:

(1) Into the Judges' Retirement Fund and the Equal Access Fund, as described in subdivision (c) of Section 68085.3 and subdivision (c) of Section 68085.4.

(2) Into the Health Statistics Special Fund, as described in subdivision (b) of Section 70670 of this code and Section 103730 of the Health and Safety Code.

(3) Into the Family Law Trust Fund, as described in Section 70674.

(4) Into the State Court Facilities Construction Fund, as described in subdivision (c) of Section 68085.3, subdivision (c) of Section 68085.4, subdivision (b) of Section 70657.5, and subdivision (e) of Section 70617.

(5) The remainder of the money shall be deposited into the Trial Court Trust Fund.

(f) The amounts collected by each superior court under Section 116.232, subdivision (g) of Section 411.20, and subdivision (g) of Section 411.21 of the Code of Civil Procedure, Sections 304, 3112,

3153, 7851.5, and 9002 of the Family Code, subdivision (d) of Section 6103.5, and Sections 68926.1, 69953.5, 70627, 70631, 70640, 70661, 70678, and 71386 of this code, and Sections 1513.1, 1835, and 1851.5 of the Probate Code shall be added to the monthly apportionment for that court under subdivision (a) of Section 68085.

(g)  If any of the fees provided in subdivision (a) are partially waived by court order or otherwise reduced, and the fee is to be divided between the Trial Court Trust Fund and any other fund or account, the amount of the reduction shall be deducted from the amount to be distributed to each fund in the same proportion as the amount of each distribution bears to the total amount of the fee. If the fee is paid by installment payments, the amount distributed to each fund or account from each installment shall bear the same proportion to the installment payment as the full distribution to that fund or account does to the full fee. If a court collects a fee that was incurred before January 1, 2006, under a provision that was the predecessor to one of the paragraphs contained in subdivision (a), the fee may be deposited as if it were collected under the paragraph of subdivision (a) that corresponds to the predecessor of that paragraph and distributed in prorated amounts to each fund or account to which the fee in subdivision (a) must be distributed.

(h)  Except as provided in Sections 470.5 and 6322.1 of the Business and Professions Code, and Sections 70622, 70624, and 70625 of this code, an agency shall not take action to change the amounts allocated to any of the funds described in subdivision (c), (d), or (e).

(i)  The amount of the penalty on any delinquent payment under subdivision (c) or (d) shall be calculated by multiplying the amount of the delinquent payment at a daily rate equivalent to $1 \frac{1}{2}$ percent per month for the number of days the payment is delinquent. The penalty shall be paid from the Trial Court Trust Fund. Penalties on delinquent payments under subdivision (d) shall be calculated only on the amounts to be distributed to the Trial Court Trust Fund and the State Court Facilities Construction Fund, and each penalty shall be distributed proportionately to the funds to which the delinquent payment was to be distributed.

(j)  If a delinquent payment under subdivision (c) or (d) results from a delinquency by a superior court under subdivision (b), the

**AB 160**                        — 64 —

court shall reimburse the Trial Court Trust Fund for the amount of the penalty. Notwithstanding Section 77009, any penalty on a delinquent payment that a court is required to reimburse pursuant to this section shall be paid from the court operations fund for that court. The penalty shall be paid by the court to the Trial Court Trust Fund no later than 45 days after the end of the month in which the penalty was calculated. If the penalty is not paid within the specified time, the Administrative Office of the Courts may reduce the amount of a subsequent monthly allocation to the court by the amount of the penalty on the delinquent payment.

(k)  If a delinquent payment under subdivision (c) or (d) results from a delinquency by a county in transmitting fees and fines listed in subdivision (a) to the bank account established for this purpose, as described in subdivision (b), the county shall reimburse the Trial Court Trust Fund for the amount of the penalty. The penalty shall be paid by the county to the Trial Court Trust Fund no later than 45 days after the end of the month in which the penalty was calculated.

SEC. 13.   Section 290.008 of the Penal Code is amended to read:

290.008.  (a)  Any person who, on or after January 1, 1986, is discharged or paroled from the Department of Corrections and Rehabilitation to the custody of which they were committed after having been adjudicated a ward of the juvenile court pursuant to Section 602 of the Welfare and Institutions Code because of the commission or attempted commission of any offense described in subdivision (c) shall register in accordance with the Act unless the duty to register is terminated pursuant to Section 290.5 or as otherwise provided by law.

(b)  Any person who is discharged or paroled from a facility in another state that is equivalent to the Division of Juvenile Justice, to the custody of which they were committed because of an offense which, if committed or attempted in this state, would have been punishable as one or more of the offenses described in subdivision (c) shall register in accordance with the Act.

(c)  Any person described in this section who committed an offense in violation of any of the following provisions shall be required to register pursuant to the Act:

(1)  Assault with intent to commit rape, sodomy, oral copulation, or any violation of Section 264.1, 288, or 289 under Section 220.

(2)  Any offense defined in paragraph (1), (2), (3), (4), or (6) of subdivision (a) of Section 261, Section 264.1, 266c, or 267, paragraph (1) of subdivision (b) of, or subdivision (c) or (d) of, Section 286, paragraph (1) of subdivision (b) of, or subdivision (c) or (d) of, Section 287, Section 288 or 288.5, paragraph (1) of subdivision (b) of, or subdivision (c) or (d) of, former Section 288a, subdivision (a) of Section 289, or Section 647.6.

(3)  A violation of Section 207 or 209 committed with the intent to violate Section 261, 286, 287, 288, or 289, or former Section 288a.

(d)  (1)  A tier one juvenile offender is subject to registration for a minimum of five years. A person is a tier one juvenile offender if the person is required to register after being adjudicated as a ward of the court and discharged or paroled from the Department of Corrections and Rehabilitation for an offense listed in subdivision (c) that is not a serious or violent felony as described in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7.

(2)  A tier two juvenile offender is subject to registration for a minimum of 10 years. A person is a tier two juvenile offender if the person is required to register after being adjudicated as a ward of the court and discharged or paroled from the Department of Corrections and Rehabilitation for an offense listed in subdivision (c) that is a serious or violent felony as described in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7.

