1   C.D. Michel-SBN 144258
    Anna M. Barvir-SBN 268728
2   Tiffany D. Cheuvront-SBN 317144
    MICHEL & ASSOCIATES, P.C.
3   180 East Ocean Blvd., Suite 200
    Long Beach, CA 90802
4   Telephone: (562) 216-4444
    Fax: (562) 216-4445
5   Email: cmichel@michellawyers.com

6   Attorneys for Plaintiffs Junior Sports Magazines Inc., Raymond Brown, California
    Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting
7   Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA
    Foundation, and Gun Owners of California, Inc.

8
    Donald Kilmer-SBN 179986
9   Law Offices of Donald Kilmer, APC
    14085 Silver Ridge Road
10  Caldwell, Idaho 83607
    Telephone: (408) 264-8489
11  Email: Don@DKLawOffice.com

12  Attorney for Plaintiff Second Amendment Foundation

13              IN THE UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 15  JUNIOR SPORTS MAGAZINES INC., RAYMOND BROWN, | CASE NO: 2:22-cv-04663-CAS (JCx) |
| 16  CALIFORNIA YOUTH SHOOTING SPORTS ASSOCIATION, INC., | **PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| 17  REDLANDS CALIFORNIA YOUTH CLAY SHOOTING | |
| 18  SPORTS, INC., CALIFORNIA RIFLE & PISTOL ASSOCIATION, | Hearing Date:      October 17, 2022 |
| 19  INCORPORATED, THE CRPA FOUNDATION, AND GUN | Hearing Time:     10:00 a.m. Courtroom:        8D |
| 20  OWNERS OF CALIFORNIA, INC.; and SECOND AMENDMENT | Judge:               Christina A. Snyder |
| 21  FOUNDATION, | |
| 22                     Plaintiffs, | |
| 23                   v. | |
| 24  ROB BONTA, in his official capacity as Attorney General of the State of | |
| 25  California; and DOES 1-10, | |
| 26                     Defendant. | |
| 27 | |
| 28 | |

# TABLE OF CONTENTS

**Page**

Table of Contents.....................................................................................................i

Table of Authorities .............................................................................................ii

Introduction............................................................................................................1

Argument ...............................................................................................................2

I.     AB 160 Does Not Save California's Firearm-speech Ban; The Law Still Violates Plaintiffs' Rights Under the First Amendment...................................2

     A.    Even If AB 160 Takes Effect, AB 2571 Is Still a Content- and Viewpoint-based Restriction on Plaintiffs' Commercial and Non-commercial Speech ...............................................................................2

     B.    AB 2571 Cannot Survive Any Level of Judicial Scrutiny Applicable to Restrictions on Protected Speech.........................................................7

          1.    Subsection (c)(3), AB 160's exemption for speech promoting certain lawful activities, confirms that AB 2571 restricts nonmisleading commercial speech about lawful activities. ....7

          2.    AB 2571 does not directly or materially advance the State's purported public safety interest ........................................8

          3.    AB 2571 is far more extensive than necessary to promote the State's purported public safety interests....................................11

II.    AB 2571 Also Violates Plaintiffs' Right to Equal Protection ......................15

III.   The Other Preliminary Injunction Factors Favor Relief .........................……15

Conclusion .........................................................................................................16

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*44 Liquormart v. Rhode Island,*
   517 U.S. 484 (1996) ...................................................................... 10, 12

*Ashcroft v. Am. Civ. Libs. Union,*
   535 U.S. 564 (2002) ........................................................................ 14

*Brandenburg v. Ohio,*
   395 U.S. 444 (1969) ........................................................................ 10

*Brown v. Entertainment Merchants Ass'n,*
   564 U.S. 786 (2011) .................................................................... 13, 14

*Carey v. Population Services Int'l,*
   431 U.S. 678 (1977) ................................................................ 10, 12, 13

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,*
   447 U.S. 557 (1980) ........................................................................ 11

*Chaplinsky v. New Hampshire,*
   315 U.S. 568 (1942) ........................................................................ 14

*Dariano v. Morgan Hill Unif. Sch. Dist.,*
   767 F.3d 764 (9th Cir. 2014) ............................................................ 15

*Edge v. City of Everett,*
   929 F.3d 657 (9th Cir. 2019) .............................................................. 6

*Erznoznik v. Jacksonville,*
   4322 U.S. 205 (1975) ...................................................................... 14

*Lorillard Tobacco Co. v. Reilly,*
   533 U.S. 525 (2001) .................................................................... 12, 13

*N.Y. State Rifle & Pistol Ass'n v. City of New York (NYSRPA),*
   __U.S.__, 140 S. Ct. 1525 (2019) ...................................................... 1

