C.D. Michel-SBN 144258
Anna M. Barvir-SBN 268728
Tiffany D. Cheuvront-SBN 317144
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Fax: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs Junior Sports Magazines Inc., Raymond Brown, California Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA Foundation, and Gun Owners of California, Inc.

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorney for Plaintiff Second Amendment Foundation

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNIOR SPORTS MAGAZINES INC., RAYMOND BROWN, CALIFORNIA YOUTH SHOOTING SPORTS ASSOCIATION, INC., REDLANDS CALIFORNIA YOUTH CLAY SHOOTING SPORTS, INC., CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, THE CRPA FOUNDATION, AND GUN OWNERS OF CALIFORNIA, INC.; and SECOND AMENDMENT FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-10,<br><br>Defendant. | CASE NO: 2:22-cv-04663-CAS (JCx)<br><br>**SUPPLEMENTAL DECLARATION OF RICHARD MINNICH IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: October 17, 2022<br>Hearing Time: 10:00 a.m.<br>Courtroom: 8D<br>Judge: Christina A. Snyder |

1
SUPPLEMENTAL DECLARATION OF RICHARD MINNICH

## SUPPLEMENTAL DECLARATION OF RICHARD MINNICH

1. I, Richard Minnich, am an officer and the Treasurer of Plaintiff California Rifle & Pistol Association, Incorporated (CRPA). I make this declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

2. AB 2571, as passed on June 30, 2022, and currently enforced, bars CRPA from supporting and sponsoring junior shooting teams by helping them secure sponsorships from firearms industry members and by providing for travel costs, shooting jerseys with sponsor logos (similar to those in other sports like cycling, running, kayaking, and fishing), ammunition, and entry fees because doing so necessarily involves advertising, marketing, or arranging for the placement of communications promoting the use of firearm-related products—*directly to minors* and in ways likely to be attractive to minors. To prevent substantial civil liability under the new law, CRPA has withdrawn its important support of competitive junior shooting teams. *See* Minnich Decl., ¶ 7.

3. But for the adoption and enforcement of AB 2571, CRPA would continue to sponsor and support youth shooting teams as it has done for years. If the law is enjoined, CRPA will in fact resume sponsoring and supporting youth shooting teams and programs by helping them secure sponsorships from firearm industry members and providing donations for travel costs, shooting jerseys, ammunition, and entry fees.

4. Even if AB 160 goes into effect, and some limited exemptions are made to California's ban on firearm-related speech, the law still limits CRPA's ability to support junior shooting teams. For instance, CRPA could not provide shooting jerseys with sponsor logos or assist them with sponsorships from firearm industry members unless those sponsors would be willing to support without getting the benefit of also promoting their products.

5. But for the adoption and enforcement of AB 2571 (and the AB 160

1    amendments), CRPA would continue to sponsor and support youth shooting teams
2    as it has done for years. And if the law is enjoined, CRPA will in fact resume
3    sponsoring and supporting youth shooting teams by helping them secure
4    sponsorships from firearm industry members and providing donations for travel
5    costs, shooting jerseys, ammunition, and entry fees.

6        6.    AB 2571, as passed on June 30, 2022, and currently enforced, bars
7    CRPA from continuing to offer its stellar firearms training and safety programs and
8    hunter's education courses to anyone under the 18 because such courses
9    necessarily involve speech concerning firearm-related products, including
10    recommendations about specific products and discussions and instruction
11    promoting the possession and use of firearms. Indeed, to prevent substantial civil
12    liability under the new law, CRPA has canceled multiple hunter's education courses
13    over the past two months because many of the registered participants were under
14    18. *See* Minnich Decl., ¶ 8.

15        7.    But for the adoption and enforcement of AB 2571, CRPA would
16    continue offering firearms training and safety programs and hunter's education
17    courses to all people legally permitted to engage in such activities, including those
18    under 18, as it has done for years. And if the law is enjoined, CRPA will in fact
19    resume offering such courses to minors under 18.

20        8.    Even if AB 160 goes into effect, and some limited exemptions are
21    made to California's ban on firearm-related speech, the amended law expressly
22    exempts only speech that offers or promotes firearms training and safety programs
23    and hunter's education course, it does not exempt the speech that takes place during
24    those programs. As such, CRPA and its firearm instructors must consider whether
25    they wish to offer such courses to youth under 18 at all and, if they do so, must
26    carefully censor their speech since such courses inherently include speech
27    promoting firearm-related products, including recommendations about specific
28    products. For instance, California's own Hunter Safety Course Study Guide (a

resource that every hunter education course in the state must use) incorporates several endorsements for "firearm-related products," including but not limited to firearm cleaning kits, gun safes, hunting ammunition, eye and ear protection, adjustable shooting tripods, spotting scopes, and shotgun chokes, as well as the pros and cons of various gun cases for transport.

9. But for the adoption and enforcement of AB 2571 (and the AB 160 amendments), CRPA would continue offering firearm safety, handling, and hunting courses to all people legally permitted to engage in such activities, including those under 18 as it has done for years—and it could do so without substantially censoring its trainers' speech. If the law is enjoined, CRPA will in fact resume offering such courses to minors under 18.

