ROB BONTA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
KEVIN J. KELLY
Deputy Attorney General
State Bar No. 337425
300 S. Spring St., Ste. 9012
Los Angeles, CA 90013
Telephone: (213) 266-6615
Fax: (916) 731-2124
E-mail: Kevin.Kelly@doj.ca.gov
*Attorneys for Defendant Rob Bonta, In his official capacity as Attorney General of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

**JUNIOR SPORTS MAGAZINES INC. ET AL.,**

**v.**

**ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA ET AL.,**

**DEFENDANT'S SUPPLEMENTAL BRIEFING IN FURTHER SUPPORT OF HIS OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Date: October 17, 2022
Time: 10:00 a.m.
Courtroom: 8D
Judge: Christina A. Snyder
Action Filed: July 8, 2022

# TABLE OF CONTENTS

**Page**


Introduction ..... 1

Background ..... 2

A. The Passage of Amendments to AB 2571 ..... 2

B. The Amendments ..... 2

Argument ..... 3

I. The Amendments to AB 2571 Remove Any Doubt that Plaintiffs Are Unlikely to Succeed on the Merits of Their First Amendment and Equal Protection Claims. ..... 3

A. The Amendments Make Clear That AB 2571 Solely Regulates Commercial Speech. ..... 3

B. Plaintiffs Have Not Established That AB 2571 Would Operate to Restrict Their Ability to Host and Sponsor Competitive Shooting and Hunting Programs. ..... 7

C. AB 2571 Is a Constitutional Regulation of the Commercial Speech It Prohibits. ..... 8

II. Plaintiffs Cannot Establish Irreparable Harm in the Absence of Injunctive Relief. ..... 11

III. The Balance of Equities, Which Includes Analysis of the Public Interest, Tips Against an Injunction. ..... 12

Conclusion ..... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Babbit v. United Farm Workers Nat. Union*, 442 U.S. 289 (1979) ........ 4

*Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786 (2011) ........ 11

*Carey v. Population Services Int'l*, 431 U.S. 678 (1977) ........ 10

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980) ........ 8

*Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001) ........ 11

*New York State Rifle Ass'n v. Bruen*, __ U.S. __, 142 S. Ct. 2111 (2022) ........ 11

**Statutes**

Cal. Bus. & Prof. Code § 22949.80 ........ *passim*

Cal. Pen. Code § 27505 ........ 9

Cal. Pen. Code § 27510 ........ 9

Cal. Pen. Code § 29610 ........ 9

Cal. Pen. Code § 29615 ........ 9

## INTRODUCTION

In the first round of briefing related to Plaintiffs' motion for preliminary injunction in this case, Defendant detailed the manner in which AB 2571 operates constitutionally to prohibit communications advertising or marketing firearm-related products in a way that is designed, intended to, or reasonably appears to be attractive to minors. The recent amendments to AB 2571 do not alter the manner in which the law should be read or applied, nor do they alter its inherent constitutionality, but they do serve to obviate many of Plaintiffs' arguments in support of their assertions that the law impermissibly infringes on their First and Fourteenth Amendment rights.

For example, the amended AB 2571 makes clear that it does not bar speech merely endorsing or recommending the non-commercial use of firearm-related products by minors, and Plaintiffs have not established it would actually impede their ability to host events at which firearm-related products are merely discussed. Moreover, the law now explicitly exempts all of the types of communications that several of the Plaintiffs claimed it barred them from engaging in, obviating their claims entirely.

Plaintiffs' claims that the law remains vague and overbroad despite the amendments are unavailing. Several of the terms that Plaintiffs argued swept up both commercial and non-commercial speech have been replaced or removed, confirming that the law's intent is to regulate commercial speech regarding the marketing and advertising of firearm-related products themselves. As such, it is a constitutional regulation of commercial speech that is misleading and relates to illegal conduct – the sale of firearms to minors, which remains illegal, and the possession of firearms by minors, which remains illegal unless specific qualifying circumstances present. And even if it did not, it satisfies intermediate scrutiny, as Defendant established in earlier briefing.

