C.D. Michel-SBN 144258
Anna M. Barvir-SBN 268728
Tiffany D. Cheuvront-SBN 317144
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Fax: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs Junior Sports Magazines Inc., Raymond Brown, California
Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting
Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA
Foundation, and Gun Owners of California, Inc.

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorney for Plaintiff Second Amendment Foundation

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNIOR SPORTS MAGAZINES INC., RAYMOND BROWN, CALIFORNIA YOUTH SHOOTING SPORTS ASSOCIATION, INC., REDLANDS CALIFORNIA YOUTH CLAY SHOOTING SPORTS, INC., CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, THE CRPA FOUNDATION, AND GUN OWNERS OF CALIFORNIA, INC.; and SECOND AMENDMENT FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> ROB BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-10, <br><br> Defendant. | Case No.: 2:22-cv-04663-CAS (JCx) <br><br> **SUPPLEMENTAL DECLARATION OF ANNA M. BARVIR IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE THE MANDATE AND ISSUE PRELIMINARY INJUNCTION** <br><br> Hearing Date:  June 10, 2024 <br> Hearing Time:  10:00 a.m. <br> Courtroom:  8D <br> Judge:  Christina A. Snyder |

**SUPPLEMENTAL DECLARATION OF ANNA M. BARVIR**

1.  I, Anna M. Barvir, am an attorney at the law firm Michel & Associates, P.C., attorneys of record for Plaintiffs in this action. I am licensed to practice law before the United States District Court for the Central District of California. I am also admitted to practice before the Eastern, Northern, and Southern Districts of California, as well as the courts of the state of California, the Supreme Court of the United States, and the D.C., Fourth, Ninth, and Tenth Circuit Courts of Appeals. I have personal knowledge of the facts set forth herein and, if called and sworn as a witness, could and would testify competently thereto.

2.  On May 24, 2024, I visited and viewed the official website of the State of California Department of Juste and Attorney General Rob Bonta. From there, I viewed and saved a copy of the California Department of Justice, Division of Law Enforcement, *Information Bulletin Re: New and Amended Firearms/Weapons Laws* (Dec. 16, 2022), *available at* https://oag.ca.gov/system/files/media/2022-dle-17.pdf. A true and correct copy is attached as **Exhibit B**.

3.  On May 24, 2024, On May 24, 2024, I visited and viewed the official website of the State of California Department of Juste and Attorney General Rob Bonta. From there, I viewed and saved a copy of the California Department of Justice, Office of the Attorney General, *Legal Alert Re: California's Public-Carry License Scheme and Public-Carry Criminal Laws Remain Constitutional After the U.S. Supreme Court's Decision in New York State Rifle & Pistol Association v. Bruen* (Aug. 17, 2022), *available at* https://oag.ca.gov/system/files/media/legal-alert-oag-2022-03.pdf. A true and correct copy is attached as **Exhibit C**.

I declare under penalty of perjury that the foregoing is true and correct. Executed within the United States on May 24, 2024.

*s/ Anna M. Barvir*
Anna M. Barvir
Declarant

# EXHIBIT B

**Rob Bonta, Attorney General**

| | | |
|---|---|---|
| **California Department of Justice**<br>**DIVISION OF LAW ENFORCEMENT**<br>**John D. Marsh, Chief**  | | *INFORMATION*<br>*BULLETIN* |
| *Subject:*<br><br>**New and Amended Firearms/Weapons Laws** | *No.*<br>2022-DLE-17<br>*Date:*<br>12/16/2022 | *Contact for information:*<br><br>Bureau of Firearms<br>(916) 210-2300 |

**TO:  ALL CALIFORNIA CRIMINAL JUSTICE AND LAW ENFORCEMENT AGENCIES, CENTRALIZED LIST OF FIREARMS DEALERS, MANUFACTURERS, EXEMPT FEDERAL FIREARMS LICENSEES, AND CALIFORNIA AMMUNITION VENDORS**

This bulletin provides a brief summary of California firearms/weapons bills signed into law in 2022. Unless otherwise noted, all bills go into effect on January 1, 2023.  This bulletin also summarizes bills signed into law prior to 2022 that take effect in 2023.

This bulletin is for informational purposes only. Because it is a summary, it does not cover every aspect of the bills addressed below.  You can access the full text of the bills at: http://leginfo.legislature.ca.gov/.  The Department of Justice will hereinafter be referred to as "the Department."