(3)  A person who is required to register as a sex offender pursuant to this section may file a petition for termination from the sex offender registry in the juvenile court in the county in which they are registered at the expiration of their mandated minimum registration period, pursuant to Section 290.5.

(e)  Prior to discharge or parole from the Department of Corrections and Rehabilitation, any person who is subject to registration under this section shall be informed of the duty to register under the procedures set forth in the Act. Department officials shall transmit the required forms and information to the Department of Justice.

(f)  All records specifically relating to the registration in the custody of the Department of Justice, law enforcement agencies, and other agencies or public officials shall be destroyed when the person who is required to register has their records sealed under

the procedures set forth in Section 781 of the Welfare and Institutions Code. This section shall not be construed as requiring the destruction of other criminal offender or juvenile records relating to the case that are maintained by the Department of Justice, law enforcement agencies, the juvenile court, or other agencies and public officials unless ordered by a court under Section 781 of the Welfare and Institutions Code.

(g)  This section shall become operative on January 1, 2021.

(h)  For purposes of this section, a discharged person shall include all of the following:

(1)  A ward in the custody of the Department of Corrections and Rehabilitation, Division of Juvenile Justice on or after July 1, 2022, who, prior to discharge, is returned by the division or the chief probation officer of the county to the court of jurisdiction for alternative disposition, specifically due to the statutorily required closure of the division. The division shall inform the ward of the duty to register prior to the ward being returned to the court.

(2)  A patient described in Section 1732.10 of the Welfare and Institutions Code. The division shall inform the patient of the duty to register immediately prior to closure of the division.

(3)  A person described in Section 1732.9 of the Welfare and Institutions Code. The Department of Corrections and Rehabilitation shall inform the person of the duty to register immediately prior to the person being returned to the court of jurisdiction.

(i)  The court of jurisdiction shall establish the point at which the ward described in subdivision (h) is required to register and notify the Department of Justice of its decision.

SEC. 14.  Section 457.1 of the Penal Code is amended to read:

457.1.  (a)  As used in this section, "arson" means a violation of Section 451, 451.5, or 453, and attempted arson, which includes, but is not limited to, a violation of Section 455.

(b)  (1)  Every person described in paragraph (2), (3), and (4), for the periods specified therein, shall, while residing in, or if the person has no residence, while located in California, be required to, within 14 days of coming into, or changing the person's residence or location within any city, county, city and county, or campus wherein the person temporarily resides, or if the person has no residence, is located:

(A)  Register with the chief of police of the city where the person is residing, or if the person has no residence, where the person is located.

(B)  Register with the sheriff of the county where the person is residing, or if the person has no residence, where the person is located in an unincorporated area or city that has no police department.

(C)  In addition to (A) or (B) above, register with the chief of police of a campus of the University of California, the California State University, or community college where the person is residing, or if the person has no residence, where the person is located upon the campus or any of its facilities.

(2)  Any person who, on or after November 30, 1994, is convicted in any court in this state of arson or attempted arson shall be required to register, in accordance with the provisions of this section, for the rest of their life.

(3)  Any person who, having committed the offense of arson or attempted arson, and after having been adjudicated a ward of the juvenile court on or after January 1, 1993, is discharged or paroled from the Division of Juvenile Justice shall be required to register, in accordance with the provisions of this section, until that person attains 25 years of age, or until the person has their records sealed pursuant to Section 781 of the Welfare and Institutions Code, whichever comes first.

(4)  Any person convicted of the offense of arson or attempted arson on or after January 1, 1985, through November 29, 1994, inclusive, in any court of this state, shall be required to register, in accordance with the provisions of this section, for a period of five years commencing, in the case where the person was confined for the offense, from the date of their release from confinement, or in the case where the person was not confined for the offense, from the date of sentencing or discharge, if that person was ordered by the court at the time that person was sentenced to register as an arson offender. The law enforcement agencies shall make registration information available to the chief fire official of a legally organized fire department or fire protection district having local jurisdiction where the person resides.

(c)  Any person required to register pursuant to this section who is discharged or paroled from a jail, prison, school, road camp, or other penal institution, or from the Division of Juvenile Justice

where they were confined because of the commission or attempted commission of arson, shall, prior to the discharge, parole, or release, be informed of their duty to register under this section by the official in charge of the place of confinement. The official shall require the person to read and sign the form as may be required by the Department of Justice, stating that the duty of the person to register under this section has been explained to them. The official in charge of the place of confinement shall obtain the address where the person expects to reside upon their discharge, parole, or release and shall report the address to the Department of Justice. The official in charge of the place of confinement shall give one copy of the form to the person, and shall, not later than 45 days prior to the scheduled release of the person, send one copy to the appropriate law enforcement agency having local jurisdiction where the person expects to reside upon their discharge, parole, or release; one copy to the prosecuting agency that prosecuted the person; one copy to the chief fire official of a legally organized fire department or fire protection district having local jurisdiction where the person expects to reside upon their discharge, parole, or release; and one copy to the Department of Justice. The official in charge of the place of confinement shall retain one copy. All forms shall be transmitted in time so as to be received by the local law enforcement agency and prosecuting agency 30 days prior to the discharge, parole, or release of the person.

(d)  All records relating specifically to the registration in the custody of the Department of Justice, law enforcement agencies, and other agencies or public officials shall be destroyed when the person required to register under this subdivision for offenses adjudicated by a juvenile court attains 25 years of age or has their records sealed under the procedures set forth in Section 781 of the Welfare and Institutions Code, whichever event occurs first. This subdivision shall not be construed to require the destruction of other criminal offender or juvenile records relating to the case that are maintained by the Department of Justice, law enforcement agencies, the juvenile court, or other agencies and public officials unless ordered by the court under Section 781 of the Welfare and Institutions Code.