*N.Y. State Rifle & Pistol Ass'n v. Bruen,*
   __ U.S. __, 142 S. Ct. 2111 (2022) .................................................... 14

*Pittsburgh Press Co. v. Human Relations Comm'n,*
   413 U.S. 376 (1973) ........................................................................ 10

*Police Dep't of Chic. v. Mosley*,
    408 U.S. 92 (1972) ................................................................................ 15

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) .............................................................................. 7

*Rubin v. Coors Brewing Co.*,
    514 U.S. 476 (1995) ............................................................................ 11

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) ......................................................................... 9, 10

*Thompson v. W. States Med. Ctr.*,
    535 U.S. 357 (2002) ............................................................................ 12

*Tracy Rifle & Pistol LLC v. Harris*,
    339 F. Supp. 3d 1007 (E.D. Cal. 2018) ........................................ 11, 12

*United States v. Edge Broad. Co.*,
    509 U.S. 418 (1993) ............................................................................ 10

*Va. Pharm. Bd. v. Va. Citzs. Consumer Council*,
    425 U.S. 748 (1976) ............................................................................ 10

*Valle Del Sol v. Whiting*,
    709 F.3d 808 (9th Cir. 2013) .............................................................. 11

**Statutes**

Cal. Bus. & Prof. Code § 22949.80 ..................................................*passim*

Cal. Pen. Code § 25100 ...................................................................... 12

Cal. Pen. Code § 27510 ...................................................................... 12

Cal. Pen. Code § 29615 ........................................................................ 8

Cal. Pen. Code § 29655 ........................................................................ 8

**Other Authorities**

Lewis Carroll,
    *Through the Looking-Glass and What Alice Found There* .................. 9

U.S. Const., amend. I ........................................................................*passim*

U.S. Const., amend. II ........................................................................ 14

TABLE OF AUTHORITIES

1

U.S. Const., amend. XIV ................................................................... 1, 15

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF AUTHORITIES

**INTRODUCTION**

A supplemental round of briefing became necessary when the state of California, rather than defend the law they urgently enacted, decided to not-so-urgently[1] change the law. This is a tactic denied to run-of-the-mill defendants but is an increasingly favored tactic by sovereign-defendants facing stiff odds defending their unconstitutional policies. *See generally*, *N.Y. State Rifle & Pistol Ass'n v. City of New York* (*NYSRPA*), __U.S.__, 140 S. Ct. 1525 (2019). Unlike the defendants in *NYSRPA*, the government here has not (yet) claimed that the change in law moots the controversy. Their lawyers, in a valiant but futile effort, instead claim that the amendments made to AB 2571, by AB 160, merely remove doubt and clarify the law by making explicit some exemptions that they claim were already implicit in the original text. Barvir Decl. Supp. Pls.' Ex Parte App. (ECF No. 23), Ex. 1.

Even if creating a carve-out for censorship somehow "clarifies" an inherently flawed policy, Plaintiffs contend that even this "new-and-improved" AB 2571[2] fails to respect the First Amendment. This Court should be skeptical too. AB 160 made only three edits to the State's ban on firearm-related speech. Two were non-substantive word swaps. The third was the addition of a new subsection that, far from helping the State, supports Plaintiffs' arguments that this law is fundamentally flawed on First and Fourteenth Amendment grounds. AB 160 did not fix AB 2571. It sealed its fate as an irrational and unconstitutional law.

/ / /

/ / /

/ / /

---

[1] As of filing, Assembly Bill 160 has still not been signed by the governor. It was presented to him on August 31, 2022. Subsection (1) of that legislation purports to amend AB 2571. In contrast, Governor Newsom signed AB 2571 on June 30, 2022, as "urgency" legislation hours after it was presented to him. It seems "urgency" has a fluid definition at the state Capitol.

[2] For continuity, Plaintiffs refer to the challenged law—Business & Professions Code section 22949.80—as AB 2571.

PLAINTIFFS' SUPPLEMENTAL BRIEF

## ARGUMENT

**I.    AB 2571 VIOLATES PLAINTIFFS' RIGHTS UNDER THE FIRST AMENDMENT**

> **A.    Even If AB 160 Takes Effect, AB 2571 Is Still a Content- and Viewpoint-based Restriction on Plaintiffs' Commercial and Non-commercial Speech**