10. AB 2571, as passed on June 30, 2022, and currently enforced, restricts what CRPA can publish in its *California Firing Line* magazine. For instance, a large portion of each issue of the bi-monthly magazine has been traditionally devoted to the celebration and promotion of youth shooting programs and competitive shooting—speech that necessarily involves advertising, marketing, or arranging for the placement of communications promoting the use of firearm-related products in ways that might be considered attractive to minors. Since the passage of AB 2571, CRPA has thus been forced to remove this truthful and otherwise lawful content from the pages of its *California Firing Line* magazine. Indeed, to prevent substantial civil liability under the new law, CRPA has had to sacrifice (among other things) stories celebrating youth shooting team successes, articles penned by youth about their love of the shooting sports, and images of young people engaged in these activities. *See* Minnich Decl., ¶ 9 & Ex. 22. Indeed, CRPA had to replace the entire shooting sports section with other articles for fear of running an article that may be in violation of the law because the section primarily features the accomplishments and competitions of youth shooters and shooting teams across the state.

11. But for the adoption and enforcement of AB 2571, CRPA would continue to produce its *California Firing Line* magazine, celebrating all facets of the gun culture, including youth in the shooting sports, as it has for years. And if the law is enjoined, CRPA will in fact resume publishing content in the *California Firing Line* (and other publications) that promotes and celebrates youth in the shooting sports.

12. Even if AB 160 goes into effect, and some limited exemptions are made to California's ban on firearm-related speech, the law will still bar CRPA from publishing articles and images in its *California Firing Line* magazine that endorse or recommend firearm-related products that are designed for use by minors or come in colors or sizes that might be appealing to minors. For instance, CRPA could not publish articles written by youth shooters endorsing specific firearms or ammunition appropriate for competitive shooting applications by youth and smaller shooters.

13. But for the adoption and enforcement of AB 2571(and the AB 160 amendments), CRPA would continue to produce its *California Firing Line* magazine, celebrating all facets of the gun culture, including youth in the shooting sports, as it has for years. And if the law is enjoined, CRPA will in fact resume publishing content in the *California Firing Line* (and other publications) that promotes and celebrates youth in the shooting sports.

14. The *California Firing Line* magazine also includes traditional advertisements promoting firearms-related products—advertisements that are intended for an audience of adults and firearms-savvy minors who may want to ask their parents to lawfully purchase firearms and related products for the minor's lawful use. Since the passage of AB 2571, CRPA has had to stop accepting ads for fear that they may be attractive to minors.

15. But for the adoption and enforcement of AB 2571, CRPA would continue including traditional (truthful and otherwise lawful) advertisements

promoting firearm-related products in *California Firing Line* magazine regardless of whether some third person might think the communications are attractive to minors. And if the law is enjoined, CRPA will in fact resume accepting traditional (truthful and otherwise lawful) advertisements promoting firearm-related products regardless of whether some third person might think the communications are attractive to minors. *See* Minnich Decl., ¶¶ 10 & 11.

16. Even if AB 160 goes into effect, and some limited exemptions are made to California's ban on firearm-related speech, the amended law does not exempt the sorts of traditional advertising promoting firearm-related products found in the pages of CRPA's *California Firing Line* magazine. To the contrary, the law expressly bans communications promoting or offering firearm-related products if some third party might think they are attractive to minors. As such, even in AB 160 goes into effect, CRPA must continue to limit the advertisements to those that are determined not attractive to minors (to the extent that is even possible) or end advertising firearm-related products in our publications altogether.

17. But for the adoption and enforcement of AB 2571 (and the AB 160 amendments), CRPA would continue including traditional (truthful and otherwise lawful) advertisements promoting firearm-related products in *California Firing Line* magazine regardless of whether some third person might think the communications are attractive to minors. And if the law is enjoined, CRPA will in fact resume accepting traditional (truthful and otherwise lawful) advertisements promoting firearm-related products regardless of whether some third person might think the communications are attractive to minors.

18. AB 2571, as passed on June 30, 2022, and currently enforced, bars CRPA from planning, advertising, marketing, promoting, sponsoring, hosting, facilitating and/or participating in recreational events and shooting competitions specifically for youth or where youth are extremely likely to be in attendance and where youth lawfully use, handle, observe, or otherwise possess firearm-related

products. Because these programs regularly involve print and online advertising, signage, flyers, discussions, branded merchandise and giveaways, and other communications depicting minors enjoying or otherwise encouraging minors to possess and use lawful firearms for lawful purposes, they necessarily involve advertising, marketing, or arranging for the placement of communications promoting the use of firearm-related products—*directly to minors* and in ways likely to be attractive to them. *See* Minnich Decl., ¶ 12 & Ex. 23. I

19. But for the adoption and enforcement of AB 2571, CRPA would continue planning, advertising, marketing, promoting, sponsoring, hosting, facilitating and/or participating in recreational events and shooting competitions specifically for youth or where youth are extremely likely to be in attendance and where youth lawfully use, handle, observe, or otherwise possess firearm-related products. And if the law is enjoined, CRPA will in fact resume planning, advertising, marketing, promoting, sponsoring, hosting, facilitating and/or participating such programs. *See* Minnich Decl., ¶ 12.