## BACKGROUND

### A. The Passage of Amendments to AB 2571

Subsequent to the parties' initial briefing on Plaintiffs' preliminary injunction motion, the California Legislature voted to approve AB 160, "Public Safety Trailer Bill." *See* Defendant's Status Conference Statement ¶ 3-4 & Exhs. A, B (ECF 28). AB 160 contained multiple amendments to the language of AB 2571. *See id.* The Governor signed AB 160 into law on September 29, 2022, and the amendments became effective immediately. *See* Cal. Bus. & Prof. Code § 22949.80.

### B. The Amendments

AB 160 made various clarifying changes to AB 2571. First, it made the below edit to subsection (a)(1):

> (a) (1) A firearm industry member shall not advertise, market, or arrange for placement of an advertising or marketing communication ~~**concerning**~~ **offering or promoting** any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors.

Next, it added subsection (a)(3):

> (3) This subdivision does not apply to a communication offering or promoting any firearm safety program, hunting safety or promotional program, firearm instructional course, sport shooting event or competition, or any similar program, course, or event, nor does it apply to a communication offering or promoting membership in any organization, or promotion of lawful hunting activity, including, but not limited to, any fundraising event, youth hunting program, or outdoor camp.

Finally, it made the below edits to subsection (c)(6):

> (6) "Marketing or advertising" means, in exchange for monetary compensation, to make a communication to one or more individuals, or to arrange for the dissemination to the public of a communication, about a product ~~**or service**~~, the primary purpose of which is to encourage recipients of the communication to

**~~purchase or use the product or service~~ engage in a commercial transaction**.

*See* Plaintiffs' Ex Parte Application for Leave to File Supplemental or Sur-Reply Brief in Support of Plaintiffs' Motion for Preliminary Injunction, Declaration of Anna M. Barvir in Support, Exh. 2; Cal. Bus. & Prof. Code § 22949.80.

## ARGUMENT

### I. THE AMENDMENTS TO AB 2571 REMOVE ANY DOUBT THAT PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR FIRST AMENDMENT AND EQUAL PROTECTION CLAIMS.

#### A. The Amendments Make Clear That AB 2571 Solely Regulates Commercial Speech.

##### 1. Speech Merely Endorsing or Recommending Firearm-Related Products Does Not Constitute "Marketing or Advertising" as Defined by the Law.

Plaintiffs state that Raymond Brown ("Brown") and California Rifle and Pistol Association, Incorporated ("CRPA") offer firearms training and safety programs and hunter's education courses. *See* Plaintiffs' Supp. Brief at 5. Plaintiffs California Youth Clay Shooting Sports, Inc. ("CYCSS") and Redlands California Youth Clay Shooting Sports, Inc. ("RCYCSS") offer youth clay shooting programs and events. *See* Plaintiffs' Supplemental Brief in Support of Motion for Preliminary Injunction ("Plaintiffs' Supp. Brief") at 5; Supplemental Declaration of Jonathan L. Coleman in Support of Plaintiffs' Motion for Preliminary Injunction ("Coleman Supp. Dec.") ¶ 2; Declaration of Allison Rangel ("Rangel Dec.") ¶ 3.

Plaintiffs now concede that AB 2571 allows Plaintiffs Brown, CRPA, RCYCSS, and CYSSA to advertise their programs to minors. *See* Plaintiffs' Supp. Brief at 2-3. They also concede that it allows CRPA and SAF to engage in communications promoting junior memberships in their organizations. *See id.* at 2. However, Plaintiffs claim that AB 2571 still "does not exempt the speech that takes place" at the events and courses held by Brown and CRPA, which "inherently

include speech promoting firearm-related products, including recommendations about specific products." *See id.* at 5. Similarly, they claim that CYSSA's and RCYCSS's "volunteers and affiliated coaches and trainers will still be prohibited from endorsing, promoting, or suggesting that their young athletes obtain firearm-related products necessary for their success in the shooting sports," and that they will be "barred from endorsing a specific brand of ammunition or a particular firearm that works best for young and smaller athletes without violating the law." *See id.* They also claim that AB 2571 bars Plaintiffs Junior Sports Magazines, Inc. and CRPA from publishing articles by youth shooters "endorsing specific firearms or ammunition appropriate for competitive shooting applications by youth and smaller shooters." *See id.* at 4.[1]