### *BILLS SIGNED INTO LAW IN 2022*

#### AB 228 (Stats. 2022, ch. 138) – Firearms

**Effective January 1, 2024**

- Requires the Department to conduct inspections of dealers at least every 3 years, with the exception of a dealer whose place of business is located in a jurisdiction that has adopted an inspection program.

- Authorizes the Department to inspect a dealer whose place of business is located in a jurisdiction that has adopted an inspection program.

- Specifies minimum sampling standards for the audit of dealer records during an inspection.

#### AB 311 (Stats. 2022, ch. 139) – Firearms. Del Mar Fairgrounds

**Effective January 1, 2023**

- Prohibits the sale of firearms, ammunitions, or firearm precursor parts at the Del Mar Fairgrounds property.

Information Bulletin 2022-DLE-17
New and Amended Firearms/Weapons Laws
Page 2

## AB 452 (Stats. 2022, ch. 199) – Pupil safety: parental notification: firearm safety laws

**Effective January 1, 2023**

- Requires a school district, county office of education, and charter school to annually inform parents and guardians of pupils at the beginning of the first semester or quarter of the regular school term of California's child access prevention laws and laws relating to the safe storage of firearms.

- Requires the State Department of Education, on or before July 1, 2023, to develop, and subsequently update as provided, in consultation with the Department of Justice, and provide to school districts, county offices of education, charter schools, and, upon request, to provide to private schools, model language for the notice regarding those child access prevention and safe storage of firearms laws.

- Makes a school district, county office of education, charter school, private school, and the Department immune from civil liability for any damages relating to the notice.

## AB 1406 (Stats. 2022, ch. 945) – Law enforcement agency policies: carrying of equipment

**Effective January 1, 2023**

- Requires a law enforcement agency that authorizes peace officers to carry an electroshock device, such as a Taser or stun gun that is held and operated in a manner similar to a pistol, to require that device to be holstered or otherwise carried on the lateral side of the body opposite to the side that that officer's primary firearm is holstered.

## AB 1594 (Stats. 2022, ch. 98) – Firearms: civil suits

**Effective January 1, 2023**

- Establishes a firearm industry standard of conduct, which would require a firearm industry member to establish, implement, and enforce reasonable controls, take reasonable precautions to ensure that the member does not sell, distribute, or provide a firearm-related product to a downstream distributor or retailer of firearm-related products who fails to establish, implement, and enforce reasonable controls, and adhere to specified laws pertaining to unfair methods of competition, unfair or deceptive acts or practices, or false advertising.

- Prohibits a firearm industry member from manufacturing, marketing, importing, offering for wholesale sale, or offering for retail sale a firearm-related product that is abnormally dangerous and likely to create an unreasonable risk of harm to public health and safety.

- Authorizes a person who has suffered harm, the Attorney General, or specified city or county attorneys to bring a civil action against a firearm industry member for an act or omission in violation of the firearm industry standard of conduct.

Information Bulletin 2022-DLE-17
New and Amended Firearms/Weapons Laws
Page 3

- Authorizes a court that determines that a firearm industry has engaged in the prohibited conduct to award various relief, including injunctive relief, damages, and attorney's fees and costs.

## AB 1621 (Stats. 2022, ch. 76) – Firearms: unserialized firearms

**Effective June 30, 2022**

- Redefines a firearm precursor part as any forging, casting, printing, extrusion, machined body, or similar article that has reached a stage in manufacture where it may readily be completed, assembled or converted to be used as the frame or receiver of a functional firearm, or that is marketed or sold to the public to become or be used as the frame or receiver of a functional firearm once completed, assembled, or converted.

- Extends the definition of a firearm to include a firearm precursor part for the purposes of most criminal and regulatory provisions related to the possession, sale, and transfer of a firearm, including provisions which do not apply to a frame or receiver under existing law.

- Repeals provisions relating to the sale of firearm precursor parts through a licensed precursor part vendor, and would prohibit the sale, transfer, or possession of an unserialized firearm precursor part, except as specified.

- Create a process by which a person may apply to the Department for a determination that a particular item or kit is or is not a firearm precursor part.

- Requires any person in possession of an unserialized firearm to apply to the Department for a unique mark of identification and to affix that mark to the firearm before January 1, 2024.

- Beginning on January 1, 2024, explicitly prohibits the possession or transfer of a firearm without a serial number or mark of identification.

- Authorizes a new resident of the state to, within 60 days after arrival in the state, request a unique mark or identification for any unserialized firearm that is otherwise valid to possess in the state.