(e)  Any person who is required to register pursuant to this section who is released on probation or discharged upon payment of a fine shall, prior to the release or discharge, be informed of

their duty to register under this section by the probation department of the county in which they have been convicted, and the probation officer shall require the person to read and sign the form as may be required by the Department of Justice, stating that the duty of the person to register under this section has been explained to them. The probation officer shall obtain the address where the person expects to reside upon their release or discharge and shall report within three days the address to the Department of Justice. The probation officer shall give one copy of the form to the person, and shall send one copy to the appropriate law enforcement agency having local jurisdiction where the person expects to reside upon their discharge or release, one copy to the prosecuting agency that prosecuted the person, one copy to the chief fire official of a legally organized fire department or fire protection district having local jurisdiction where the person expects to reside upon their discharge or release, and one copy to the Department of Justice. The probation officer shall also retain one copy.

(f) The registration shall consist of (1) a statement in writing signed by the person, giving the information as may be required by the Department of Justice, and (2) the fingerprints and photograph of the person. Within three days thereafter, the registering law enforcement agency shall electronically forward the statement, fingerprints, and photograph to the Department of Justice.

(g) If any person required to register by this section changes their residence address, they shall inform, in writing within 10 days, the law enforcement agency with whom they last registered of their new address. The law enforcement agency shall, within three days after receipt of the information, electronically forward it to the Department of Justice. The Department of Justice shall forward appropriate registration data to the law enforcement agency having local jurisdiction of the new place of residence.

(h) Any person required to register under this section who violates any of the provisions thereof is guilty of a misdemeanor. Any person who has been convicted of arson or attempted arson and who is required to register under this section who willfully violates any of the provisions thereof is guilty of a misdemeanor and shall be sentenced to serve a term of not less than 90 days nor more than one year in a county jail. In no event does the court have the power to absolve a person who willfully violates this section

from the obligation of spending at least 90 days of confinement in a county jail and of completing probation of at least one year.

(i)  Whenever any person is released on parole or probation and is required to register under this section but fails to do so within the time prescribed, the Board of Prison Terms, the Division of Juvenile Justice, or the court, as the case may be, shall order the parole or probation of that person revoked.

(j)  The statements, photographs, and fingerprints required by this section shall not be open to inspection by the public or by any person other than a regularly employed peace officer or other law enforcement officer.

(k)  In any case in which a person who would be required to register pursuant to this section is to be temporarily sent outside the institution where they are confined on any assignment within a city or county, including, but not limited to, firefighting or disaster control, the local law enforcement agency having jurisdiction over the place or places where that assignment shall occur shall be notified within a reasonable time prior to removal from the institution. This subdivision shall not apply to any person temporarily released under guard from the institution where they are confined.

(*l*)  Nothing in this section shall be construed to conflict with Section 1203.4 concerning termination of probation and release from penalties and disabilities of probation.

A person required to register under this section may initiate a proceeding under Chapter 3.5 (commencing with Section 4852.01) of Title 6 of Part 3 and, upon obtaining a certificate of rehabilitation, shall be relieved of any further duty to register under this section. This certificate shall not relieve the petitioner of the duty to register under this section for any offense subject to this section of which they are convicted in the future.

Any person who is required to register under this section due to a misdemeanor conviction shall be relieved of the requirement to register if that person is granted relief pursuant to Section 1203.4.

(m)  For purposes of this section, a discharged person shall include all of the following:

(1)  A ward in the custody of the Department of Corrections and Rehabilitation, Division of Juvenile Justice on or after July 1, 2022, who, prior to discharge, is returned by the division or the chief probation officer of the county to the court of jurisdiction for

alternative disposition, specifically due to the statutorily required closure of the division. The division shall inform the ward of the duty to register prior to the ward being returned to the court.

(2) A patient described in Section 1732.10 of the Welfare and Institutions Code. The division shall inform the patient of the duty to register immediately prior to closure of the division.

(3) A person described in Section 1732.9 of the Welfare and Institutions Code. The Department of Corrections and Rehabilitation shall inform the person of the duty to register immediately prior to the person being returned to the court of jurisdiction.

(n) The court of jurisdiction shall establish the point at which the ward described in subdivision (m) is required to register and notify the Department of Justice of its decision.

SEC. 15.   Section 679.027 is added to the Penal Code, to read:

679.027.   (a) Every law enforcement agency investigating a criminal act and every agency prosecuting a criminal act shall, as provided herein, at the time of initial contact with a crime victim, during followup investigation, or as soon thereafter as deemed appropriate by investigating officers or prosecuting attorneys, inform each victim, or the victim's next of kin if the victim is deceased, of the rights they may have under applicable law relating to the victimization, including rights relating to housing, employment, compensation, and immigration relief.

(b) (1) Every law enforcement agency investigating a criminal act and every agency prosecuting a criminal act shall, as provided herein, at the time of initial contact with a crime victim, during followup investigation, or as soon thereafter as deemed appropriate by investigating officers or prosecuting attorneys, provide or make available to each victim of the criminal act without charge or cost a "Victim Protections and Resources" card described in paragraph (3).

(2) The Victim Protections and Resources card may be designed as part of and included with the "Marsy Rights" card described by Section 679.026.

(3) By June 1, 2025, the Attorney General shall design and make available in PDF or other imaging format to every agency listed in paragraph (1) a "Victim Protections and Resources" card, which shall contain information in lay terms about victim rights and resources, including, but not limited to, the following:

**AB 160**                          — 72 —

(A)  Information about the rights provided by Sections 230 and 230.1 of the Labor Code.

(B)  Information about the rights provided by Section 1946.7 of the Civil Code.

(C)  Information about the rights provided by Section 1161.3 of the Civil Code, including information in lay terms about which crimes and tenants are eligible and under what circumstances.

(D)  Information about federal immigration relief available to certain victims of crime.

(E)  Information about the program established by Chapter 5 (commencing with Section 13950) of Part 4 of Division 3 of Title 2 of the Government Code, including information about the types of expenses the program may reimburse, eligibility, and how to apply.

(F)  Information about the program established by Chapter 3.1 (commencing with Section 6205) of Division 7 of Title 1 of the Government Code.