In the parties' initial briefing, they argued at length over whether AB 2571 restricted only commercial speech or also banned ideological and educational speech about the use of firearms and related products. Opp'n 7-12; Reply 2-8. As Plaintiffs established, AB 2571 "bars 'firearm industry members' from making or distributing any 'communication' 'in exchange for monetary compensation' if the speech (1) 'concerns' a 'firearm-related product,' (2) is designed, intended, or could reasonably be considered [to be] 'attractive to minors,' and (3) seeks to encourage the audience … to either purchase or use the product." Reply 2-3 (quoting Cal. Bus. & Prof. Code § 22949.80(a)(1), (c)(6)). In short, the plain language of AB 2571 as adopted restricts not just speech that proposes the commercial sale of "firearm-related products," but also a wide swath of pure speech promoting the use of such products. Reply 2-8; Brown Decl., ¶¶ 8-5; Coleman Decl., ¶¶ 4-10; Fink Decl., ¶¶ 9-20; Gomez Decl., ¶¶ 5-11; Gottlieb Decl., ¶¶ 7-13; Minnich Decl., ¶¶ 7-15; Rangel Decl., ¶¶ 3-11; *see also* Suppl. Brown Decl., ¶¶ 2-6; Suppl. Coleman Decl., ¶¶ 2-9; Suppl. Fink Decl., ¶¶ 2-5; Suppl. Gomez Decl., ¶¶ 2-9; Suppl. Gottlieb Decl., ¶¶ 2-5; Suppl. Minnich Decl., ¶¶ 2-7.

With the introduction and adoption of AB 160, which amended AB 2571 in an apparent attempt to narrow the scope of the law, the State is poised to remove its gag on certain enumerated types of firearm-related speech. For instance, it no longer prohibits Plaintiffs CRPA and SAF from engaging in communications promoting junior membership in their organizations. Cal. Bus & Prof. Code § 22949.80(a)(3). And it allows Plaintiffs Brown, CYSSA, RCYCSS, and CRPA to resume advertisements to youth for their "firearm safety program[s], hunting safety or promotional program[s], firearm instructional course[s], sport shooting event[s] or

1   competition[s]" and other lawful "hunting activit[ies]." *Id.* But make no mistake.

2   The law remains a content- and viewpoint-based restriction on Plaintiffs'

3   commercial and non-commercial speech.

4         Indeed, aside from adding subsection (c)(3), which carved out a limited

5   exemption for some categories of pure speech,[3] AB 160 made just two non-

6   substantive changes to the original text of AB 2571. The first edit merely swaps the

7   preposition "concerning" in subsection (a)(1) with the verb phrase "offering or

8   promoting." Suppl. Req. Jud. Ntc., Ex. 33 at 11. So the law now reads: "A firearm

9   industry member shall not advertise, market, or arrange for placement of an

10  advertising or marketing communication *offering or promoting* any firearm-related

11  product in a manner that is designed, intended, or reasonably appears to be attractive

12  to minors." *Id.* (emphasis added).

13        The second edit removes "service" from the phrase "product or service" in

14  subsection (c)(6) and deletes "purchase or use the product or service" in favor of

15  "engage in a commercial transaction." The subsection now reads:

16            "Marketing or advertising" means, in exchange for monetary

          compensation, to make a communication, to one or more

17            individuals, or to arrange for the dissemination to the public

          of a communication, about a *product*, the primary purpose of

18            which is the encourage the recipients of the communication

          to *engage in a commercial transaction*.

19

20  *Id.*, Ex. 33 at 13 (emphases added).

21        Read together, AB 2571 (as amended by AB 160) will prohibit "firearm

22  industry members" from making or distributing any "communication" "in exchange

23  for monetary compensation" if the speech (1) "offers" or "promotes" a "firearm-

24  related product," (2) is designed, intended, or could reasonably be considered

25  "attractive to minors," and (3) seeks to encourage the audience to "engage in a

26  commercial transaction." Cal. Bus. & Prof. Code § 22949.80(a)(1), (c)(6)). For the

27  reasons already laid out in Plaintiffs' moving papers (Mot. 11-12; Reply 10-13), the

28  _____

[3] The effect of this exemption on the First Amendment analysis is explained below. Part I.B.1, *infra*.

amended law is still a content- and viewpoint-based regulation of speech/press that targets the messages of particular speakers based on the communication's "subject matter" and its "function or purpose." Indeed, the State's trivial word swaps do not change what is really being prohibited—distributing to the public, including both adults and children, information about firearm-related products that they might wish to use for lawful hunting and shooting activities.