20. Even if AB 160 goes into effect, and some limited exemptions are made to California's ban on firearm-related speech, the amended law expressly exempts only speech that offers or promotes lawful shooting programs and activities, it does not exempt the speech that takes place at those events. Such events often involve signage, flyers, discussions, branded merchandise and giveaways, and other communications that promote or offer firearm-related products. CRPA learned recently that the California Department of Fish and Wildlife is considering not hosting youth hunts this fall because, even with the AB 160 amendments, there are still concerns that discussions about hunting firearms and related products violate the law. What's more, the cost of hosting shooting opportunities for youth is often offset by sponsors, including businesses that sell or manufacture firearm-related products. Sponsors are often offered booth space, banners, signage, logo placement, or other forms advertising at these events in

exchange for their financial support. It is also customary, just like in other sports, to place sponsor logos not just on signage or vendor booths, but on the shirts or uniforms competitors receive. This apparel is not only commemorative to the youth shooters, but advertising for sponsors. Because AB 2571 provides no exception for sponsors of lawful youth shooting events or for the speech that takes place at such events, both as originally adopted and as recently amended, the law restricts CRPA's ability to host and sponsor shooting events for youth.

21.     But for the adoption and enforcement of AB 2571 (including the AB 160 amendments), CRPAF would continue planning, advertising, marketing, promoting, sponsoring, hosting, facilitating and/or participating in recreational or competitive shooting events specifically for youth or where youth are extremely likely to be in attendance and where youth lawfully use, handle, observe, or otherwise possess firearm-related products. And if the law is enjoined, CRPAF will in fact resume planning, advertising, marketing, promoting, sponsoring, hosting, facilitating and/or participating such programs.

22.     What's more, the AB 160 amendments to AB 2571 do not expressly include advertisements, marketing, or communications promoting youth recreational shooting activities (i.e., not competitive shooting or hunting activities) where youth are likely to be in attendance and where they lawfully use, handle, observe, or otherwise possess firearm-related products. It is unclear whether these activities—and all the speech that takes place attendant to such activities—are permissible under the new language of the law.

23.     AB 2571, as passed on June 30, 2022, and currently enforced, bars CRPA from distributing CRPA-branded merchandise and giveaways (or "swag"), including but not limited to hats, t-shirts, stuffed animals, coloring and activity books, stickers, pins, and buttons, to promote the organization and solicit memberships and/or financial support, as well as to spread pro-gun messages and slogans.

24. But for the adoption and enforcement of AB 2571, CRPA would continue distributing CRPA-branded merchandise and giveaways (or "swag"), including but not limited to hats, t-shirts, stuffed animals, coloring and activity books, stickers, pins, and buttons, to promote the organization and solicit memberships and/or financial support, as well as to spread pro-gun messages and slogans. And if the law is enjoined, CRPA would in fact resume engaging in these activities.

25. AB 2571, as passed on June 30, 2022, and currently enforced, bars CRPA from offering and promoting is junior membership to youth under the age of 18, which was previously expected to be made available in September 2022. Because the planned CRPA youth membership program involves pro-Second Amendment communications directly to and intended for youth, it necessarily involves advertising, marketing, or arranging for the placement of communications promoting the use of firearm-related products—*directly to minors* and in ways likely to be attractive to them. *See* Minnich Decl., ¶ 15. To prevent substantial civil liability under the new law, CRPA has halted plans to roll out its junior membership program.

26. But for the adoption and enforcement of AB 2571, CRPA would continue with the promotion of its junior membership program and roll out this fall. If the law is enjoined, CRPA would in fact immediately resume these activities.

27. Finally, the AB 160 amendments to AB 271 do very little to address the vagueness and overbreadth concerns that plaintiffs identified in their complaint and moving papers. In fact, by adding *even more* unclear language rather than taking it away, the amendments make the law in many ways *more vague and more overbroad*. We thus remain unsure exactly what speech is prohibited or permitted going forward. And each time we host an event open to youth, publish a magazine, offer merchandise for sale, collaborate with industry-member sponsors, or communicate with minors, we must weigh the risks of engaging in this otherwise

lawful and truthful speech against the very real and very substantial risk of civil liability.

I declare under penalty of perjury that the foregoing is true and correct. Executed within the United States on September 28, 2022.

_____
Richard Minnich
Declarant


# CERTIFICATE OF SERVICE
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Junior Sports Magazines, Inc., et al. v. Bonta*
Case No.:  2:22-cv-04663-CAS (JCx)

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**SUPPLEMENTAL DECLARATION OF RICHARD MINNICH IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Kevin J. Kelly, Deputy Attorney General
kevin.kelly@doj.ca.gov
300 South Spring Street, Suite 9012
Los Angeles, CA 90013
   *Attorney for Defendant*

I declare under penalty of perjury that the foregoing is true and correct.

Executed September 28, 2022.

_Laura Palmerin_
Laura Palmerin