---

[1] While not addressed in their briefing, Plaintiffs submit supplemental declarations from representatives of Gun Owners of America, Inc. ("GOC") and Second Amendment Foundation ("SAF"). GOC asserts that it sponsors and supports youth shooting teams by raising and contributing financial resources, offers scholarship programs to youth shooters, and communicates directly with minors regarding these activities. *See* Supplemental Declaration of Sam Paredes in Support of Plaintiffs' Motion for Preliminary Injunction ("Paredes Supp. Dec.") ¶¶ 2-3. SAF states that it publishes "Second Amendment materials" depicting youth engaged in activities where they are using firearm-related products, promotes recreational and competitive shooting events, reaches out to people who play video games to grow the Second Amendment community, and distributes SAF-branded merchandise and giveaways. *See* Supplemental Declaration of Alan Gottlieb in Support of Plaintiffs' Motion for Preliminary Injunction ("Gottlieb Supp. Dec.") ¶¶ 2, 4.

All of these types of communications, as described by GOC and SAF, are explicitly exempt from AB 2571. *See* Cal. Bus. & Prof. Code § 22949.80(a)(3) (exempting communications promoting hunting safety or promotional programs, sport shooting events and competitions, memberships in any organizations and similar programs, courses, and events, as well as lawful hunting activity, including fundraising events). To the extent these declarations offer legal conclusions that the amendments "do very little to address the vagueness and overbreadth concerns" and claim they "remain unsure exactly what speech is prohibited" (*see* Paredes Supp. Dec. ¶ 6; Gottlieb Supp. Dec. ¶ 6), they fail to articulate the type of speech they wish to engage in but are unsure about. *See Babbit v. United Farm Workers Nat.*

The plain language of the amended AB 2571 refutes all of these notions. Plaintiffs have not alleged facts establishing that these communications would constitute "marketing or advertising" under the law – that is, that they would be made "in exchange for monetary compensation" – even assuming Plaintiffs' reading of what that phrase modifies is the correct one. *See* Reply to Defendant's Opposition to Plaintiffs' Motion for Preliminary Injunction ("Plaintiffs' Reply") at 7-8. Moreover, they do not establish that their "primary purpose" would be to "encourage recipients of the communication[s] to engage in a commercial transaction." *See* Cal. Bus. & Prof. Code § 22959.80(c)(6). At most, these communications would merely encourage the use of such products – "use" being a term that has been specifically removed from the relevant section of the law. As such, Plaintiffs have not shown that they are at any risk of liability under the amended statute for engaging in any of these forms of constitutionally protected speech.

**2. AB 2571 Is Neither Vague Nor Overbroad.**

In their initial briefing, Plaintiffs claimed that the language of AB 2571 was overbroad insofar as it swept up both commercial and non-commercial speech. Plaintiffs largely relied on language in the law addressing certain communications "concerning" firearm-related products (*see* Plaintiffs' Memo at 3, 11;15; Plaintiffs' Reply at 7) and whose primary purpose was to promote their "use" (*see* Plaintiffs' Memo at 3-4, 11, 17). They also argued the use of the word "service" extended the

---

*Union*, 442 U.S. 289, 299 (1979) ("When plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court." (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)); *see also Wright v. Serv. Emp. Int'l Union Local 503* (holding that the plaintiff's fear of future harm based on speculation was insufficient to support First Amendment standing).

law's reach to non-commercial speech, including speech related to competitive and recreational youth shooting events. *See* Reply at 4, n. 1.