- Prohibits the possession, sale, transfer, or use of specified firearms manufacturing equipment, with exceptions for specified entities, including the Armed Forces of the United States, the National Guard, and law enforcement.

- Beginning on January 1, 2024, prohibits a person from purchasing more than one completed frame, receiver, or firearm precursor part within a 30-day period.

- Includes a 10-year prohibition for a misdemeanor violation of manufacturing an unserialized firearm, or aiding or abetting the manufacture of a firearm by a prohibited person, that occurs on or after January 1, 2023.

Information Bulletin 2022-DLE-17
New and Amended Firearms/Weapons Laws
Page 4

## AB 1769 (Stats. 2022, ch. 140) – Firearms: prohibited places

**Effective January 1, 2023**

- Requires, with specified exemptions, that an officer, employee, operator, lessee, or licensee of the 31st District Agricultural Association, shall not contract for, authorize, or allow the sale of any firearm, firearm precursor part, or ammunition on the property or in the buildings that comprise the Ventura County Fair and Event Center, in the County of Ventura, the City of Ventura, or any successor or additional property owned, leased, or otherwise occupied or operated by the district.

## AB 1842 (Stats. 2022, ch. 141) – Firearms: restocking fee

**Effective January 1, 2023**

- Prohibits a licensee from charging more than 5% of the purchase price of the firearm as a restocking or other return-related fee when the purchase of the firearm, as specified, is canceled by the buyer within 10 days of the application.

## AB 2137 (Stats. 2022, ch. 20) – Family justice centers

**Effective January 1, 2023**

- Requires family justice centers to provide clients with educational materials related to gun violence restraining orders, domestic violence restraining orders, and other legal avenues of protection for victims and their families.

## AB 2156 (Stats. 2022, ch. 142) – Firearms: manufacturers

**Effective January 1, 2023**

- Expands this prohibition to prohibit any person, regardless of federal licensure, from manufacturing firearms in the state without being licensed by the state.

- Decreases the manufacturing threshold requiring state licensure from 50 or more firearms in a calendar year to 3 or more firearms in a calendar year.

- Prohibits any person, unless licensed as a firearm manufacturer, from manufacturing any firearm or precursor part by means of a 3D printer.

## AB 2239 (Stats. 2022, ch. 143) – Firearms: prohibited persons

**Effective January 1, 2023**

- Prohibits a person convicted of misdemeanor child abuse or elder abuse from having a firearm for ten years.

Information Bulletin 2022-DLE-17
New and Amended Firearms/Weapons Laws
Page 5

## AB 2551 (Stats. 2022, ch. 100) – Firearms

**Effective January 1, 2023**

- Requires the Department, should it determine that a person prohibited from possessing a firearm has attempted to acquire a firearm, to notify the local law enforcement agency with primary jurisdiction over the area in which the person was last known to reside.

- If the person is prohibited from owning or possessing a firearm for reasons relating to mental health, the bill would require the Department to also notify the county Department of Mental Health in the county in which the person was last known to reside.

- Requires the Department, should it determine that a person prohibited from possessing ammunition has attempted to acquire ammunition, to notify any relevant local law enforcement agency.

## AB 2552 (Stats. 2022, ch. 696) – Firearms: gun shows and events

**Effective January 1, 2023**

- Commencing July 1, 2023, will require the Department to conduct enforcement and inspections at a minimum of one-half of all gun shows or events in the state to ensure compliance with gun show and event laws.

- Requires the Department to post certain violations discovered on their internet website and would require the Department to submit an annual report to the Legislature summarizing their enforcement efforts.

- Doubles the maximum fines for violating this and other requirements and makes the person ineligible for a Certificate of Eligibility for a period of 2 years.

- Requires a vendor to certify that they will not display, possess, or offer for sale any unserialized frame or receiver, including an unfinished frame or receiver or any handgun conversion kits.

- Adds a fine and a suspension from participating as a vendor for a period of one year to the punishment for these violations.

- Requires additional notices relating to the storage, handling, purchase, and theft of firearms to be posted at each public entrance of an event.

## AB 2571 (Stats. 2022, ch. 77) – Firearms: advertising to minors

**Effective June 30, 2022**

- Prohibits a firearm industry member from using, advertising, or marketing any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors.

- Prohibits a firearm industry member from using, disclosing, or compiling a minor's personal information if it is intended to market or advertise a firearm to that minor.