(G)  Information about eligibility for filing a restraining or protective order.

(H)  Contact information for the Victims' Legal Resource Center established by Chapter 11 (commencing with Section 13897) of Title 6 of Part 4.

(I)  A list of trauma recovery centers funded by the state pursuant to Section 13963.1 of the Government Code, with their contact information, which shall be updated annually.

(c)  This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

 SEC. 16.  Section 1203.4b of the Penal Code is amended to read:

 1203.4b.  (a)  (1)  If a defendant successfully participated in the California Conservation Camp program as an incarcerated individual hand crew member, as determined by the Secretary of the Department of Corrections and Rehabilitation, or successfully participated as a member of a county incarcerated individual hand crew, as determined by the appropriate county authority, or participated at an institutional firehouse, as determined by the Secretary of the Department of Corrections and Rehabilitation,

and has been released from custody, the defendant is eligible for relief pursuant to this section, except that incarcerated individuals who have been convicted of any of the following crimes are automatically ineligible for relief pursuant to this section:

(A)  Murder.

(B)  Kidnapping.

(C)  Rape as defined in paragraph (2) or (6) of subdivision (a) of Section 261 or paragraph (1) or (4) of subdivision (a) of Section 262.

(D)  Lewd acts on a child under 14 years of age, as defined in Section 288.

(E)  Any felony punishable by death or imprisonment in the state prison for life.

(F)  Any sex offense requiring registration pursuant to Section 290.

(G)  Escape from a secure perimeter within the previous 10 years.

(H)  Arson.

(2)  Any denial of relief pursuant to this section shall be without prejudice.

(3)  For purposes of this subdivision, successful participation in a conservation camp program or a program at an institutional firehouse and successful participation as a member of a county incarcerated individual hand crew, as determined by the appropriate county authority, means the incarcerated individual adequately performed their duties without any conduct that warranted removal from the program.

(b)  (1)  The defendant may file a petition for relief with the court in the county where the defendant was sentenced. The court shall provide a copy of the petition to the secretary, or, in the case of a county incarcerated individual hand crew member, the appropriate county authority.

(2)  If the secretary or appropriate county authority certifies to the court that the defendant successfully participated in the incarcerated individual conservation camp program, or institutional firehouse, or successfully participated as a member of a county incarcerated individual hand crew, as determined by the appropriate county authority, as specified in subdivision (a), and has been released from custody, the court, in its discretion and in the interests of justice, may issue an order pursuant to subdivision (c).

94

**AB 160** — 74 —

(3)  To be eligible for relief pursuant to this section, the defendant is not required to complete the term of their probation, parole, or supervised release. Notwithstanding any other law, the court, in providing relief pursuant to this section, shall order early termination of probation, parole, or supervised release if the court determines that the defendant has not violated any terms or conditions of probation, parole, or supervised release prior to, and during the pendency of, the petition for relief pursuant to this section.

(4)  All convictions for which the defendant is serving a sentence at the time the defendant successfully participates in a program as specified in subdivision (a) are subject to relief pursuant to this section.

(5)  (A)  A defendant who is granted an order pursuant to this section shall not be required to disclose the conviction on an application for licensure by any state or local agency.

(B)  This paragraph does not apply to an application for licensure by the Commission on Teacher Credentialing, a position as a peace officer, public office, or for contracting with the California State Lottery Commission.

(c)  (1)  If the requirements of this section are met, the court, in its discretion and in the interest of justice, may permit the defendant to withdraw the plea of guilty or plea of nolo contendere and enter a plea of not guilty, or, if the defendant has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty, and, in either case, the court shall thereupon dismiss the accusations or information against the defendant and the defendant shall thereafter be released from all penalties and disabilities resulting from the offense of which the defendant has been convicted, except as provided in Section 13555 of the Vehicle Code.

(2)  The relief available pursuant to this section shall not be granted if the defendant is currently charged with the commission of any other offense.

(3)  The defendant may make the application and change of plea in person or by attorney.

(d)  Relief granted pursuant to this section is subject to the following conditions:

(1)  In any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall

— 75 —                          **AB 160**

have the same effect as if the accusation or information had not been dismissed.

(2)  The order shall state, and the defendant shall be informed, that the order does not relieve the defendant of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for licensure by the Commission on Teacher Credentialing, a peace officer, public office, or for contracting with the California State Lottery Commission.

(3)  Dismissal of an accusation or information pursuant to this section does not permit a person to own, possess, or have in the person's custody or control any firearm or prevent their conviction under Chapter 2 (commencing with Section 29800) of Division 9 of Title 4 of Part 6.

(4)  Dismissal of an accusation or information underlying a conviction pursuant to this section does not permit a person prohibited from holding public office as a result of that conviction to hold public office.

(5)  Dismissal of an accusation or information pursuant to this section does not release the defendant from the terms and conditions of any unexpired criminal protective order that has been issued by the court pursuant to paragraph (1) of subdivision (i) of Section 136.2, subdivision (j) of Section 273.5, subdivision (*l*) of Section 368, or subdivision (k) of Section 646.9. These protective orders shall remain in full effect until expiration or until any further order by the court modifying or terminating the order, despite the dismissal of the underlying accusation or information.

(e)  (1)  Relief shall not be granted under this section unless the prosecuting attorney has been given 15 days' notice of the petition for relief.

(2)  It shall be presumed that the prosecuting attorney has received notice if proof of service is filed with the court.

(f)  If, after receiving notice pursuant to subdivision (e), the prosecuting attorney fails to appear and object to a petition for dismissal, the prosecuting attorney may not move to set aside or otherwise appeal the grant of that petition.

SEC. 17.  Section 1463.001 of the Penal Code is amended to read:

1463.001.  Except as otherwise provided in this section, all fines and forfeitures imposed and collected for crimes other than parking offenses resulting from a filing in a court, including civil

assessments imposed under Section 1214.1, shall as soon as practicable after receipt thereof, be deposited with the county treasurer, and each month the total fines and forfeitures which have accumulated within the past month shall be distributed, as follows:

(a) The state penalties, county penalties, special penalties, service charges, penalty allocations, and civil assessments imposed under Section 1214.1, shall be transferred to the proper funds as required by law.