Plaintiffs' supplemental declarations identify specific (non-exhaustive) examples of the types of commercial and non-commercial speech that will remain restricted should AB 160 take effect. Suppl. Brown Decl., ¶¶ 5; Suppl. Coleman Decl., ¶¶ 6-10; Suppl. Fink Decl., ¶¶ 6-9; Suppl. Gomez Decl., ¶¶ 4, 10; Suppl. Gottlieb Decl., ¶ 14; Suppl. Minnich Decl., ¶¶ 8, 12, 16, 20-22, 27. For instance, Plaintiff Junior Sports Magazines will still be barred from publishing and circulating *Junior Shooters* magazine in California. Suppl. Fink Decl., ¶¶ 6-9. That is because the amended law expressly prohibits the sorts of advertisements promoting the sale of lawful firearm-related products found in the pages of *Junior Shooters* magazine. *Id.*, ¶ 7. To prevent substantial liability under AB 2571, Junior Sports Magazines must thus remove all such advertisements from *Junior Shooters* magazine (even though they are both truthful and lawful in the 49 other states where Junior Sports maintains circulation) or continue to bar distribution of the magazine in California entirely. *Id.* Of course, advertising makes publication of *Junior Shooters* magazine economically possible, so ending such advertising is not really an option. *Id.*

Plaintiffs Junior Sports Magazines and CRPA will also continue to be barred from publishing articles and images that endorse firearm-related products designed for use by minors or come in colors or sizes that might be appealing to minors. *Id.*, ¶ 6; Suppl. Minnich Decl., ¶ 12. And they could not publish articles written by youth shooters endorsing specific firearms or ammunition appropriate for competitive shooting applications by youth and smaller shooters. Suppl. Fink Decl., ¶ 6; Suppl. Minnich Decl., ¶ 12.

Plaintiffs Brown and CRPA will continue to see restrictions on the speech that takes place during their firearms training and safety programs and hunter's education courses. Suppl. Brown Decl., ¶ 5; Suppl. Minnich Decl., ¶ 8. That is because the newly amended law exempts only speech "offering" or "promoting" these courses. Suppl. Req. Jud. Ntc., Ex. 33 at 11. It does not exempt the speech that takes place at them. *Id.* As a result, Plaintiffs Brown and CRPA must consider whether it is too risky to resume offering such courses to youth under 18. Suppl. Brown Decl., ¶ 5; Suppl. Minnich Decl., ¶ 8. And, if they do choose to resume such offerings, they must carefully censor their speech since such courses inherently include speech promoting firearm-related products, including recommendations about specific products. Suppl. Brown Decl., ¶ 5; Suppl. Minnich Decl., ¶ 8 (explaining that California's own Hunter Safety Course Study Guide—a resource that every hunter education course in the state must use—incorporates endorsements for "firearm-related products," including hunting ammunition, eye- and ear-protection, adjustable shooting tripods, spotting scopes, and shotgun chokes, among other things).

Similarly, CYSSA's and RCYCSS's volunteers and affiliated coaches and trainers will still be prohibited from endorsing, promoting, or suggesting that their young athletes obtain firearm-related products necessary for their success in the shooting sports. Suppl. Coleman Decl., ¶ 8. And they will be barred from endorsing a specific brand of ammunition or a particular firearm that works best for young and smaller athletes without violating the law. Suppl. Coleman Decl., ¶ 8.

And finally, even with the new exemption for advertising competitive shooting and hunting programs, AB 2571 still restricts Plaintiffs' ability to host and sponsor such activities for youth. Suppl. Gomez Decl., ¶¶ 2-5; Suppl. Minnich Decl., ¶¶ 18-21. That is because these events regularly involve signage, flyers, discussions, branded merchandise, giveaways, and other communications that promote or offer firearm-related products. Suppl. Minnich Decl., ¶ 20. What's more, like most large-

5

scale events, the cost of hosting these opportunities for youth generally must be offset by sponsors, including businesses that sell or manufacture firearms, ammunition, and related goods. *Id.* Sponsors are offered vendor booth space, banners, logo placement, or other forms advertising at these events in exchange for their financial support. *Id.* It is also customary, just like in other sports, to place sponsor logos on youth competitors' uniforms and commemorative t-shirts. *Id.* Because AB 2571 provides no exception for sponsors of youth shooting events or for the speech that takes place at such events, the law threatens Plaintiffs' ability to offer these events for young shooters and effectively silences all the commercial *and* non-commercial speech that takes place that them. Suppl. Gomez Decl., ¶¶ 2-5; Suppl. Minnich Decl., ¶¶ 18-21.

What's more, the AB 160 amendments do not address the vagueness and overbreadth concerns that Plaintiffs identified in their complaint and moving papers. Comp., ¶¶ 7, 48, 114-15; Mot. 15; Reply 4. In fact, by adding *even more* unclear language rather than taking it away, AB 160 makes the law in many ways *more vague and more overbroad*. Suppl. Req. Jud. Ntc., Ex. 33 at 11-13 (retaining overbroad and highly subjective references to communications that are "designed, intended, or reasonably appear[] to be attractive to minors" and adding vague references to "any *similar* program, course, or event"). Plaintiffs thus remain unsure exactly what speech is permissible under the law. So every single time they host an event open to youth, publish a magazine or bulletin, offer merchandise for sale, collaborate with industry-member sponsors or advertisers, or communicate with minors, they must weigh the risks of engaging in this otherwise lawful and truthful speech against the very real and very substantial risk of civil liability. Suppl. Brown Decl., ¶¶ 4-5; Suppl. Coleman Decl., ¶ 10; Suppl. Fink Decl., ¶ 9; Suppl. Gomez Decl., ¶ 10; Suppl. Gottlieb Decl., ¶ 14; Suppl. Minnich Decl., ¶ 27. The very thought is anathema to the fundamental right to free speech. *Edge v. City of Everett*, 929 F.3d 657, 664-65 (9th Cir. 2019) (requiring "specificity of laws" when "First

1  Amendment freedoms are" implicated because unclear laws might "chill[] protected
2  speech or expression by discouraging participation").