As explained in the initial opposition to the preliminary injunction motion, this was an incorrect reading of the statute, but the Legislature's recent action has removed any possible doubt on the question. With the amendment of AB 2571, all of these terms have been removed or replaced. "Concerning" has been replaced by the terms "offering or promoting," words that make clear that the law addresses commercial speech, and "use" and "service" have been removed completely from the relevant subsection. Plaintiffs' characterizations of these changes as "non-substantive" (*see* Plaintiffs' Supp. Brief at 3) and "trivial" (*see id.* at 4) are untenable in light of their earlier arguments. Moreover, the law now *explicitly exempts* certain categories of non-commercial speech, many of which Plaintiffs claim they regularly engage in, and it explicitly states that it applies only to communications whose "primary purpose" is to "encourage recipients . . . to engage in a commercial transaction."

Plaintiffs now claim that these amendments have somehow made the law "in many ways *more vague and more overbroad*." *See* Plaintiffs Supp. Brief at 6 (emphasis in original). In support, they cite only two examples from the text, the first of which is not one of the recently-enacted amendments. Indeed, their first example – the phrase "designed, intended, or reasonably appears to be attractive to minors" – was included in the law as it was originally enacted and was already addressed by the parties in the earlier round of briefing.

Their second example, "any similar program, course, or event," is presented in their brief without any of its surrounding context. That phrase should be viewed in conjunction with the lengthy list of exempted communications set forth in the subsection. All of those types of communications – including those offering or promoting firearm safety programs, hunting programs, instructional courses, sport shooting programs, organizational membership initiatives, fundraising events, and

outdoor camps – share common features. None of them would constitute "marketing or advertising" of a "firearm-related product" as defined by the law, even if they might concern activities where firearm-related products may be used, discussed, or promoted with minors involved. This commonality makes "any similar program, course, or event" readily understandable.

In this way, the new subsection merely serves to provide specific illustrative examples of what the law does *not* apply to, to the extent individuals like Plaintiffs claim they may be confused about it. Taken as a whole, the cumulative effect of the amendments is to make clear that AB 2571 solely and narrowly regulates commercial speech related to the advertising and marketing of firearm-related products themselves, and not other ancillary firearm-related activities, such as promoting educational activities or junior sports events.

### B. Plaintiffs Have Not Established That AB 2571 Would Operate to Restrict Their Ability to Host and Sponsor Competitive Shooting and Hunting Programs.

Plaintiffs also claim that even as amended AB 2571 continues to restrict the ability of CRPA and CRPAF to host and sponsor competitive shooting and hunting programs for youth.[2] *See* Plaintiffs' Supp. Brief at 5-6. In support, they assert that these events "regularly involve signage, flyers, discussions, branded merchandise, giveaways, and other communications that promote or offer firearm-related products." *See* Plaintiffs' Supp. Brief at 5. They also point to the fact that these events are financially supported by firearm sellers and manufacturers of firearm-related products that use "vendor booth space, banners, logo placement, or other forms of advertising at these events in exchange for their financial support," and

[2] In the relevant section of their brief, Plaintiffs do not specify which of them wishes to host and sponsor these events. *See* at 5-6. However, since the arguments in their brief are supported by declarations submitted by representatives for plaintiffs CRPA (*see* Gomez Supp. Dec. ¶ 1) and CRPAF (*see* Minnich Supp. Dec. ¶ 1), Defendant assumes that these arguments are submitted on behalf of those parties.

that some of these sponsors place their logos on youth competitors' uniforms and commemorative t-shirts. *See id.*

But Plaintiffs fail to submit specific facts establishing that the amended AB 2571 would operate to actually restrict any of these events. *See Wright*, __ F.4th __, 2022 WL 4295626, at *3 (observing that a plaintiff "has standing to sue only 'if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur'" (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158, (2014)). For example, Plaintiffs have not alleged that any vendors intend to withdraw their support of these events altogether, that they could not appear at them in a way that would comply with the new law, or that Plaintiffs would be unable to hold these events without support from vendors marketing firearms-related products to children. Simply because vendors may not include advertising or marketing communications "designed, intended, or reasonably appearing to be attractive to minors" at these events does not preclude them from otherwise sponsoring or advertising at them, so long as they do so in a way that does not run afoul of AB 2571. As such, this argument fails.