- Imposes a civil penalty of up to $25,000 for each violation of these provisions, and would authorize a person harmed by a violation to bring suit to recover any damages suffered.

- Makes each copy or republication of marketing or advertising prohibited by these provisions a separate violation.

## AB 2870 (Stats. 2022, ch. 974) – Firearms: gun violence restraining orders

**Effective January 1, 2023**

- Allows a petition for a gun violence restraining order to be made by an individual who has a child in common with the subject, an individual who has a dating relationship with the subject, or a roommate of the subject of the petition.

- Expands the family members who can file a petition for a gun violence restraining order to include any person related by consanguinity or affinity within the 4th degree who has had substantial and regular interactions with the subject for at least one year.

## SB 906 (Stats. 2022, ch. 144) – School safety: mass casualty threats: firearm disclosure

**Effective January 1, 2023**

- Requires on or before July 1, 2023, the State Department of Education, in consultation with relevant local educational agencies, civil rights groups, and the Department of Justice, to develop model content that includes, at a minimum, content that informs parents or guardians of California's child access prevention laws and laws relating to the safe storage of firearms.

- Requires, commencing with the 2023–24 school year, local educational agencies maintaining kindergarten or any of grades 1 to 12, inclusive, to, informed by the model content, include information related to the safe storage of firearms in an annual notification provided to the parents or guardians of pupils.

- Requires a school official whose duties involve regular contact with pupils in any of grades 6 to 12, inclusive, as part of a middle school or high school, and who is alerted to or observes any threat or perceived threat to immediately report the threat or perceived threat to law enforcement.

- Requires, with the support of the local educational agency, the local law enforcement agency, or school-site police, as applicable, to immediately conduct an investigation and threat assessment.

- Requires the investigation and threat assessment to include a review of the firearm registry of the Department and, if justified by a reasonable suspicion that it would produce evidence related to the threat or perceived threat, a school-site search.

Information Bulletin 2022-DLE-17
New and Amended Firearms/Weapons Laws
Page 7

## SB 915 (Stats. 2022, ch. 145) – Firearms: state property

**Effective January 1, 2023**

- This bill would, except as exempted, prohibit a state officer or employee, or operator, lessee, or licensee of any state-owned property, from contracting for, authorizing, or allowing the sale of any firearm, firearm precursor part, or ammunition on state property.

## SB 1327 (Stats. 2022, ch. 146) – Firearms: private rights of action

**Effective January 1, 2023**

- Creates a private right of action for any person against any person who, within this state, (1) manufactures or causes to be manufactured, distributes, transports, or imports into the state, or causes to be distributed or transported or imported into the state, keeps for sale or offers or exposes for sale, or gives or lends any firearm lacking a serial number required by law, assault weapon, or .50 BMG rifle; (2) purchases, sells, offers to sell, or transfers ownership of any firearm precursor part that is not a federally regulated firearm precursor part; or (3) is a licensed firearms dealer and sells, supplies, delivers, or gives possession or control of a firearm to any person under 21 years of age, all subject to certain exceptions.

- Makes the provisions listed above inoperative upon invalidation of a specified law in Texas, and would repeal its provisions on January 1 of the following year.

- Specifies that all statutes regulating or prohibiting firearms shall not be construed to repeal any other statute regulating or prohibiting firearms, in whole or in part, unless the statute specifically states that it is repealing another statute.

## SB 1384 (Stats. 2022, ch. 995) – Firearms: dealer requirements

**Effective January 1, 2023**

- Requires that dealer to carry a policy of general liability insurance (commences July 1, 2023).

- Requires a licensed firearm dealer to have a digital video surveillance system on their business premises (commences January 1, 2024).

### *BILLS SIGNED INTO LAW BEFORE 2022 THAT BECOME OPERATIVE, IN WHOLE OR IN PART, IN 2023*

## AB 1281 (Stats. 2021, ch. 209) – Criminal procedure: protective orders

**Operative July 1, 2023**

- Subject to an appropriation in the Annual Budget Act, on a monthly basis, Requires the Department to review the records in the statewide criminal justice databases, and based on information in the state summary criminal history repository and the Supervised Release File,

identify persons with convictions that meet the criteria set forth in subdivision (B) this statute and are eligible for automatic conviction record relief.

## SB 24 (Stats. 2021, ch. 129) – Domestic violence: protective orders: information pertaining to a child

### Operative January 1, 2023

- Requires a security guard to complete an assessment to be issued a firearms permit prior to carrying a firearm.