(b) The base fines shall be distributed, as follows:

(1) Any base fines which are subject to specific distribution under any other section shall be distributed to the specified funds of the state or local agency.

(2) Base fines resulting from county arrest not included in paragraph (1), shall be transferred into the proper funds of the county.

(3) Base fines resulting from city arrests not included in paragraph (1), an amount equal to the applicable county percentages set forth in Section 1463.002, as modified by Section 1463.28, shall be transferred into the proper funds of the county. Until July 1, 1998, the remainder of base fines resulting from city arrests shall be divided between each city and county, with 50 percent deposited to the county's general fund, and 50 percent deposited to the treasury of the appropriate city, and thereafter the remainder of base fines resulting from city arrests shall be deposited to the treasury of the appropriate city.

(4) In a county that had an agreement as of March 22, 1977, that provides for city fines and forfeitures to accrue to the county in exchange for sales tax receipts, base fines resulting from city arrests not included in paragraph (1) shall be deposited into the proper funds of the county.

(c) Each county shall keep a record of its deposits to its treasury and its transmittal to each city treasury pursuant to this section.

(d) The distribution specified in subdivision (b) applies to all funds subject thereto distributed on or after July 1, 1992, regardless of whether the court has elected to allocate and distribute funds pursuant to Section 1464.8.

(e) Any amounts remitted to the county from amounts collected by the Franchise Tax Board upon referral by a county pursuant to Article 6 (commencing with Section 19280) of Chapter 5 of Part

10.2 of Division 2 of the Revenue and Taxation Code shall be allocated pursuant to this section.

SEC. 18.   Section 4900 of the Penal Code is amended to read:

4900.   (a)   Any person who, having been convicted of any crime against the state amounting to a felony and imprisoned in the state prison or incarcerated in county jail pursuant to subdivision (h) of Section 1170 for that conviction, is granted a pardon by the Governor for the reason that the crime with which they were charged was either not committed at all or, if committed, was not committed by the person, or who, being innocent of the crime with which they were charged for either of those reasons, shall have served the term or any part thereof for which they were imprisoned in state prison or incarcerated in county jail, may, under the conditions provided under this chapter, present a claim against the state to the California Victim Compensation Board for the injury sustained by the person through the erroneous conviction and imprisonment or incarceration.

(b)   If a state or federal court has granted a writ of habeas corpus or if a state court has granted a motion to vacate pursuant to Section 1473.6 or paragraph (2) of subdivision (a) of Section 1473.7, and the charges were subsequently dismissed, or the person was acquitted of the charges on a retrial, the California Victim Compensation Board shall, upon application by the person, and without a hearing, approve payment to the claimant if sufficient funds are available, upon appropriation by the Legislature, pursuant to Section 4904, unless the Attorney General establishes pursuant to subdivision (d) of Section 4902, that the claimant is not entitled to compensation.

(c)   (1)   This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2)   The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 18.5.   Section 4900 of the Penal Code is amended to read:

4900.   (a)   Any person who, having been convicted of any crime against the state amounting to a felony and imprisoned in the state

94

prison or incarcerated in county jail pursuant to subdivision (h) of Section 1170 for that conviction, is granted a pardon by the Governor for the reason that the crime with which they were charged was either not committed at all or, if committed, was not committed by the person, or who, being innocent of the crime with which they were charged for either of those reasons, shall have served the term or any part thereof for which they were imprisoned in state prison or incarcerated in county jail, may, under the conditions provided under this chapter, present a claim against the state to the California Victim Compensation Board for the injury sustained by the person through the erroneous conviction and imprisonment or incarceration.

(b)  If a state or federal court has granted a writ of habeas corpus or if a state court has granted a motion to vacate pursuant to Section 1473.6 or paragraph (2) of subdivision (a) of Section 1473.7, and the charges were subsequently dismissed, or the person was acquitted of the charges on a retrial, the California Victim Compensation Board shall, upon application by the person, and without a hearing, find that the crime with which the claimant was charged was either not committed at all, or, if committed, was not committed by the claimant, and approve payment to the claimant if sufficient funds are available, upon appropriation by the Legislature, pursuant to Section 4904, and the petitioner shall be provided with the relief available pursuant to subdivision (c) of Section 11117, unless the Attorney General establishes pursuant to subdivision (e) of Section 4902, that the claimant is not entitled to compensation.

(c)  (1)  This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2)  The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 19.  Section 4900 is added to the Penal Code, to read:

4900.  (a)  Any person who, having been convicted of any crime against the state amounting to a felony, and imprisoned in the state prison or incarcerated in county jail pursuant to subdivision (h) of

Section 1170 for that conviction, is granted a pardon by the Governor for the reason that the crime with which they were charged was either not committed at all or, if committed, was not committed by the person, or who, being innocent of the crime with which they were charged for either of those reasons, has served the term or any part thereof for which they were imprisoned in state prison, incarcerated in county jail, on parole, or under supervised release, may, under the conditions provided under this chapter, present a claim against the state to the California Victim Compensation Board for the injury sustained by the person through the erroneous conviction and imprisonment or incarceration.

(b)   If a state or federal court has granted a writ of habeas corpus or if a state court has granted a motion to vacate pursuant to Section 1473.6 or paragraph (2) of subdivision (a) of Section 1473.7, and the charges were subsequently dismissed, or the person was acquitted of the charges on a retrial, the California Victim Compensation Board shall, upon application by the person, and without a hearing, approve payment to the claimant if sufficient funds are available, upon appropriation by the Legislature, pursuant to Section 4904, unless the Attorney General establishes pursuant to subdivision (d) of Section 4902, that the claimant is not entitled to compensation.