3
4  **B.** **AB 2571 Cannot Survive Any Level of Judicial Scrutiny Applicable to Restrictions on Protected Speech**

5  Because AB 2571 is a content-based and viewpoint-discriminatory restriction
6  on the non-commercial, pro-gun speech and associational activities described above,
7  it is presumed invalid and may be upheld only if the government proves it is
8  "narrowly tailored to serve [a] compelling state interest" under strict scrutiny. *Reed*
9  *v. Town of Gilbert*, 576 U.S. 155, 163 (2015). For the reasons set forth in Plaintiffs'
10  moving papers, the State cannot meet its burden under that exacting test and, in fact,
11  did not even attempt to do so. Mot. 13-15; Reply 13. The Court should thus hold that
12  Plaintiffs' are likely to succeed on the merits of their First Amendment claims.

13  But even if the Court finds that the AB 160 amendments effectively limit the
14  law's reach to only speech proposing the commercial sale of firearm-related
15  products, the result is the same. Mot. 15-21; Reply 13-20. By now, it is beyond
16  dispute that AB 2571, both as adopted and as recently amended, bans truthful
17  commercial speech about lawful conduct. Mot. 16-17; Reply 14-15; Req. Jud. Ntc.,
18  Ex 33 at 11-12; *see also* Part I.B., *infra*. The State cannot meet its burden to prove
19  that the law withstands constitutional scrutiny—even under the slightly more
20  forgiving commercial speech test of *Central Hudson*. The AB 160 amendments
21  themselves made this fact all the more clear.

22  **1.** **Subsection (c)(3), AB 160's exemption for speech promoting certain lawful activities, confirms that AB 2571 restricts nonmisleading commercial speech about lawful activities.**
23

24  Even under the State's own dubious theory that advertising "firearm-related
25  products" to minors should become a whole new category of prohibited speech, the
26  State's new "exemption" for communications promoting certain lawful activities
27  swallows the rule. The new exemption reads:

28  This subdivision does not apply to a communication offering
or promoting any firearm safety program, hunting safety or

7

> promotional program, firearm instructional course, sport
> shooting event or competition, or any similar program,
> course, or event, nor does it apply to a communication
> offering or promoting membership in any organization, or
> promotion of lawful hunting activity, including, but not
> limited to, any fundraising event, youth hunting program, or
> outdoor camp.

Req. Jud. Ntc., Ex. 33 at 11-12 (amended § 22949.80 (a)(3)).

This is such a strongly implied admission that it borders on a judicial admission that minors may lawfully possess and shoot firearms in California. Indeed, under this new subsection, "firearm industry members" are expressly allowed to market firearm safety programs, hunting safety courses, firearm instructional courses, and sport shooting events and competitions to minors—presumably so that minors may participate in such activities. *Id.* They may also market "*lawful* hunting activit[ies], including, but not limited to, any fundraising event, *youth* hunting program, or outdoor camp" where minors are highly likely to handle and use firearms, ammunition, and related products. *Id.* (emphasis added).

In short, the amended law acknowledges on its face that, even if they must do so under adult supervision or with parental consent, minors may legally handle and shoot firearms in California. *Id.*; *see also* Cal. Penal Code §§ 29615(a)-(d), 29655; Barvir Decl., Ex. 32 (Department of Fish & Wildlife form seeking parental consent for minor to "handle, manipulate, and/or use firearms" during the state hunter's safety course). Having vigorously resisted this fairly obvious point in its opposition, Opp'n 14-15, it was nice of the State to finally concede the point.

### 2.      AB 2571 does not directly or materially advance the State's purported public safety interest

The State's concession, however, raises a question: Is the State of California seriously suggesting that minors may lawfully engage in activities that require the use of firearm-related products, but that they (and their consenting parents) can be forbidden access to truthful market information about those products before taking part in such activities? The "logic" rivals the White Queen's edict:

> "You couldn't have it if you did want it," the Queen said.

"The rule is, jam tomorrow and jam yesterday – but never jam today."

"It must come sometimes to 'jam today,'" Alice objected.