**C. AB 2571 Is a Constitutional Regulation of the Commercial Speech It Prohibits.**

As established above, the new amendments are consistent with Defendant's original position that AB 2571 solely regulates commercial speech – that is, "speech proposing a commercial transaction." *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 562 (1980). And for the reasons set forth in Defendant's earlier motion briefing, the law is constitutional under the *Central Hudson* test because (1) it regulates unlawful and misleading speech that is not protected by the First Amendment, namely advertising and marketing that promotes the sale to and purchase of firearms by minors, who may not possess them except under limited circumstances and for limited purposes; and (2) even

assuming it regulates commercial speech that is protected, it satisfies intermediate scrutiny.

Nevertheless, Plaintiffs contend that the addition of a non-exhaustive list of communications exempt from the law under subsection (c)(3) constitutes a "concession" that "even if they must do so under adult supervision or with parental consent, minors may legally handle and shoot firearms in California." *See* Plaintiffs' Supp. Brief at 7-8. They claim that this "concession" undermines Defendant's argument that AB 2571 regulates misleading speech concerning unlawful activity. *See id.* They also argue that through the addition of this subsection, Defendant has "flitted away whatever meager justification it might have had to forbid the dissemination and receipt of communications advertising the availability of lawful firearm-related products necessary for minors to engage in" lawful firearm-related activities, and thus AB 2571 does not directly and materially advance a substantial government interest. *See id.* at 7-11.

But Defendant has never disputed that there are limited situations in which minors may lawfully use and possess certain firearm-related products. But there is also no dispute that it is illegal to *sell* a firearm to a minor under any circumstances and that it is illegal to loan or transfer one to a person under 21 years of age, subject to narrow exceptions. *See* Cal. Pen. Code §§ 27505, 27510, & 29615. Moreover, the "baseline" rule is that minors are prohibited from possessing a handgun, a semiautomatic centerfire rifle, and, as of July 1, 2023, any firearm. *See* Cal. Pen. Code § 29610. Thus, Plaintiffs' assertion that "minors may lawfully use" firearm-related products (*see* Plaintiffs' Supp. Brief at 9) does not correctly capture California's laws governing the possession of firearms by minors in California.

Defendant's point has always been that since the sale of firearms directly to minors is never permitted, and the possession of a firearm by a minor is allowed only under limited and well-defined circumstances, to permit marketing or advertising those items in a way that is appealing to minors – even if there are

limited exceptions to those baseline rules – would not be rational or consistent with that overarching and longstanding policy. Therefore, Plaintiffs' contention that the law does not materially or directly advance the State's substantial interests because it "acknowledges that minors can lawfully enjoy the shooting sports in California" while "punishing" those who seek to provide minors with information about the products necessary to engage in them (*see* Plaintiffs' Supp. Brief at 8-9) is unavailing. If anything, the prohibited communications signal to minors and others who may be unaware of the contours of the law that such conduct is permitted. That AB 2571 now explicitly exempts certain communications related to the exceptions to these rules does not conflict with that policy in a way that it might if the statutory scheme granted minors an unfettered right to possess firearms in California under any circumstances.

The law is thus far from "exactly backwards" or working "indirectly" to address the problem of illegal firearm possession and use by minors. *See* Plaintiffs' Supp. Brief at 9-10; *cf. Carey v. Population Services Int'l*, 431 U.S. 678, 701-02 (1977) (invalidating restrictions on advertisements of contraceptive products where such advertisements were not "misleading or deceptive" or proposed transactions that "are themselves illegal in any way"). The amendments underline the fact that AB 2571 permissibly regulates commercial speech that is misleading and concerns illegal activity, and that it directly serves that purpose.