- Requires an applicant who is a registered security guard to have met the requirement of being found capable of exercising appropriate judgment, restraint, and self-control, for purposes of carrying and using a firearm during the course of their duties, within the 6 months preceding the date the application is submitted to the Bureau of Security and Investigative Services (Bureau) within the Department of Consumer Affairs.

- Prohibits an applicant who fails the assessment from completing another assessment any earlier than 180 days after the results of the previous assessment are provided to the Bureau.

- Authorizes the Bureau to revoke a firearm permit upon notification from the Department that the holder of the firearm permit is prohibited from possessing, receiving, or purchasing a firearm under state or federal law, and would instead authorize the Bureau to seek an emergency order against a permit holder if a specified event occurs.

## SB 715 (Stats. 2021, ch. 250) – Criminal law

### Operative July 1, 2023

- Prohibits the possession of a semiautomatic centerfire rifle and, commencing July 1, 2023, the possession of any firearm, by a minor, with certain exceptions.

- Prohibits a dealer from returning a firearm to the person making the sale, transfer, or loan, if that person is prohibited from obtaining a firearm and would, in those cases, provide a procedure by which that person could transfer the firearm to a law enforcement agency or to a third party, as specified.

# EXHIBIT C



**California Department of Justice**

**OFFICE OF
THE ATTORNEY GENERAL**

*Legal Alert*

| *Subject:* California's Public-Carry License Scheme and Public-Carry Criminal Laws Remain Constitutional After the U.S. Supreme Court's Decision in *New York State Rifle & Pistol Association v. Bruen* | *No.* OAG-2022-03 | *Contact for information:* |
|---|---|---|
| | *Date:* August 17, 2022 | CCWinfo@doj.ca.gov |

**TO:    All California District Attorneys, County Counsels, City Attorneys, Sheriffs, and Police Chiefs**

On June 23, 2022, the United States Supreme Court issued its decision in *New York State Rifle & Pistol Association v. Bruen* (2022) 142 S.Ct. 2111 (*Bruen*).[1]  The next day, the Attorney General issued Legal Alert No. OAG-2022-02, which concluded that the "good cause" requirements set forth in California Penal Code sections 26150(a)(2) and 26155(a)(2) were unconstitutional and unenforceable under *Bruen*.[2]  That legal alert also made clear that "because the Court's decision in *Bruen* does not affect the other statutory requirements governing public-carry licenses," local officials should "continue to apply and enforce all other aspects of California law with respect to public-carry licenses and the carrying of firearms in public."

As discussed in this Legal Alert, the *Bruen* decision expressly stated that it is constitutional for states to require a license to carry a firearm in public.  *Bruen* invalidated only one of the enumerated requirements for obtaining a public-carry license in California—the "good cause" requirement—leaving in place the others.  The "good cause" requirement is severable from the rest of the licensing scheme, which remains constitutional.  And criminal statutes penalizing the unlicensed carrying of firearms in public remain valid and enforceable after *Bruen*.  Finally, *Bruen* does not affect the validity of California's other firearms safety laws.

<u>California's Public-Carry Licensing Regime Remains Constitutional Because *Bruen* Only Impacted the "Good Cause" Requirement</u>

California law authorizes local law enforcement officials—sheriffs and chiefs of police—to issue licenses allowing license holders to "carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person."  Cal. Pen. Code §§ 26150, 26155.  These licenses exempt the holder from many generally applicable restrictions on the carrying of firearms in public.  *Id.* §§ 25655, 26010.  The relevant statutes currently authorize local officials to issue such licenses "upon proof of all of the following":

"(1) The applicant is of good moral character.
(2) Good cause exists for issuance of the license.
(3) The applicant is a resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the

---

[1] The decision is available at https://www.supremecourt.gov/opinions/21pdf/20-843_7j80.pdf.
[2] Legal Alert No. OAG-2022-02 is available at https://oag.ca.gov/system/files/media/legal-alert-oag-2022-02.pdf.

applicant spends a substantial period of time in that place of employment or business.
(4) The applicant has completed a [firearms safety] course of training. . . ."

*Id.* § 26150(a); see also *id.* § 26155(a).  An applicant must also pass a background check to confirm the applicant is not prohibited under state or federal law from possessing or owning a firearm.  *Id.* §§ 26185(a), 26195(a).