(c)   This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 19.5.   Section 4900 is added to the Penal Code, to read:

4900.   (a)   Any person who, having been convicted of any crime against the state amounting to a felony, and imprisoned in the state prison or incarcerated in county jail pursuant to subdivision (h) of Section 1170 for that conviction, is granted a pardon by the Governor for the reason that the crime with which they were charged was either not committed at all or, if committed, was not committed by the person, or who, being innocent of the crime with which they were charged for either of those reasons, has served the term or any part thereof for which they were imprisoned in state prison, incarcerated in county jail, on parole, or under supervised release, may, under the conditions provided under this chapter, present a claim against the state to the California Victim

Compensation Board for the injury sustained by the person through
the erroneous conviction and imprisonment or incarceration.

(b)  If a state or federal court has granted a writ of habeas corpus
or if a state court has granted a motion to vacate pursuant to Section
1473.6 or paragraph (2) of subdivision (a) of Section 1473.7, and
the charges were subsequently dismissed, or the person was
acquitted of the charges on a retrial, the California Victim
Compensation Board shall, upon application by the person, and
without a hearing, find that the crime with which the claimant was
charged was either not committed at all, or, if committed, was not
committed by the claimant, and approve payment to the claimant
if sufficient funds are available, upon appropriation by the
Legislature, pursuant to Section 4904, and the petitioner shall be
provided with the relief available pursuant to subdivision (c) of
Section 11117, unless the Attorney General establishes pursuant
to subdivision (e) of Section 4902, that the claimant is not entitled
to compensation.

(c)  This section shall become operative on July 1, 2024, only
if General Fund moneys over the multiyear forecasts beginning in
the 2024–25 fiscal year are available to support ongoing
augmentations and actions, and if an appropriation is made to
backfill the Restitution Fund to support the actions in this section.

SEC. 20.  Section 4904 of the Penal Code is amended to read:

4904.  (a)  If the evidence shows that the crime with which the
claimant was charged was either not committed at all, or, if
committed, was not committed by the claimant, or for claims
pursuant to subdivision (b) of Section 4900, the Attorney General's
office has not met their burden of proving by clear and convincing
evidence that the claimant committed the acts constituting the
offense, and the California Victim Compensation Board has found
that the claimant has sustained injury through their erroneous
conviction and imprisonment, the California Victim Compensation
Board shall approve payment for the purpose of indemnifying the
claimant for the injury if sufficient funds are available, upon
appropriation by the Legislature. The amount of the payment shall
be a sum equivalent to one hundred forty dollars ($140) per day
of incarceration served, and shall include any time spent in custody,
including in a county jail, that is considered to be part of the term
of incarceration. That payment shall not be treated as gross income
to the recipient under the Revenue and Taxation Code.

94

— 81 —                                    **AB 160**

(b) (1)  This section shall become inoperative on July 1, 2024,
only if General Fund moneys over the multiyear forecasts
beginning in the 2024–25 fiscal year are available to support
ongoing augmentations and actions, and if an appropriation is
made to backfill the Restitution Fund to support the actions in this
section. If those conditions are met, this section is repealed January
1, 2025.

(2)  The amendments made by the act adding this subdivision
shall become operative on January 1, 2023.

SEC. 20.5.  Section 4904 of the Penal Code is amended to read:

4904.  (a)  If the evidence shows that the crime with which the
claimant was charged was either not committed at all, or, if
committed, was not committed by the claimant, or for claims
pursuant to subdivision (b) of Section 4900, the Attorney General's
office has not met their burden of proving by clear and convincing
evidence that the claimant committed the acts constituting the
offense, and the California Victim Compensation Board has found
that the claimant has sustained injury through their erroneous
conviction and imprisonment, the California Victim Compensation
Board shall approve payment for the purpose of indemnifying the
claimant for the injury if sufficient funds are available, upon
appropriation by the Legislature. The amount of the payment shall
be a sum equivalent to one hundred forty dollars ($140) per day
of incarceration served solely as a result of the former conviction,
and shall include any time spent in custody, including in a county
jail, that is considered to be part of the term of incarceration. That
payment shall not be treated as gross income to the recipient under
the Revenue and Taxation Code.

(b)  Any person granted relief pursuant to this section or Section
851.86 prior to January 1, 2023, or pursuant to subdivision (a),
(c), or (e) of Section 1485.55, is entitled, upon application and
submission of proof by the claimant to the board, to a determination
of the number of days that the individual was incarcerated solely
as a result of the former conviction, and the number of days that
the individual was on parole, community supervision, or was
required to register as a sex offender solely as a result of the former
conviction.

(c)  When the California Victim Compensation Board makes a
determination under subdivision (b), or a finding of innocence
under Section 4900, 4902, or 4904, the board shall report all of

94

the following to the Department of Justice, in a manner prescribed
by the Department of Justice:

(1)  A description of the proceedings.

(2)  The finding of innocence.

(3)  The number of days that the individual was incarcerated
solely as a result of the former conviction.

(4)  The number of days that the individual was on parole,
community supervision, or was required to register as a sex
offender solely as a result of the former conviction.

(d)  When a court orders a finding of innocence under Section
851.86 or 1485.55, the court shall report the proceedings and the
finding of innocence to the Department of Justice, in a manner
pursuant to subdivision (a) of Section 11117. The report shall
include the number of days that the defendant was incarcerated,
including in pretrial detention, solely as a result of the former
conviction, the number of days that the individual was on parole
or community supervision solely as a result of the former
conviction, and the number of days the defendant was required to
register as a sex offender solely as a result of the former conviction.

(e)  (1)  This section shall become inoperative on July 1, 2024,
only if General Fund moneys over the multiyear forecasts
beginning in the 2024–25 fiscal year are available to support
ongoing augmentations and actions, and if an appropriation is
made to backfill the Restitution Fund to support the actions in this
section. If those conditions are met, this section is repealed January
1, 2025.

(2)  The amendments made by the act adding this subdivision
shall become operative on January 1, 2023.