"No, it can't," said the Queen. "It's jam every other day: today isn't any other day, you know."

Lewis Carroll, *Through the Looking-Glass and What Alice Found There*. It's nonsensical. But more important than that, it illustrates the constitutional vice of AB 2571. That is, the law acknowledges that minors can lawfully enjoy the shooting sports in California, but it punishes those who seek to provide minors with truthful information about the firearm-related products necessary to participate in those lawful activities. This is irrational on its face. And it establishes why AB 2571 neither directly nor materially advances the State's purported public safety interests.

Rather than *directly* attack the perceived problem of *illegal* possession and use of firearms by minors, AB 2571 approaches the issue exactly backwards. It seeks to *indirectly* dampen the demand for even *legal* possession of firearm-related products through advertising restrictions aimed at both minors and adults. But it does so while simultaneously authorizing speech encouraging minors to participate in activities where they will, in fact, be using firearms and related products. Req. Jud. Nt., Ex. 33 at 11-12. The law is thus clearly not concerned with minors gaining access to actual firearms—just the speech that might entice them to do so. Whatever the constitutional contours of regulations on minors' access to actual firearms should be (a question not at issue), California's policy of restricting a minor's access to *information* about firearm-related products, when California openly admits that minors may lawfully use those products, makes the government seem almost schizophrenic.

Again, AB 2571 is, at best, an impermissible restriction on speech that only indirectly serves the State's public safety interest. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 554-55 (2011) (holding that the state may not "achieve its policy objectives through the indirect means of restraining certain speech by certain

9

PLAINTIFFS' SUPPLEMENTAL BRIEF

speakers"). Even though the Supreme Court and the Ninth Circuit have sometimes tolerated indirect advertising restrictions to dampen market demand, *see United States v. Edge Broad. Co.*, 509 U.S. 418, 434 (1993), "when a State entirely prohibits dissemination of truthful, nonmisleading commercial messages for reasons unrelated to the preservation of a fair bargaining process, there is far less reason to depart from the rigorous review that the First Amendment generally demands." *44 Liquormart v. Rhode Island*, 517 U.S. 484, 501 (1996). Indeed, the State "may not seek to remove a popular but disfavored product from the marketplace by prohibiting truthful, nonmisleading advertisements. …" *Sorrell*, 564 U.S. at 577-78. This can hardly be truer than when what the government seeks to banish from the marketplace are *constitutionally protected* products.

Indeed, in *Carey v. Population Services Int'l*, 431 U.S. 678 (1977), the Supreme Court struck down a state law that prohibited the advertisement of contraceptives to everyone and prohibited both the advertisement and the sale of such products to minors. The *Carey* Court reiterated that the government may not "completely suppress the dissemination of concededly truthful information about entirely lawful activity," even when that information could be categorized as "commercial speech." *Id.* at 700 (quoting *Va. Pharm. Bd. v. Va. Citzs. Consumer Council*, 425 U.S. 748, 773 (1976)). That an expression "may be offensive to some does not justify its suppression." *Id.* at 701 (internal quotation omitted). And "[a]s for the possible 'legitimation' of illicit … behavior":

> [W]hatever might be the case if the advertisements directly incited illicit … activity among the young, none of the advertisements in this record can even remotely be characterized as 'directed to inciting or producing imminent lawless action and… likely to incite or produce such action.' *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). **They merely state the availability of products and services that are not only entirely legal**, *cf. Pittsburgh Press Co. v. Human Relations Comm'n*, 413 U.S. 376 (1973**), but constitutionally protected.**"

*Id.* 701-02 (emphasis added).

With AB 2571's newly adopted exemption for communications promoting or offering certain firearm-related programs, California now acknowledges that minors may lawfully participate in shooting and hunting activities though with parental authorization—and that such behavior is, dare we say, normal conduct. If shooting and hunting by minors is itself lawful conduct, it would seem that California has flitted away whatever meager justification it might have had to forbid the dissemination and receipt of communications advertising the availability of lawful firearm-related products necessary for minors to engage in those activities. In short, the law does not directly or materially advance any substantial state interest.

### 3.   AB 2571 is far more extensive than necessary to promote the State's purported public safety interests.

The last prong of the *Central Hudson* test requires the State to show that the challenged law "is no more extensive than necessary to further" the government's purported interests. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 569-70 (1980). "A statute is more extensive than necessary if the government has other options that could advance its asserted interest in a manner less intrusive on First Amendment rights." *Tracy Rifle & Pistol LLC v. Harris*, 339 F. Supp. 3d 1007, 1018 (E.D. Cal. 2018) (citing *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 491 (1995)). "In other words, 'it should not be overinclusive.'" *Id.* (quoting *Valle Del Sol v. Whiting*, 709 F.3d 808, 825 (9th Cir. 2013)). As established in Plaintiffs' moving papers and on reply, AB 2571 is more extensive than necessary to achieve the State's interests because it impermissibly burdens speech about not only the illegal purchase of firearms by minors, but also the lawful use of "firearm-related products" by minors and the lawful purchase and use of such products by adults. It is also more extensive than necessary because the State has several tools available to combat the problem of illegal firearm use by minors that would not restrict speech at all. Mot. 19-21; Reply 17-20.