Lastly, Plaintiffs essentially reiterate the arguments in their original briefing when they assert that despite the amendments, "[t]he law is still overbroad because it targets speech directed at adults if it might reasonably be said to be attractive to minors, even [sic] the products are lawful for minors to use." *See* Plaintiffs' Supp. Brief at 13. As Defendant previously established, the law narrowly regulates advertising that is "designed, intended, or reasonably appears to be attractive to minors," which is analyzed by a "totality of circumstances" test, a test that courts routinely apply in other contexts. The law includes specific illustrative examples to

assist courts and the public in this analysis, and the idea that, at the margins, one or more of these characteristics might also appeal to an adult should not serve to invalidate the entire scheme.

For the same reasons, the law is wholly distinguishable from the challenged law in *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001), a decision which Plaintiffs discuss at length. *See* Plaintiffs' Supp. Brief at 12-13. The Supreme Court in that case invalidated Massachusetts' effort to discourage tobacco use by minors by instituting a much broader ban on "any oral, written, graphic, or pictorial statement or representation . . . the purpose or effect of which is to promote the use or sale of the product" – that is, without regard to any attractiveness to minors – outdoors and within 1,000 feet of a school or playground. *See Lorillard*, 533 U.S. at 536 (2001). In contrast, AB 2571 operates much more narrowly to address its concerns. Distinguishable too is *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786 (2011), since it invalidated content-based restrictions on *non-commercial* speech that "communicate[d] ideas – and even social messages – through many familiar literary devices (such as characters, dialogue, plot, and music) and through features distinctive to the medium[.]" *See Brown*, 564 U.S. at 790. As such, the restrictions were subject to the most demanding standard of review – strict scrutiny – which is not the appropriate standard here and which AB 2571 need not satisfy.[3]

## II. Plaintiffs Cannot Establish Irreparable Harm in the Absence of Injunctive Relief.

Even if Plaintiffs had demonstrated a likelihood of success on the merits, they would still need to demonstrate that they would suffer irreparable harm if an

---

[3] Plaintiffs briefly mention the Supreme Court's recent Second Amendment decision in *New York State Rifle Ass'n v. Bruen*, __ U.S. __, 142 S. Ct. 2111 (2022), to argue that AB 2571 should be subjected to the same historical analysis employed in that case. No Second Amendment claim has been pled in the instant matter, and Plaintiffs admit that "the constitutional contours of regulations on minors' access to actual firearms" are not at issue. *See* Plaintiffs' Supp. Brief at 9. Therefore, the Court need not apply *Bruen* here.

injunction were not issued pending resolution of their claims on the merits. As Defendant established in his original opposition and further detail here, Plaintiffs are not likely to succeed on the merits because AB 2571 does not unconstitutionally burden any of their constitutional rights. And aside from conjecture and speculation, they have not alleged sufficient facts showing that AB 2571 would prevent them from engaging in the publishing and event activities they wish to engage in. For the same reason, they cannot show they will suffer irreparable harm if their motion is denied.

## III. The Balance of Equities, Which Includes Analysis of the Public Interest, Tips Against an Injunction.

Finally, the balance of the equities weighs against a preliminary injunction. As Defendant earlier established, AB 2571 promotes the State's compelling interests in ensuring that minors do not illegally possess dangerous weapons and in protecting its citizens, especially minors, from gun violence and intimidation. *See* Defendant's Opposition to Plaintiffs' Motion for Preliminary Injunction at 20. Moreover, the significance of the harm that could result from the improper issuance of an injunction would be substantial, and the relief sought by Plaintiffs here is the same relief that Plaintiffs would obtain after summary judgment or a trial (*see id.* at 21-22), weighing heavily against issuance of a preliminary injunction.

## CONCLUSION

For the foregoing reasons and those set forth in Defendant's initial opposition, this Court should deny Plaintiffs' request for a preliminary injunction.

Dated: October 7, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General

<u>*/s/ Kevin J. Kelly*</u>
KEVIN J. KELLY
Deputy Attorney General
*Attorneys for Defendant Rob Bonta, in his Official Capacity as Attorney General of the State of California*

SA2022301332
65481984.docx