*Bruen* considered the constitutionality of the State of New York's "proper cause" requirement to obtain a public-carry license.  *Bruen*, 142 S.Ct. at p. 2156.  New York courts had interpreted "proper cause" to mean a "special need for self-protection distinguishable from that of the general community."  *Id.* at p. 2123.  The United States Supreme Court concluded that the requirement was unconstitutional "in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms."  *Id.* at p. 2156.  The Court also highlighted other states with "analogues" to the "proper cause" requirement, including California, and made clear that California's similar "good cause" requirement is unconstitutional.  *Id.* at p. 2124.

*Bruen* invalidated merely one statutory prerequisite—the "proper cause" or "good cause" requirement—to obtaining a public-carry license.  But it did not invalidate all public-carry licensing schemes.  The Court did not strike down other aspects of New York's licensing scheme, such as its "good moral character" requirement.  Under *Bruen*, states can still constitutionally enforce requirements for residents to obtain a public-carry license.  The Court emphasized that licensing schemes that "require applicants to undergo a background check or pass a firearms safety course" were acceptable, because such requirements were "narrow, objective, and definite standards" designed to ensure that only "'law-abiding, responsible citizens'" could obtain a public-carry license. *Bruen*, 142 S.Ct. at p. 2138, fn. 9.  Justice Kavanaugh's concurring opinion explicitly acknowledged that states "may continue to require licenses for carrying handguns for self-defense so long as those States employ objective licensing requirements" that did not grant open-ended discretion to licensing officials.  *Id.* at pp. 2161-2162 (conc. opn. of Kavanaugh, J.).  Justice Kavanaugh specified that such objective requirements can include "fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements."  *Id.*  Justice Alito's concurring opinion highlighted that *Bruen* did not disturb the Court's prior decree in *District of Columbia v. Heller* (2008) 554 U.S. 570 that "restrictions . . . may be imposed on the possession or *carrying of guns*."  *Bruen*, 142 S.Ct. at p. 2157 (conc. opn. of Alito, J.) (emphasis added).  *Bruen* thus endorsed, rather than invalidated, various public-carry licensing requirements.

<u>The "Good Cause" Requirement Is Severable From the Rest of the Public-Carry Licensing Regime</u>

The "good cause" requirement is severable from the remaining requirements of California's licensing scheme.  A constitutionally invalid provision is severable if it is "grammatically, functionally, and volitionally separable" from the remainder of the statute.  *Cal. Redevelopment Ass'n v. Matosantos* (2011) 53 Cal.4th 231, 271.  The "good cause" requirement in Penal Code sections 26150(a) and 26155(a) meets all three criteria.  For grammatical separability, removing the "good cause" requirement would not affect the coherence of the remaining prerequisites.  See *id.*  The "good cause" requirement is separated by paragraph and sentence from the good moral character, residency, and training course requirements listed in paragraphs (1), (3), and (4) of subdivision (a) of Penal Code sections 26150 and 26155; and, the background check requirement is contained in entirely different statutes (Cal. Penal Code §§ 26185(a), 26195(a)).  See *Abbott Laboratories v. Franchise Tax Bd.* (2009) 175 Cal.App.4th 1346, 1358.  Functional separability is satisfied because these remaining requirements are "capable of independent application" and can be easily applied by

a sheriff or police chief in accordance with the relevant statutes.  *Id.*  Volitional separability also exists because there is no question the Legislature would have preferred having some public-carry license prerequisites over none at all if it had known the "good cause" requirement was unconstitutional.  See *Matosantos*, 53 Cal.4th at p. 273.

<u>The Remaining Portions of California's Public-Carry Licensing Regime Are Consistent with *Bruen*</u>

In addition to the severability of the "good cause" requirement, the four enduring public-carry license requirements—background check, firearms safety course, residency, and good moral character—survive *Bruen*.  The first two of these requirements were specifically endorsed by the Supreme Court.  *Bruen*, 142 S.Ct. at p. 2138, fn. 9; *id.* at p. 2161 (conc. opn. of Kavanaugh, J.).  The remaining requirements—the residency and good moral character requirements—meet the mandate that a licensing scheme's prerequisites be objective and definite.  Under *Bruen*, "good moral character" and "good cause" are not one and the same.  See *Hooks v. United States* (D.C. 2018) 191 A.3d 1141, 1145-1146 (the constitutionality of a good-cause requirement is distinct from the constitutionality of a moral-character requirement; the rejection of the former does not entail the rejection of the latter).  *Bruen* refers to 43 states as "shall issue" jurisdictions, which includes some jurisdictions that have a suitability or moral character requirement, and the Court explains that those states do not grant licensing officials unfettered discretion to deny licenses.  *Bruen*, 142 S.Ct. at p. 2123, fn. 1.  As to California's "good moral character" requirement in particular, licensing authorities have developed objective and definite standards to avoid such unfettered discretion.  See Legal Alert No. OAG-2022-02 at pp. 2-3 (discussing some examples of these standards).  The evaluation of good moral character, which can involve the weighing of defined factors, is inherently different from the open-ended determination of "a special need for self-protection distinguishable from that of the general community" that was constitutionally problematic in New York's "proper cause" requirement.  *Bruen*, 142 S.Ct. at p. 2123.  The good moral character requirement and the other remaining requirements in California's public-carry license scheme thus remain constitutional post-*Bruen*.[3]