SEC. 21.  Section 4904 is added to the Penal Code, to read:

4904.  (a)  If the evidence shows that the crime with which the
claimant was charged was either not committed at all, or, if
committed, was not committed by the claimant, or for claims
pursuant to subdivision (b) of Section 4900, the Attorney General's
office has not met their burden of proving by clear and convincing
evidence that the claimant committed the acts constituting the
offense, and the California Victim Compensation Board has found
that the claimant has sustained injury through their erroneous
conviction and imprisonment, the California Victim Compensation
Board shall approve payment for the purpose of indemnifying the
claimant for the injury if sufficient funds are available, upon

appropriation by the Legislature. The amount of the payment shall include the following:

(1) A sum equivalent to one hundred forty dollars ($140) per day of incarceration served solely as a result of the former conviction, and shall include any time spent in custody, including in a county jail, that is considered to be part of the term of incarceration.

(2) A sum equivalent to seventy dollars ($70) per day served on parole pursuant to Section 3000 or 3000.1 or on supervised release solely as a result of the former conviction.

(b) The amounts provided in paragraphs (1) and (2) of subdivision (a) shall be updated annually to reflect changes in the Bureau of Labor Statistics Consumer Price Index, West Region, commencing one year after this section becomes effective.

(c) Funds received by the claimant under this section shall not be treated as gross income to the recipient under the Revenue and Taxation Code.

(d) This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 21.5. Section 4904 is added to the Penal Code, to read:

4904. (a) If the evidence shows that the crime with which the claimant was charged was either not committed at all, or, if committed, was not committed by the claimant, or for claims pursuant to subdivision (b) of Section 4900, the Attorney General's office has not met their burden of proving by clear and convincing evidence that the claimant committed the acts constituting the offense, and the California Victim Compensation Board has found that the claimant has sustained injury through their erroneous conviction and imprisonment, the California Victim Compensation Board shall approve payment for the purpose of indemnifying the claimant for the injury if sufficient funds are available, upon appropriation by the Legislature. The amount of the payment shall include the following:

(1) A sum equivalent to one hundred forty dollars ($140) per day of incarceration served solely as a result of the former conviction, and shall include any time spent in custody, including

**AB 160** — 84 —

in a county jail, that is considered to be part of the term of incarceration.

(2) A sum equivalent to seventy dollars ($70) per day served on parole pursuant to Section 3000 or 3000.1 or on supervised release solely as a result of the former conviction.

(b) The amounts provided in paragraphs (1) and (2) of subdivision (a) shall be updated annually to reflect changes in the Bureau of Labor Statistics Consumer Price Index, West Region, commencing one year after this section becomes effective.

(c) Funds received by the claimant under this section shall not be treated as gross income to the recipient under the Revenue and Taxation Code.

(d) Any person granted relief pursuant to this section or Section 851.86 prior to January 1, 2023, or pursuant to subdivision (a), (c), or (e) of Section 1485.55, is entitled, upon application and submission of proof by the claimant to the board, to a determination of the number of days that the individual was incarcerated solely as a result of the former conviction, and the number of days that the individual was on parole, community supervision, or was required to register as a sex offender solely as a result of the former conviction.

(e) When the California Victim Compensation Board makes a determination under subdivision (d), or a finding of innocence under Section 4900, 4902, or 4904, the board shall report all of the following to the Department of Justice, in a manner prescribed by the Department of Justice:

(1) A description of the proceedings.

(2) The finding of innocence.

(3) The number of days that the individual was incarcerated solely as a result of the former conviction.

(4) The number of days that the individual was on parole, community supervision, or was required to register as a sex offender solely as a result of the former conviction.

(f) When a court orders a finding of innocence under Section 851.86 or 1485.55, the court shall report the proceedings and the finding of innocence to the Department of Justice, in a manner pursuant to subdivision (a) of Section 11117. The report shall include the number of days that the defendant was incarcerated, including in pretrial detention, solely as a result of the former conviction, the number of days that the individual was on parole

94

or community supervision solely as a result of the former conviction, and the number of days the defendant was required to register as a sex offender solely as a result of the former conviction.

(g)  This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 22.  Section 1732.10 of the Welfare and Institutions Code is amended to read:

1732.10.  (a) Notwithstanding any other law, unless the committing court orders an alternative placement, upon closure of the Division of Juvenile Justice, the State Department of State Hospitals shall continue to provide evaluation, care, and treatment of state hospital patients referred by the division pursuant to Section 1756 and Interagency Agreement 21-00189, or a predecessor agreement, until clinical discharge, as defined in paragraph (9) of subdivision (b) is recommended by the State Department of State Hospitals, or until the patient referred by the division reaches the hospitalization release date in subdivision (e). When discharge is clinically indicated, the State Department of State Hospitals shall notify the juvenile court of commitment, juvenile counsel of record, the probation department, and the behavioral health department. The State Department of State Hospitals shall collaborate with county probation and behavioral health to ensure continuity of care. The division shall provide contact information for the committing court, juvenile counsel of record, and related probation department for all patients in the custody of the State Department of State Hospitals upon enactment of this section and any youth placed at the State Department of State Hospitals prior to closure of the division.

(b)  Notwithstanding the confidentiality provision for information and records set forth under Section 5328, for any youth referred by the division who remains a patient after closure of the division, the State Department of State Hospitals shall do the following:

(1) Collaborate with the county probation department and behavioral health department prior to the expected discharge from the state hospital to assist the county in determining the least restrictive legal alternative placement for the youth.

(2)  Provide the court, juvenile counsel of record, and county probation department, upon closure of the division and annually thereafter, a copy of the finalized treatment plan specifying the youth's goals of hospitalization, assessed needs, and how the staff will assist the youth to achieve the goals and objectives.

(3)  Notify the juvenile court of commitment, juvenile counsel of record, and county probation as soon as safely possible, but no later than 24 hours following any of the following:

(A)  A suicide or serious attempted suicide.

(B)  A serious injury or battery, with or without a weapon.

(C)  An alleged sexual assault.

(D)  An escape or attempted escape.

(4)  Provide county probation, biannually, a synopsis of behavioral incidences, including, but not limited to, self-harm, assault, contraband, and property damage.