Indeed, California law already criminalizes the sale of firearms to any person

under 21, which would also include any attempt, with an overt act, to sell a firearm to a minor. Cal. Penal Code § 27510; *see also id.* § 664 (attempt). State law also mandates locked-storage to prevent the unsupervised and unauthorized access of firearms by minors. Cal. Penal Code § 25100. Further, "to deter [gun] crime, the [g]overnment has an arsenal of criminal laws it may enforce." *Tracy Rifle & Pistol LLC v. Harris*, 339 F. Supp. 3d 1007, 1013 (E.D. Cal. 2018). "[T]he [g]overnment could further its asserted interests simply by enforcing these laws." *Id.* They attack the problem directly and without restricting any speech at all. Because the government can "achieve its interests in a manner that does not restrict speech," it "must do so." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 371 (2002). If the State feels these safeguards have proven insufficient, "it may pass additional *direct* regulations within constitutionally permissible boundaries." *Tracy Rifle*, 339 F. Supp. 3d at 1018-19 (emphasis added). It could even mount its own speech campaign decrying the perils of minor firearm use.[4] But it may *not* strip away First Amendment freedoms through overinclusive speech restrictions in service of even a substantial interest in protecting children from perceived harm. *See Carey*, 431 U.S. at 700-02; *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 581 (2001).

The Supreme Court's reasoning in *Lorillard* is particularly instructive. There, the Supreme Court accepted as uncontroversial that Massachusetts had an interest in preventing minors' access to tobacco products and noted that state law had already made it illegal to sell or distribute tobacco products to them. *Id.* at 552. Even still, holding that "the governmental interest in protecting children from harmful materials does not justify an unnecessarily broad suppression of speech addressed to adults," the Court struck Massachusetts' restrictions on tobacco marketing likely to be observed by children. *Id.* at 581.

Like Massachusetts' ban on tobacco marketing addressed to adults that might

---

[4] Indeed, "[t]he Supreme Court has recognized that 'educational campaign focuses on the problems [at issue] might prove to be more effective' than advertising regulations designed to decreased demand of a product." *Tracy Rifle*, 339 F. Supp. 3d at 1019 (quoting *44 Liquormart*, 517 U.S. at 506 (plurality opinion)).

also be consumed by children, California's AB 2571 restricts not only speech that directly targets children, but also speech directed to adults that "appears to be attractive to minors" under California's subjective criteria, Cal. Bus. & Prof. Code § 22949.80(a)(1). Unlike the prohibition on minor tobacco use imposed by Massachusetts and countenanced by the *Lorillard* Court, however, California's AB 2571 implicitly endorses—by expressly authorizing speech about—lawful minor firearm use. It stands to reason then that California's ban on firearm-related speech stands on even shakier ground than Massachusetts' unconstitutional ban on tobacco-related speech. For it can hardly be argued with a straight face that children must be shielded from all mention of the availability of a market of firearm-related products, while acknowledging with the same breath that they may lawfully participate in shooting and hunting activities where they will handle and use actual firearms.

That said, even if California had condemned minors engaging in the shooting sports, AB 2571 would still be unconstitutional under the analysis set forth in *Lorillard*. Even if minors could constitutionally be denied all manner of firearm use and possession, the government goes a bridge too far when it broadly suppresses truthful speech by and for adults about lawful and, in fact, constitutionally protected products. *See Carey*, 431 U.S. at 700-02; *Lorillard*, 533 U.S. at 581.

The other AB 160 amendments fail to clear up this fatal overbreadth. To the contrary, the trivial word swaps achieved by AB 160 in subsections (a)(1) and (c)(6), especially when read along with the new exemptions found at subsection (a)(3), are without effect vis-à-vis AB 2571's sins against the First Amendment. The law is still overbroad because it targets speech directed at adults if it might reasonably be said to be attractive to minors, and because it penalizes speech to both adults and minors, even the products are lawful for minors to use. This California may not do. *See Carey*, 431 U.S. at 700-02; *Lorillard*, 533 U.S. at 581.

Finally, in *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786 (2011), the Supreme Court took up the issue of violent video games marketed, sold, and rented

to minors. The challenged law covered games "in which the range of options available to a player include[d] killing, maiming, dismembering, or sexually assaulting an image of a human being," *Id.* at 789. Citing well-established law, the Court declined California's gambit to create a new category of unprotected speech directed at shielding minors and struck the violent video game restriction.