<u>California's Criminal Penalties for Carrying a Firearm in Public Without a License Remain Valid and Enforceable</u>

California's criminal penalties for carrying a firearm in public without a license, such as Penal Code sections 25400, 25850, 26350, 26400, also remain constitutional after *Bruen*.  The Supreme Court made clear that restrictions on the carrying and possession of firearms are permissible under the Second Amendment, and implicitly endorsed "reasonable, well-defined" restrictions on the public carrying of firearms.  *Bruen*, 142 S.Ct. at p. 2156.  Penal Code section 25400, which specifically prohibits various forms of carrying a concealed firearm in public; section 25850, which prohibits various forms of carrying a loaded firearm in public; and sections 26350 and 26400, which prohibit various forms of carrying an unloaded firearm openly in public, fall within such a category of restrictions.  Indeed, both section 25400 and 25850 previously survived constitutional challenges in which California Courts of Appeal determined that these laws were categorically different from the ones struck down in *Heller*.  *People v. Yarbrough* (2008) 169 Cal.App.4th 303, 311-314 (rejecting a challenge to former Penal Code section 12025, the equivalent of today's section 25400); *People v. Flores* (2008) 169 Cal.App.4th 568, 574-577 (rejecting a challenge to former Penal Code section 12031, the equivalent of today's section 25850).  Because *Bruen* built on—and did not detract from—*Heller*, and *Yarbrough* and *Flores* were decided after *Heller*, trial courts are bound by *Yarbrough* and *Flores*.  See *Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450,

---

[3] The Legislature of course may choose to amend Sections 26150 and 26155.  Any such amendments encompassing "narrow, objective, and definitive standards" will pass constitutional muster.  *Bruen*, 142 S.Ct. at p. 2138, fn.9.

455 ("Decisions of every division of the District Courts of Appeal are binding . . . upon all the superior courts of this state").

Moreover, *Bruen* does not provide a basis for dismissing charges filed under Penal Code sections 25400, 25850, 26350, 26400, or other laws or regulations prohibiting the carrying of firearms in certain places. California's licensing scheme has been entirely consistent with *Bruen* since the Attorney General announced that California would no longer enforce its good cause requirement in light of *Bruen* in the June 24, 2022 Legal Alert No. OAG-2022-02.

For individuals who violated these provisions before that date, *Bruen* does not provide a basis for dismissing charges for two reasons.  First, in many parts of California, local issuing authorities defined good cause in a way that created no constitutional problem.  As discussed above, in *Bruen* the Supreme Court did not cast doubt on state laws requiring individuals to secure a license as a condition of carrying a firearm in public.  See *Bruen*, 142 S.Ct. at p. 2161 (conc. opn. of Kavanaugh, J.) ("the Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense").  The problem with New York's "proper cause" requirement was that it mandated that applicants demonstrate a "special need for self-protection distinguishable from that of the general community."  *Id.* at p. 2123.  But issuing authorities in multiple California counties did not require applicants to show an atypical need for self-defense to secure a license.  For example, the practice of the Sacramento County Sheriff's Office was to "accept as good cause an applicant's stated desire to obtain a license for self-defense or for the defense of his or her family."  California State Auditor, Concealed Carry Weapon Licenses 1 (Dec. 2017) <https://www.auditor.ca.gov/pdfs/reports/2017-101.pdf> [last visited Aug. 1, 2022].  These counties' application of California's good cause standard was consistent with *Bruen*, and that case therefore does not provide a basis for dismissing charges if the defendant was a resident of one of those counties or had their principal place of business or employment in one of those counties and the defendant spent a substantial amount of time there.