(5)  Notify the committing court, juvenile counsel of record, and the county probation department if a youth refuses to consent to clinically necessary medication treatment and provide the court with the clinical records and testimony necessary for the court to consider an order for involuntary medication administration. Notwithstanding any other law, the State Department of State Hospitals shall utilize the process outlined in Section 4210 of Title 9 of the California Code of Regulations and In re Qawi (2004) 32.Cal.4th.1 to obtain involuntary medication orders.

(6)  Notify individuals covered by a youth's medical release of information, the juvenile counsel of record, the juvenile committing court, and the county probation department within 24 hours of the youth being hospitalized for a serious medical condition.

(7)  Notify the youth's next of kin on record, juvenile counsel of record, the juvenile committing court, and the county probation department of the county of commitment within 24 hours, and the local county coroner and local law enforcement agencies within two hours, of the discovery of death when a youth dies during hospitalization at a state hospital, or if the death occurred immediately following transfer from a state hospital to a community medical facility.

(8)  Notify the juvenile committing court, the juvenile counsel of record, and probation department if it believes the youth requires conservatorship upon discharge. For continuity of care, the State Department of State Hospitals shall accommodate any necessary

access to the youth or medical records as needed for arranging conservatorship.

(9)  Notify the juvenile court of commitment, juvenile counsel of record, and the county probation department when the youth is ready to discharge to the county based on the following:

(A)  When the youth has improved to a degree that further hospitalization is unnecessary, or the primary illness or problem for which hospitalization was required is in substantial remission, and the remaining symptoms are those of a disorder for which hospitalization in a state hospital is not clinically necessary.

(B)  When further hospitalization is unnecessary, not clinically appropriate, and will provide no further benefit.

(C)  When a court has ordered an alternative placement.

(D)  When the youth has reached the hospitalization release date described in subdivision (e).

(10)  Provide a written discharge summary and all other pertinent medical and mental health data to the receiving juvenile court of commitment, juvenile counsel of record, and county probation department.

(c)  For a youth remaining a patient in a state hospital pursuant to this section, the probation department shall do all of the following:

(1)  Upon notification of discharge criteria having been met from the State Department of State Hospitals, find a placement for the patient within 45 days.

(2)  Provide transportation to court appearances and from the state hospital to the county designated placement within 7 calendar days of the discharge date.

(3)  Reimburse the State Department of State Hospitals for any off-site medical or surgical health care expense, if services could not be provided by the State Department of State Hospitals and prior approval was received from the county, except in cases of emergency.

(d)  The county of commitment shall not be charged by the state for a person placed in a state hospital by the division prior to closure pursuant to Section 1756 or Interagency Agreement 21-00189 or a predecessor agreement, during this placement.

(e)  A person in a state hospital under the provisions of Section 1756 or this section shall be released and discharged to the county of commitment no later than the person's maximum juvenile

confinement time, as determined by Section 607 and all other provisions of law.

(f)  Immediately prior to closure, the division shall notify the juvenile court of commitment and the juvenile counsel of record of the youth's most recent projected board hearing date for court consideration.

(g)  This section shall only apply to the youth referred by the division prior to closure who remain a patient in a state hospital after closure of the division. Additional youth shall not be subject to this section.

(h)  This section shall remain in effect only until January 1, 2031, and as of that date is repealed.

SEC. 23.  If the Commission on State Mandates determines that this act contains costs mandated by the state, reimbursement to local agencies and school districts for those costs shall be made pursuant to Part 7 (commencing with Section 17500) of Division 4 of Title 2 of the Government Code.

SEC. 24.  This act is a bill providing for appropriations related to the Budget Bill within the meaning of subdivision (e) of Section 12 of Article IV of the California Constitution, has been identified as related to the budget in the Budget Bill, and shall take effect immediately.

SEC. 25.  (a)  Sections 2.5 and 3.5 of this bill incorporate amendments to Section 13956 of the Government Code proposed by both this bill and Senate Bill 299. Those sections of this bill shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2023, but this bill becomes operative first, (2) each bill amends Section 13956 of the Government Code, and (3) this bill is enacted after Senate Bill 299, in which case Section 13956 of the Government Code, as amended by Section 2 of this bill, shall remain operative only until the operative date of Senate Bill 299, at which time Section 2.5 of this bill shall become operative.

(b)  Sections 4.5 and 5.5 of this bill incorporate amendments to Section 13957 of the Government Code proposed by both this bill and Senate Bill 877. Those sections of this bill shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2023, but this bill becomes operative first, (2) each bill amends Section 13957 of the Government Code, and (3) this bill is enacted after Senate Bill 877, in which case Section

13957 of the Government Code, as amended by Section 4 of this bill, shall remain operative only until the operative date of Senate Bill 877, at which time Section 4.5 of this bill shall become operative.

(c)  Sections 18.5 and 19.5 of this bill incorporate amendments to Section 4900 of the Penal Code proposed by both this bill and Senate Bill 1468. Those sections of this bill shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2023, but this bill becomes operative first, (2) each bill amends Section 4900 of the Penal Code, and (3) this bill is enacted after Senate Bill 1468, in which case Section 4900 of the Penal Code, as amended by Section 18 of this bill, shall remain operative only until the operative date of Senate Bill 1468, at which time Section 18.5 of this bill shall become operative.

(d)  Sections 20.5 and 21.5 of this bill incorporate amendments to Section 4904 of the Penal Code proposed by both this bill and Senate Bill 1468. Those sections of this bill shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2023, but this bill becomes operative first, (2) each bill amends Section 4904 of the Penal Code, and (3) this bill is enacted after Senate Bill 1468, in which case Section 4904 of the Penal Code, as amended by Section 20 of this bill, shall remain operative only until the operative date of Senate Bill 1468, at which time Section 20.5 of this bill shall become operative.

SEC. 26.  Section 12 of this bill shall only become operative if Senate Bill 688 of the 2021–22 Regular Session is enacted and becomes effective on or before January 1, 2023.

Approved _____, 2022

_____
                        *Governor*