The *Brown* Court observed that "as a general matter, . . . government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Id.* at 790 (quoting *Ashcroft v. Am. Civ. Libs. Union*, 535 U.S. 564, 573, (2002) (internal quotations omitted)). While there are "well-defined and narrowly limited classes of speech," like obscenity, incitement, and fighting words, that may be restricted without constitutional offense, *id.* at 790-91 (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942)), the Court declined to broaden that list to include content-based restrictions designed to protect minors from harm, *id.* at 794-95. To the contrary, the Court held, "[s]peech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them." *Id.* (quoting *Erznoznik v. Jacksonville*, 4322 U.S. 205, 213-214 (1975)) (internal quotations omitted).

What's more, the Supreme Court recently held, in *New York State Rifle & Pistol Ass'n v. Bruen*, __ U.S. __, 142 S. Ct. 2111 (2022), that the appropriate analysis for Second Amendment challenges requires that "[t]he government … justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2129-30. California's firearm-speech restriction, codified by AB 2571, is thus subject to the same mode of analysis as both *Bruen* and *Brown*, which also held that there is no longstanding tradition in this country of specially restricting children's access to information on the pretext that it exposes them to violence, *Brown*, 564 U.S. at 795-96.

And if a California law restricting marketing to minors of immersive, violent

14

video games—in which high scores are measured by body counts at the end of play—cannot withstand the acid test of the First Amendment, then how can California justify censorship of any kind in the marketing of firearm-related products to minors, when the state admits that minors may lawfully engage in activities that require the use of firearms? Simply put, it cannot. And this Court should enjoin enforcement of AB 2571.

## II.   AB 2571 ALSO VIOLATES PLAINTIFFS' RIGHT TO EQUAL PROTECTION

Because AB 2571 is *still* a content-based and viewpoint-discriminatory speech restriction, it *still* treats some speech and, necessarily, some speakers differently from others. It thus violates not just the First Amendment rights of speech, association, and press, it also violates the Equal Protection Clause of the Fourteenth Amendment. *Dariano v. Morgan Hill Unif. Sch. Dist.*, 767 F.3d 764, 779-780 (9th Cir. 2014).

As explained in Plaintiffs' moving papers, the Equal Protection analysis is "essentially the same" as the First Amendment analysis. Mot. 20 (quoting *id.* at 780; *Police Dep't of Chic. v. Mosley*, 408 U.S. 92, 101 (1972) ("The Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives."). Plaintiffs thus incorporate the First Amendment arguments of their moving papers and this supplemental brief. Mot. 22-23; Reply 20-21; Part I, *supra*. If the Court finds that Plaintiffs are likely to succeed on their claim that AB 2571 is an impermissible restriction on their First Amendment rights, it should similarly hold that AB 2571 violates their right to equal protection under the law.

## III.   THE OTHER PRELIMINARY INJUNCTION FACTORS FAVOR RELIEF

Because, as Plaintiffs have established, Plaintiffs are likely to succeed on the merits of their constitutional claims and the recently adopted amendments to AB 2571 did not change that conclusion, the remaining preliminary injunction factors—

i.e., irreparable harm, balance of the equities, and the public interest—readily follow. Mot. 23-25; Reply 21-23. Preliminary relief is warranted.

## CONCLUSION

For the reasons laid out in this court-ordered supplemental brief, as well as in Plaintiffs' moving papers and reply, the Court should grant Plaintiffs' Motion for Preliminary Injunction and enjoin the enforcement of section 22949.80 while this case proceeds to a final decision on the merits.

Dated:  September 28, 2022                    **MICHEL & ASSOCIATES, P.C.**

                                             *s/ Anna M. Barvir*
                                             Anna M. Barvir
                                             Counsel for Plaintiffs Junior Sports Magazines, Inc., Raymond Brown, California Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA Foundation, and Gun Owners of California, Inc.

Dated:  September 28, 2022                    **LAW OFFICES OF DONALD KILMER, APC**

                                             *s/ Donald Kilmer*
                                             Donald Kilmer
                                             Counsel for Plaintiff Second Amendment Foundation

16

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Junior Sports Magazines, Inc., et al. v. Bonta*
Case No.:    2:22-cv-04663-CAS (JCx)

IT IS HEREBY CERTIFIED THAT:

     I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

     I am not a party to the above-entitled action. I have caused service of:

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Kevin J. Kelly, Deputy Attorney General
kevin.kelly@doj.ca.gov
300 South Spring Street, Suite 9012
Los Angeles, CA 90013
   *Attorney for Defendant*

     I declare under penalty of perjury that the foregoing is true and correct.

Executed September 28, 2022.

Laura Palmerin