Second, even for defendants who did not reside or work in one of these counties, *Bruen* does not provide a basis for dismissing charges filed for violating California's public-carry laws.  A defendant cannot escape criminal liability merely because *Bruen* makes clear that *one* of California's licensing requirements is unconstitutional.  As discussed above, the other licensing requirements are plainly constitutional under *Bruen*.  Courts across the country have already repeatedly rejected challenges to criminal charges based on *Bruen* for similar reasons.  See, e.g., *People v. Rodriguez* (N.Y. Sup. Ct., July 15, 2022) __ N.Y.S. 3d __, 2022 WL 2797784, at pp. *1-*3 (allowing individuals to escape criminal prosecution for conduct that was unlawful before *Bruen* would turn New York "into the Wild West, placing its citizens at the mercy of criminals wielding unlicensed firearms, concealed from public view, in heavily populated areas" ); *Fooks v. State* (Md. Ct. Spec. App., June 29, 2022) __ A.3d __, 2022 WL 2339412, at p. *1 (rejecting a challenge to a conviction for illegally possessing a firearm after a criminal contempt conviction); *United States v. Daniels* (S.D. Miss., July 8, 2022) __ F. Supp. 3d __, 2022 WL 2654232, at p. *1 (upholding a federal indictment for possessing a firearm while unlawfully using a controlled substance).

*Bruen* emphasized the Second Amendment is not a "regulatory straightjacket," and that the newly announced constitutional right to "bear commonly used arms in public [is] subject to certain reasonable, well-defined restrictions."  *Bruen*, 142 S.Ct. at pp. 2133, 2156.  California's requirements to obtain a public-carry license, other than "good cause," and its criminal restrictions on the unlicensed carrying of firearms in public, constitute such reasonable and well-defined restrictions.

Some district attorney and city attorney offices across California have raised similar arguments in response to efforts by defendants in criminal cases to dismiss charges for carrying a firearm in public without a license.  To illustrate how local prosecutorial offices have defended the constitutionality of such criminal charges, here is a link to examples of briefs recently filed by the Sacramento County District Attorney's Office and the Los Angeles City Attorney's Office: https://oag.ca.gov/sites/default/files/combined-garcia-jimenez.pdf.

<u>Bruen</u> Does Not Affect the Validity of Other Firearms Safety Laws

In *Bruen*, the Supreme Court held unconstitutional only New York's requirement that individuals show that they have proper cause as a condition of obtaining a license to carry a firearm in public.  The Court did not cast doubt upon, and indeed did not address, other firearm safety laws, including restrictions on large-capacity magazines and assault weapons, restrictions that prevent felons and the dangerously mentally ill from possessing firearms, or other reasonable regulations.  On the contrary, the Court reiterated *Heller*'s statement that the Second Amendment is not a right to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  *Bruen*, 142 S. Ct. at p. 2128 (quoting *Heller*, 554 U.S. at p. 626).  And in his concurrence, Justice Kavanaugh reiterated *Heller*'s observation that "the Second Amendment allows a 'variety' of gun regulations."  *Id.* at p. 2162 (quoting *Heller*, 554 U.S. at p. 636).  In particular, he emphasized that the "presumptively lawful measures" that *Heller* identified—including "longstanding prohibitions on the possession of firearms by felons and the mentally ill," laws "forbidding the carrying of firearms in sensitive places," laws "imposing conditions and qualifications on the commercial sale of arms," and laws prohibiting the keeping and carrying of "dangerous and unusual weapons"—remained constitutional, and that this was not an "exhaustive" list.  *Id.* at p. 2162 (quoting *Heller*, 554 U.S. at pp. 626-627, 627 fn. 26).

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Junior Sports Magazines, Inc., et al. v. Bonta*
Case No.:    2:22-cv-04663-CAS (JCx)

IT IS HEREBY CERTIFIED THAT:

     I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

     I am not a party to the above-entitled action. I have caused service of:

**SUPPLEMENTAL DECLARATION OF ANNA M. BARVIR IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE THE MANDATE AND ISSUE PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Kevin J. Kelly, Deputy Attorney General
kevin.kelly@doj.ca.gov
300 South Spring Street, Suite 9012
Los Angeles, CA 90013

Gabrielle D. Boutin, Deputy Attorney General
gabrielle.boutin@doj.ca.gov
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
   *Attorneys for Defendant*

     I declare under penalty of perjury that the foregoing is true and correct.

Executed May 24, 2024.

Laura Palmerin